**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COMMONWEALTH OF PA, by Attorney General KATHLEEN G. KANE, | : : : | CIVIL ACTION |
| Plaintiff, | : : | NO. 14-cv-07139-JCJ |
| v. | : : | |
| THINK FINANCE, INC., et al., | : : | |
| Defendants. | : | |
| COMMONWEALTH OF PA, by Attorney General KATHLEEN G. KANE, | : : : | CIVIL ACTION |
| Plaintiff, | : : | NO. 15-cv-00092-JCJ |
| v. | : : | |
| THINK FINANCE, INC., et al., | : : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULES OF CIVIL**
**PROCEDURE 12(b)(2) AND 12(b)(6)**

Defendants William Weinstein ("Weinstein"), Weinstein, Pinson & Riley P.S. ("WPR"), and

Cerastes, LLC ("Cerastes") (collectively, the "Weinstein Defendants") submit this Memorandum of

Law in Support of their Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2)

and 12(b)(6).

## I.      INTRODUCTION

This matter concerns allegations made by Plaintiff Commonwealth of Pennsylvania, by

Attorney General Kathleen G. Kane ("Plaintiff") that Defendants Think Finance, Inc. ("Think

Finance"), TC Loan Service, LLC ("TC Loan Service"), Elevate Credit, Inc., Financial U, LLC and Kenneth Rees (collectively, the "Think Finance Defendants") developed a scheme in which they partnered with out-of-state banks and Native American tribes—which are immune from state law— in an attempt to avoid Pennsylvania's usury laws and issue illegal loans to Pennsylvania citizens (and to collect upon such loans). Without any factual basis to support its claims, Plaintiff has alleged that the Weinstein Defendants participated in this scheme and conspired with the Think Finance Defendants and others to violate Pennsylvania's Corrupt Organizations Act ("COA"), 18 Pa. C.S. § 911; the Fair Credit Extension Uniformity Act ("FCEUA") 73 P.S. § 2270.1, *et seq.*; and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") 73 P.S. § 201-1, *et seq.* Plaintiff's claims against the Weinstein Defendants are unfounded and must be dismissed.

As an initial matter, Plaintiff has failed to allege that Defendant Weinstein—who resides in Washington and has no contacts with Pennsylvania—has personally participated in any of the conduct giving rise to its claims. As such, this Court lacks personal jurisdiction over Defendant Weinstein and the Complaint against him must be dismissed on this basis alone.

Next, Plaintiff's claims against the Weinstein Defendants are premised exclusively on the allegation that they filed a proof of claim in a bankruptcy proceeding in an effort to collect a debt that purportedly originated with one of the Native American tribes affiliated with the Think Finance Defendants. Both the United States Court of Appeals for the Third Circuit and the Pennsylvania Supreme Court have recognized, however, that the Bankruptcy Code, 11 U.S.C. §§ 101-1330, preempts state law claims premised on conduct that occurs during a bankruptcy proceeding. Because Plaintiff's claims against the Weinstein Defendants are preempted by the Bankruptcy Code, Plaintiff's Complaint as against the Weinstein Defendants must be dismissed in its entirety, and the Court need not address the individual claims advanced within the Complaint.

144531.00601/22370098v.3

Even assuming *arguendo* that Plaintiff's claims are not preempted by the Bankruptcy Code, however, each individual claim advanced against the Weinstein Defendants lacks merit and must be dismissed.

- Plaintiff's claim that the Weinstein Defendants conspired to violate Pennsylvania's COA (Count Three) must be dismissed because Plaintiff has failed to allege that any of the Weinstein Defendants shared a "common purpose" with any of the other Defendants to this action—which is a necessary element of a conspiracy claim—and because Plaintiff has failed to allege that any of the Weinstein Defendants engaged in a "pattern of racketeering activity" as that term is defined by the COA.

- Plaintiff's claim that the Weinstein Defendants violated provisions of the FCEUA and UPTCPL that prohibit the collection of usurious interest (Count Four) must be dismissed because the Complaint fails to allege that any of the Weinstein Defendants collected any interest or other fee in excess of the 6% interest rate permitted by Pennsylvania law.

- Plaintiff's claim that the Weinstein Defendants committed an additional violation of the UTPCPL by failing to register with the Pennsylvania Department of State Corporation Bureau (Count Five) must be dismissed because Plaintiff has failed to allege that any of the Weinstein Defendants are corporations who conducted any business in Pennsylvania that would necessitate such registration.

For each of these reasons, and for all of the reasons discussed below, the Court should dismiss with prejudice Plaintiff's Complaint against the Weinstein Defendants in its entirety.

## II.  RELEVANT FACTUAL AND PROCEDURAL HISTORY

On November 13, 2014, Plaintiff filed a Complaint in the Philadelphia County Court of Common Pleas against the Think Finance Defendants; Selling Source, LLC and PartnerWeekly, LLC, d/b/a MoneyMutual.com (collectively, the "Selling Source Defendants"); National Credit Adjusters, LLC, and the Weinstein Defendants.  A copy of the Complaint, without Exhibits, is attached hereto as **Exhibit A**.  Plaintiff alleges that all Defendants to this action "solicit, arrange, fund, purchase, service and/or collect loans and cash advances made to Pennsylvania citizens over the Internet" which exceed the 6% per year interest rate established by section 201 of the Loan Interest and Protection Law ("LIPL"), 41 P.S. § 201, for loans less than $50,000.  **Exhibit A**,

144531.00601/22370098v.3

Complaint ¶¶ 1-2, 25.[1]  These loans purportedly originated pursuant to the scheme described below.

### A.      The Lending Schemes Alleged in the Complaint

According to the Complaint, Defendants Think Finance, TC Loan Service, and Rees used a lending model known as "rent-a-bank" in which they partnered with out-of-state banks—such as the First Bank of Delaware—in order to issue loans to Pennsylvania consumers that were otherwise prohibited by Pennsylvania law.  *Id.* ¶¶ 32-40.  Plaintiff alleges that "[b]ecause banks are insulated from state examination and regulation by virtue of federal bank pre-emption doctrines, many payday lenders were, for a period of time, able to use these 'rent-a-bank' arrangements to evade enforcement in states where, like Pennsylvania, payday lending is illegal under state law."  *Id.*

After the Federal Deposit and Insurance Corporation ("FDIC") began to limit these "rent-a-bank" arrangements, however, the Think Finance Defendants allegedly started to use a similar "rent-a-tribe" scheme, in which these Defendants partnered with Native American tribes in an effort to take advantage of the tribes' immunity from state law and issue loans to Pennsylvania consumers that exceed the rate of interest established by the LIPL.  *Id.* ¶¶ 33-45.  Specifically, Plaintiff alleges that the Think Finance Defendants established business relationships with three separate Native American tribes: (1) the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, Montana ("Chippewa Cree Tribe"), which operates the website www.plaingreen.com ("Plain Green"); (2) the Otoe-Missouria Tribe of Indians, located in Red Rock, Oklahoma ("Otoe-Missouria Tribe"), which operates the website www.greatplainslending.com ("Great Plains Lending"); and (3) the Tunica-Biloxi Tribe of Louisiana ("Tunica-Biloxi Tribe"), which operates the website www.mobiloans.com (hereinafter "MobiLoans").  *Id.* ¶ 47.  According to Plaintiff,  "[u]nder the rent-a-tribe version of the Think Finance usury scheme, the loans are made in the name of [a] lender affiliated with one of

---

[1]  The Weinstein Defendants dispute the veracity of the Complaint's allegations.

these tribes, but, upon information and belief, the Think Finance Defendants provide the infrastructure to market, fund, underwrite and collect the loans[.]" *Id.* ¶ 48.

**B.**     **The Allegations and Claims Advanced Against the Weinstein Defendants**

**1.**     **The Only Factual Allegations Related to the Weinstein Defendants**

With respect to the individual Weinstein Defendants, Plaintiff alleges that: (1) Defendant Weinstein "is an attorney, debt buyer and debt collector who, upon information and belief, resides in Washington State and is the principal" of Defendant WPR, *id.* ¶ 16; (2) Defendant WPR is a law firm "that specializes in debt collection, with principal offices at 2001 Western Avenue, Suite 400, Seattle, Washington 98121", *id.*; and (3) Defendant Cerastes is both a limited liability company and a corporation, *see, e.g.¸ id.* ¶¶ 3, 17, that is "controlled by" Defendant Weinstein, purchases large portfolios of "bad debt," and is located at 2001 Western Avenue, Suite 400, Seattle, Washington 98121. *Id.* ¶ 17. In describing the Weinstein Defendants in the "Introduction" section of its Complaint, Plaintiff alleges that

> Cerastes has purchased illegal usurious loans made to Pennsylvania residents, either from the Think Finance Defendants, and/or from the tribal entities affiliated with the Think Finance Defendants or from other nominal entities designated by the scheme to hold the loans, or is the successor to another Weinstein corporation or limited liability company that purchased the debt, and has been engaging in debt collection activity pertaining to such loans. At Defendant Weinstein's direction, his law firm, Defendant [WPR has] been engaged in collection activity directed against Pennsylvania residents regarding such loans.

*Id.* ¶ 18.

Of the 66 paragraphs that comprise the "Fact of the Case" section of Plaintiff's Complaint, the Weinstein Defendants are referenced only in two. First, Plaintiff alleges that "[u]pon information and belief, the Think Finance Defendants have participated in the sale or transfer of loan balances supposedly owed by Pennsylvania consumers to Plain Green, Great Plains Lending or

MobiLoans to various debt buyers, including the Weinstein Defendants and Defendant National

Credit Adjusters." *Id.* ¶ 77. Second, Plaintiff alleges that "[o]n January 29, 2014, the Weinstein

Defendants filed a proof of claim in the bankruptcy case of a Pennsylvania consumer for the balance

owing on a loan issued by Plain Green, LLC." *Id.* ¶ 79(a).

The aforementioned allegations are the only "facts" advanced within the Complaint against

the Weinstein Defendants.

## 2. The Claims Advanced Against the Weinstein Defendants

The Complaint advances three claims against the Weinstein Defendants. In Count Three –

Violations of the COA, 18 Pa. C.S. § 911(b)(4), Plaintiff alleges that

> [t]he Weinstein Defendants and Defendant National Credit Adjusters
> conspired with the Think Finance Defendants and others, with
> knowledge of the scheme's purpose and intent, to violate 18 Pa.
> C.S.A. § 911(b)(1) and (3), in violation of 18 Pa. C.S.A. § 911(b)(4),
> by purchasing and/or collecting usurious loans made to Pennsylvania
> consumers by the various lending schemes.

**Exhibit A**, Complaint ¶ 115.

In Count Four – Violations of the FCEUA and the UTPCPL, Plaintiff alleges that (1) each of

the Weinstein Defendants are "debt collectors" for purposes of the FCEUA; (2) any violation of the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 is an "unfair or deceptive act or

practice" under the FCEUA; (3) it is a violation of the FDCPA "to collect 'any amount (including

interest, fee, charge, or expense incidental to the principal obligation)' that is prohibited by state

law" and that such conduct is also a violation of the FCEUA; (4) all Defendants violate the FCEUA

"every time they collect any interest, fee or charge from a Pennsylvania consumer in excess of the

six-percent ceiling established" by law; and (5) this violation of the FCEUA is also a violation of the

UTPCPL. *See* **Exhibit A**, Complaint ¶¶ 119-24.

Finally, in Count Five – Additional Violations of the UTPCPL for Misrepresentation and

6

Deception, the only discernible reference to any of the Weinstein Defendants is contained within paragraph 138, which states that "Defendants failed to register Think Finance, Inc., Financial U, LLC, Cerastes, LLC, Selling Source, LLC and Partner Weekly, LLC as foreign or domestic business corporations with the Pennsylvania Department of State Corporations in accordance with the requirements of the Business Corporation Law, 15 Pa. C.S. § 1101, *et seq.*" **Exhibit A**, Complaint ¶ 138.

C. **The Filing of the Complaint in Pennsylvania State Court and the Removal of the Action to this Court**

Plaintiff filed the Complaint in this matter on November 13, 2014 in the Court of Common Pleas of Philadelphia County, First Judicial District of Pennsylvania. The Complaint was served upon the Weinstein Defendants on December 11, 2014. On December 17, 2014, the Think Finance Defendants filed in this Court a Notice of Removal, docketed at 2:14-cv-07139-JCJ. On January 9, 2015, the Weinstein Defendants filed in this Court their own Notice of Removal, docketed at 2:15-cv-00092-JCJ.

III. **ARGUMENT**

A. **Standards of Review**

1. **Standard of Review Pursuant to Federal Rule of Civil Procedure 12(b)(2)**

In advancing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "the allegations of the complaint are taken as true; however, once the defense is raised, the burden shifts to the plaintiff to prove that the exercise of jurisdiction is permissible." *Nat'l Paintball Supply v. Cossio*, 996 F. Supp. 459, 460 (E.D. Pa. 1998). The plaintiff "*cannot rely on the bare pleadings alone*, but must sustain his burden of proof by establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction through sworn affidavits or other competent evidence." *Id.* at 461 (emphasis added) (citing *Carteret Savings Bank, FA v.*

7

*Shushan*, 954 F.2d 141, 146 (3rd Cir. 1992)); *see also AmerisourceBergen Drug Corp. v. Ciolino Pharm. Wholesale Distribs., LLC*, No. Civ.A.10-5114, 2011 U.S. Dist. LEXIS 55423, *9 (E.D. Pa. May 24, 2011) (recognizing that a plaintiff "must allege facts sufficient to support a finding of personal jurisdiction, or *if the defendant comes forward with an opposing affidavit, respond with competent evidence*") (emphasis added).

### 2. Standard of Review Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," but it "need not credit a complaint's bald assertions or legal conclusions[.]" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quotations and citations omitted).

In determining whether to dismiss a complaint, a district should first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true, but disregarding any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Next, the court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

In general, "in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (citation omitted).

### B. Pennsylvania Lacks Personal Jurisdiction Over Defendant Weinstein

### 1. Relevant Law Governing Personal Jurisdiction

Federal Rule of Civil Procedure 4(k)(1)(A) empowers a federal court to exercise personal

jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania, in turn, permits the exercise of personal jurisdiction over nonresident defendants "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b).

The United States Court of Appeals for the Third Circuit has recognized that "[t]he Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299-300 (3d Cir. Pa. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To that end,

> [f]ederal courts have recognized two types of personal jurisdiction which comport with these due process principles: general and specific jurisdiction. General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state. . . . Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state.

*Id.* at 300 (citations omitted). Notably, unless a corporate officer was "personally involved" in a corporation's tortious activity, "a court may not exercise jurisdiction over individual officers and directors of a corporation based solely upon acts taken in their corporate capacities." *Maleski by Taylor v. DP Realty Trust*, 653 A.2d 54, 62 (Pa. Commw. Ct. 1994).

### 2. Pennsylvania Lacks Personal Jurisdiction Over Defendant Weinstein

Plaintiff alleges that Defendant Weinstein is the principal of Defendant WPR and that, under his direction, Defendant WPR has "engaged in collection activity directed against Pennsylvania residents." **Exhibit A**, Complaint ¶ 18. But, the sole allegation concerning any debt collection

144531.00601/22370098v.3

activity by any of the Weinstein Defendants is that "[o]n January 29, 2014, the Weinstein Defendants filed a proof of claim in the bankruptcy case of a Pennsylvania consumer for the balance owing on a loan issued by Plain Green, LLC." *Id.* ¶ 79(a).

In fact, Defendant Weinstein is a resident of the State of Washington, has no contacts with the Commonwealth of Pennsylvania, and did not personally file a proof of claim in any Pennsylvania state or federal court on January 29, 2014. *See* Declaration of William S. Weinstein ("Weinstein Decl.") ¶¶ 4-17, a copy of which is attached hereto as **Exhibit B**. Plaintiff has not and cannot establish that Defendant Weinstein has personally engaged in any conduct that has given rise to the claims advanced by Plaintiff and that would warrant the exercise of *specific jurisdiction* over Defendant Weinstein. Plaintiff likewise has not and cannot establish that Defendant Weinstein has sufficient systematic and continuous contacts with Pennsylvania that would warrant the exercise of *general jurisdiction* over him. Accordingly, this Court lacks personal jurisdiction over Defendant Weinstein, and the Complaint against him must be dismissed.

### C. The Complaint Fails to State a Claim Against the Weinstein Defendants and Must be Dismissed[2]

#### 1. All Claims Advanced Against the Weinstein Defendants Are Preempted by the Bankruptcy Code and Must be Dismissed

##### a) Relevant Law Governing Federal Preemption of State Law Causes of Action Premised on Conduct that Occurs in a Bankruptcy Proceeding

Federal preemption of state law can be established when: (i) Congress explicitly states that state law is superseded; (ii) in the absence of explicit statutory language, "state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy

---

[2] As discussed above, the Court lacks personal jurisdiction over Defendant Weinstein and thus need not address the merits of the claims advanced against him in the Complaint. Even assuming such jurisdiction did exist, however, the claims against him must be dismissed for all of the reasons addressed below.

exclusively"; or (iii) a conflict arises between the state and federal law. *English v. General Elec. Co.*, 496 U.S. 72, 78–79 (1990). Moreover, "once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim and therefore arises under federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987).

Both the Third Circuit Court of Appeals and the Pennsylvania Supreme Court have explicitly recognized that the Bankruptcy Code, 11 U.S.C. §§ 101-1330, preempts state law claims premised on conduct that occurs during a bankruptcy proceeding. Specifically, in *Rhodes v. Diamond*, the Third Circuit addressed an appeal dismissing a complaint and denying a motion for leave to amend. 433 F. App'x 78, 79 (3d Cir. 2012). Among other things, the complaint alleged that the appellees violated the FDCPA, FCEUA, and UTPCPL "by filing in bankruptcy courts proofs of claim that included artificially inflated mortgage foreclosure fees." *Id.* The Third Circuit held that "the District Court correctly found that Appellants' claims arising from [the appellees'] conduct in bankruptcy proceedings—i.e., its filing of, and subsequent failure to amend, allegedly inflated proofs of claim—cannot give rise to FDCPA or state law causes of action." *Id.* at 80. In reaching this decision, the Third Circuit recognized that "'*the vast majority of courts have held that the Bankruptcy Code preempts state law claims allegedly arising from an abusive bankruptcy filing or other wrongful conduct committed during the course of a bankruptcy cas*e.'" *Id.* (emphasis added) (quoting *In re Pariseau*, 395 B.R. 492, 495 (Bankr. M.D. Fla. 2008)); *see also id.* ("'Attempting to reconcile the debt validation procedure contemplated by FDCPA with the claims objection process under the [Bankruptcy] Code results in the sort of confusion and conflicts that persuades us that Congress intended that FDCPA be precluded in the context of bankruptcy cases.'") (quoting *In re Chaussee*, 399 B.R. 225, 239 (9th Cir. 2008)).

11

Similarly, in *Stone Crush P'ship v. Jackson*, the Pennsylvania Supreme Court concluded "that the Bankruptcy Code and Federal Rules of Civil Procedure preempt Appellant's rights pursuant to state law for compensation in a wrongful use of civil proceedings or abuse of process claim *grounded in bankruptcy court proceedings*." 908 A.2d 875, 887 (Pa. 2006) (emphasis added).

b) Plaintiff's Claims Against the Weinstein Defendants Are Expressly and Exclusively Premised on Conduct that Occurred During the Course of a Bankruptcy Proceeding and Are Therefore Preempted by the Bankruptcy Code

Here, Plaintiff has advanced three claims against the Weinstein Defendants: (1) violation of Pennsylvania's COA premised on the purchase and/or collection of usurious loans, **Exhibit A**, Complaint ¶ 115; (2) violations of the FCEUA and UTPCPL premised on the collection of usurious interest, *id.* ¶¶ 119-26; and (3) additional violations of the UTPCPL premised on the allegation that business was conducted in Pennsylvania without registering in accordance with Pennsylvania law. *Id.* ¶¶ 138-43.

Importantly, the only discernible factual allegation regarding the Weinstein Defendants' attempt to collect any debt or conduct any other form of business in Pennsylvania is that "[o]n January 29, 2014, the Weinstein Defendants filed a proof of claim in the bankruptcy case of a Pennsylvania consumer for the balance owing on a loan issued by Plain Green, LLC." **Exhibit A**, Complaint ¶ 79(a). In other words, Plaintiff's claims against the Weinstein Defendants are predicated expressly and exclusively on conduct that allegedly occurred during the course of a bankruptcy proceeding, and are therefore preempted by the Bankruptcy Code.[3] Indeed, the type of conduct complained of in the present matter—the filing of a proof of claim in a bankruptcy action— is precisely the conduct that the Third Circuit in *Rhodes* found did not give rise to state law claims

---

[3] Among other provisions, the filing of proofs of claim in bankruptcy proceedings is governed by 11 U.S.C. § 502.

144531.00601/22370098v.3

for violations of the FCEUA and UPTCPL.

Because Plaintiff's claims against the Weinstein Defendants are preempted by the Bankruptcy Code, Plaintiff's Complaint as against the Weinstein Defendants must be dismissed in its entirety.

      **2.      Count Three of the Complaint Fails to State a Claim Against the Weinstein Defendants and Must be Dismissed**

Even assuming *arguendo* that Plaintiff's claims are not preempted by the Bankruptcy Code, each individual claim lacks merit and must be dismissed.

      a)      Pennsylvania Law Governing Conspiracy and the COA

In order to sustain a civil conspiracy claim under Pennsylvania law, a party must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000) (citing *McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa. Super. 1998)).

18 Pa. C.S. § 911(b)(1), a provision of Pennsylvania's COA, specifies in relevant part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a *pattern of racketeering activity in which such person participated as a principal*, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any *enterprise*[.]

18 Pa. C.S.A. § 911(b)(1) (emphasis added). The relevant components of this statutory provision (italicized above) are defined as follows:

- "Racketeering activity" refers to: (1) indictable acts pursuant to seventeen different chapters and sections of Title 18 of the Pennsylvania Code; (2) an indictable offense "relating to the sale and dispensing of narcotic drugs"; (3) "[t]he collection of any money or other property in full or partial satisfaction of a debt which arose as the

144531.00601/22370098v.3

result of the lending of money or other property at a rate of interest exceeding 25% per annum or the equivalent rate for a longer or shorter period, where not otherwise authorized by law"; (4) an indictable offense under 4 Pa.C.S. Pt. II (relating to gaming); and (5) a conspiracy to commit any of the activities in 1, 2, or 4 above. 18 Pa. C.S. § 911(h)(1).

- A "pattern of racketeering activity" is defined as "a course of conduct requiring two or more acts of racketeering activity one of which occurred after the effective date of this section." 18 Pa. C.S. § 911(h)(4).

- An "enterprise" refers to "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce and includes legitimate as well as illegitimate entities and governmental entities." 18 Pa. C.S. § 911(h)(3).

- The COA does not define "principal," a term which is defined in Black's Law Dictionary as "[c]hief; primary; most important". *See* Black's Law Dictionary (9th ed. 2009).

18 Pa. C.S. § 911(b)(3) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[,]" while § 911(b)(4) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of paragraphs (1), (2) or (3) of this subsection." 18 Pa. C.S. § 911(b).

      b)      Plaintiff has Failed to State a Claim Against the Weinstein Defendants for Conspiracy to Violate any Provisions of the COA

Here, of the seven paragraphs that comprise Count Three of the Complaint, only one makes explicit reference to the Weinstein Defendants:

> The Weinstein Defendants and Defendant National Credit Adjusters conspired with the Think Finance Defendants and others, with knowledge of the scheme's purpose and intent, to violate 18 Pa. C.S.A. § 911(b)(1) and (3), in violation of 18 Pa. C.S.A. § 911(b)(4), by purchasing and/or collecting usurious loans made to Pennsylvania consumers by the various lending schemes.

**Exhibit A**, Complaint ¶ 115. The Complaint, however, is completely devoid of any factual allegations that support this claim, and therefore fails to state a cause of action against the Weinstein

Defendants. *See D'Altilio v. Dover Twp.*, No. Civ.A. 1:06-cv-1931, 2007 U.S. Dist. LEXIS 71414, *7 (M.D. Pa. Sept. 26, 2007) (recognizing that under the notice pleading requirements of Federal Rule of Civil Procedure 8(a), a plaintiff must "present sufficient facts to allow the opposing party to conduct discovery and prepare a defense").

As an initial matter, the entire claim is premised on an alleged conspiracy, but the Complaint fails to allege the existence of an agreement or "common purpose" between any of the Weinstein Defendants and the Think Finance or other Defendants to this action, which purpose is a prerequisite to sustaining a conspiracy claim.

With respect to 18 Pa. C.S. § 911(b)(1) and § 911(b)(3), the Complaint fails to identify any pattern of racketeering activity in which the Weinstein Defendants purportedly engaged, let alone allege that they participated as a principal or were associated with an enterprise that engaged in such activity. Rather, the Complaint merely alleges—with no factual allegations, much less support—that the Weinstein Defendants purchased and/or collected usurious loans.

Even assuming the truth of this bald allegation, however, purchasing and collecting usurious loans does not in and of itself constitute racketeering activity. Specifically, while it is true that collecting money or property related to a debt with an interest rate in excess of 25% is a form of racketeering activity, Pennsylvania's LIPL establishes that for loans that do not exceed $50,000, the legal rate of interest is 6%. As such, a loan issued at an interest rate higher than 6% but lower than 25% would be usurious, but it would not fall within the ambit of racketeering activity.

In addition, it is well-established that the "LIPL does not contain a provision that authorizes voiding the principal loan. As [the] Pennsylvania Supreme Court noted, '[t]here is no doubt that the note [loan] called for a usurious rate of interest . . . this defect, however, rendered the note [loan] not void, but only voidable as to the interest specified beyond the lawful rate.'" *Pa. Dep't of Banking v.*

144531.00601/22370098v.3

*NCAS of Del., LLC*, 995 A.2d 422, 440 (Pa. Commw. Ct. 2010) (quoting *Mulcahy v. Loftus*, 267 A.2d 872, 873 (1970)). And, pursuant Pennsylvania's COA, the collection of a debt that arose with an interest rate greater than 25% is not a form of racketeering activity when such efforts are authorized by law. *See* 18 Pa. C.S.A. § 911(h)(1)(iv). Thus, a party that collects only the principal on a loan does not engage in racketeering activity even when the loan was issued with a rate of interest exceeding 25%.

Here, Plaintiff has failed to specify *any* rate of interest for any loan that the Weinstein Defendants allegedly attempted to collect. Indeed, the Complaint fails to allege that the Weinstein Defendants collected any interest at all. Rather, it simply alleges that the Weinstein Defendants collected "usurious loans." As described above, the collection of money associated with usurious loans is not categorically prohibited and does not constitute racketeering activity unless certain circumstances apply—circumstances that Plaintiff has failed to allege in its Complaint. For these reasons, Plaintiff has failed to adequately allege a violation of 18 Pa. C.S. § 911(b)(1) and/or § 911(b)(3). Surely, Plaintiff is obligated to advance at least some facts to support its claim.

Finally, in the absence of any allegation that would support a claim under 18 Pa. C.S. § 911(b)(1) or (3), it necessarily follows that there can be no cause of action under 18 Pa. C.S. § 911(b)(4) for conspiracy to violate either of those subsections.

### 3. Count Four of Complaint Fails to State a Claim Against the Weinstein Defendants and Must be Dismissed

Section 1692f(1) of the FDCPA prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Pursuant to the FCEUA, "[i]t shall constitute an unfair or deceptive debt collection act or practice under this act if a *debt collector* violates any of the provisions of the [FDCPA]." 73 P.S. § 2270.4(a)

(emphasis added).  For purposes of the FCEUA, the term "debt collector" includes "[a]n attorney, whenever such attorney attempts to collect a debt, as herein defined, *except in connection with the filing or service of pleadings or discovery or the prosecution of a lawsuit to reduce a debt to judgment*."  73 P.S. § 2270.3(3)(ii) (emphasis added).  A violation of the FCEUA may, in turn, constitute a violation of the UTPCPL.  *See* 73 P.S. § 2270.5(a) ("If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the act of [the UTPCPL]").

In Count Four of its Complaint, Plaintiff alleges as follows:

- Each of the Weinstein Defendants are "debt collectors" for purposes of the FCEUA;

- Because § 1692f(1) of the FDCPA prohibits the collection of "any amount (including interest, fee, charge, or expense incidental to the principal obligation) that is prohibited by state law"—and because any violation of the FDCPA is also an "unfair or deceptive act or practice" under the FCEUA—the Weinstein Defendants violate the FCEUA "every time they collect any interest, fee or charge from a Pennsylvania consumer in excess of the six-percent ceiling established by LIPL"; and

- Because a violation of the FCEUA also constitutes a violation of the UTPCPL, the Weinstein Defendants have also violated the UTPCPL through the same conduct described above.

*See* **Exhibit A**, Complaint ¶¶ 119-24.

Here, the sole debt collection activity ascribed to any of the Weinstein Defendants in the Complaint is that "[o]n January 29, 2014, the Weinstein Defendants filed a proof of claim in the bankruptcy case of a Pennsylvania consumer for the balance owing on a loan issued by Plain Green, LLC."  **Exhibit A**, Complaint ¶ 79(a).  As alleged in the Complaint itself, however, Defendant Weinstein is an attorney and Defendant WPR is a law firm.  *Id.* ¶ 16.  Therefore, even accepting the allegations in the Complaint as true, the fact that these Defendants filed a proof of claim in a bankruptcy matter merely demonstrates that they prosecuted a lawsuit to reduce a debt to judgment.  Thus, as attorneys, Defendants Weinstein and WPR do not meet the definition of a "debt collector"

144531.00601/22370098v.3

for purposes of the FCEUA and Count Four must be dismissed as against these Defendants on this ground alone. *See* 73 P.S. § 2270.3(3)(ii) (establishing that attorneys do not act as debt collectors "in connection with the filing or service of pleadings or discovery or the prosecution of a lawsuit to reduce a debt to judgment.") (emphasis added).

Moreover, as described above, the "LIPL does not contain a provision that authorizes voiding the principal loan. As [the] Pennsylvania Supreme Court noted, '[t]here is no doubt that the note [loan] called for a usurious rate of interest . . . this defect, however, rendered the note [loan] not void, but only voidable as to the interest specified beyond the lawful rate.'" *Pa. Dep't of Banking*, 995 A.2d at 440 (quoting *Mulcahy*, 267 A.2d at 873).

Here, the Complaint fails to allege any instance in which any of the Weinstein Defendants collected *any* interest, fee, or charge, let alone any interest, fee, or charge in excess of the LIPL's 6% ceiling. In fact, all that Plaintiff has alleged with respect to the loan that is the subject of the January 29, 2014 proof of claim allegedly filed by the Weinstein Defendants is that it was issued by Plain Green (a tribal entity affiliated with the Think Finance Defendants). The Complaint is silent with respect to whether this particular loan contained usurious interest and, even assuming that it *did* have a usurious interest rate, this fact alone would not constitute a violation of the LIPL—the sole basis for Plaintiff's claim in Count Four that the Weinstein Defendants violated the FCEUA and UTPCPL. Rather, Pennsylvania law permits the collection of debts that may have been issued with usurious interest rates as long as the amount actually collected does not exceed the 6% LIPL rate.[4]

---

[4] Count Four of the Complaint ambiguously suggests that "[e]ven if viewed as the 'creditor' rather than a 'debt collector,' the FCEUA prohibits each of the Defendants from collecting interest prohibited by state law. . . . Thus, whether determined to be engaging in this collection activity as a 'debt collector' or 'creditor,' each of the Defendants are liable for violations of the [UTPCPL.]" **Exhibit A**, Complaint ¶ 124. The FCEUA defines "creditor" as "[a] person, including agents, servants or employees conducting business under the name of a creditor and within this Commonwealth, to whom a debt is owed or alleged to be owed." 73 P.S. § 2270.3.

144531.00601/22370098v.3

Because Plaintiff has failed to allege that any of the Weinstein Defendants collected any interest or other fee in excess of the LIPL's 6% ceiling—and because the failure to comply with the LIPL is the sole basis for Plaintiff's claim in Count Four that the Weinstein Defendants violated the FCEUA and UTPCPL—Count Four of Plaintiff's Complaint must be dismissed as against all of the Weinstein Defendants in its entirety.

### 4. Count Five of the Complaint Fails to State a Claim Against the Weinstein Defendants and Must be Dismissed

In Count Five of the Complaint, the only discernible reference to any of the Weinstein Defendants is contained in paragraph 138, which provides that "Defendants failed to register Think Finance, Inc., Financial U, LLC, Cerastes, LLC, Selling Source, LLC and Partner Weekly, LLC as foreign or domestic business corporations with the Pennsylvania Department of State Corporations in accordance with the requirements of the Business Corporation Law, 15 Pa. C.S. § 1101, *et seq.*" **Exhibit A**, Complaint ¶ 138. Neither Defendant Weinstein nor Defendant WPR is named in this Count of the Complaint.

The Complaint further alleges that:

> *By conducting business in Pennsylvania* without such mandatory registration, Defendants committed unfair and deceptive acts or practices prohibited by Section 201-3 of the Consumer Protection Law by, among other things:
>
> (a) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services, in violation of 73 P.S. § 201-2(4)(ii);
>
> (b) Causing likelihood of confusion or of misunderstanding as to

---

In its Complaint, however, Plaintiff has merely alleged that *if* any of the Defendants were "creditors" within the meaning of the FCEUA, *then* they would be in violation of the UPTCPL. Plaintiff has not alleged that any Defendants—let alone the Weinstein Defendants specifically—actually *do* constitute a creditor. Nevertheless, even if any of the Weinstein Defendants were considered "creditors" for purposes of the FCEUA, Count Four must still be dismissed because, as discussed above, Plaintiff has failed to allege that they collected usurious interest.

144531.00601/22370098v.3

affiliation, connection or association with, or certification by, another, in violation of 73 P.S. § 201-2(4)(iii);

(c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have, in violation of 73 P.S. § 201-2(4)(v); and

(d) Engaging in any other *fraudulent* or deceptive conduct which creates a likelihood of confusion or of misunderstanding, in violation of 73 P.S. § 201-2(4)(xxi).

*Id.* ¶ 140 (emphasis added).

Count Five must be dismissed for several reasons. First, although this claim purports to encompass "All Defendants," none of the 16 paragraphs that comprise Count Five reference Defendants Weinstein or WPR, or specify any violation of the UTPCPL that they are alleged to have committed. Accordingly, Count Five must be dismissed as to Defendants Weinstein and WPR on this basis alone.

Second, the Complaint fails to allege which provision of Pennsylvania's Business Corporation Law required any of the Weinstein Defendants to register with the Pennsylvania Department of State Corporation Bureau. Without a clear understanding of which statutory provision they have allegedly violated, the Weinstein Defendants cannot formulate a coherent defense to this claim, and it must be dismissed.[5]

Next, assuming the Complaint did state a claim for failing to comply with the Business Corporation Law, Defendant Cerastes—the only Weinstein Defendant named in Count Five—is not

---

[5] In fact, by alleging that Defendant Cerastes has violated a provision of the FDCPA that prohibits fraudulent conduct, Plaintiff has brought the Complaint's Count Five within the ambit of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake[.]" Fed. R. Civ. P. 9(b). Plainly, by omitting any reference to, among other things, the specific provision of the Business Corporations Law which Defendant Cerastes purportedly violated, Plaintiff has failed to state with particularity the circumstances constituting fraud.

a corporation, it is a limited liability company, and is therefore not required to register as a foreign or domestic business corporation.[6] Rather, under Pennsylvania law, Defendant Cerastes is a "foreign limited liability company" which is defined as "[a]n association organized under the laws of any jurisdiction other than this Commonwealth, whether or not required to register under Subchapter J (relating to foreign companies), which would be a limited liability company if organized under the laws of this Commonwealth." 15 Pa. C.S. § 8903(a). As a foreign limited liability company, Defendant Cerastes is subject to the following provisions of Pennsylvania law:

- Pursuant to 15 Pa. C.S. § 8981(a), "[a] foreign limited liability company shall be subject to Subchapter K of Chapter 85 (relating to foreign limited partnerships) as if it were a foreign limited partnership[.]"

- Subchapter K of Chapter 85 in turn provides, in relevant part, that "[b]efore doing business in this Commonwealth, a foreign limited partnership shall register under this subchapter", but that "[n]one of the activities described in section 4122 (relating to excluded activities) shall be considered doing business in this Commonwealth for the purposes of this subchapter."

- Among the activities excluded from the definition of "doing business" are "[s]ecuring or collecting debts or enforcing any rights in property securing them," 15 Pa. C.S. § 4122(a)(8), and "[m]aintaining or defending any action or administrative or arbitration proceeding or effecting the settlement thereof or the settlement of claims or disputes." 15 Pa. C.S. § 4122(a)(1).

As described above, the only activity that Defendant Cerastes is alleged to have conducted in Pennsylvania is the collection of a debt by filing a proof of claim in a federal bankruptcy proceeding. This activity plainly does not constitute "doing business" within the meaning of Pennsylvania law governing foreign limited liability companies. Defendant Cerastes was therefore not required to register with the Commonwealth of Pennsylvania, and did not violate the UTPCPL "[b]y conducting business in Pennsylvania without such mandatory registration[.]" **Exhibit A**, Complaint ¶ 140.

---

[6] While it inaccurately refers to Defendant Cerastes as a corporation in paragraph 17 of the Complaint, Plaintiff itself acknowledges elsewhere in its Complaint that Defendant Cerastes is in fact a limited liability company. *See, e.g.*, **Exhibit A**, Complaint at 1 (providing that Plaintiff is bringing the Complaint against

## IV. <u>CONCLUSION</u>

For all the foregoing reasons, this Court should enter an Order dismissing with prejudice all claims advanced against the Weinstein Defendants.

Respectfully submitted,

Date: February 20, 2015      By:   **BLANK ROME LLP**

   _/s/ James T. Smith_
James T. Smith (PA Bar ID. No. 39933)
Brian S. Paszamant (PA Bar ID. No. 78410)
John P. Wixted (PA Bar ID. No. 309044)
One Logan Square, 130 N. 18th Street
Philadelphia, Pennsylvania 19103
Phone: (215) 569-5500
Fax: (215) 569-5555

_Counsel for Defendants William Weinstein, Weinstein, Pinson & Riley P.S., and Cerastes LLC_

"Cerastes, LLC" among others).