# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, by Attorney General KATHLEEN G. KANE, | : : : : | CIVIL ACTION |
| *Plaintiff,* | : : : | NO. 14-cv-07139-JCJ |
| v. | : : : | |
| THINK FINANCE, INC., et al., | : : | |
| *Defendants.* | : : | |

**DEFENDANTS THINK FINANCE, INC., TC LOAN SERVICE, LLC,
TAILWIND MARKETING, LLC, TC DECISION SCIENCES, LLC,
AND FINANCIAL U, LLC'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULES 12(B)(7) AND 19
<u>FOR FAILURE TO JOIN INDISPENSABLE PARTIES</u>**

Ira Neil Richards (PA I.D. No. 50879)
Stephen A. Fogdall (PA I.D. No. 87444)
Arleigh P. Helfer III (PA I.D. No. 84427)
Shannon L.C. Ammon (PA I.D. No. 318939)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market St., Suite 3600
Philadelphia, PA 19103
(215) 751-2503
Email: irichards@schnader.com

James R. McGuire (*Pro hac vice*)
Angela E. Kleine (*Pro hac vice*)
Elizabeth Balassone (*Pro hac vice*)
Lauren Wroblewski (*Pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000
Email: jmcguire@mofo.com

Walter W. Cohen (PA I.D. 12097)
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
200 Locust Street, Suite 400
Harrisburg, PA 17101-1508
(717) 234-9730
Email: walter.cohen@obermayer.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION .................................................................................................................. 1

RELEVANT BACKGROUND ............................................................................................... 2

    A.    The Tribes' Wholly Owned Lending Enterprises............................................... 2

    B.    Procedural History ............................................................................................ 4

LEGAL STANDARD............................................................................................................. 6

ARGUMENT ........................................................................................................................ 8

I.    THE TRIBES AND TRIBAL LENDING ENTERPRISES ARE NECESSARY
    PARTIES. ..................................................................................................................... 8

    A.    The Court Cannot Accord Complete Relief Among Existing Parties. ................. 8

    B.    The Tribes and Tribal Lending Enterprises Claim Interests Relating to
        the Subject of This Action That May Be Impaired By Disposing of This
        Action in Their Absence. ................................................................................. 10

        1.    The Tribal Lending Enterprises Claim an Interest in the
                Attorney General's Contractual Challenge. ........................................... 11

        2.    The Tribes and Tribal Lending Enterprises Claim an Economic
                Interest in the Litigation. ....................................................................... 12

    C.    The Tribes and Tribal Lending Enterprises Claim a Sovereign Interest
        in the Litigation............................................................................................... 13

II.    BECAUSE NEITHER THE TRIBES NOR THE TRIBAL LENDING
    ENTERPRISES CAN BE JOINED, THE ACTION SHOULD BE
    DISMISSED. ............................................................................................................... 14

    A.    The Tribes and Tribal Lending Enterprises Are Immune from Suit.................... 14

    B.    Sovereign Immunity of the Tribes and Tribal Lending Enterprises Is
        Sufficiently Compelling Under Rule 19(b)....................................................... 17

    C.    The Tribes and Tribal Lending Enterprises Are Indispensable Parties
        Under the Rule 19(b) Factors........................................................................... 18

        1.    Absence of the Tribes and Tribal Lending Enterprises Would
                Prejudice Their Legally Protectable Interests in the Loan
                Agreements. ......................................................................................... 18

        2.    Prejudice to the Tribes and Tribal Lending Enterprises Cannot
                Be Avoided or Lessened. ....................................................................... 20

3.     Absence of the Tribes and Tribal Lending Enterprises Would Render Any Judgment Inadequate Given the Relief Requested By the Attorney General. ......................................................................... 21

4.     Unavailability of This Remedy for the Attorney General Does Not Outweigh the Unavoidable Prejudice to the Tribes and Tribal Lending Enterprises. .................................................................. 22

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Allen v. Gold Country Casino,
464 F.3d 1044 (9th Cir. 2006) .............................................................16

Altman v. Liberty Helicopters, Inc.,
No. 09-4437, 2010 WL 147922 (E.D. Pa. Jan. 13, 2010).......................18

Angst v. Royal Maccabees Life Ins. Co.,
77 F.3d 701 (3d Cir. 1996).....................................................................8

Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort,
629 F.3d 1173 (10th Cir. 2010) .............................................................16

Bynon v. Mansfield,
No. 15-00206, 2015 WL 2447159 (E.D. Pa. May 21, 2015)...........15, 16

Cal. v. Cabazon Band of Mission Indians,
480 U.S. 202 (1987)...............................................................................14

Caribbean Telecomm. Ltd. v. Guyana Tel. & Tel. Co.,
594 F. Supp. 2d 522 (D.N.J. 2009) .......................................................19

Center for Biological Diversity v. Pizarchik,
858 F. Supp. 2d 1221 (D. Colo. 2012).............................................10, 13

Colo. v. Cash Advance,
No. 05-CV-143, 2012 WL 3113527 (D. Colo. Feb. 18, 2012)...............15

Confederated Tribes of Chehalis Indian Reservation v. Lujan,
928 F.2d 1496 (9th Cir. 1991) ...................................................9, 14, 22

Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc.,
744 F. Supp. 450 (S.D.N.Y. 1990) .......................................................18

Fluent v. Salamanca Indian Lease Auth.,
928 F.2d 542 (2d Cir. 1991).............................................................12, 17

Hagen v. Sisseton-Wahpeton Cmty. College,
205 F.3d 1040 (8th Cir. 2000) .............................................................16

Hardy v. IGT, Inc.,
No. 2:10-CV-901-WKW, 2011 WL 3583745 (M.D. Ala. Aug. 15, 2011)...........................19

*John Hancock Prop. & Cas. Co. v. Hanover Ins. Co.*,
    859 F. Supp. 165 (E.D. Pa. 1994) ......................................................................20

*Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*,
    201 F.R.D. 337 (D. Del. 2001) ..........................................................................7

*Kescoli v. Babbitt*,
    101 F.3d 1304 (9th Cir. 1996) .....................................................................12, 21

*Keweenaw Bay Indians Cmty. v. Mich.*,
    11 F.3d 1341 (6th Cir. 1993) ............................................................................10

*Kickapoo Tribe of Indians v. Babbitt*,
    43 F.3d 1491 (D.C. Cir. 1995) .......................................................................8, 17

*Kiowa Tribe v. Mfg. Techs., Inc.*,
    523 U.S. 751 (1998) ..........................................................................................15

*Makah Indian Tribe v. Verity*,
    910 F.2d 555 (9th Cir. 1990) ............................................................................23

*McClendon v. United States*,
    885 F.2d 627 (9th Cir. 1989) ............................................................................12

*Michigan v. Bay Mills Indian Community*,
    134 S. Ct. 2024 (2014)................................................................................14, 15

*N. Arapaho Tribe v. Harnsberger*,
    697 F.3d 1272 (10th Cir. 2012) ........................................................................22

*People v. Miami Nation Enters.*,
    166 Cal. Rptr. 3d 800 (Cal. Ct. App. 2014) ......................................................15

*Rashid v. Kite*,
    957 F. Supp. 70 (E.D. Pa. 1997) ................................................................ *passim*

*Seneca-Cayuga Tribe of Okla. v. Okla. ex rel. Thompson*,
    874 F.2d 709 (10th Cir. 1989) ..........................................................................13

*Shenandoah v. U.S. Dep't of Interior*,
    No. 96-CV-258(RSP/GJD), 1997 WL 214947 (N.D.N.Y. Apr. 14, 1997) ............21

*St. Pierre v. Norton*,
    498 F. Supp. 2d 214 (D.D.C. 2007).......................................................14, 17, 21

*U.S. ex rel. Hill v. Coulter*,
    No. 98-CV-111 (FJS)(GLS), 1998 WL 460239 (N.D.N.Y. July 31, 1998) ..........12, 14, 18, 20

iv

*U.S. ex rel. Hill v. Health*,
  No. 98-CV-87RSP, 1998 WL 696285 (N.D.N.Y. Sept. 29, 1998)..........................14

*U.S. ex rel. Hall v. Tribal Dev. Corp.*,
  100 F.3d 476 (7th Cir. 1996) .........................................................21, 23, 24

*Village of Hotvela Traditional Elders v. Indian Health Servs.*,
  1 F. Supp. 2d 1022 (D. Ariz. 1997), *aff'd*, 141 F.3d 1182 (9th Cir. 1998)..................9, 12, 21

**STATUTES & REGULATIONS**

18 Pa. C.S.A.
  § 911(b) ........................................................................................6

7 P.S.
  § 6211 .........................................................................................22
  § 6212 .........................................................................................22

41 P.S.
  § 201 .........................................................................................5, 6
  § 506 .........................................................................................22

71 P.S.
  § 733-506 .................................................................................22, 24

73 P.S.
  § 201-1 ........................................................................................6
  § 2270.1 .......................................................................................6

12 U.S.C. § 5552(a) ...............................................................................6

Indian Entities Recognized and Eligible to Receive Services,
  80 Fed. Reg. 1942 (Jan. 14, 2015) .................................................................24

**RULES**

Fed. R. Civ. P.
  Rule 12(b)(6) ....................................................................................4
  Rule 17 ......................................................................................4, 22
  Rule 19 ....................................................................................*passim*

# INTRODUCTION

The Pennsylvania Attorney General challenges a variety of aspects of loans made to Pennsylvania citizens. The First Amended Complaint ("FAC") alleges that all of the defendants conspired with three Indian Tribes to make loans to Pennsylvania citizens and that these "illegal and abusive loans . . . flout Pennsylvania and federal law." (FAC ¶ 2.) The Attorney General explicitly concedes that the challenged loans were issued pursuant to written contracts between Pennsylvania consumers, on the one hand, and Great Plains, Plain Green, or MobiLoans— lending enterprises wholly owned and operated by the sovereign governments of federally recognized Indian tribes—on the other. (*Id.* Exs. F-H.) These entities are owned and operated by the Otoe-Missouria Tribe of Indians, the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, and the Tunica Biloxi Tribe of Louisiana, respectively (collectively, the "Tribes"). (*Id.* ¶ 46.)

The Attorney General has not named the Tribes or the arm-of-the-tribe lending entities as defendants to this action. She plainly knows their identities. And, she has not thus far been shy about dragging parties into this case—she has, through two different complaints, named a total of fourteen different defendants. Yet the Attorney General has made it clear that not even the FAC's generic "Doe" allegations should be read to include any tribal entity. (*Id.* ¶ 21 (limiting John Does to "other non-tribal persons or entities").)

The Attorney General's strategy is obvious. She has not named these entities because they are immune from suit. Because that thwarts her, and her outside special counsel's, desire to destroy the lawful businesses of and attendant vital economic development benefits for these disadvantaged tribes, she has elected instead to pursue a variety of entities that provide the tribal lending businesses with perfectly lawful services.

This is exactly the situation that the indispensable party doctrine is designed to address. The Tribes and their lending enterprises are necessary and indispensable parties without whom this litigation cannot fairly proceed. The Tribes are sovereigns who are engaged in a lawful business and who have chartered arm-of-the-tribe lending businesses, passed detailed financial

1

services laws and regulations, and established tribal governmental regulatory structures to oversee these businesses and police the consensual contractual relationships between borrowers and tribal businesses. Those tribal lending arms are the actual parties to the written contracts of which the Attorney General complains. These entities legitimately claim interests relating to the subject of this litigation that would be prejudiced in their absence.

Indeed, this Court explicitly recognized the centrality of tribal interests in this case when it declined to remand the Attorney General's case to state court, explaining that the suit calls for "sensitive judgments regarding the interaction of state, federal, and tribal law[.]" For the reasons that follow, the Attorney General's suit should be dismissed for failure to join the parties who will be the most affected by the exercise of those judgments.

## RELEVANT BACKGROUND

### A. The Tribes' Wholly Owned Lending Enterprises

Great Plains Lending, LLC ("Great Plains") is a wholly owned instrumentality of the Otoe-Missouria Tribe of Indians and was established pursuant to tribal law. (Declaration of Chairman John Shotton ("Shotton Decl.") ¶¶ 3, Ex. B at 1.) The Otoe-Missouria Constitution vests the Tribal Council with lawmaking authority, including the authority to create new business enterprises for the Tribe. (*Id*. ¶ 7, Ex. A.) Among other mechanisms, these new businesses are incorporated by the Tribal Council pursuant to the Otoe-Missouria Tribe of Indians Limited Liability Company Act (*id*. ¶ 7, Ex. A) and therefore are considered instrumentalities and arms of the Tribe, and their officers are to be considered officers of the Tribe. (*Id*. ¶ 8.)

Great Plains was established pursuant to Tribal law for the express purpose of growing the Tribe's economy and to aid in addressing issues of public health, safety, and welfare. (*Id*. ¶¶ 9, 11, Ex. B at 1.) All profits from Great Plains inure directly to the Tribal government, and revenues are used to fund a wide array of government programs for the benefit of the tribal membership, including but not limited to education, child care services, and health services. (*Id*. ¶ 18.) The Tribe also has full control over the business operations of Great Plains. (*Id*. Ex. D at

2

3-5.)  For instance, the entity's officers are appointed by the Tribal Council, and may be removed by the Tribal Council at any time, with or without cause.  (*Id*. at 4.)  Great Plains is also comprehensively regulated under tribal law.  (*Id*. ¶¶ 12-15.)  It operates pursuant to a license granted by the Otoe-Missouria Consumer Finance Services Regulatory Commission ("Commission").  (*Id*. ¶ 14.)  The Commission is an independent tribal regulatory agency charged with enforcing the Tribe's consumer lending law, called the Otoe-Missouria Consumer Finance Services Regulatory Commission Ordinance ("Ordinance").  (*Id*. ¶ 12, Ex. C.)  In carrying out this responsibility, the Commission oversees the lending activities of Great Plains and monitors Great Plains' business activities for compliance with the Ordinance as well as federal consumer protection laws.  (*Id*. ¶ 13, Ex. C.)

Plain Green, LLC ("Plain Green") is wholly owned and operated by the federally recognized Chippewa Cree Tribe.  (Declaration of Ted Whitford ("Whitford Decl.") ¶ 4.)  Plain Green is chartered as a Tribal limited liability company, incorporated pursuant to the Chippewa Cree Tribe Limited Liability Company Act.  (*Id*. ¶ 4, Exs. A-B.)  Plain Green was created as an economic arm of the Tribe and subject to the laws of the Tribe.  (*Id*. ¶ 5, Ex. A.)  The Tribe has explicitly vested Plain Green with all of the "privileges and immunities" of the Tribe itself, including its immunity from suit.  (*Id*. ¶ 5, Ex. A § 4.2.)  The Tribe appointed the initial directors of Plain Green when it created Plain Green, and the Tribe continues to appoint directors when their terms expire and vacancies exist.  (*Id*. ¶ 5, Ex. A § 7.)

Since Plain Green was created in 2011, revenue from the enterprise has been used to fund Tribal educational and social services, as well as general government expenses.  (*Id*. ¶ 6, Ex. A § 3.1(a) (explaining purpose of entity is to "serve the social, economic, educational and health needs of the Tribe").)  Plain Green is also comprehensively regulated under tribal law.  (*Id*. ¶ 7.)  To regulate its tribal lending activities, the Tribe has enacted a Tribal Consumer Regulatory Code, which provides for supervision and oversight of the activities of the tribal lending businesses, including Plain Green.  (*Id*. ¶ 7, Ex. C.)

MobiLoans, LLC ("MobiLoans") is wholly owned and operated by the Tunica-Biloxi Tribe of Louisiana.  (Declaration of Marshall Pierite ("Pierite Decl.") ¶ 5.)  MobiLoans is "organized and chartered under the laws and the inherent sovereign authority of the Tribe as a limited liability company."  (*Id.* Ex. A arts. I, XI.)  The Constitution of the Tribe authorizes and empowers the Tribal Council with the authority to create new business enterprises for the Tribe.  (*See id.*)  The Tribe has explicitly vested MobiLoans with all of the "privileges and immunities" of the Tribe itself, including its immunity from suit.  (*Id.* art. X.)

MobiLoans' revenue stream exists for the benefit of the Tunica-Biloxi Tribe: its "primary purpose" is to "engage in lending and related activities that will generate additional revenues for the Tribe."  (*Id.* ¶ 7; Ex. B § 2.1.)  Since MobiLoans was created in 2011, revenue from the enterprise has been used to fund Tribal educational and social services, as well as general government expenses.  (*Id.* ¶ 7.)  For example, MobiLoans revenue has been used to fund Teach for America positions in the parish that benefit the tribe and community as a whole.  (*Id.*)  MobiLoans is also regulated by, and integrated with, the Tribe through its Economic Development Corporation ("EDC").  (*Id.* ¶ 8.)  All members of the Board of Managers must be enrolled members of the Tribe, and the Tribe has the power to appoint and remove MobiLoans officials.  (*Id.* ¶ 8; Ex. B §§ 3.2, 3.3.)  MobiLoans must obtain the Tunica-Biloxi Tribal Council's approval to adopt a budget or business plan, appoint an executive director, sell or transfer any asset, waive its immunity, commit or burden any tribal resource, amend its Charter or Operating Agreement, or participate in any business.  (*Id.* ¶ 8; Ex. B §§ 3.4, 3.5.)

B.    **Procedural History**

On November 13, 2014, Attorney General Kathleen Kane ("Attorney General"), alleging that she can assert the Commonwealth's enforcement authority,[1] filed an action against several defendants, including Think Finance, Inc., TC Loan Service, LLC, and Financial U, LLC, in the

---

[1] Defendants Think Finance, Inc., TC Loan Service, LLC, Tailwind Marketing, LLC, TC Decision Sciences, LLC, and Financial U, LLC (collectively, the "Think Defendants") are concurrently filing separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and Federal Rule of Civil Procedure 17 for the Attorney General's want of authority under Pennsylvania law to maintain this action.

Court of Common Pleas of Philadelphia County, First Judicial District of Pennsylvania, Case No. 141101359. (ECF No. 1-1.) The complaint challenged the provision of services by various entities to three Indian tribes who offered loans and cash advances over the Internet. (*Id.*) Put simply, the Attorney General disrespectfully accuses the tribal entities referenced in the FAC of being a sham, and acting as a front for the named Defendants, despite an undeniably authentic constitutional form of government and centuries of history that entitle the tribes and their tribal lending enterprises to respect as true sovereigns and original Americans. At the core of the complaint were the Attorney General's allegations that the interest charged on these loans made to Pennsylvania consumers was usurious and in violation of section 201 of Pennsylvania's Loan Interest and Protection Law, 41 P.S. § 201. (*See, e.g.*, *id.* ¶¶ 1, 31-32, 44, 48.)

On December 17, 2014, Defendants Think Finance, Inc., TC Loan Service, LLC, and Financial U, LLC filed a notice of removal to the United States District Court for the Eastern District of Pennsylvania, asserting that the action presented federal questions. (ECF No. 1.) On March 11, 2015, the Attorney General filed a motion to remand the case to state court. (ECF No. 42.) On May 28, 2015, the Court denied the Attorney General's motion, finding that the complaint raises a substantial federal question. (ECF No. 53 at 1 n.1.) In relevant part, the Court concluded that "the federal question of whether the tribes' assertions of jurisdiction over the loans and borrowers are valid is necessarily raised by the Commonwealth's complaint." (*Id.* at 2 n.1.) The Court also explained that "when a state attempts to apply state law to interactions between Indians and non-[I]ndians, the Supreme Court has called for a 'particularized inquiry into the nature of the state, federal, and tribal interests at stake[;] an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law.'" (*Id.* at 3 n.1 (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 144-45 (1980)).) Accordingly, the Court found this was a substantial federal question that involved "sensitive judgments regarding the interaction of state, federal, and tribal law[.]" (*Id.*)

On July 6, 2015, the Attorney General filed her FAC against some of the defendants in the state action, as well as some additional defendants, including Think Finance, Inc., TC Loan

Service, LLC, Tailwind Marketing, LLC, TC Decision Sciences, LLC, and Financial U, LLC ("Defendants").  (FAC ¶ 2.)  The FAC contends that Defendants and others, "as an alternative to making the loans in their own name," operated a scheme as "service providers" to the three Indian Tribes.  (*Id.*)  Specifically, the FAC alleges that Defendants "established business relationships with at least three separate Native American tribes"—the Otoe-Missouria Tribe of Indians and its lending entity Great Plains; the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation and its lending entity Plain Green; and the Tunica-Biloxi Tribe of Louisiana and its lending entity MobiLoans.  (*Id.* ¶ 46.)  Under this alleged scheme, "loans are made in the name of a lender affiliated with one of these tribes" and the Defendants provide "infrastructure" by servicing the loans.  (*Id.* ¶ 47; *see also id.* ¶ 43 ("Native American tribe to originate loans in the name of the tribe"); *id.* ¶ 58 ("Attached as Exhibit F is a redacted loan agreement between a Pennsylvania consumer and Plain Green"); *id.* ¶ 60 ("Attached as Exhibit G is a redacted loan agreement between a Pennsylvania consumer and Great Plains Lending"); *id.* ¶ 74 ("Usurious loans and/or 'cash advances' made to Pennsylvania consumers in the name of Plain Green, Great Plains Lending or MobiLoans").)

The Attorney General's FAC alleges causes of action against Defendants Think Finance, Inc., TC Loan Service, LLC, Tailwind Marketing, LLC, TC Decision Sciences, LLC, and Financial U, LLC for violations of the Corrupt Organizations Act, 18 Pa. C.S.A. §§ 911(b)(1), 911(b)(3), and 911(b)(4); violations of the Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.1 and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 *et seq.*; and violations of the Dodd-Frank Act, 12 U.S.C. § 5552(a).  (*Id.* ¶¶ 91-153.)

## LEGAL STANDARD

Whether a party is "indispensable," that is, "'whether a particular lawsuit must be dismissed in the absence of that [party], can only be determined in the context of the particular litigation.'"  *Rashid v. Kite*, 957 F. Supp. 70, 72 (E.D. Pa. 1997) (Joyner, J.) (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968)).  A court must address

6

this issue on a case-by-case basis by "'(1) appraising [the indispensable party's] interest, and then (2) considering the equitable principles described in Rule 19.'" *Id.* at 72-73 (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1011 (3d Cir. 1987)). "When making a Rule 19 determination, the Court may consider evidence outside the pleadings." *Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 340 (D. Del. 2001).

The determination of whether a party is indispensable under Rule 19 is a two-step process. First, the court asks whether the absent party is "'to be joined if feasible' under Rule 19(a)—a 'necessary party' under 'the more traditional terminology.'" *Rashid*, 957 F. Supp. at 73 (quoting *Johnson & Johnson v. Coopervision Inc.*, 720 F. Supp. 1116, 1121 (D. Del. 1989)). Rule 19(a) states that a party is "necessary" if:

> (A) in that person's absence, the court ***cannot accord complete relief*** among existing parties; or
>
> (B) that person ***claims an interest*** relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a) (emphasis added).

Second, upon conclusion that the party is "necessary," the court then determines under Rule 19(b) whether "in equity and good conscience the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). "'To help courts navigate the path of equity and good conscience,'" *Rashid*, 957 F. Supp. at 73 (quoting *U.S. ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996)), Rule 19(b) lists four factors to consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and

> (4) whether the plaintiff would have an adequate remedy if the
> action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b)(1)-(4). Rule 19 "does not accord a particular weight" to any of these

factors. *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 706 (3d Cir. 1996). Accordingly,

courts "engage in 'fact-specific, flexible analysis' of the relative interests of those already

parties, the absent party, the courts and the public" in making the determination. *Rashid*, 957 F.

Supp. at 73 (quoting *Johnson & Johnson*, 720 F. Supp. at 1122). Typically, a court has

"substantial discretion" as it engages in this balancing of such interests. *Id.* (citing *Janney*

*Montgomery Scott v. Shepard Niles*, 11 F.3d 399, 403 (3d Cir. 1993)). But where a necessary

party cannot be joined because it possesses sovereign immunity from suit, courts have held that

"there is very little room for balancing of other factors" because "immunity may be viewed as

one of those interests 'compelling by themselves.'" *Kickapoo Tribe of Indians v. Babbitt*,

43 F.3d 1491, 1496 (D.C. Cir. 1995) (internal citations and quotations omitted).

## ARGUMENT

## I. THE TRIBES AND TRIBAL LENDING ENTERPRISES ARE NECESSARY PARTIES.

### A. The Court Cannot Accord Complete Relief Among Existing Parties.

Under Rule 19(a)(1)(A), a party is "necessary" if its absence deprives the Court of the

ability to afford complete relief among the existing parties. This provision "stresses the

desirability of joining those persons in whose absence the court would be obliged to grant partial

or 'hollow' rather than complete relief to the parties before the court." Fed. R. Civ. P. 19(a)

advisory committee's note. This Court cannot grant complete relief in the absence of the Tribes

and tribal lending enterprises because it would be necessary to involve them in the provision of

such relief, but they would not be bound by the judgment.

The FAC, at its core, challenges the terms of written loan agreements between tribal

lending enterprises and Pennsylvania residents. It contends that those agreements violate both

Pennsylvania and federal law. The Attorney General seeks, among other things, the following

relief:

- A declaration that the activity in the complaint, including the "illegal and abusive loans" between Pennsylvania citizens and tribal lending enterprises, violates Pennsylvania and federal law;

- An injunction against the named defendants providing the tribal lending enterprises with further assistance;

- Restitution and disgorgement;

- The invalidation of the debts arising from the loan contracts;

- Corrective credit reporting by which the named defendants will instruct credit bureaus to erase from their records any indicia that any Pennsylvania consumer has ever entered an agreement to borrow money from the tribal lending enterprises; and

- Rescission or reformation of the loan contracts at issue.

(FAC ¶¶ 2, 152; Prayer for Relief.) The relief the Attorney General seeks plainly renders the Tribes and tribal lending enterprises necessary parties under Rule 19(a)(1)(A).

Courts have held that plaintiffs may not be afforded complete relief where tribal entities with sovereign immunity are absent from the action because those entities would not be bound by a court judgment. *See, e.g.*, *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991) ("Judgment against the federal officials would not be binding on the Quinault Nation, which could continue to assert sovereign powers and management responsibilities over the reservation."); *Village of Hotvela Traditional Elders v. Indian Health Servs.*, 1 F. Supp. 2d 1022, 1026 (D. Ariz. 1997) ("First, if the Plaintiffs obtained injunctive relief against only the Federal Defendants, complete relief would not be accorded because the Hopi Tribe would remain free to continue construction with other funds until the waste treatment facility reached completion."), *aff'd*, 141 F.3d 1182 (9th Cir. 1998). Here, the relief requested by the Attorney General—including restitution and disgorgement—necessarily implicates the tribal lending enterprises as contracting parties to the loans, and by extension, the respective Tribes themselves. (*E.g.*, Shotton Decl. ¶ 3; Pierite Decl. ¶ 5; Whitford Decl. ¶ 4.)

But like the Quinault Nation and Hopi Tribe, the absent Tribes and tribal lending enterprises are entitled to sovereign immunity (*see* discussion *infra* Part II.A) and would not be bound by a judgment in this action.  Accordingly, complete relief cannot be accorded in their absence.

**B.      The Tribes and Tribal Lending Enterprises Claim Interests Relating to the Subject of This Action That May Be Impaired By Disposing of This Action in Their Absence.**

The Tribes and tribal lending enterprises are also necessary parties under Rule 19(a)(1)(B)(i) because they claim interests related to the subject matter of this litigation that could well be impaired if the litigation is disposed of in their absence:  the tribal lending enterprises have an interest as the contracting parties to the loans, and accordingly both the Tribes and their lending entities have interests in a lawsuit challenging these loans.

Under the plain language of Rule 19, the movant needs to demonstrate only that the absent person *claims* an interest.  *See Keweenaw Bay Indians Cmty. v. Mich.*, 11 F.3d 1341, 1347 (6th Cir. 1993) ("the finding that a party is necessary . . . is predicated only on that party having a *claim* to an interest . . . Just adjudication of claims requires that courts protect a party's right to be heard and to participate in adjudication of a claimed interest, even if the dispute is ultimately resolved to the detriment of the party."); *Center for Biological Diversity v. Pizarchik*, 858 F. Supp. 2d 1221, 1225 (D. Colo. 2012) (explaining that Rule 19 "only requires the movant to show that the absent party *claims an interest* relating to the subject of the action" rather than having to prove it possesses an interest) (citation omitted).

Similarly, as this Court has explained, it is sufficient that a judgment against the absent party "*may* as a practical matter impair or impede" its ability to protect such interests.  *Rashid*, 957 F. Supp. at 73-74 (finding party was necessary under Rule 19(a) because it is "clearly possible" that a judgment would affect "any interest that he holds" with respect to the agreement between plaintiff and corporation to secure a loan) (citation omitted).  The Tribes and the tribal lending enterprises claim contractual, economic, and sovereign interests in the subject of this litigation that may be impaired or impeded in their absence.

### 1. The Tribal Lending Enterprises Claim an Interest in the Attorney General's Contractual Challenge.

The consumers at issue in this case entered into a consensual contract with an arm-of-the-tribe lending entity, pursuant to tribal law. The FAC concedes that the loans at issue are "made in the name of a lender affiliated with one of these tribes[.]" (FAC ¶ 47.) The Attorney General attaches lengthy exemplar contracts between Pennsylvania consumers and each of the tribally owned and operated lending enterprises. (*Id.* ¶ 43 ("Native American tribe to originate loans in the name of the tribe"); *id.* ¶ 58 ("Attached as Exhibit F is a redacted loan agreement between a Pennsylvania consumer and Plain Green"); *id.* ¶ 60 ("Attached as Exhibit G is a redacted loan agreement between a Pennsylvania consumer and Great Plains Lending"); *id.* ¶ 74 ("Usurious loans and/or 'cash advances' made to Pennsylvania consumers in the name of Plain Green, Great Plains Lending or MobiLoans").)

Throughout the FAC, the Attorney General challenges the validity of these loans, describing them as "illegal" and "usurious" under federal and Pennsylvania law. (*E.g.*, *id.* ¶ 2 ("illegal and abusive loans that flout Pennsylvania and federal law"); *id.* ¶ 3 ("illegal and abusive loans"); *id.* ¶ 19 ("illegal usurious loans made to Pennsylvania residents").) Each count in the FAC turns, at least in part, on this alleged charging of illegal interest. For example, the Attorney General's causes of action under the Corrupt Organizations Act allege that the Think Finance Defendants "participated as a principal in the racketeering activity described above in that they aided, abetted, counseled, commanded, induced or procured the usurious and illegal lending described above." (*Id.* ¶ 96; *see also id.* ¶ 105 ("the usury scheme described above"); *id.* ¶ 112 ("lending activity that they know is illegal in Pennsylvania").) The remaining causes of action include similar allegations. (*Id.* ¶ 126 ("loan amounts that are illegal in Pennsylvania"); *id.* ¶ 128 ("offer to Pennsylvania consumers illegal usurious loans and credit lines"); *id.* ¶ 129 ("the loans and credit lines are illegal in Pennsylvania"); *id.* ¶ 150d ("extending credit in violation of an explicit state law prohibition against any unlicensed lending to consumers in excess of six percent interest").)

When a contract is the center of a dispute, it is axiomatic that contracting parties are "necessary" under Rule 19(a)(1)(B)(i). *E.g.*, *Rashid*, 957 F. Supp. at 73-74 (finding contracting party necessary because it is "clearly possible" that judgment would affect any interests that he holds with respect to the agreement). This principle has been repeatedly applied in actions involving contracts with tribal entities. *E.g.*, *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 547 (2d Cir. 1991) (concluding that Seneca Nation was a necessary party because, "[a]s a party to an Agreement negotiated for over two decades, the Nation's interest in the validity of the lease agreement is significant"); *McClendon v. United States*, 885 F.2d 627, 633 (9th Cir. 1989) (finding Colorado River Indian Tribal Council was a necessary party to an action seeking to enforce a lease agreement signed by the tribe); *U.S. ex rel. Hill v. Coulter*, No. 98-CV-111 (FJS)(GLS), 1998 WL 460239, at *1 (N.D.N.Y. July 31, 1998) (finding Onondaga Nation was a necessary party because such a determination "would undoubtedly affect the rights of the Onondaga Nation" and would "impede the Onondaga Nation's ability to contract" with named defendant). Here, the tribal lending enterprises are necessary because adjudication of the Attorney General's claims and requested relief would directly affect their contractual interests.

### 2. The Tribes and Tribal Lending Enterprises Claim an Economic Interest in the Litigation.

The Tribes and tribal lending enterprises are also necessary parties under Rule 19(a)(1)(B)(i) because they claim significant economic interests in this action. The economic benefits to a tribal entity under an agreement are sufficient "interests" for the entity to be deemed "necessary" under Rule 19(a). *E.g.*, *Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir. 1996) (finding Navajo Nation and Hopi Tribe were necessary parties for an action seeking to invalidate a settlement, as settlement reflected the tribes' economic interests); *Village of Hotvela Traditional Elders*, 1 F. Supp. 2d at 1026 (finding tribe was a necessary party to suit challenging water and sewer facilities because the construction project bore on "the interest of the Tribe in providing for the general tribal welfare through receipt or generation of funds and the expenditure of funds for public purposes").

sf-3556954

In *Center for Biological Diversity*, the court found that the Navajo Nation had presented "substantial evidence supporting its claimed economic interests" in a lawsuit challenging defendants' grant of permit for operation of a coal mine on Navajo tribal land. 858 F. Supp. 2d at 1225. The Navajo Nation offered a declaration suggesting that cessation of mine operations could result in the loss of roughly 17% of the Nation's gross revenue from internal sources the next year. *Id.* It also pointed out that the mine was one of the Nation's largest single employers. *Id.* Here, these tribal lending businesses have similarly created a significant number of jobs for Tribal members on Tribal land. (Shotton Decl. ¶ 17; *see also* Pierite Decl. ¶ 4.) In this way, the Attorney General's action would devastate not only the tribal lending enterprises and their employees, but also the Tribes whose governments rely almost exclusively on the proceeds generated from their lending business operations to fund a wide variety of governmental programs for the benefit of their tribal citizens including, but not limited to, education, health care, child protective, family violence, employment training, and other social services. (Shotton Decl. ¶¶ 11, 16-20; Pierite Decl. ¶ 7; Whitford Decl. ¶ 3.) Disposing of this action in the absence of the Tribes and tribal lending enterprises will, as a practical matter, impair or impede their ability to protect these interests.

### C. The Tribes and Tribal Lending Enterprises Claim a Sovereign Interest in the Litigation.

The Tribes and tribal lending enterprises also claim sovereign interests in this litigation, further demonstrating their status as necessary parties under Rule 19(a)(1)(B)(i). As sovereign nations, federally recognized tribes have the right to self-govern, and that right is subject to diminishment only at the hands of Congress. Tribes thus have a compelling interest in protecting tribal sovereignty against infringement by state governments, including such infringement made through an attack on their ability to establish and operate businesses pursuant to tribal law for the betterment of their communities. *See, e.g.*, *Seneca-Cayuga Tribe of Okla. v. Okla. ex rel. Thompson*, 874 F.2d 709, 716 (10th Cir. 1989) (finding that, for the purposes of a preliminary injunction, the Seneca-Cayuga Tribe had an interest in operating bingo games and that the

State's attempt to enjoin such games threatened "significant interference with their self-government").  Whether a particular tribal business is entitled to operate free of state regulation has long been held to be an issue of tribal sovereignty.  *E.g.*, *Cal. v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216 (1987) (explaining that the legality of a tribal gaming operation free of state regulation must be analyzed "in light of traditional notions of Indian sovereignty and the congressional goal of Indian self-government, including its 'overriding goal' of encouraging tribal self-sufficiency and economic development").

Here, the Attorney General has attacked the tribal lending industry by challenging the legality of these loans.  (FAC ¶¶ 2, 3, 19, 96.)  In this way, she has made tribal sovereignty a central issue in this litigation, and the Tribes and tribal lending enterprises claim a compelling interest in how that issue is ultimately resolved.

## II.  BECAUSE NEITHER THE TRIBES NOR THE TRIBAL LENDING ENTERPRISES CAN BE JOINED, THE ACTION SHOULD BE DISMISSED.

### A.  The Tribes and Tribal Lending Enterprises Are Immune from Suit.

It is well settled that Indian tribes possess sovereign immunity from suit.  The Supreme Court reaffirmed this principle in its recent decision *Michigan v. Bay Mills Indian Community*, noting that it has "time and again treated the 'doctrine of tribal immunity [as] settled law'" which "applies no less to suits brought by States (including in their own courts) than to those by individuals."  134 S. Ct. 2024, 2030-31 (2014) (internal citation omitted); *see also, e.g.*, *Confederated Tribes of Chehalis Indian Reservation*, 928 F.2d at 1499 (holding suit was properly dismissed for failure to name the Quinault Nation as a party because Indian tribes "are sovereign entities and are therefore immune from nonconsensual actions in state or federal court"); *Coulter*, 1998 WL 460239, at *1-2 ("Under established law, Indian nations of the United States are considered to be sovereign entities."); *U.S. ex rel. Hill v. Health*, No. 98-CV-87RSP, 1998 WL 696285, at *1 (N.D.N.Y. Sept. 29, 1998) (finding Onondaga Indian Nation is an indispensable party and "enjoys sovereign immunity from suit"); *St. Pierre v. Norton*, 498 F. Supp. 2d 214, 220 (D.D.C. 2007) ("Because the Tribe has not consented to suit in this case, it is

protected by sovereign immunity and cannot be joined.").  Indeed, the Attorney General's approach in this case smacks of the misguided attempts by the State of Michigan in *Bay Mills Indian Community*, overreaching the boundaries of state authority in mounting an ill-fated assault on long-settled privileges of sovereign Indian tribes.  *See* 134 S. Ct. at 2040-44 (Sotomayor, J., concurring).  Here, the Attorney General perhaps goes a step further by arguing that the tribal presence in this case is not even *real*, rather than arguing that the Tribes' inherent power should be curbed going forward.  The Attorney General's gamesmanship must fail.  Absent clear congressional abrogation or express tribal waiver of immunity—neither of which has been alleged and neither of which has occurred in this case—tribal sovereign immunity demands that any suit against an Indian Tribe be dismissed.  *Bay Mills Indian Cmty.*, 134 S. Ct. at 2031-32.

Tribal sovereign immunity applies not only to the Tribes themselves, but also to the lenders as arm-of-the-tribe enterprises.  *See, e.g.*, *Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 757-60 (1998) ("Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation."); *Bay Mills Indian Cmty.*, 134 S. Ct. at 2031 (same); *Bynon v. Mansfield*, No. 15-00206, 2015 WL 2447159, at *1 (E.D. Pa. May 21, 2015) ("This immunity extends to a tribe's subordinate economic entities and to tribal officials who are acting in their official capacity and within the scope of their authority."); *see also People v. Miami Nation Enters.*, 166 Cal. Rptr. 3d 800, 814-17 (Cal. Ct. App. 2014) (affirming conclusion that tribal sovereign immunity protected lending businesses as arms of the Miami Tribe of Oklahoma and Santee Sioux Nation); *Colo. v. Cash Advance*, No. 05-CV-143, 2012 WL 3113527 (D. Colo. Feb. 18, 2012) (finding tribal lending entities were arms of the Miami Tribe of Oklahoma and Santee Sioux Nation).  In *Bynon*, a court in this district recently dismissed a similarly ill-fated attempt to circumvent tribal sovereign privileges and immunities when a private plaintiff tried to litigate a claim against an employee of a tribal lending entity, instead of the entity or the Lac Vieu Desert Bank of Lake Superior Chippewa Indians.  2015 WL 2447159, at *1.  The court acknowledged that tribal immunity

applies to such lending entities as the "tribe's subordinate economic entities[.]" *Id.* The court dismissed the suit, concluding that the plaintiff had brought the suit "in an attempt to circumvent LVD [Tribe] and Sovereign's [lending company] tribal immunity." *Id.* at *2.

In determining whether an entity is a tribal arm or enterprise that is entitled to sovereign immunity, the key question is whether the entity's "activities are properly deemed to be those of the tribe." *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006) (finding record and law establish sufficiently that casino functions as an arm of the Tyme Maidu Tribe). In answering this question, federal courts consider factors such as: (1) whether the entity is owned and operated by the tribe; (2) the entity's purpose and the financial relationship between the entity and the tribe; (3) whether the entity was chartered by the tribe or under tribal law; and (4) whether the tribe intended for the entity to share in tribal sovereign immunity. *See id.*; *see also Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1191-92 (10th Cir. 2010) (finding creation, purpose, structure, and ownership of tribal entities weighed in favor of conclusion they were entitled to sovereign immunity); *Hagen v. Sisseton-Wahpeton Cmty. College*, 205 F.3d 1040, 1043 (8th Cir. 2000) (finding community college chartered by Sisseton-Wahpeton Sioux Tribe was entitled to sovereign immunity).

Consideration of these four factors makes clear that the tribal lending enterprises here are arms of their respective Tribes. First, each tribal lending enterprise is wholly owned and controlled by the Tribe. (Shotton Decl. ¶ 3; Pierite Decl. ¶ 5; Whitford Decl. ¶ 4.) Second, the explicit purpose of each entity is to engage in lending and related activity to generate revenues for the Tribe, and the revenues that it generates are used to fund the Tribe's governmental activities and services. (Shotton Decl. ¶¶ 11, 16-20; Pierite Decl. ¶ 7; Whitford Decl. ¶ 3.) Third, each tribal lending enterprise is organized and chartered under tribal law and pursuant to the Tribe's inherent sovereign authority. (Shotton Decl. ¶¶ 7, 11; Pierite Decl. ¶¶ 5-6; Whitford Decl. ¶¶ 4-5.) Fourth, the Tribes explicitly vested these entities with all of the Tribes' "privileges and immunities," including but not limited to immunity from suit. ( Shotton Decl. Ex. A § 913; Pierite Decl. ¶ 6, Ex. B ¶¶ 6.1, 6.3; Whitford Decl. ¶ 5, Ex. A §4.2.)

Moreover, the FAC concedes that these businesses are lending enterprises of the Tribes. (*E.g.*, FAC ¶¶ 46-47.) The FAC cites to and attaches loan agreements with each tribal lending business. The agreements from Plain Green and Great Plains state that the entities are "authorized by the laws of the [Tribe]" and the agreements are "governed by the law of the [Tribe]." (*Id.* Ex. F at 1, 5; *id.* Ex. G at 1, 4.) The agreement from MobiLoans states: "Mobiloans, LLC is an entity owned and operated by the Tunica-Biloxi Tribe of Louisiana. The credit issued to you and information provided under this Agreement by Mobiloans is done solely under the provision of laws of the Tunica-Biloxi Tribe of Louisiana and applicable federal law." (*Id.* Ex. H at 2.) Because the Tribes and their respective tribal lending enterprises are entitled to sovereign immunity, they cannot be joined and this action must be dismissed.

### B. Sovereign Immunity of the Tribes and Tribal Lending Enterprises Is Sufficiently Compelling Under Rule 19(b).

The fact that the Tribes and tribal lending enterprises are necessary parties and immune from suit should end the inquiry. Where a necessary party under Rule 19(a) is immune from suit, courts have observed that "'there is very little room for balancing of other factors' set out in Rule 19(b) . . . because immunity may be viewed as one of those interests 'compelling by themselves.'" *Kickapoo Tribe of Indians*, 43 F.3d at 1496 (citation omitted); *Fluent*, 928 F.2d at 548 (affirming dismissal of causes of action that should not be adjudicated in the absence of Seneca Nation of Indians). The special emphasis on and deference to immunity in the Rule 19 analysis arises from the sovereign powers inherent to Indian tribes. *See Fluent*, 928 F.2d at 548 (explaining that immunity is entitled to such weight, as it is not merely "'some procedural defect'" that precludes litigation) (citation omitted).

An Indian tribe has a "federally recognized interest in maintaining and protecting its sovereignty[.]" *E.g.*, *St. Pierre*, 498 F. Supp. 2d at 220 (citation omitted). In this context, a "more circumscribed inquiry" is appropriate when assessing whether a lawsuit can proceed "in equity and good conscience" when the absent party is entitled to sovereign immunity. *Kickapoo*, 43 F.3d at 1497. The Tribes and tribal lending enterprises are indispensable because they have a

compelling interest in protecting the sovereignty of the Otoe-Missouria Tribe of Indians, the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, and the Tunica-Biloxi Tribe of Louisiana. Accordingly, this sovereign immunity interest alone should determine that the Tribes and tribal lending enterprises are indispensable under Rule 19(b).

### C. The Tribes and Tribal Lending Enterprises Are Indispensable Parties Under the Rule 19(b) Factors.

#### 1. Absence of the Tribes and Tribal Lending Enterprises Would Prejudice Their Legally Protectable Interests in the Loan Agreements.

Even upon consideration of the four Rule 19(b) factors to determine whether the court can proceed or the action should be dismissed "in equity and good conscience," the tribal lending enterprises are indispensable because the FAC challenges the legality and validity of loan contracts to which they are parties, and the Tribes wholly own and operate these lending entities that provide revenue for the benefit of the Tribes.

"'[A] contracting party is the paradigm of an indispensable party.'" *Altman v. Liberty Helicopters, Inc.*, No. 09-4437, 2010 WL 147922, at *1 (E.D. Pa. Jan. 13, 2010) (quoting *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991)); *see also, e.g.*, *Coulter*, 1998 WL 460239, at *1-2 (N.D.N.Y. July 31, 1998) ("prejudice is almost presumed given that a contracting party is often the prime example of illustrating a prejudiced party").[2] In *Rashid*, this Court acknowledged the importance of the absent party who "executed the Agreement sued on in this case," particularly where there is "no direct contractual relationship" between the named parties. 957 F. Supp. at 74. There, the absent party was deemed indispensable under Rule 19(b) because at least "in part, it was 'a crucial link in the chain that forms the factual and legal basis for [the plaintiff's] cause of action.'" *Id.* (quoting *F&M Distributors v. Am. Hardware Supply*, 129 F.R.D. 494, 499 (W.D. Pa. 1990)); *see also*

---

[2] This principle applies not only to traditional breach of contract claims, but also to other claims that challenge a contract's validity. *See, e.g.*, *Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc.*, 744 F. Supp. 450, 459-60 (S.D.N.Y. 1990) (granting motion to dismiss for failure to join indispensable party to action for tortious interference with joint venture agreement).

sf-3556954

*Caribbean Telecomm. Ltd. v. Guyana Tel. & Tel. Co.*, 594 F. Supp. 2d 522, 532 (D.N.J. 2009) (dismissing action where absent party was contracting party to the agreement "that serves as the basis for all of Plaintiff's claims"). Here, the Attorney General concedes that the tribal lending entities are the contracting parties to the loan agreements, *not* the defendants named in her suit. (FAC ¶ 47 ("the loans are made in the name of a lender affiliated with one of these tribes"); *see also id.* ¶¶ 46, 58 , 60, 74.)

These tribal lending enterprises are wholly owned and operated by the Tribes. (Shotton Decl. ¶ 3; Pierite Decl. ¶ 5; Whitford Decl. ¶ 4.) That relationship is explicit in the loan agreements attached to the FAC. (FAC Ex. H at 1 ("Mobiloans, LLC is an entity owned and operated by the Tunica-Biloxi Tribe of Louisiana"); *see also id.* Ex. F at 1 ("Plain Green, LLC, a lender authorized by the laws of the Chippewa Cree"); *id.* Ex. G at 1 ("Great Plains Lending, LLC, a lender authorized by the laws of the Otoe-Missouria Tribe").) The documents establishing each tribal lending entity make clear that the lending revenues shall be used for the benefit of the Tribes. ( Shotton Decl. Ex. Dart. V; Pierite Decl. ¶ 7; Whitford Decl. Ex. C at 10-1-102(d), 10-1-103(b).)

The FAC repeatedly puts the legality and validity of these loan agreements at issue by describing them as "illegal" and "usurious." (*E.g.*, *id.* ¶¶ 2, 3, 19, 96, 112, 126, 128, 129.)[3] Courts have made clear that such challenges to the validity of tribal contracts render tribes and tribal entities indispensable under Rule 19(b). *See Hardy v. IGT, Inc.*, No. 2:10-CV-901-WKW, 2011 WL 3583745, at *5 (M.D. Ala. Aug. 15, 2011) (concluding Poarch Band of Creek Indians

---

[3] The Attorney General also challenges the validity of specific provisions of the loan agreements: she alleges that the Defendants unlawfully "offer to Pennsylvania consumers illegal usurious loans and credit lines represented falsely as being purely the product of the lawful exercise of tribal sovereignty and being subject to no state law." (FAC ¶ 128.) These allegations refer to the language in each of the loan agreements that the loan "is subject solely to the exclusive laws and jurisdiction" of the Tribe and that by executing the agreement, borrowers "consent to the sole subject matter and personal jurisdiction of the [Tribal Court], and further agree that no other state or federal law or regulation shall apply to this Agreement, its enforcement or interpretation." (*E.g.*, *id.* Ex. F at 1.) As this Court explained in its Order denying the Attorney General's motion to remand, this is one of the "primary contentions underlying the Commonwealth's consumer protection claim" and "[t]he determination of that claim will therefore turn on whether the Commonwealth's legal position regarding the validity of the jurisdictional language is correct." (ECF No. 53 at 2 n.1.)

was indispensable party because "[w]ere this action to proceed in the absence of the Tribe, the validity and viability of the Tribe's contracts with the Manufacturers would be impeded, [and] the enforceability of gambling contracts between gamblers and the Tribe would be called into question"); *Coulter*, 1998 WL 460239, at *2 (holding that the Onondaga Tribe would be "substantially prejudiced" if it were not a party to a lawsuit seeking a declaration that its contract violated federal law).  Here, by challenging the legality and validity of these loans, the FAC has rendered the Tribes and tribal lending enterprises indispensable.

### 2. Prejudice to the Tribes and Tribal Lending Enterprises Cannot Be Avoided or Lessened.

The Tribes and tribal lending enterprises are indispensable upon consideration of the second Rule 19(b) factor—prejudice cannot be lessened or avoided—because the relief the Attorney General seeks would cause unavoidable prejudice to the Tribes and tribal lending enterprises.  This Court has concluded that parties are indispensable to actions where the requested relief raises even the possibility of unavoidable prejudice.  *Rashid*, 957 F. Supp. at 74 ("[I]t is unclear whether we could award adequate relief without prejudicing [absent party's] interests."); *see also John Hancock Prop. & Cas. Co. v. Hanover Ins. Co.*, 859 F. Supp. 165, 169 (E.D. Pa. 1994) (Joyner, J.) (explaining that an absent party is indispensable where any recovery would come from the party itself, not the "servicing agent" named in the action).

As explained above, the Attorney General's requests for relief include (1) rescission or reformation of the loan contracts at issue; (2) invalidation of the debts arising from the loan contracts; (3) a declaration that the activity in the complaint, including the "illegal and abusive loans" between Pennsylvania citizens and tribal lending enterprises violates Pennsylvania and federal law; and (4) an injunction against the named defendants providing the tribal lending enterprises with further assistance.  (*See* discussion *supra* Part I.A (citing FAC at ¶¶ 2, 152; Prayer for Relief).)

There is no doubt that such relief would seriously impact the Tribes and their lending entities, jeopardizing a primary source of economic growth and funding for important social

services to Tribal members. (Shotton Decl. ¶¶ 11, 16-20; Pierite Decl. ¶ 7; Whitford Decl. ¶ 3.) Such interference with the businesses of tribal entities makes them indispensable parties to this action under Rule 19(b). *See, e.g.*, *Kescoli*, 101 F.3d at 1310 (finding Navajo Nation and Hopi Tribe were indispensable parties because action "could affect the amount of royalties received by the [Tribes] and employment opportunities for their members"). Because the relief sought by the Attorney General would prejudice the interests of the Tribes and tribal lending enterprises, they are indispensable.

> **3.** **Absence of the Tribes and Tribal Lending Enterprises Would Render Any Judgment Inadequate Given the Relief Requested By the Attorney General.**

The third factor of Rule 19(b) asks whether a judgment rendered in the party's absence would be adequate. This factor is viewed from the perspective of the parties present in this action. *Tribal Dev. Corp.*, 100 F.3d at 480 (affirming dismissal and finding Menominee Tribe indispensable party). In *Rashid*, the Court explained that the absent party was indispensable under this factor because "[a]ny ability to shape the appropriate relief" for the plaintiff "might be restricted" by his agreement with the absent party or by applicable legal rules. 957 F. Supp. at 74-75. Here, the Tribes and tribal lending enterprises are likewise "indispensable" parties to this action under the third factor of Rule 19(b) for two reasons.

First, as explained above, the Tribes and tribal lending enterprises would not be bound by such judgment as absent sovereign entities. (*See* discussion *supra* Part I.A; *see also St. Pierre*, 498 F. Supp. 2d at 221 (explaining order from the court would not be binding on Shakopee Mdewakanton Sioux Community); *Village of Hotvela Traditional Elders*, 1 F. Supp. 2d at 1030 (explaining Hopi Tribe could continue its activities "[w]hatever relief this Court may order of the Federal Defendants").) Second, the relief requested in the FAC implicates tribal lending enterprises (as the contracting parties to the loans) and Tribes (that wholly own and operate these lending entities) by asking this Court to, among other things, rescind the loan contracts and invalidate the debts. *E.g.*, *Shenandoah v. U.S. Dep't of Interior*, No. 96-CV-258(RSP/GJD), 1997 WL 214947, at *7 (N.D.N.Y. Apr. 14, 1997) (finding Oneida Nation was indispensable

because "plaintiffs seek to reverse agreements and investments to which the Oneida Nation has committed"). Judgment would be inadequate without the Tribes and tribal lending enterprises.

### 4. Unavailability of This Remedy for the Attorney General Does Not Outweigh the Unavoidable Prejudice to the Tribes and Tribal Lending Enterprises.

This fourth Rule 19(b) factor—whether plaintiff will have an adequate remedy if the action is dismissed for nonjoinder—should give the Court little pause, for several reasons.

First, the Attorney General does not have the power to bring this case at all, so its dismissal would present her with no hardship. As explained in the Think Defendants' Rule 17 motion, the Pennsylvania General Assembly granted the Department of Banking ("Department") express authority to administer and enforce consumer lending laws, including the Loan Interest and Protection Law and the Consumer Discount Company Act. *See* 41 P.S. § 506(b)-(c); 7 P.S. §§ 6211, 6212. In 2012, the General Assembly passed a Banking Law Modernization Package ("BLMP"), which included a new section of the Banking and Securities Code implementing the Dodd-Frank Act. *See* 71 P.S. § 733-506. The section specifies that only the Department can authorize a suit "with respect to," among others, licensees and foreign financial institutions, and under the provisions available under the Dodd-Frank Act. *See id*. § 733-506(B). Moreover, subsection 733-506(F) specifies that only the Department has the power to bring civil claims incidental to financial activities of, among other categories, licensees and foreign financial institutions. 71 P.S. § 733-506(F). The Attorney General has not lost availability of a remedy to which she was otherwise entitled.

Second, even if this suit could be properly maintained by the Attorney General, the proposition that its dismissal would make the requested relief unavailable is strongly outweighed by the other Rule 19 factors. "[T]he 'lack of an alternative forum does not automatically prevent dismissal of a suit.' Courts have recognized that a plaintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign immunity." *Confederated Tribes of Chehalis Indian Reservation*, 928 F.2d at 1500 (internal citation omitted); *see also N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1283 (10th Cir. 2012) (finding that the lack of an adequate

remedy "does not preclude dismissal, particularly when viewed in light of the Tribe's sovereign immunity and the first three Rule 19(b) factors") (internal quotation marks and citation omitted); *Tribal Dev. Corp.*, 100 F.3d at 480 (same); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990) ("Sovereign immunity may leave a party with no forum for its claims.").  This action directly implicates the tribal sovereignty of the Tribes and their tribal lending enterprises, particularly their ability to conduct business, as adjudication of the Attorney General's claims requires a determination that the loans offered to Pennsylvania consumers are illegal and usurious.

Finally, these interests of the Tribes and tribal lending enterprises clearly outweigh the Attorney General's interest in this litigation because, by enacting the BLMP, the Commonwealth has already addressed the contention at the core of her claims: that "[t]hese loans and cash advances charge well in excess of the usury ceiling established by Pennsylvania law[.]"  (FAC ¶ 1.)

As explained in the Think Defendants' Rule 12(b)(6) motion, the General Assembly enacted the BLMP in 2012 to "update, simplify and modernize the banking laws of the Commonwealth and to reduce regulatory burden at the state level where possible, given the increased regulatory demands of the federal Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010."[4]  The BLMP amended the Banking Code so that the "interest rate and fee restrictions regarding lending activity by Pennsylvania state-chartered banks and savings banks have been removed[.]"  (*Id.* at 2.)  It also established that foreign financial institutions and their subsidiaries would be treated the same as state-chartered banks.  (*Id.* at 4 ("[F]inancial institutions and their subsidiaries doing business in Pennsylvania . . . are subject to state and local laws and regulations only to the same extent as such laws and regulations apply to

---

[4] Letter from Glenn E. Moyer, Secretary, Commonwealth of Pennsylvania Department of Banking and Securities, To All Pennsylvania State-Chartered Banks, Bank and Trust Companies, Savings Banks, Trust Companies and Savings Associations (Nov. 14, 2012), http://www.dobs.pa.gov/Documents/Secretary%20Letters/Banks/11.14.12%20Secretary_s%20Letter%20Re_%20Banking%20Law%20Modernization%20Package.pdf.

Pennsylvania state-chartered institutions.").) Thus, the BLMP eliminated any state interest-rate cap for foreign financial institutions and their subsidiaries.

The Tribes and tribal lending enterprises are "[f]oreign financial institutions" and subsidiaries, as defined by the Banking Code.[5] A "foreign financial institution" is "[a] person licensed, registered or regulated by a ***state*** other than the Commonwealth or a foreign country that provides financial services to or for the benefit of persons in this Commonwealth." 71 P.S. § 733-506(K) (emphasis added). A "[s]tate" is defined to include "any federally recognized Indian tribe[.]" *Id.* Each of the three Tribes identified in the FAC is federally recognized, and has "licensed, registered, or regulat[es]" its tribal lending businesses. *See id.*; Indian Entities Recognized and Eligible to Receive Services, 80 Fed. Reg. 1942, 1943-46 (Jan. 14, 2015); Shotton Decl. ¶¶ 2, 12-15; Pierite Decl. ¶¶ 3, 8; Whitford Decl. ¶¶ 2, 7. Accordingly, any interest of the Attorney General in maintaining this action is contradicted by the Commonwealth's statutory provision defining the Tribes and their lending entities as foreign financial institutions and subsidiaries that are not subject to the "usury ceiling established by Pennsylvania law[.]" (FAC ¶ 1.)

This fourth factor "should not weigh heavily" where a plaintiff's "interest in the contracts that form the basis for this suit--an interest that is, at best, 'tenuous and indirect[.]'" *Tribal Dev. Corp.*, 100 F.3d at 481 (concluding that "a fair application of Rule 19 to the facts of this case compels dismissal for failure to join an indispensable party, i.e., the Tribe"). Here, the Attorney General is not a party to the loan contracts she puts at issue in the FAC. The relief she requests jeopardizes these agreements between Pennsylvania consumers and the tribal lending entities. It puts these tribal businesses in serious jeopardy by asking this Court to rescind the loan contracts and invalidate the debts, declare that such loans violate Pennsylvania and federal law, and enjoin the named defendants from providing services to the tribal lending enterprises in order for them

---

[5] Defendants note that this statutory provision merely reaffirms the existing limitations on state regulation of tribal entities. For the reasons explained in Part II.A above, Defendants maintain that the state regulatory schemes do not apply to the Tribes and their tribal lending enterprises in the first instance.

to operate their businesses. Such relief would not simply impair the economic interests of these tribal entities, but would compromise their ability to do business altogether, cutting off resources that are crucial to the survival of the tribal governments and governmental programs which directly benefit the Tribes' citizens. The consequences of this action in the absence of the Tribes and tribal lending enterprises necessitate its dismissal.

## CONCLUSION

For the reasons stated above, Defendants Think Finance, Inc., TC Loan Service, LLC, Tailwind Marketing, LLC, TC Decision Sciences, LLC, and Financial U, LLC respectfully request that this Court grant their motion and dismiss the action.


Dated: August 28, 2015

      *s/Ira Neil Richards*
Ira Neil Richards (PA I.D. No. 50879)
Stephen A. Fogdall (PA I.D. No. 87444)
Arleigh P. Helfer III (PA I.D. No. 84427)
Shannon L.C. Ammon (PA I.D. No. 318939)
Schnader Harrison Segal & Lewis LLP
1600 Market St., Suite 3600
Philadelphia, PA 19103
(215)751-2503
irichards@schnader.com
sfogdall@schnader.com
ahelfer@schnader.com
sammon@schnader.com

James R. McGuire (*Pro hac vice*)
Angela E. Kleine (*Pro hac vice*)
Elizabeth Balassone (*Pro hac vice*)
Lauren Wroblewski (*Pro hac vice*)
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000
jmcguire@mofo.com
akleine@mofo.com
ebalassone@mofo.com
lwroblewski@mofo.com

Walter W. Cohen (PA I.D. 12097)
Obermayer Rebmann Maxwell & Hippel LLP
200 Locust Street, Suite 400
Harrisburg, PA 17101-1508
(717) 234-9730
walter.cohen@obermayer.com

Attorneys for Defendants
THINK FINANCE, INC.,
TC LOAN SERVICE, LLC,
TAILWIND MARKETING, LLC,
TC DECISION SCIENCES, LLC, and
FINANCIAL U, LLC

sf-3556954