## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, by Attorney General KATHLEEN G. KANE, | : : : : | CIVIL ACTION |
| *Plaintiff,* | : : : | NO.  14-cv-07139-JCJ |
| v. | : : | |
| THINK FINANCE, INC., et al. | : : | |
| *Defendants.* | | |

## DECLARATION OF JOHN SHOTTON

1.      My name is John Shotton.  I am over eighteen (18) years old and am competent to make this declaration.  Everything stated herein is based on my personal knowledge.  I would be competent to testify as to these facts if called upon to do so in a court of law or administrative proceeding.

2.      I serve as the elected Chairman of the Otoe-Missouria Tribe of Indians (the "Tribe"), a federally recognized Indian tribe, and have served in this capacity since 2007.  The Tribe is a Red Rock, Oklahoma-based Native American Tribe with nearly 3,000 members.

3.      I also serve as the Secretary/Treasurer of Great Plains Lending, LLC ("Great Plains"), a business wholly owned and operated by the Tribe.

4.      On February 4, 1984, the Tribe adopted the Constitution of the Otoe-Missouria Tribe of Indians as the supreme law governing all affairs of the Tribe.

5.     Under Article IV, Section 1 of the Tribe's Constitution, the Tribal Council, of which I am Chairman, serves as the Tribe's governing body.

6.     The Tribal Council, as the Tribe's governing body, has the power to make all laws and ordinances for the benefit of the Tribe.

7.     The Tribal Council exercised its constitutional power and adopted the Otoe-Missouria Tribe of Indians Limited Liability Company Act (the "LLC Act") on May 4, 2011, which governs the formation of businesses within the Tribe's jurisdiction, including wholly owned and operated Tribal businesses.  (Exhibit A, LLC Act.)

8.     The LLC Act established that wholly owned corporate entities created under the Act would be instrumentalities and arms of the Tribe and that the officers of such instrumentalities and arms would be deemed officers of the Tribe.

9.     The LLC Act established that wholly owned corporate entities created under its authority would be established for the purpose of carrying out the authorities and responsibilities of the Tribe for economic development of the Tribe and advancement of its citizens.

10.     Under the LLC Act, the Tribal Council passed Resolution OMTC #54293, creating Great Plains Lending, LLC on May 4, 2011.  (Exhibit B, A Resolution Creating Great Plains Lending, LLC.)

11.     Pursuant to Tribal law, Great Plains was created to advance the Tribe's economic development and to aid in addressing issues of public health, safety, and welfare.

12.     The Tribal Council also exercised its sovereignty by developing, approving, and enacting the Otoe-Missouria Consumer Finance Services Regulatory Ordinance (the "Ordinance"), which governs all consumer finance business activity occurring within the Tribe's jurisdiction and implements the necessary regulation and oversight to ensure legal and lawful business operations. This Ordinance also established, pursuant to sovereign law-making and constitutional powers of the Tribal Council, the Otoe-Missouria Consumer Financial Services Regulatory Commission (the "Commission").  (Exhibit C, Otoe-Missouria Consumer Finance Services Regulatory Ordinance.)

13.     The Commission is a regulatory agency formed pursuant to tribal law and functions as a governmental arm and instrumentality of the Tribe, with its principal place of governmental business located in Red Rock, Oklahoma. The Commission is tasked with regulating all consumer finance business occurring within the Tribe's jurisdiction, including the activities of Great Plains.

14.     Great Plains is licensed and regulated by the Commission pursuant to the requirements of the Ordinance.  Its license is in good standing.  Pursuant to the Ordinance, Great Plains must be compliant with Tribal law to maintain its license.  Great Plains also voluntarily complies with all applicable federal consumer protection laws.

15.     The Commission has been active in assuring that Great Plains has complied with tribal law and voluntarily with federal laws.  (<u>Exhibit D</u>, Operating Agreement of Great Plains Lending, LLC.)

16.     Regulated tribal lending has been an invaluable vehicle for economic growth, tribal services, and tribal development. The impact of tribal lending on tribal growth and opportunity has been immeasurable, and its effects have proven critical for tribal advancement and financial assistance.

17.     The Tribe's online lending business accounts for a significant portion of the Tribe's nonfederal governmental budget and has created dozens of jobs on tribal land, including financial support staff, Head Start educators, and tribal housing personnel.

18.     Revenues from tribal lending have been used towards additional classrooms, books, and teachers for Head Start programs, as well as new after-school and summer programs for tribal youth. Revenues have also been used to support several tribal government programs that benefit the general membership, including child care services, employment training, health care and wellness coverage, child protection, and family violence protection.

19.     Outside of gaming, tribal lending has been the most significant economic development opportunity that has been available to the Tribe, in terms of both revenue and job creation.

20.     The Tribe's lending initiatives do not just support basic, fundamental needs for tribal operations and services. They extend the opportunity for the Tribe to move beyond the bottom line of economic footing.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28ᵗʰ day of August 2015.

John Shotton

28172330.1

# EXHIBIT A



# OTOE·MISSOURIA
## TRIBE OF INDIANS

8151 HIGHWAY 177
RED ROCK, OK 74651-0348

## RESOLUTION

"A Resolution to Adopt Limited Liability Company (llc) Codes for the Otoe-Missouria Tribe of Indians"

OMTC # 54292 FY- 2011

NOW, THEREFORE, BE IT RESOLVED BY THE TRIBAL COUNCIL OF THE OTOE-MISSOURIA TRIBE OF INDIANS, and

WHEREAS, the Otoe-Missouria Tribal Council, the Governing Body of the Otoe-Missouria Tribe of Oklahoma, in accordance with the Tribal Constitution, Article VIII-Powers, Section I. Tribal Council, duly convened to discuss, review and approve Tribal business, and

WHEREAS, the Otoe-Missouria Tribal Council has been vested with authority to enact Tribal law and adopt regulations to administer governmental functions of the Tribe, and

WHEREAS, the Otoe-Missouria Tribal Council has reviewed the Otoe-Missouria Limited Liability Code

THEREFORE, BE IT RESOLVED, the Otoe-Missouria Tribal Council hereby adopt and approve the attached Otoe-Missouria Limited Liability Code for the betterment of the Tribe.

## CERTIFICATION

We, the undersigned Chairman and Secretary of the Otoe-Missouria Tribal Council, do hereby certify, by signature, that the above and foregoing Resolution was approved and adopted on this 4th day of May, 2011, with a quorum present, and a vote of _6_ for, _0_ against, _0_ absent, and _1_ abstaining.

John R. Shotton
Chairman

(SEAL)

ATTEST: Barbara Childs-Walton
Barbara Childs-Walton
Secretary

# An Act

To provide regulations for organizing limited liability companies within the Otoe-Missouria Tribe of Indians.

*Be it enacted by the Tribal Council of the Otoe-Missouria Tribe of Indians:*

# Table of Contents

**PART 1. GENERAL PROVISIONS**     **4**

    *SECTION 101. SHORT TITLE*     *4*
    *SECTION 102. AUTHORITY AND PURPOSES*     *4*
    *SECTION 103. SCOPE*     *4*
    *SECTION 104. APPLICABLE LAW*     *5*
    *SECTION 105. DEFINITIONS*     *5*
    *SECTION 106. NAME*     *6*
    *SECTION 107. REGISTERED OFFICE AND REGISTERED AGENT*     *6*
    *SECTION 108. TRIBE AS MEMBER*     *7*
    *SECTION 109. NATURE OF BUSINESS*     *7*
    *SECTION 110. EXECUTION OF DOCUMENTS*     *9*
    *SECTION 111. FILING*     *9*
    *SECTION 112. CERTIFICATE OF STATUS*     *10*
    *SECTION 113. EXECUTION BY JUDICIAL ACT*     *10*
    *SECTION 114. INTERSTATE APPLICATION*     *10*

**PART 2. ARTICLES OF ORGANIZATION AND DEALING WITH LLC**     **10**

    *SECTION 201. ARTICLES OF ORGANIZATION*     *10*
    *SECTION 202. AGENCY POWER OF MEMBERS AND MANAGERS*     *11*
    *SECTION 203. ADMISSIONS OF MEMBERS AND MANAGERS*     *12*
    *SECTION 204. KNOWLEDGE OF OR NOTICE TO MEMBER OR MANAGER*     *12*
    *SECTION 205. LIABILITY OF MEMBERS TO THIRD PARTIES*     *12*
    *SECTION 206. PARTIES TO ACTION*     *13*
    *SECTION 207. AUTHORITY TO SUE*     *13*

**PART 3. MEMBERS AND MANAGERS**     **13**

    *SECTION 301. MANAGEMENT*     *13*
    *SECTION 302. DUTIES*     *14*
    *SECTION 303. LIMITATION OF LIABILITY AND INDEMNIFICATION*     *14*
    *SECTION 304. VOTING*     *15*
    *SECTION 305. RECORDS AND INFORMATION*     *16*
    *SECTION 306. ADMISSION OF MEMBERS*     *17*
    *SECTION 307. DISSOCIATION*     *17*

**PART 4. FINANCE**     **18**

*SECTION 401. CONTRIBUTIONS*   *18*
*SECTION 402. LIABILITY FOR CONTRIBUTION*   *18*
*SECTION 403. ALLOCATION OF PROFITS AND LOSSES*   *19*

**PART 5. NON-LIQUIDATING DISTRIBUTIONS**   **19**

*SECTION 501. INTERIM DISTRIBUTIONS*   *19*
*SECTION 502. ALLOCATION OF DISTRIBUTIONS*   *19*
*SECTION 503. DISTRIBUTION UPON PARTIAL REDEMPTION*   *19*
*SECTION 504. DISTRIBUTION UPON DISSOCIATION*   *19*
*SECTION 505. DISTRIBUTION IN KIND*   *19*
*SECTION 506. RIGHT TO DISTRIBUTION*   *20*
*SECTION 507. LIMITATIONS OF DISTRIBUTIONS*   *20*
*SECTION 508. LIABILITY FOR WRONGFUL DISTRIBUTION*   *20*

**PART 6. OWNERSHIP AND TRANSFER OF PROPERTY**   **21**

*SECTION 601. OWNERSHIP OF LLC PROPERTY*   *21*
*SECTION 602. TRANSFER OF PROPERTY*   *21*
*SECTION 603. NATURE OF INTEREST*   *21*
*SECTION 604. ASSIGNMENT OF LLC INTEREST*   *21*
*SECTION 605. RIGHTS OF JUDGMENT CREDITOR*   *22*
*SECTION 606. RIGHT OF ASSIGNEE TO BECOME A MEMBER*   *22*
*SECTION 607. POWERS OF LEGAL REPRESENTATIVE*   *22*

**PART 7. DISSOLUTION**   **23**

*SECTION 701. DISSOLUTION*   *23*
*SECTION 702. JUDICIAL DISSOLUTION*   *23*
*SECTION 703. WINDING UP*   *23*
*SECTION 704. DISTRIBUTION OF ASSETS*   *24*
*SECTION 705. ARTICLES OF DISSOLUTION*   *25*
*SECTION 706. KNOWN CLAIMS AGAINST DISSOLVED LLC*   *25*
*SECTION 707. UNKNOWN OR CONTINGENT CLAIMS*   *25*

**PART 8. MERGER**   **26**

*SECTION 801. MERGER*   *26*
*SECTION 802. APPROVAL OF MERGER*   *26*
*SECTION 803. PLAN OF MERGER*   *26*
*SECTION 804. ARTICLES OF MERGER*   *26*
*SECTION 805. EFFECTS OF MERGER*   *27*
*SECTION 806. RIGHT TO OBJECT*   *28*

**PART 9. LIMITED LIABILITY COMPANIES WHOLLY OWNED BY THE TRIBE**   **28**

SUBPART 1. GENERAL PROVISIONS FOR TRIBALLY-OWNED LLCS   28
*SECTION 911. LLCS DIRECTLY OWNED BY THE TRIBE*   *28*
*SECTION 912. TRIBAL SUBSIDIARY COMPANIES*   *28*
*SECTION 913. PRIVILEGES AND IMMUNITIES*   *28*

SECTION 914. OWNERSHIP ............................................................................... 29
SECTION 915. PROJECT COMPANIES WITH NON-TRIBAL OWNERS ........ 29
SECTION 916. PURPOSE OF LLC'S DIRECTLY AND INDIRECTLY OWNED BY TRIBE .......... 30

SUBPART 2. SPECIAL FORMATION REQUIREMENTS FOR LLC'S WHOLLY OWNED BY THE TRIBE ............................................. 30
SECTION 921. FORMATION ............................................................................. 30
SECTION 922. ADDITIONAL REQUIREMENTS FOR ARTICLES OF ORGANIZATION ........ 30

SUBPART 3. MANAGEMENT OF TRIBALLY-OWNED LLCS ........................ 31
SECTION 931. BOARD OF DIRECTORS AS MANAGER ............................... 31

SUBPART 4. DISTRIBUTIONS TO TRIBE AS MEMBER ............................... 31
SECTION 941. DISTRIBUTIONS OF INCOME TO TRIBE AS MEMBER ..... 31

SUBPART 5. ADDITIONAL REPORTS AND AUDITS .................................... 31
SECTION 951. AUDIT ....................................................................................... 31
SECTION 952. FINANCIAL, BUSINESS, AND BUDGET INFORMATION FOR THE TRIBE ..... 31

SUBPART 6. ACTIONS AGAINST LLCS WHOLLY OWNED BY THE TRIBE .... 32
SECTION 961. COURT ACTIONS AUTHORIZED ....................................... 32
SECTION 962. APPROVAL OF TRIBE REQUIRED ..................................... 33
SECTION 963. RELIEF AVAILABLE ............................................................ 33

PART 10. REGISTRATION OF FOREIGN LIABILITY COMPANIES ............... 33

PART 11. SEVERABILITY CLAUSE ................................................................... 33

# LIMITED LIABILITY COMPANIES

## PART 1. GENERAL PROVISIONS

### SECTION 101. SHORT TITLE

This act shall be known as the Otoe-Missouria Tribe of Indians Limited Liability Company Act (the "Act").

### SECTION 102. AUTHORITY AND PURPOSES

1.  This Act is enacted pursuant to the Otoe-Missouria Tribe of Indians inherent sovereign powers and as specifically authorized by the Constitution of the Otoe-Missouria Tribe of Indians.

2.  The Otoe-Missouria Tribe of Indians Tribal Council finds that the regulation of persons engaged in trade and business is necessary to safeguard and promote the peace, safety, morals, and general welfare of the Otoe-Missouria Tribe of Indians.

3.  The purposes of this Act are to provide for economic development for the Otoe-Missouria Tribe of Indians and its citizens by providing the legal framework for organizing business entities under Otoe-Missouria Tribe of Indians law in order to expand the private business sector, and to provide for the organization of arms of the tribe into entities to promote economic development and the general welfare of the Otoe-Missouria Tribe of Indians.

4.  This Act is enacted pursuant to the inherent sovereign tribal powers expressly outlined in the Constitution that recognizes the jurisdiction of the Otoe-Missouria Tribe of Indians to extend over all persons, subjects, property, and over all activities that occur within the territory of the Otoe-Missouria Tribe of Indians and over all Otoe-Missouria citizens, subjects, property, and activities outside such territory affecting the rights and laws of the Otoe-Missouria Tribe of Indians.

5.  By the adoption of this Act, except as provided herein, the Otoe-Missouria Tribe of Indians does not waive its sovereign immunity or consent to suit in any court, federal tribal or state, and neither the adoption of this Act, nor the incorporation of any limited liability company hereunder, shall be construed to be a waiver of the sovereign immunity of the Otoe-Missouria Tribe of Indians or a consent to suit against the Otoe-Missouria Tribe of Indians in any court.

### SECTION 103. SCOPE

This Act shall apply to all limited liability companies organized under Otoe-Missouria Tribe of Indians law or which elect to accept the provisions of this Act, including all LLCs wholly owned by the Otoe-Missouria Tribe of Indians, whether directly or as a wholly-owned subsidiary of another LLC or an Entity wholly owned by the Otoe-Missouria Tribe of Indians.

## SECTION 104. APPLICABLE LAW

The companies organized and created under this Act shall be subject to this Act and all other laws of the Otoe-Missouria Tribe of Indians.

## SECTION 105. DEFINITIONS

Terms used in this Act have the following meaning:

1. "Articles of Organization" means the articles of organization filed under Section 201 (and Section 922, if applicable) and those articles as amended or restated from time to time.

2. "Corporation" means any corporation for profit organized under the laws of the Tribe or a foreign corporation formed under the laws of any other jurisdiction.

3. "Court" means the Tribal Court as established by the Constitution of the Otoe-Missouria Tribe of Indians.

4. "Distribution" means a direct or indirect transfer by an LLC of money or other property to or for the benefit of its Members in respect of their interests.

5. "Domestic Limited Liability Company" means an LLC formed under this Act.

6. "Entity" means any general partnership, limited partnership, LLC, trust, estate, association, Corporation, the Tribe, or any other legal or commercial entity.

7. "Foreign" refers to any Entity organized under the laws of a jurisdiction other than the Tribe.

8. "LLC" means a limited liability company.

9. "LLC Interest" means a Member's rights in the LLC, including rights to distributions, profits and losses, and to participate in management of the LLC, as specified in this Act and the Operating Agreement (if any).

10. "Majority in Interest" means Member(s) that have contributed more than fifty percent (50%) of the value of all total capital contributions to the LLC, excluding any interest which is not to be counted as voting on a matter as described elsewhere in this Act.

11. "Manager" or "Managers" means the Person(s) designated to manage the LLC pursuant to the Articles of Organization or Operating Agreement.

12. "Member" means a Person who has been admitted to membership in an LLC and who has not dissociated from the LLC.

13. "Organizer(s)" means the Person(s) that signs and delivers the Articles of Organization for filing to the Secretary.

14. "Operating Agreement" means an agreement in writing among all of the Members as to the conduct of the business of an LLC and the relationships among its Members.

15. "Person" means any individual or Entity.

16. "Secretary" means the individual duly appointed or elected to serve in the administrative capacity with all the rights, duties, obligations, and authority as authorized by the Tribe.

17. "State" includes a state, territory, or possession of the United States and the District of Columbia.

18. "Tribal Council" means the legislative branch of the government of the Tribe as established under Constitution of the Tribe.

19. "Tribe" means the Otoe-Missouria Tribe of Indians, a federally recognized Indian tribe.


## SECTION 106. NAME

1. The name of an LLC as set forth in its Articles of Organization must contain the words "limited liability company" or end with the abbreviation "L.L.C." or "LLC". The words "limited" and "company" may be abbreviated as "ltd." and "co.", respectively. The name may not contain language stating or implying that the LLC is organized for any purpose other than that permitted under Section 109, below.

2. The name of a Domestic LLC shall be distinguishable from any other Domestic LLC or Tribal Corporation.


## SECTION 107. REGISTERED OFFICE AND REGISTERED AGENT

1. An LLC's registered agent is the LLC's agent for receiving service of process, notice, or demand required or permitted by law to be served on the LLC under the laws of the Tribe.

2. Each LLC shall continuously maintain a registered office and a registered agent. The registered office may, but need not, be the same as any of its places of business. The registered agent may be a designated office of the Tribe rather than a specified individual,

provided that the Tribe is a Member of the LLC in which the Tribal officer is the registered agent.

3.  An LLC may change its registered office or registered agent, or both, by filing a written notice of change containing the name of its registered agent and the street address of its registered office, as changed, with the Secretary and paying the requisite filing fee.

4.  The registered agent of an LLC may resign as registered agent by delivering to the Secretary, with a copy to each Member of the LLC, for filing a written statement of resignation and the appointment by the LLC of another registered agent.

## SECTION 108. TRIBE AS MEMBER

1.  The Tribe shall form or become a Member of an LLC formed under this Act only upon approval of such action by resolution of the Tribal Council.

2.  If the Tribe is a Member of any LLC formed under this Act, any action which the Tribe is required or permitted to take with respect to any vote, approval, consent, appointment, direction, or other matter shall be taken as specified in Section 931 of this Act or, as to actions related to the managers of a manager-managed LLC, as stated in the LLC's Articles of Organization approved by the Tribal Council and the Chairman.

3.  In no event shall any manager not a Member of an LLC in which the Tribe is a Member, bind the Tribe in any manner; provided that the Tribe's interest as a Member may be bound by Manager or Member actions as stated in this Act or the Operating Agreement of the LLC.

4.  Nothing contained in this Act shall be construed as creating any liability or waiving of sovereign immunity of the Tribe in any manner; provided that the assets of the LLC in which the Tribe holds an interest may be subject to liabilities and claims unless otherwise provided herein. In no event shall any action taken by the Tribe as Member concerning the exercise of any right or privilege or discharge of any duty with respect to an interest in an LLC be construed as a waiver of immunity or creation of a liability on the part of the Tribe separate and apart from its interest as a Member of the LLC.

5.  If the Tribe is the sole Member of an LLC formed under this Act, such LLC shall possess the Tribe's sovereign immunity from suit except to the extent otherwise provided in its Articles of Organization or Operating Agreement, or as expressly waived pursuant to Section 913.

6.  If the Tribe is the sole Member of an LLC formed under this Act, the additional provisions of Part 9 of this Act shall apply.

## SECTION 109. NATURE OF BUSINESS

An LLC may be organized under this Act for any lawful purpose. Unless otherwise provided in its Operating Agreement, an LLC organized and existing under this Act has the same powers as an

individual to do all things necessary and convenient to carry out its business, including, but not limited to, the following:

1. Sue and be sued, complain, and defend in its name; provided that if an LLC is wholly owned by the Tribe, or wholly owned by a Domestic LLC or Tribal Corporation, or other Entity which itself is wholly owned by the Tribe, it shall be entitled to and shall enjoy the Tribe's sovereign immunity from suit unless the Articles of Organization otherwise provide.

2. Purchase, take, receive, lease, or otherwise acquire and own, hold, improve, use, and otherwise deal in or with real or personal property, or any legal or equitable interest in real or personal property, wherever situated.

3. Sell, convey, mortgage, pledge, create a security interest in, lease, exchange, or otherwise dispose of all or any part of its property.

4. Lend money, property, and services to, and otherwise assist, its Members and Managers, if any.

5. Purchase, take, receive, subscribe for, or otherwise acquire and own, hold, vote, use, employ, sell, mortgage, lend, pledge, or otherwise dispose of and deal in and with shares or other interests in, or obligations of, any other enterprise or Entity.

6. Make contracts and guarantees; incur liabilities; borrow money; issue notes, bonds, and other obligations; and secure any of its obligations by mortgage or pledge of all or part of its property, franchises, and income.

7. Lend money, invest and reinvest its funds, and receive and hold real or personal property as security for repayment.

8. Conduct its business, locate offices, and exercise the powers granted by this Act.

9. Be a promoter, incorporator, partner, member, associate, or manager of any enterprise or Entity.

10. Elect or appoint Managers, agents, and employees, define their duties, and set their compensation.

11. Pay pensions and establish pension plans, pension trusts, profit-sharing plans, and benefit or incentive plans for any or all of its current or former Members, Managers, employees, and agents.

12. Make donations to and otherwise devote its resources for the public welfare or for charitable, scientific, educational, humanitarian, philanthropic, or religious purposes.

13. Indemnify a Member, Manager, employee, officer or agent, or any other Person.

14. Provide benefits or payments to Members, Managers, employees, and agents of the LLC, and to their estates, families, dependants, or beneficiaries in recognition of the past services of the Members, Managers, employees, and agents of the LLC.

15. Make payments or donations, or do any other act not prohibited by law, that furthers the business of the LLC.

16. Transact any lawful business that the Members or the Managers find to be appropriate to promote and further the business and affairs of the LLC.

## SECTION 110. EXECUTION OF DOCUMENTS

1. Except as otherwise provided in this Act, any document required or permitted by this Act to be delivered for filing to the Secretary shall be executed by any of the following:

   a. Any Manager, if management of the LLC is vested in a Manager or Managers, or by a Member, if management of the LLC is reserved to theM.

   b. All Organizer(s) of the LLC if the LLC has not been organized. The name and address of each Organizer shall be provided.

   c. The name of the drafter of the document.

2. The Person executing the document shall sign it and state beneath or opposite the signature the Person's name and capacity in which the Person signs.

3. The Person executing the document may do so as an attorney-in-fact. Except as provided in Section 305.1.b, powers of attorney relating to the executing of the document need not be shown to nor filed with the Secretary.

## SECTION 111. FILING

1. The office of the Secretary shall receive all filings required under this Act and maintain the records of such filings pursuant to this Act, including, but not limited to, Articles of Organization, amended or restated Articles of Organization, annual reports, names and addresses of registered offices and registered agents, and all other reports as required by this Act.

2. Upon receipt of a document for filing under this Act, the Secretary shall ensure it meets the requirements herein and then shall stamp or otherwise endorse the date and time of receipt of the original, the duplicate copy, and, upon request, any additional copy received.

3. If the Secretary refuses to file any requested document, the Secretary shall return it to the Person tendering such document for filing within five (5) business days after the date on

which such document is received by the Secretary for filing, together with a brief written explanation of the reason for refusal.

4. Any document accepted by the Secretary shall be effective at the time of receipt unless a delayed effective date and/or time not more than ninety (90) days after receipt by the Secretary is specified in the document.

5. The Secretary shall impose a reasonable filing fee for each document filed, initially not to exceed the sum of $100.00, and an annual renewal fee initially not to exceed the sum of $25.00.  The Secretary shall post a schedule of all fees or otherwise promptly communicate the amount of any fee upon request.

## SECTION 112. CERTIFICATE OF STATUS

Any individual may obtain from the Secretary, upon request, a certificate of status for either a Domestic LLC or a Foreign LLC.

## SECTION 113. EXECUTION BY JUDICIAL ACT

Any Person who is adversely affected by the failure or refusal of any Person to execute and file the Articles of Organization or any other document to be filed under this Act may petition the Court to direct the execution and filing of the Articles of Organization or such other document.

## SECTION 114. INTERSTATE APPLICATION

An LLC may conduct its business, carry on its operations, and have and exercise the powers granted by this Act, in any sovereign Native American nation, any State or in any Foreign jurisdiction.

# PART 2. ARTICLES OF ORGANIZATION AND DEALING WITH LLC

## SECTION 201. ARTICLES OF ORGANIZATION

1. One or more Persons may organize an LLC by signing and delivering Articles of Organization to the Secretary for filing. The Organizer(s) need not be Members of the LLC at the time of organization or at any time thereafter.

2. An LLC shall have one or more Members.

3. The Articles of Organization shall contain all of, and only, the following information:

   a. A statement that the LLC is organized under this Act.

   b. A name for the LLC that satisfies the provisions of this Act.

    c.  The street address of the registered office and the name of the registered agent at such registered office. In the case of an LLC wholly owned by the Tribe, such registered office and agent shall be located within the boundaries of the Otoe-Missouria Tribe of Indians Indian Country.

    d.  If management of the LLC is vested in one or more Managers or a Board of Directors, a statement to that effect.

    e.  Whether the LLC is wholly owned by the Tribe.

    f.  If wholly owned by the Tribe, whether the LLC is to enjoy the Tribe's sovereign immunity and the scope of any waiver of that immunity.

4.  The Secretary shall assign to each LCC formed by filing Articles of Organization a unique identification number.

5.  An LLC may amend or restate its Articles of Organization at any time by delivering an amendment or restatement, as applicable, with the requisite filing fee, for filing to the Secretary.

6.  Effect of Delivery or Filing.

    a.  An LLC is formed when the Articles of Organization become effective under Section 111.4.

    b.  The Secretary filing of the Articles of Organization is conclusive proof that the LLC is organized and formed under this Act.

## SECTION 202. AGENCY POWER OF MEMBERS AND MANAGERS

1.  Except as provided in subsection 2, below:

    a.  Each Member is an agent of the LLC, but not of the other Members or any of them, for the purpose of the business of the LLC.

    b.  The act of any Member, including the execution in the name of the LLC of any instrument for apparently carrying on in the ordinary course of business the business of the LLC, binds the LLC in the particular matter, unless the Person with whom such Member is dealing has knowledge that such Member has no authority to act for such matter.

    c.  If the Tribe is a Member, the Tribe's authority therefor shall be exercised pursuant to Section 931.

2.  If management of the LLC is vested in one or more Managers:

a. Each Manager is an agent of the LLC, but not of the other Members, for the purpose of its business. The act of any Manager, including the execution in the name of the LLC of any instrument for apparently carrying on the ordinary course of business of the LLC, binds the LLC, unless the manager has, in fact, no authority to act for the LLC in the particular matter, and the Person with whom such Manager is dealing has knowledge that such Manager has no authority to act for such matter.

## SECTION 203. ADMISSIONS OF MEMBERS AND MANAGERS

1. Except as provided in Section 203.2, an admission or representation made by any Member concerning the business of an LLC within the scope of the Member's actual authority may be used as evidence against the LLC in any legal proceeding.

2. If management of the LLC is vested in one or more Managers:

   a. An admission or representation made by a Manager concerning the business of an LLC within the scope of the Manager's authority may be used as evidence against the LLC in any legal proceeding.

   b. The admission or representation of any Member, acting solely in the Member's capacity as a Member, is not evidence against the LLC in any legal proceeding.

## SECTION 204. KNOWLEDGE OF OR NOTICE TO MEMBER OR MANAGER

1. Except as provided in Section 204.2), notice to any Member of any matter relating to the business of an LLC, and the knowledge of a Member acting in the particular matter, acquired while a Member or known by the Person at the time of becoming a Member, and the knowledge of any Member who reasonably could and should have communicated it to the acting Member, operates as notice to or knowledge of the LLC.

2. If management of the LLC is vested in one or more managers:

   a. Notice to any Manager of any matter relating to the business of the LLC, and the knowledge of the Manager acting in the particular matter acquired while a Manager or known by the Person at the time of becoming a Manager and the knowledge of any other Manager who reasonably could and should have communicated it to the acting Manager, operates as notice to or knowledge of the LLC.

   b. Notice to or knowledge of any Member while the Member is acting solely in the capacity of a Member is not notice to or knowledge of the LLC.

## SECTION 205. LIABILITY OF MEMBERS TO THIRD PARTIES

The debts, obligations, and liabilities of an LLC, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations, and liabilities of the LLC. Except as otherwise specifically provided for in this Act, a Member or Manager of an LLC is not personally liable for any debt, obligation, or liability of an LLC. Nothing in this Section 205 is intended to waive the LLC's sovereign immunity as provided in Sections 108.4 and 108.5.

## SECTION 206. PARTIES TO ACTION

A Member of an LLC is not a proper party to a proceeding by or against an LLC solely by reason of being a Member of such LLC, except if any of the following exist:

1. The object of the proceeding is to enforce a Member's right against or liability to the LLC.

2. The action is brought by a Member under Section 207.

## SECTION 207. AUTHORITY TO SUE

Unless otherwise provided in the Operating Agreement, an action on behalf of an LLC may be brought in the name of the LLC by:

1. One or more Members of the LLC, if authorized by a Majority in Interest, excluding the vote of any Member who has an interest in the outcome of the action that is adverse to the interest of the LLC.

2. One or more Managers of an LLC if the management of the LLC is vested in one or more Managers, or if the Managers are authorized to sue by a Majority in Interest.

# PART 3. MEMBERS AND MANAGERS

## SECTION 301. MANAGEMENT

1. Unless the Articles of Organization vest management in one or more Managers, management of the LLC shall be vested in the Members subject to any provision in the Operating Agreement or this Act restricting or enlarging the management rights and duties of any Member or group of Members.

2. If the Articles of Organization vest management in one or more Managers, management of the business or affairs of the LLC shall be invested in the Manager or Managers subject to any provisions in the Operating Agreement or this Act restricting or enlarging the management rights and duties of any Manager or group of Managers. Unless otherwise provided in Operating Agreement, the Manager or Managers:

a. Shall be designated, appointed, elected, removed, or replaced by a vote of a Majority in Interest.

b. Need not be Members of the LLC nor individuals.

c. Unless earlier removed or earlier resigned, shall hold office until a successor is elected and qualified.

## SECTION 302. DUTIES

Unless otherwise provided in the Operating Agreement:

1. No Member or Manager shall act or fail to act in a manner that constitutes any of the following:

   a. A willful failure to deal fairly with the LLC or its Members in connection with a matter in which the such Member or Manager has a material conflict of interest.

   b. A violation of criminal law, unless the Member or Manager had reasonable cause to believe that the conduct was lawful or no reasonable cause to believe that the conduct was unlawful.

   c. A transaction from which the Member or Manager derived an improper personal profit.

   d. Willful misconduct.

2. Every Member and Manager shall account to the LLC and hold as trustee for it any improper personal profit derived by such Member or Manager without the consent of a majority of the disinterested Members or Managers, or other Persons participating in the management of the LLC, from any of the following:

   a. A transaction connected with the organization, conduct, or winding up of the LLC.

   b. A use by a Member or Manager of the property of an LLC, including confidential or proprietary information or other matters entrusted to the person as a result of the such Person's status as Member or Manager.

   c. The Operating Agreement may impose duties on its Members and Managers that are in addition to, but not in abrogation of, those provided in subsection (1) above.

## SECTION 303. LIMITATION OF LIABILITY AND INDEMNIFICATION

1. In this Section, "expenses" means expenses of defending a lawsuit, including attorneys' fees, and any civil judgment or penalty, or settlement payment in lieu thereof, paid in connection with a lawsuit against a Member or Manager in such capacity.

2. An LLC shall indemnify or allow expenses to each Member and Manager for all reasonable expenses incurred with respect to any proceeding if such Member or Manager was a party to the proceeding in the capacity of a Member or Manager.

3. The Operating Agreement may alter or provide additional rights to indemnification or allowance of expenses to Members and Managers.

4. Notwithstanding subsections (2) and (3) above, an LLC may not indemnify a Member or Manager unless it is determined that such Member or Manager did not breach or fail to perform a duty to the LLC as provided in Section 302.

5. Unless otherwise provided in Operating Agreement:

   a. A Member or Manager shall be conclusively presumed not to have breached or failed to perform a duty to the LLC to the extent that the Member or Manager has been successful on the merits or otherwise in the defense of the proceeding.

   b. In situations not described in paragraph (a) above, the determination of whether a Member or Manager has breached or failed to perform a duty to the LLC shall be made by the vote of a Majority in Interest, excluding any Member who is a party to the same or related proceeding, unless all Members or Managers, as applicable, are parties.

## SECTION 304. VOTING

1. Unless otherwise provided in the Operating Agreement or this Section 304, and subject to subsection (2) below, an affirmative vote, approval, or consent as follows shall be required to decide any matter connected with the business of an LLC:

   a. If management of an LLC is reserved to the Members, an affirmative vote, approval, or consent by a Majority in Interest.

   b. If the management of an LLC is vested in one or more Managers or a Board of Directors, the affirmative vote, consent, or approval of more than fifty percent (50%) of the Managers.

2. Unless otherwise provided in the Operating Agreement or this Act, the affirmative vote, approval, or consent of all Members shall be required to do any of the following:

   a. Amend the Articles of Organization.

   b. Issue an interest in an LLC to any Person.

   c. Adopt, amend, or revoke the Operating Agreement.

   d. Allow an LLC to accept any additional contribution from a Member.

    e.  Allow a partial redemption of an interest in an LLC under Section 503.

    f.  Value contributions of Members under Section 401.2.

    g.  Authorize a Manager, Member, or any other Person to do any act on behalf of the LLC that contravenes the Operating Agreement.

3.  Unless otherwise provided in the Operating Agreement if any Member is precluded from voting with respect to a given matter, the value of the contribution represented by the interest in the LLC with respect to which the Member would otherwise have been entitled to vote shall be excluded from the total contributions made to the LLC for purposes of determining the fifty percent (50%) threshold under Section 105.10 for that matter.

4.  Unless otherwise provided in the Operating Agreement or this Section, if all or part of an interest in the LLC is assigned under Section 604, the assigning Member shall be considered the owner of the assigned interest for purposes of determining the 50% threshold under Section 105.11 until the assignee of the interest in the LLC becomes a Member pursuant to Section 606.

## SECTION 305. RECORDS AND INFORMATION

1.  An LLC shall keep at its principal place of business all of the following:

    a.  A list of each past and present Member and, if applicable, Manager.

    b.  A copy of the Articles of Organization and all amendments to the articles, together with executed copies of any powers of attorney under which any Articles of Organization or Operating Agreement were executed.

    c.  A record of all matters referred to in this Act as maintained in such records which are not otherwise specified in the Operating Agreement.

2.  Upon request, a Member may, at such Member's own expense, inspect and copy during ordinary business hours any LLC record, unless otherwise provided in the Operating Agreement.

3.  Members or, if the management of the LLC is vested in one or more Managers, Managers, shall provide true and full information of all things affecting the Members to any Member or to the legal representative of any Member upon reasonable request of any Member or his, her or its legal representative.

4.  Failure of an LLC to keep or maintain any of the records of information required under this Section shall not be grounds for imposing liability on any person for the debts and obligations of the LLC.

## SECTION 306. ADMISSION OF MEMBERS

1. In connection with the formation of an LLC, a Person acquiring an LLC Interest is admitted as a Member upon formation unless the Operating Agreement otherwise provides.

2. After the formation of an LLC, a Person acquiring an LLC Interest is admitted as a Member of the LLC as specified in the Operating Agreement or, if not so specified, by consent of all the other Members, or, if the Person is an assignee of another Member's LLC Interest, only pursuant to Section 606.

## SECTION 307. DISSOCIATION

1. A person ceases to be a Member of an LLC upon the simultaneous occurrence of and at the same time of any of the following events:

   a. The Member withdraws by voluntary act pursuant to subsection (3).

   b. The Member is removed as a Member in accordance with the Operating Agreement or this Act.

   c. Unless otherwise provided in the Articles of Organization or by the written consent of all Members at the time of the event, the Member does any of the following:

      i. Makes an assignment for the benefit of the creditors.

      ii. Files a petition in bankruptcy.

      iii. Becomes the subject of an order for relief under the federal bankruptcy laws or State or Tribal insolvency laws.

      iv. Fails to gain dismissal of any federal bankruptcy or State or Tribal insolvency proceeding within 120 days of commencement of an involuntary proceeding.

   d. Unless provided in the Operating Agreement or by the written consent of all Members, if the Member is an individual, either of the following occur:

      i. The Member's death.

      ii. The entry of an order by a court of competent jurisdiction adjudicating the Member incompetent to manage the Member's person or estate.

   e. Unless otherwise provided in the Operating Agreement or by written agreement or by the written consent of all Members at the time, if the Member is a Entity, upon the liquidation, dissolution, or termination of such Entity.

2. The Members may provide in the Operating Agreement for other events the occurrence of which would result in a Person ceasing to be a Member of the LLC.

3. Unless the Operating Agreement provides that a Member does not have the power to withdraw by voluntary act from an LLC, the Member may do so at any time by giving written notice to the other Members or as provided in the Operating Agreement. If the Member has the power to withdraw, but the withdrawal is a breach of the Operating Agreement, the LLC may offset the damages against the amount otherwise distributable to the Member, in addition to pursuing any remedies provided for in the Operating Agreement or otherwise available under applicable law.

# PART 4. FINANCE

## SECTION 401. CONTRIBUTIONS

1. A Member's contributions to an LLC may consist of cash, property, or services rendered, or promissory notes or other written obligations to provide cash or property or to perform services.

2. The value of a Member's contribution shall be determined in the manner provided in the Operating Agreement. If the Operating Agreement does not fix a value to a contribution, or if the Members have not adopted an Operating Agreement, the value of a contribution shall be approved by a Majority in Interest, shall be properly reflected in the records and information kept by the LLC pursuant to Section 305.1. The value of contributions so determined shall be binding and conclusive on the LLC and its Members.

## SECTION 402. LIABILITY FOR CONTRIBUTION

1. An obligation of a Member to provide cash or property or to perform services as a contribution to an LLC is not enforceable unless specified in a writing and signed by the Member.

2. Unless otherwise provided in the Operating Agreement, a Member is obligated to an LLC to perform any enforceable promise to provide cash or property or to perform services, even if the Member is unable to perform because death, disability, or any other reason. If a Member does not provide cash, property, or services as promised, such Member is obligated, at the option of the LLC, to provide cash equal to that portion of the value of the stated contribution that has not been fulfilled.

3. Unless otherwise provided in the Operating Agreement, a Member's obligation to provide cash or property or perform services as a contribution to the LLC may be compromised only by the written consent of all of the Members.

## SECTION 403. ALLOCATION OF PROFITS AND LOSSES

The profits and losses of an LLC shall be allocated among the Members in the manner provided in the Operating Agreement. If the Members do not enter into or the do not provide otherwise, profits and losses shall be allocated on the basis of value of the contributions made by each Member.

# PART 5. NON-LIQUIDATING DISTRIBUTIONS

## SECTION 501. INTERIM DISTRIBUTIONS

Except as provided in this Part, a Member is entitled to receive distributions from an LLC before the Member's dissociation from the LLC and before its dissolution and winding up to the extent to the extent and at the times or upon the events specified in its Articles of Organization, or to the extent and at the times determined by the Members or Managers.

## SECTION 502. ALLOCATION OF DISTRIBUTIONS

Distributions of cash or other assets of an LLC shall be allocated among the Members as provided in the Operating Agreement, or if the Operating Agreement does not so provide, on the basis of the value of the contributions made by each Member.

## SECTION 503. DISTRIBUTION UPON PARTIAL REDEMPTION

Except as provided in this Part, upon the Distribution in partial liquidation of a Member's interest, the redeeming Member is entitled to receive the amount to which the Member is entitled under and, if not otherwise provided in, the fair value of the redeemed interest based on the Member's right to share in distributions from the LLC.

## SECTION 504. DISTRIBUTION UPON DISSOCIATION

Except as otherwise provided in this Part, upon an event of dissociation under Section 307 that does not cause dissolution of the LLC, a dissociating Member is entitled to receive any Distribution to which the Member is entitled under and, if not otherwise provided in, the fair market value of the Member's interest in the LLC based on the Member's rights to share in distributions from the LLC.

## SECTION 505. DISTRIBUTION IN KIND

Unless otherwise provided in the Operating Agreement:

1. A Member may not demand and receive any Distribution from an LLC in any form other than cash.

2. A Member may not be compelled to accept a Distribution of any asset in kind except for a liquidating Distribution made proportionately to all of the Members.

## SECTION 506. RIGHT TO DISTRIBUTION

At the time that a Member becomes entitled to receive a Distribution from an LLC, the Member has the status of and is entitled to all remedies available to a creditor of the LLC with respect to the Distribution.

## SECTION 507. LIMITATIONS OF DISTRIBUTIONS

1. An LLC may not declare or make a Distribution to any of its Members, if after giving effect to the Distribution, any of the following would occur:

   a. The LLC would be unable to pay its debts as they become due in the usual course of business.

   b. The fair market value of the LLC's total assets would be less than the sum of its total liabilities plus, unless the Operating Agreement provides otherwise, the amount that would be needed for the preferential rights upon dissolution of Members, if any.

2. An LLC may base a determination that a Distribution is not prohibited by subsection (1), above, on any of the following:

   a. Financial statements and other financial data prepared on the basis of accounting practices and principles that are reasonable under the circumstances.

   b. A fair market valuation or other method that is reasonable under the circumstances.

3. An LLC's indebtedness to a Member incurred by reason of a Distribution made in accordance with this Section is at parity with the LLC's indebtedness to its general unsecured creditors, except to the extent subordinated by written agreement. This Section does not affect the validity or priority of a security interest in an LLC's property that is created to secure the indebtedness to the Member.

## SECTION 508. LIABILITY FOR WRONGFUL DISTRIBUTION

1. Except as provided in subsection (2) below, a Member (other than the Tribe) or manager who votes or assents to a distribution in violation of Section 507 or is personally liable to the LLC for the amount of the excess distribution, subject to contribution from all other Managers or Members participating in such action.

2. An action to recover under this Section may be brought in the Courts of the Tribe; however a proceeding under this Section is barred unless it is brought within two (2) years after the date of the distribution.

# PART 6. OWNERSHIP AND TRANSFER OF PROPERTY

## SECTION 601. OWNERSHIP OF LLC PROPERTY

1. All property originally transferred to or acquired by an LLC is property of the LLC and not the Members individually.

2. Property acquired with LLC funds is presumed to be LLC property.

3. Property may be acquired, held, and conveyed in the name of the LLC.

## SECTION 602. TRANSFER OF PROPERTY

The property of an LLC may be transferred by an instrument of transfer executed by any Member in the name of the LLC, unless management is vested in Managers, in which case the document of transfer shall be executed by a manager, subject to any limitation that may be imposed by the Articles of Organization or Operating Agreement.

## SECTION 603. NATURE OF INTEREST

An LLC Interest is a general intangible, a type of personal property.

## SECTION 604. ASSIGNMENT OF LLC INTEREST

1. Unless otherwise provided:

   a. An LLC Interest is assignable in whole or in part.

   b. An assignment of an LLC Interest entitles the assignee to receive only the Distributions and to share in the allocations of profits and losses to which the assignee would be entitled with respect to the assigned interest.

   c. An assignment of an LLC Interest does not dissolve the LLC.

   d. Unless and until the assignee becomes a Member of the LLC under Section 606, the assignment of an LLC Interest does not entitle the assignee to participate in the management or exercise rights of a Member.

e. Unless and until the assignee of an LLC Interest becomes a Member of the LLC under Section 606, the assignor continues to be a Member.

f. The assignor of an LLC Interest is not released from any personal liability arising under this Act as a Member of the LLC solely as a result of the assignment.

2. Unless otherwise provided in the Operating Agreement, the granting of a security interest, lien, or other encumbrance in or against any or all of a Member's LLC Interest is not assignable and shall not cause the Member to cease to have the power to exercise any rights or powers of a Member.

## SECTION 605. RIGHTS OF JUDGMENT CREDITOR

Upon application to a court of competent jurisdiction, including a court other than the Tribal Court having valid jurisdiction over the Member, by any judgment creditor of a Member, the court may charge the LLC Interest of any Member (other than the Tribe) with payment of the unsatisfied amount of the judgment. To the extent so charged, the judgment creditor has only the rights of an assignee of the Member's LLC Interest in Distributions made by the LLC to Members and other assigned interest holders in the usual course of business. This Section does not deprive any Member of the benefit of any exemption laws applicable to the LLC Interest. In no event shall the Tribe's interest be attachable in abrogation of its sovereign immunity.

## SECTION 606. RIGHT OF ASSIGNEE TO BECOME A MEMBER

1. Unless otherwise provided in the Operating Agreement, an assignee of an LLC Interest may become a Member only if all of the other Members unanimously consent.

2. An assignee of an LLC Interest who becomes a Member has, to the extent assigned, the rights and powers and is subject to the restrictions and liabilities of the assignor under and this Act.

3. Unless otherwise provided in the Operating Agreement, an assignor of an LLC Interest is not released from any liability to the LLC without the written consent of all the Members, whether or not the assignee becomes a Member.

## SECTION 607. POWERS OF LEGAL REPRESENTATIVE

If a Member who is an individual dies or a court of competent jurisdiction adjudges the Member to be incompetent to manage his or her person or property, the Member's personal representative, administrator, guardian, conservator, trustee, or other legal representative shall have all the rights of an assignee of the Member's interest. If a Member is an Entity and is dissolved or terminated, the powers of such Member may be exercised by its legal representative or successor.

# PART 7. DISSOLUTION

## SECTION 701. DISSOLUTION

An LLC is dissolved and its affairs shall be wound up upon the happening of the first of the following:

1. The occurrence of events specified in the Operating Agreement.

2. The written consent of all Members.

3. An event of dissociation of a Member, unless otherwise provided in the Operating Agreement, or continuation is consented to by all remaining Members.

4. Entry of a decree of judicial dissolution under Section 702.

## SECTION 702. JUDICIAL DISSOLUTION

In a proceeding by or for a Member, the Court may order dissolution of an LLC if any of the following is established:

1. That it is not reasonably practicable to carry on the business of the LLC.

2. That the LLC is in a material way not acting in substantial conformity with its Operating Agreement.

3. That one or more Managers are consistently acting or will act in a manner that is illegal, oppressive, or fraudulent.

4. That one or more Members in control of the LLC are consistently acting or will consistently act in a manner that is illegal, unduly oppressive, or fraudulent.

5. That a substantial portion of the LLC assets are being misapplied or wasted.

## SECTION 703. WINDING UP

1. A dissolved LLC continues its legal existence but may not carry on any business except that which is appropriate to wind up and liquidate its business.

2. Unless otherwise provided for in the Operating Agreement:

   a. The business of the LLC may be wound up by any of the following:

      i. The Members or Managers who have authority to manage the LLC before dissolution.

      ii. In a judicial dissolution, the Person(s) designated by the Court.

  b. The Persons winding up the business of the LLC may do all of the following in the name of and on behalf of the LLC:

      i. Collect its assets.

      ii. Prosecute and defend suits.

      iii. Take any action necessary to settle and close the business of the LLC.

      iv. Dispose of and transfer the property of the LLC.

      v. Discharge or make provision for discharging the liabilities of the LLC.

      vi. Distribute to the Members any remaining assets of the LLC.

3. Dissolution of an LLC does not do any of the following:

  a. Transfer title to any property of the LLC's.

  b. Prevent transfer of all or part of a Member's interest.

  c. Prevent commencement of a civil, criminal, administrative, or investigatory proceeding by or against the LLC.

  d. Abate or suspend a civil, criminal, administrative, or investigatory proceeding pending by or against the LLC at the time of dissolution.

  e. Terminate the authority of the registered agent of the LLC.

  f. Alter the limited liability of any Member.

## SECTION 704. DISTRIBUTION OF ASSETS

Upon the winding up of an LLC, the assets shall be distributed in the following order:

1. To creditors, including to the extent permitted by law, Members, and former Members in satisfaction of liabilities of the LLC.

2. Unless otherwise provided in the Operating Agreement, to Members and former Members in satisfaction of liabilities for Distributions under Sections 501, 503 and 504.

3. Unless otherwise provided in the Operating Agreement, to Members and former Members first for the return of their contributions in proportion to their respective values and, thereafter, in proportion to their respective rights to share in Distributions from the LLC before dissolution.

## SECTION 705. ARTICLES OF DISSOLUTION

After the dissolution of an LLC under Section 701, the LLC may file articles of dissolution with the Secretary, that include the following:

1. The name of the LLC.

2. The date of filing of its Articles of Organization, and the dates of any amendments thereafter.

3. The statutory grounds under Section 701 for dissolution.

4. The delayed effective date of the articles of dissolution under Section 111.4, if applicable.

## SECTION 706. KNOWN CLAIMS AGAINST DISSOLVED LLC

1. A dissolved LLC may notify its known claimants in writing of the dissolution and specify a procedure for making claims.

2. A claim against the LLC is barred if:

   a. A claimant who was given written notice under subsection (1) above, does not deliver the claim, in writing, to the LLC by the deadline specified in the notice; or

   b. A claimant whose claim is rejected by the LLC does not commence a proceeding to enforce the claim within ninety (90) days after receipt of the rejection notice.

## SECTION 707. UNKNOWN OR CONTINGENT CLAIMS

A claim not barred under Section 706 may be enforced:

1. Against the dissolved LLC, to the extent of its undistributed assets.

2. If the dissolved LLC's assets have been distributed in liquidation, against a Member of the LLC, other than the Tribe, to the extent of the Member's proportionate share of the claim or of the assets of the LLC distributed to the Member in liquidation, whichever is less, but a Member's total liability for all claims under this Section may not exceed the total value of assets at the time distributed to the Member.

# PART 8. MERGER

## SECTION 801. MERGER

1. Unless the context required otherwise, in this Part, LLC includes a Domestic LLC and a Foreign LLC.

2. Unless otherwise provided in the Operating Agreement, one or more LLCs may merge with or into one or more LLCs or one or more other Foreign LLCs as provided in the plan of merger.

3. Interests in an LLC that are a party to a merger may be exchanged for or converted into cash, property, obligations, or interest in the surviving LLC.

## SECTION 802. APPROVAL OF MERGER

1. Unless otherwise provided in the Operating Agreement, an LLC that is a party to a proposed merger shall approve the plan of merger by an affirmative vote by all of the Members.

2. Unless otherwise provided in the Operating Agreement, the Manager or Managers of an LLC may not approve a merger without also obtaining the approval of the LLC's Members under subsection (1), above.

3. Each foreign LLC that is a party to a proposed merger shall approve the merger in the manner and by the vote required by the laws applicable to the Foreign LLC.

4. Each LLC that is a party to the merger shall have any rights to abandon the merger that is provided for in the plan of merger or in the laws applicable to the LLC.

5. Upon approval of a merger, the LLC shall notify each Member of the approval and of the effective date of the merger.

## SECTION 803. PLAN OF MERGER

Each LLC that is a party to a proposed merger shall enter into a written plan of merger to be provided under Section 804 and approved under Section 802.

## SECTION 804. ARTICLES OF MERGER

1. The surviving LLC shall deliver to the Secretary articles of merger, executed by each party to the plan of merger, that include all of the following:

   a. The name and state or jurisdiction of organization for each LLC that is to merge.

    b. The plan of merger.

    c. The name of the surviving or resulting LLC.

    d. A statement as to whether the management of the surviving LLC will be reserved to its Members or vested in one or more Managers.

    e. The delayed effective date of the merger under Section 111.4, if applicable.

    f. A statement as to whether the Tribe is the sole Member.

    g. If the Tribe is sole Member, a statement as to whether the LLC enjoys the Tribe's sovereign immunity.

    h. A statement that the plan of merger was approved under Section 802.

2. A merger takes effect upon filing with and acceptance by the Secretary, or if applicable, the effective date of the articles of merger.

## SECTION 805. EFFECTS OF MERGER

A merger has the following effects:

1. The LLCs that are parties to the plan of merger must become a single entity, which shall be the entity designated in the plan of merger as the surviving LLC.

2. Each party to the plan of merger, except the surviving LLC, ceases to exist.

3. The surviving LLC possesses all of the rights, privileges, immunities, and powers of each merged LLC (including any rights of sovereign immunity) and is subject to all of the restrictions, disabilities, and duties of each merged LLC.

4. All property and all debts, including contributions, and each interest belonging to or owed to each of the parties to the merger are vested in the surviving LLC without further act.

5. Title to all real estate and any interest in real estate, vested in any party to the merger, does not revert and is not in any way impaired because of the merger.

6. The surviving LLC has all the liabilities and obligations of each of the parties to the plan of merger and any claim existing or action or proceedings pending by or against any merged LLC may be prosecuted as if the merger had not taken place, or the surviving LLC may be substituted in the action.

7. The rights of creditors and any liens on the property of any party to the plan of merger survive the merger.

8. The interests in an LLC that are to be converted or exchanged into interest, cash, obligations, or other property under the terms of the plan of merger are converted and the former interest holders are entitled only to the rights provided in the plan of merger of the rights otherwise provided by law.

9. The Articles of Organization of the surviving LLC are amended to the extent provided in the articles of merger.

## SECTION 806. RIGHT TO OBJECT

Unless otherwise provided in the Operating Agreement, upon receipt of the notice required by Section 802.5, a Member who did not vote in favor of the merger may, within twenty (20) days after the date of the notice, voluntarily dissociate from the LLC under Section 307.3 and receive fair value for the Member's LLC Interest under Section 504.

# PART 9. LIMITED LIABILITY COMPANIES WHOLLY OWNED BY THE TRIBE

## SUBPART 1. GENERAL PROVISIONS FOR TRIBALLY-OWNED LLCS

### SECTION 911. LLCS DIRECTLY OWNED BY THE TRIBE

It is hereby authorized to be created, by a duly adopted resolution of the Tribal Council, LLCs wholly owned by the Tribe. The organizer shall file with the Secretary Articles of Organization and a certified copy of the resolution authorizing the formation of each such LLC.

### SECTION 912. TRIBAL SUBSIDIARY COMPANIES

It is hereby authorized to be created by resolution of the Board of Directors of an LLC wholly owned by the Tribe, or of a wholly-owned subsidiary of such LLC, subsidiary LLCs to be wholly owned by the parent LLC, which shall be instrumentalities and arms of the Tribe. The organizer of such a Tribal subsidiary LLC shall file with the Secretary the Articles of Organization of the Tribal subsidiary LLC and a certified copy of a resolutions of the Board of Directors of the parent LLC authorizing the formation of the subsidiary LLC.

### SECTION 913. PRIVILEGES AND IMMUNITIES

The LLCs established under Sections 911 and 912 shall be considered to be instrumentalities and arms of the Tribe, and their officers and employees considered officers and employees of the Tribe, created for the purpose of carrying out authorities and responsibilities of the Tribe for economic development of the Tribe and the advancement of its citizens. Such LLCs, their directors, officers, and

employees shall, therefore, be entitled to all of the privileges and immunities enjoyed by the Tribe, including, but not limited to, immunities from suit in Federal, State and Tribal courts and from Federal, State, and local taxation or regulation, except that:

1.  The LLC may specifically grant limited waivers of its immunity from suit and consent to be sued in Tribal Court or another court of competent jurisdiction; provided, however, that:

    a.  any such waiver or consent to suit granted pursuant to the LLC's shall in no way extend to any action against the Tribe, nor shall it in any way be deemed a waiver of any of the rights, privileges and immunities of the Tribe;

    b.  any recovery against the LLC shall be limited to the assets of the LLC (or such portion of the LLC's assets as further limited by the waiver or consent), and the Tribe shall not be liable for the payment or performance of any of the obligations of the LLC, and no recourse shall be had against any assets or revenues of the Tribe in order to satisfy the obligations of the LLC; including assets of the Tribe leased, loaned, or assigned to the LLC for its use, without transfer of title, and

    c.  any waiver of the LLC's immunities granted pursuant to the LLC's Operating Agreement shall be further limited or conditioned by the terms of such waiver.

2.  The sovereign immunity of the LLC shall not extend to actions against the LLC by the Tribe acting as its sole Member, or, in the case of a subsidiary LLC created pursuant to this Part, by the parent LLC acting as its Member, pursuant to Section 912.

3.  The special privileges and immunities described in this Section shall only apply to an LLC wholly owned, directly or indirectly, by the Tribe.

## SECTION 914. OWNERSHIP

1.  No LLC Interest in any LLC in which the Tribe is the sole Member may be alienated unless approved by a duly adopted resolution of the Tribal Council. Further, no LLC Interest in any Tribally-owned subsidiary LLC may be alienated unless approved by a duly adopted resolution of the Board of Directors of the parent LLC.

2.  All LLC Interests in any LLC wholly owned by the Tribe shall be held by and for the Tribe, or in the case of a Tribal subsidiary LLC, by an LLC wholly owned by the Tribe. No individual citizen of the Tribe shall have any personal ownership interest in any LLC organized under this Act and Part, whether by virtue of such person's status as a citizen of the Tribe, as an officer of the government of the Tribe, or otherwise.

## SECTION 915. PROJECT COMPANIES WITH NON-TRIBAL OWNERS

Any LLC created pursuant to this Act and Part, including any subsidiary LLCs, may form or own interests or shares in any Entity with other governmental or non-governmental Persons under the laws of

the Tribe or any other jurisdiction ("Project Companies"); provided, however, that the partial ownership interest in such Project Companies shall not diminish or affect the privileges and immunities of the Tribally-owned LLC or subsidiary LLC created pursuant to this Act.

## SECTION 916. PURPOSE OF LLC'S DIRECTLY AND INDIRECTLY OWNED BY TRIBE

The Operating Agreement for an LLC wholly owned, directly or indirectly, by the Tribe shall state the purpose of the LLC that relates to the overall needs, priorities, goals, and objectives of the Tribe and the Tribe's government, including how the LLC will contribute to tribal economic policy and further the Tribe's goals of self-determination and economic self-sufficiency.

## SUBPART 2. SPECIAL FORMATION REQUIREMENTS FOR LLC'S WHOLLY OWNED BY THE TRIBE

## SECTION 921. FORMATION

1. The Chairman of the Tribal Council shall be the Organizer of any LLC in which the Tribe will be the sole Member.

2. Unless a delayed effective date is specified:

   a. the existence of an LLC directly owned by the Tribe begins when the Articles of Organization have been approved by a resolution enacted by the Tribal Council or approved by the Chairman, and the articles have been filed with the Secretary.

   b. the existence of a Tribal subsidiary LLC owned by a parent LLC that is wholly owned by the Tribe begins when the Articles of Organization have been approved by a resolution of the Board of Directors of the parent LLC, and the Articles of Organization have been filed with the Secretary.

## SECTION 922. ADDITIONAL REQUIREMENTS FOR ARTICLES OF ORGANIZATION

As set forth in Section 913, LLCs established under Sections 911 and 912 may grant a limited waiver of sovereign immunity in order to promote economic development through commercial transactions for which such a waiver is necessary and beneficial to the Tribe. The method for granting a limited waiver of sovereign immunity through the above mentioned entities is as follows:

1. The sovereign immunity of a Tribal entity may be waived only by:

   c. A resolution adopted by the Board of Directors of the Tribal LLC for the specific purpose of granting a waiver; and

   d. the language of the waiver must be explicit; and

e. the waiver must be contained in a written contract or commercial document to which the LLC is a party.

2. Waivers of sovereign immunity by resolution may be granted only when necessary to secure a substantial advantage or benefit to the tribal entity of the Tribe. Waivers of sovereign immunity by resolution may not be general but must be specific and limited as to duration, grantee, transaction, property or funds of the Tribal LLC subject to the waiver, the court having jurisdiction, and any applicable law.

## SUBPART 3. MANAGEMENT OF TRIBALLY-OWNED LLCS

### SECTION 931. BOARD OF DIRECTORS AS MANAGER

1. Any LLC in which a wholly-owned Tribal LLC is the sole Member shall be managed by a Board of Directors.

2. The number, terms, and method for selecting and removing Directors of any LLC in which a Tribally-owned LLC is the sole Member shall be specified in the subsidiary LLC's Articles of Organization.

## SUBPART 4. DISTRIBUTIONS TO TRIBE AS MEMBER

### SECTION 941. DISTRIBUTIONS OF INCOME TO TRIBE AS MEMBER

An LLC in which the Tribe is a Member shall distribute the net income of the LLC as set forth in a dividend plan adopted in accordance with the Articles or Organization and Operating Agreement (if any) and duly approved by the Tribe except that an LLC may retain reserves necessary to carry on the LLC's business in a reasonably prudent manner and as recommended by its Board of Directors, if applicable, subject to further limitations set forth in Section 507 and in its Articles of Organization.

## SUBPART 5. ADDITIONAL REPORTS AND AUDITS

### SECTION 951. AUDIT

In addition to any Member inspection rights provided in the Operating Agreement of an LLC wholly owned by the Tribe, the Tribe may at any time, by process in the manner provided in Section 941, require that any LLC wholly owned by the Tribe or an LLC in which the Tribe owns an LLC Interest be audited by an independent auditor hired by the Tribe who shall have the absolute right to require access to all of the LLC's records and documents necessary for such an audit.

### SECTION 952. FINANCIAL, BUSINESS, AND BUDGET INFORMATION FOR THE TRIBE

In addition to any reports to the Member required by the Operating Agreement, the management of each LLC in which the Tribe or a Tribally-owned LLC is the sole Member shall submit the following information to the Chairman of the Tribal Council and the Tribal Council or their designees (which the Tribal Council may deem confidential and proprietary upon request of the LLC's Board of Directors):

1. Copies of any periodic financial statements (including monthly or quarterly balance sheets, profit and loss statements, and cash flow statements) as may be prepared in the ordinary course of business, promptly after such statements are furnished to the LLC's management;

2. A full report of the business activities of the corporation within 120 days after the close of each fiscal year; and

3. A proposed annual budget for the following Tribal fiscal year, including any proposed funding from the Tribe or anticipated distributions to the Tribe, by May 15 of each year, and the final annual budget adopted by each Board by October 1 of each tribal fiscal year.

## SUBPART 6. ACTIONS AGAINST LLCS WHOLLY OWNED BY THE TRIBE

### SECTION 961. COURT ACTIONS AUTHORIZED

1. The Tribe, as the sole Member of any LLC organized pursuant to this Act, may bring a civil action against the LLC, its Managers or its officers in the Tribal Court only pursuant to this Part to:

   a. enjoin temporarily or permanently any action of the LLC that is an ultra vires act outside the authority of the LLC and that is either:

      i.  unlawful; or

      ii. has or could cause material harm to the assets of the LLC or the Tribe if no immediate action is taken.

   b. require the distribution of the LLC's surplus net income, to the extent permitted by Section 507.

2. In accordance with Section 913.2, the sovereign immunity of the LLC shall not extend to actions against the LLC by the Tribe acting in its capacity as a Member of such LLC, or, in the case of a subsidiary LLC created pursuant to this Part, by the parent LLC acting as a Member of such subsidiary LLC.

3. Nothing contained herein shall be construed authorizing actions of any kind whatsoever against the Tribe.

## SECTION 962. APPROVAL OF TRIBE REQUIRED

The filing of any court action against the LLC pursuant to this Part must be authorized by the Tribe as a Member in the same manner as required for voting on any item properly coming before the Tribe as a Member. The request for consideration of the proposed court action may be made by the Chairman of the Indian Council.

## SECTION 963. RELIEF AVAILABLE

In any action brought under this Part, the Tribal Court may, based upon a preponderance of the evidence set forth in its findings of fact and conclusions of law:

1. Issue a temporary restraining order, preliminary injunction, and permanent injunctive relief pursuant to the procedures and standards in the Tribe's Rules of Civil Procedure, except that no bond need be posted for any preliminary injunctive relief; or

2. Order that funds of the LLC be distributed to the Tribe to the extent permitted by the Articles of Organization and Section 507.


# PART 10. REGISTRATION OF FOREIGN LIABILITY COMPANIES
[RESERVED.]


# PART 11. SEVERABILITY CLAUSE

If any provision of this Act or the application of such provision to any Person or circumstance is found to be unenforceable by a court of competent jurisdiction, such provision shall be of no force or effect; but the remainder of the Act shall continue in full force and effect.


[Enacting language and any approval signature to follow]

# EXHIBIT B



# OTOE·MISSOURIA TRIBE OF INDIANS

8151 HIGHWAY 177
RED ROCK, OK 74651-0348

RESOLUTION

OMTC# __54293__ FY2011

## A RESOLUTION CREATING GREAT PLAINS LENDING, LLC

NOW, THEREFORE, BE IT RESOLVED BY THE TRIBAL COUNCIL OF THE OTOE-MISSOURIA TRIBE OF INDIANS, AND

WHEREAS, the Otoe-Missouria Tribal Council, the governing body of the Otoe-Missouria Tribe of Indians, in accordance with the Tribal Constitution, Article VIII-Powers, Section I, duly convened to discuss, review, and approve tribal business; and

WHEREAS, the Constitution and By-Laws of the Otoe-Missouria Tribe of Indians provides that the Otoe-Missouria Tribal Council shall have the power to act on behalf of the Tribe in all matters on which the Tribe is empowered to act; and

WHEREAS, the Otoe-Missouria Tribal Council is the supreme governing body of the Otoe-Missouria Tribe of Oklahoma with the authority to enact laws and ordinances; and

WHEREAS, the Otoe-Missouria Tribal Council has determined that it is in the best interests of the Otoe-Missouria people to organize an arm of the Tribe pursuant to the Otoe-Missouria Tribe of Indians Limited Liability Company Act to advance tribal economic development to aid addressing issues of public safety, health and welfare, and therefore, desires to create the tribal lending entity, Great Plains Lending, LLC; and

WHEREAS, the Otoe-Missouria Tribal Council has determined that the best interest of the Otoe-Missouria Tribe of Indians is best served by the creation of Great Plains Lending, LLC.

THEREFORE, BE IT RESOLVED, that the Otoe-Missouria Tribal Council does hereby form Great Plains Lending, LLC as a limited liability company wholly-owned by the Tribal government pursuant to Part 9 of Otoe-Missouria Limited Liability Company Act with all the powers and attributes associated therewith including, but not limited to, sovereign immunity. The Articles of Formation for Great Plains, LLC are attached to this resolution and are hereby adopted and accepted.

BE IT FURTHER RESOLVED, that the Board of Directors of Great Plains Lending, LLC shall consist of five (5) members including the President of the Development Authority and the Tribal Vice-Chairman. The remaining Board members shall be appointed by the Tribal Council and shall serve three (3) year terms. All Board members of Great Plains Lending, LLC or any Great Plains Lending, LLC subsidiary must be at least eighteen (18) years old. No Board member of Great Plains Lending, LLC or any Great Plains Lending, LLC subsidiary may have ever been: (i) convicted of any misdemeanor involving fraud or violation of law governing the consumer finance business or any business of a similar nature or any felony, or (ii) permanently or temporarily enjoined by a court of competent jurisdiction from engaging in or continuing any conduct or practice involving any aspect of a consumer finance service or any business of a similar nature.

BE IT FURTHER RESOLVED, that pursuant to Part 9 of the Otoe-Missouria Limited Liability Company Act, the Board of Directors of Great Plains Lending, LLC shall have the authority to create subsidiary LLCs which are wholly owned by the Tribe.

BE IT FURTHER RESOLVED, that, the Otoe-Missouria Tribal Council grants to Great Plains Lending, LLC formed under Part 9 of the Otoe-Missouria Tribe of Indians Limited Liability Company, as a wholly-owned entity of the Tribe, a consumer lending license required under Section 104 of the Otoe-Missouria Tribe of Indians Consumer Finance Regulatory Commission Ordinance hereby waiving the fees, application and renewal requirements of Sections 105, 106, 107, 108 and 109 of such Ordinance.

## CERTIFICATION

We, the undersigned, Chairman and Secretary of the Otoe-Missouria Tribal Council, do hereby certify by signature, that the above foregoing Resolution was given due consideration on this 4th day of May, 2011 with a quorum present and a vote of:

_6_ FOR, _0_ AGAINST, _0_ ABSENT, and _1_ ABSTAINING

(SEAL)

Chairman

ATTEST _____
Secretary

# EXHIBIT C



# OTOE · MISSOURIA
## TRIBE OF INDIANS

8151 HIGHWAY 177
RED ROCK, OK 74651-0348

## RESOLUTION

OMTC # ___2/0565___          FY 2010

**"A RESOLUTION ADOPTING THE CONSUMER FINANCE SERVICES REGULATORY COMMISSION ORDINANCE"**

**NOW, THEREFORE, BE IT RESOLVED BY THE TRIBAL COUNCIL OF THE OTOE-MISSOURIA TRIBE OF INDIANS, AND**

**WHEREAS,** The Otoe-Missouria Tribal Council, the governing body of the Otoe-Missouria Tribe of Indians, in accordance with the Tribal Constitution, Article VIII-Powers, Section 1., duly convened to discuss, review, and approve tribal business, and

**WHEREAS.** the Constitution and By-Laws of the Otoe-Missouria Tribe of Indians provides that the Otoe-Missouria Tribal Council shall have the power to act on behalf of the Tribe in all matters on which the Tribe is empowered to act, and

**WHEREAS,** the Otoe-Missouria Tribal Council is the Supreme governing body of the Otoe-Missouria Tribe of Oklahoma with the authority to enact laws and ordinances,

**WHEREAS,** the Otoe-Missouria Tribe is desirous of providing a basis under tribal law to authorize and regulate the conduct of consumer financial services on Indian lands of the Otoe-Missouria Tribe,

**WHEREAS,** the Otoe-Missouria Tribe desires to approve the attached "Consumer Finance Regulatory Commission Ordinance": in order to authorize and regulate consumer financial services on the Indian Lands of the Otoe-Missouria Tribe, superseding any previous tribal consumer finance services ordinances.

**SO, THEREFORE BE IT RESOLVED,** that the Otoe-Missouria Tribal Council does hereby approve and adopt this resolution approving and adopting the attached Consumer Finance Services Regulatory Commission Ordinance effective immediately.

## OTOE-MISSOURIA TRIBE OF INDIANS
## TITLE [##]. INTERESTS, LOANS AND DEBT
## CHAPTER [##]. CONSUMER FINANCE SERVICES REGULATORY COMMISSION

### Section 101. Ordinance; how cited.

This Chapter shall be known and may be cited as the Consumer Finance Services Regulatory Commission Ordinance.

### Section 102. Terms, defined.

For purposes of the Consumer Finance Services Regulatory Commission Ordinance:

(1)     Check means any check, draft, or other instrument for the payment of money;

(2)     Consumer Finance Services means any person or entity who for a fee (a) accepts a check dated subsequent to the date it was written or (b) accepts a check dated on the date it was written and holds the check for a period of days prior to deposit or presentment pursuant to an agreement with or any representation made to the maker of the check, whether express or implied or (c) makes a cash loan that bears a date for repayment after the date that the loan proceeds are delivered to the borrower or (d) makes any other type of consumer loan or credit financing

(3)     Commission means the Otoe-Missouria Consumer Finance Services Regulatory Commission created by this Ordinance.

(4)     Licensee means any person licensed under this Ordinance; and

(5)     Person means an individual (non-Tribal Member), proprietorship, association, joint venture, joint stock company,    partnership, limited partnership, limited liability company, business corporation, nonprofit corporation, or any group of individuals however organized.

(6)     Loan means any loan whether it is secured by collateral or unsecured.

(7)     Tribal Council shall mean the duly-elected Tribal Council pursuant to the Tribal Constitution of the Otoe-Missouria Tribe of Indians.

(8)     Tribe shall mean the Otoe-Missouria Tribe of Indians.

### Section 103.

The Tribe hereby establishes the Otoe-Missouria Consumer Finance Services Regulatory Commission (hereinafter, "Commission") as the public body solely responsible for the regulation of the Tribe's Consumer Finance Services operations. The purpose of the Commission is regulatory, not managerial. In order to carry out its regulatory duties, the Commission shall have unrestricted access to all areas of the lending operations and to all records.

(1)     Composition. The Commission shall constitute three (3) members including the Tribal Treasurer, Tribal Secretary, and one other member elected by the Tribal Council. A

1

Commissioner may be a member or non-member of the Tribe. Each Commissioner Member shall be at least twenty-one (21) years of age and have sufficient knowledge of lending regulation, business, finance or law to carry out the duties prescribed by this Ordinance. Each Commissioner shall take an oath to support and defend the Constitution and laws of the Tribe.

(2)     Term of Office. Commission members shall serve for a period of three (3) years from the date of appointment and until a successor is duly appointed and installed. The Commission shall elect from among its members a Chairperson.

(3)     Removal. To maintain the Commission's independence, Commissioners may be removed from office prior to the expiration of their respective terms for serious inefficiency, neglect of duty, misconduct in office, malfeasance in office, or for a conviction of or a plea of nolo contendere to a felony involving fraud, dishonesty or a crime of moral turpitude, or other acts that would render a Commissioner unqualified for his/her position by a majority vote of the Tribal Council. Prior to removal, such Commissioner shall be granted a hearing before the Tribal Council, and (b) given a written notice of the specific charges against him or her at least ten (10) days prior to such hearing. Any allegations of neglect of duty, misconduct, malfeasance, or other acts that would render a Commissioner unsuitable for his/her position must be substantiated by a preponderance of the evidence. Commissioners subject to removal will be given an opportunity to provide evidence rebutting the grounds for their proposed removal before the removal is considered. A vote of the Tribal Council on the validity of the removal shall be final and not subject to further appeal.

(4)     Conflict of Interest. No member of the Commission may engage in any business which is subject to regulation by the provisions of this Ordinance.

Section 104. License required.

No person shall operate a Consumer Finance Services business within the jurisdiction of the Otoe-Missouria Tribe unless the person is licensed as provided in the Otoe-Missouria Tribe Consumer Finance Services Ordinance, save and except American Web Loan, Inc. (AWL) established pursuant to the laws of the Tribe which shall be granted a license upon its inception. AWL shall be subject to all other terms, conditions, rules and regulations found herein.

Section 105. Application for license; form; contents; criminal history record information check.

(1)     An applicant for a license shall submit an application, under oath, to the Commission on forms prescribed by the Commission. The forms shall contain such information as the Commission may prescribe, including, but not limited to:

    (a)     The applicant's financial condition;

    (b)     The qualifications and business history of the applicant and of its officers, Directors, shareholders, partners, or members;

    (c)     Whether the applicant or any of its officers, directors, shareholders, partners, or members have ever been convicted of any (i) misdemeanor involving fraud or violation of law governing the consumer finance business or any business of a similar nature or (ii) felony;

2

(d) Whether the applicant or any of its officers, directors, shareholders, partners, or members have ever been permanently or temporarily enjoined by a court of competent jurisdiction from engaging in or continuing any conduct or practice involving any aspect of a consumer finance service or any business of a similar nature;

(e) A description of the applicant's proposed method of doing business; and

(f) The applicant's social security or tax identification number.

Section 106. Application; fee.

The application required by Section 105 shall be accompanied by:

(1) A nonrefundable application fee of five hundred dollars;

Section 107. License; issuance; conditions.

The Commission shall issue a license to an applicant, if, after any investigation of the applicant, the Commission determines that:

(1) The experience, character, and general fitness of the applicant and its officers, directors, shareholders, partners, or members are such as to warrant the belief that the applicant will conduct the consumer finance services business honestly, fairly, and efficiently;

(2) The applicant and its officers, directors, shareholders, partners, or members have not been convicted of a felony or misdemeanor in this state or any other jurisdiction which would indicate moral turpitude on the part of the applicant;

(3) The applicant is financially responsible and will conduct the business pursuant to the Consumer Finance Services Ordinance; and

(4) The applicant has assets of at least twenty-five thousand dollars available for operating the consumer finance services business.

Section 108. Application for license; timely action of Commission required; appeal.

The Commission shall approve or deny an application for a license by written order not more than thirty days after the filing of a substantially complete application. Failure of the Commission to act on a substantially complete application within thirty days shall constitute denial of the application. Any decision of the Commission issued pursuant to this ordinance may be appealed to the Tribal Council.

Section 109. License; posting; renewal; fee.

3

A license issued pursuant to the Consumer Finance Services Ordinance shall be conspicuously posted at the licensee's place of business. All licenses shall remain in effect until the next succeeding December 1, unless canceled, suspended, or revoked by the Commission or surrendered by the licensee. Licenses may be renewed annually by filing with the Commission a renewal fee of two hundred fifty dollars and an application for renewal containing such information as the Commission may require to indicate any material change in the information contained in the original application or succeeding renewal applications.

## Section 110. Surrender of license; effect.

A licensee may surrender a Consumer Finance Services license by delivering to the Commission written notice that the license is surrendered. The surrender shall not affect the licensee's civil or criminal liability for acts committed prior to such surrender, affect the liability of the surety on the bond, or entitle such licensee to a return of any part of the annual license fee or fees. The Commission may establish procedures for the disposition of the books, accounts, and records of the licensee and may require such action as he or she deems necessary for the protection of the makers of checks which are outstanding at the time of surrender of the license.

## Section 111. Licensee: duty to inform Commission; when.

A licensee shall be required to notify the Commission in writing within thirty days after the occurrence of any material development, including, but not limited to:

(1)     Bankruptcy or corporate reorganization;

(2)     Business reorganization;

(3)     Institution of license revocation procedures by any other state or jurisdiction;

(4)     The filing of a criminal indictment or complaint against the licensee or any of its officers, directors, shareholders, partners, members, employees, or agents; or

(5)     A felony conviction against the licensee or any of the licensee's officers, directors, shareholders, partners, members, employees, or agents

## Section 112. License: not transferable or assignable.

A license issued pursuant to the Consumer Finance Services Ordinance shall not be transferable or assignable.

## Section 113. Change in control of licensee; approval required.

The prior written approval of the Commission shall be required whenever a change in control of a licensee is proposed. Control in the case of a corporation shall mean (1) direct or indirect ownership or the right to control ten percent or more of the voting shares of the corporation or (2) the ability of a person or group acting in concert to elect a majority of the directors or otherwise effect a change in policy. Control in the case of any other entity shall mean any change in the principals of the organization, whether active or passive. The Commission may require such information, as he or

4

she deems necessary to determine whether a new application is required. The person or persons requesting such approval shall pay costs incurred by the Commission in investigating a change of control request.

## Section 114. Licensee; principal place of business; change of location; branch offices; approval required; fee.

A licensee may offer a consumer finance business only at an office designated as its principal place of business in the application. The licensee shall maintain its books, accounts, and records at its designated principal place of business. A licensee may change the location of its designated principal place of business with the prior written approval of the Commission. The Commission may establish forms and procedures for determining whether the change of location should be approved.

## Section 115. Operating with other business; conditions.

A licensee may operate a Consumer Finance Services business at a location where any other business is operated or in association or conjunction with any other business if:

(1)     The books, accounts, and records of the consumer finance services business are kept and maintained separate and apart from the books, accounts, and records of the other business; and

(2)     The other business is not of a type, which would tend to conceal evasion of the Consumer Finance Services Ordinance. If the Commission deter      mines upon investigation that the other business is of a type which would conceal evasion of the act, the Commission, shall order such licensee to cease the operation of the other business at such location.

## Section 116. Licensee; written notice; contents; fees, charges, and penalties: posting required.

(1)     Every licensee shall, at the time any Consumer Finance Services transaction is made, give to the maker of the check, or if there are two or more makers, to one of them, or the borrower, a notice written in plain English disclosing:

    (a)     The fee to be charged for the transaction;

    (b)     The date on which the check will be deposited or presented for negotiation or the date the borrower's bank account will be debited; and

    (c)     Any penalty which the licensee will charge if the check is not negotiable or the borrower's account cannot be debited on the date agreed upon.

## Section 117. Commission: examination of licensee; costs.

The Commission may examine the books, accounts, and records of each licensee no more often than annually, except as provided in Section 118. The costs of the Commission incurred in an examination shall be paid by the licensee.

5

Section 118. Alleged violations; Commission; powers and duties.

(1) The Commission may examine or investigate complaints about or reports of alleged violations of the Consumer Finance Services Ordinance or any rule, regulation, or order of the Commission thereunder. The Commission may order the actual cost of such examination or investigation to be paid by the person who is the subject of the examination or investigation, whether the alleged violator is licensed or not.

(2) The Commission may publish information concerning any violation of the act or any rule, regulation, or order of the Commission under the act.

(3) For purposes of any investigation, examination, or proceeding under the act, the Commission may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records which the Commission deems relevant or material to the examination, investigation, or proceeding.

(4) In the case of refusal to obey a subpoena issued to any person, the Otoe-Missouria Tribal Court, upon application by the Commission, may issue an order requiring such person to appear before the Commission and to produce documentary evidence if so ordered to give evidence on the matter under investigation or in question. Failure to obey the order of the court may be punished by the court as contempt.

(5) Upon receipt by a licensee of a notice of investigation or inquiry request for information from the department, the licensee shall respond within thirty calendar days. Each day a licensee fails to respond as required by this subsection shall constitute a separate violation.

(6) If the Commission finds, after notice and opportunity for hearing, that any person has violated subsection (5) of this Section, the Commission may order such person to pay (a) an administrative fine of not more than one thousand dollars for each separate violation and (b) the costs of investigation. All fines collected by the department pursuant to this subsection shall be remitted to the Tribal Treasurer for such use as may be determined by the Tribal Council.

(7) If a person fails to pay an administrative fine and the costs of investigation ordered pursuant to subsection (6) of this section, a lien in the amount of such fine and costs may be imposed upon all assets and property of such person within the jurisdiction of the Tribe and may be recovered in a civil action by the Commission. The lien shall attach to any other property of such person when notice of the lien is filed against the property with the [designated Tribal officer]. Failure of the person to pay such fine and costs shall constitute a separate violation of the Consumer Finance Services Ordinance.

Section 119. Licensee; disciplinary actions; failure to renew.

(1) The Commission may, following notice and a hearing, suspend or revoke any license issued pursuant to the Consumer Finance Services Ordinance if he or she finds:

(a)     A licensee or any of its officers, Commissions, partners, or members has knowingly violated the act or any rule, regulation, or order of the Commission thereunder;

(b)     A fact or condition existing which, if it had existed at the time of the original application for such license, would have warranted the Commission to refuse to issue such license; or

(c)     A licensee has abandoned its place of business for a period of sixty days or more.

(2)     Except as provided in this Section, a license shall not be revoked or suspended except after notice and a hearing.

(3)     If a licensee fails to renew its license as required by Section 109 and does not voluntarily surrender the license pursuant to Section 110, the Commission may issue a notice of expiration of the license to the licensee in lieu of revocation proceedings.

(4)     Revocation, suspension, cancellation, or expiration of a license shall not impair or affect the obligation of a preexisting lawful contract between the licensee and any person, including a maker of a check.

(5)     Revocation, suspension, cancellation, or expiration of a license shall not affect civil or criminal liability for acts committed before the revocation, suspension, cancellation, or expiration.

### Section 120. Cease and desist order; procedure; appeal.

(1)     If the Commission believes that any person has engaged in or is about to engage in any act or practice constituting a violation of the Consumer Finance Services Ordinance or any rule, regulation, or order of the Commission, the Commission may issue a cease and desist order.

(2)     Upon entry of a cease and desist order the Commission shall promptly notify in writing all persons to whom the order is directed that it has been entered and of the reasons for the order. Any person to whom the order is directed may in writing request a hearing within fifteen business days after the date of the issuance of the order. Upon receipt of such written request, the matter shall be set for hearing within thirty business days after receipt by the Commission, unless the parties consent to a later date or the hearing officer sets a later date for good cause. If a hearing is not requested within fifteen business days and none is ordered by the Commission, the order of the Commission shall automatically become final and shall remain in effect until modified or vacated by the Commission. If a hearing is requested or ordered, the Commission, after notice and hearing, shall issue his or her written findings of fact and conclusions of law and may affirm, vacate, or modify the order.

(3)     The Commission may vacate or modify an order if he or she finds that the conditions which caused its entry have changed or that it is otherwise in the public interest to do so. Any person aggrieved by a final order of the Commission may appeal the order to the Otoe-Missouria Tribal Court.

### Section 121. Injunction, restraining order, or writ of mandamus.

If the Commission believes that any person has engaged in or is about to engage in any act or

practice constituting a violation of the Consumer Finance Services Ordinance or a violation of any rule, regulation, or order of the Commission thereunder, the Commission may initiate an action in Otoe-Missouria Tribal Court to enjoin such acts or practices and to enforce compliance with the ordinance or any order under the ordinance. Upon a proper showing a permanent or temporary injunction, restraining order, or writ of mandamus shall be granted or a receiver or conservator may be appointed for the defendant's assets. The Commission shall not be required to post a bond.

Section 122. Administrative fine; lien; failure to pay; separate violation.

(1)     If the Commission finds, after notice and hearing in accordance, that any person has violated the Consumer Finance Services Ordinance or any rule, regulation, or order of the Commission thereunder, the Commission may order such person to pay (a) an administrative fine of not more than five thousand dollars for each separate violation and (b) the costs of investigation.

(2)     If a person fails to pay an administrative fine and the costs of investigation ordered pursuant to subsection (1) of this Section, a lien in the amount of such fine and costs may be imposed upon all assets and property of such person within the jurisdiction of the Tribe and may be recovered in a civil action by the Commission. Failure of the person to pay such fine and costs shall constitute a separate violation of the Ordinance.

Section 123. Fees, charges, costs, and fines; distribution.

All fees, charges, costs, and fines collected by the Commission under the Consumer Finance Services Ordinance shall be remitted to the Tribal Treasurer for use as determined by the Tribal Council.

Section 124. Personal jurisdiction.

(1)     Obtaining a license pursuant to Consumer Finance Services Ordinance shall constitute consent to tribal jurisdiction and sufficient contact with the Tribe for the exercise of personal jurisdiction over the licensee in any action arising out of the licensee's activities within the jurisdiction of the Tribe.

(2)     Obtaining a loan, cash advance, or any other type of consumer financing, from any licensee where the loan, cash advance, or financing was approved by the licensee on the reservation of the Otoe-Missouria Tribe in Oklahoma shall constitute consent to tribal jurisdiction and sufficient contact with the Tribe for the application of Tribal law and regulations including, but not limited to, the Consumer Finance Services Ordinance, to the loan, cash advance, or consumer financing transaction.

Section 125. Commission; rules and regulations; additional powers.

The Commission may adopt and promulgate rules and regulations and issue orders, rulings, findings, and demands as may be necessary to carry out the purposes of the Consumer Finance Services Ordinance subject to approval by the Tribal Council.

8

## CERTIFICATION

We, the undersigned, Chairman and Secretary of the Otoe-Missouria Tribal Council, de hereby certify by signature, that the above and foregoing Resolution was given due consideration on this 10th day of February, 2010 with a quorum present and a vote of:

_4_ FOR, _0_ AGAINST, _0_ ABSENT, and _3_ ABSTAINING,

Thereby:      [√] APPROVING      [ ] DISAPPROVING, this Resolution.

(SEAL)

John R. Shotton
Chairman

ATTEST _____
Barbara Walton, Secretary

# EXHIBIT D

# OPERATING AGREEMENT
## of
## GREAT PLAINS LENDING, LLC

### An Otoe-Missouria Tribe of Indians Limited Liability Company

THIS OPERATING AGREEMENT for GREAT PLAINS LENDING, LLC, an Otoe-Missouria Tribe of Indians company (the "Company"), is made and entered into and effective as of _____ 20___.

### RECITALS

The Member(s) acknowledge the following:

The Otoe-Missouria Tribe of Indians desires to form a limited liability company for the purpose of carrying on a for-profit business and to further the economic goals and initiatives of the Tribe.

The Company acting for the Tribe desires to set forth in writing the terms by which the Company will be organized and operated.

## ARTICLE I
## DEFINITIONS, NAME AND TERM

1.1. Definitions. In addition to the terms defined elsewhere in this Operating Agreement the following definitions shall apply:

a. "Act" means the Otoe-Missouria Tribe of Indians Limited Liability Company Act, as amended from time to time, and any successor to such statute.

b. "Operating Agreement" means the operating agreement of Great Plains Lending, LLC, as amended from time to time.

c. "Articles of Organization" mean the Articles of Organization of the Company filed with the Tribal Secretary, as amended from time to time.

d. "Board" means the Board of Directors or Directors of the Company acting pursuant to the authority conferred upon them by this Operating Agreement.

e. "Cash Flow" means all cash receipts of the Company during any year, other than capital contributions of the Tribe, less the sum payments of principal and interest on indebtedness of the Company (including working capital loans), all cash expenditures made in connection with the Company's business including, without limitation, capital expenditures, and all payments to Reserves to the extent such payments and expenditures are made from such cash receipts. Cash Flow shall be determined separately for each fiscal year.

f. "Company" means Great Plains Lending, LLC, an Otoe-Missouria Tribe of Indians

1

limited liability company.

    g. "Fiscal Year" means the Company's fiscal year.

    h. "Tribal Council" means the Tribal Council of the Otoe-Missouria Tribe of Indians.

    i. "Director(s)" means one or more of the persons appointed to manage the Company under Article III.

    j. "Member" means the Tribe as the sole Member of the Company.

    k. "Chairman" means the Chairman of the Tribe.

    l. "Profits and Losses" mean the income or loss of the Company determined in accordance with Generally Accepted Accounting Principles ("GAAP").

    m. "Reserves" mean, with respect to any fiscal year, any funds set aside or amount allocated during such year to reserves for Company expenses, both ordinary and capital, liabilities and operations, subject to the approval of the Board.

    n. "Tribe" means the Otoe-Missouria Tribe of Indians.

    1.2. <u>Formation</u>. The Company was organized by executing and filing the Articles of Organization with the Tribal Secretary pursuant to the Act.

    1.3. <u>Name and Principal Place of Business</u>. The name of the Company is Great Plains Lending, LLC. The principal place of business of the Company is the principal office as listed below or such other place as the Board designates from time to time.

    1.4. <u>Registered Office and Registered Agent</u>. The Company's principal office is located at 8151 Highway 177, Red Rock, OK 74651, and its registered agent at such address is a Company Director. The Company may change its registered office and/or registered agent from time to time as provided under the Act.

    1.5. <u>Term</u>. The term of the Company shall be perpetual, or until the Company is dissolved or merged in accordance with the provisions of this Operating Agreement and/or the Act.

## ARTICLE II
## BUSINESS OF THE COMPANY

    2.1. The business of the Company shall be:

    a. To accomplish any lawful purpose which shall at any time appear conducive or expedient for the protection or benefit of the Company and its assets;

    b. To exercise all the powers necessary to or reasonably connected with the Company's

2

business, which may be legally exercised by limited liability companies under the Act; and

c. To engage in all activities necessary, customary, convenient, or incident to any of the foregoing.

## ARTICLE III
## DIRECTORS

3.1. <u>Authority of Director</u>. Except as otherwise provided in this Operating Agreement, and subject to the consent or approval of the Tribal Council with respect to those matters requiring such consent or approval under the terms of this Operating Agreement, the management of the Company shall be vested in the Board of Directors appointed in accordance with Section 3.5. The Directors shall exercise their management authority over the Company as provided in this Operating Agreement.

3.2. <u>Roles of Individual Directors</u>.

a. In addition to their collective management responsibility, which shall be exercised as described in Section 3.3 of this Operating Agreement, each Director shall possess the particular authority and discharge the specific responsibilities as the Board may delegate to the individual Director.

b. The authority and responsibility delegated among the Directors may include:

(i) developing strategic plans; (ii) developing business plans and projections; (iii) formulating marketing programs; (iv) scheduling and supervision of the Company's work crews; (v) purchasing materials and supplies required to perform the Company's contracts; (vi) bidding individual work projects for the Company; (vii) keeping all financial and business records of the Company; (viii) making any and all filings and registrations required by jurisdictions outside of the Tribe in which the Company operates; (ix) preparing reports and other communications with the Tribe; and (x) taking such other administrative action as shall be required to operate the Company.

c. The Board shall choose a Chairperson and Chief Executive from among the Directors. The Chairperson shall have voting authority over all matters coming before the Board.

d. The Directors may delegate their responsibilities to officers or other personnel of the Company, but shall continue to be responsible for the discharge of the delegated authority. A Director may serve as an officer in addition to their position as a Director.

3.3. <u>Director Meetings</u>. The Directors shall meet at least monthly, or at the request of any of them, to (i) discuss their individual activities and responsibilities; (ii) by majority vote, to authorize major business actions, subject to Legislative consent or approval where specifically required by this Operating Agreement; (iii) by majority vote, adopt projections and business plans; and (iv) review and monitor achievement of goals and objectives described in the Company's business plans and projections.

3

3.5. Appointment and Replacement of Directors. The Directors of the Company shall be appointed by the Tribal Council. Any Director may be removed at any time by the Tribal Council, with or without cause, provided that a successor to such Director is appointed in accordance with this Section. Directors shall not serve for s specified term, and shall remain in office until they resign or are replaced. The initial number of Directors of the Company shall be five (5). Only such persons who have the experience and background to effectively manage the business and the affairs of the Company shall be appointed to the Board.

## ARTICLE IV
## CAPITAL

4.1. Initial Contributions to Capital by Members. On the date hereof, the Tribe has contributed sufficient capital and resources to allow for the ongoing business of the Company.

4.2. No Further Liability. The Tribe shall not be required to make any additional capital contributions, and the Tribe shall have no liability to creditors of the Company.

4.3. Working Capital Contributions and Loans. It is intended that the Company will operate separately from the Tribe and will not require continuing financial support from the Tribe. However, it may be necessary to obtain funding for working capital and/or capital acquisitions by the Company. If independent financing facilities are not available to the Company, the Tribe may provide such funding through loans or capital contributions on such terms and conditions as shall be agreed between the Directors on behalf of the Company and Tribal Council on behalf of the Tribe.

## ARTICLE V
## PROFITS AND LOSSES, DISTRIBUTIONS, CAPITAL ACCOUNTS

5.1. Profits and Losses. All Profits and Losses shall be allocated to the Tribe as the sole Member.

5.2. Distributions Prior to Dissolution. All Cash Flow shall be distributed to the Tribe, at least quarterly unless otherwise approved by the Tribal Council.

5.3. Distribution Upon Dissolution and Winding Up. Upon dissolution and winding up of the Company, the assets of the Company after payment of the debts and obligations of the Company and the funding of any Reserves shall be distributed to the Tribe.

## ARTICLE VI
## COMPENSATION TO DIRECTORS, EMPLOYMENT POLICIES AND BENEFITS

6.1. Generally. Directors shall be entitled to reasonable and competitive compensation for services rendered to the Company, but only to the extent approved in advance by the Board.

6.2. Reimbursement of Expenses. The Company shall reimburse the Directors and other employees for all out-of-pocket expenses they incur or have incurred on behalf of the Company

or in connection with the business of the Company pursuant to policies approved in advance by the Board.

6.3. Employment Policies and Benefits. The Company shall operate in accordance with such personnel policies and procedures and employee compensation and benefit plans as may be formulated by the Directors and approved by the Board, as the same may be amended from time to time.

## ARTICLE VII
## MANAGEMENT

7.1. Management.

a. The business and affairs of the Company shall be managed by its Directors acting as set forth in this Article and in Article III subject to approval and consent of the Board on those matters specified herein. Decisions relating to the business and affairs of the Company, other than those that are clearly routine or incidental to the day-to-day conduct of the Company's business, shall be made by majority vote of the Directors. The Directors are hereby authorized to take any action and make any decision within their areas of authority and delegated to them by the Board pursuant to Section 3.2 that is clearly routine or incidental to the day-to-day conduct of the Company's business. The following types of actions and decisions are not incidental to the day-today conduct of the Company's business and require the consent or approval of the Member(s): (i) selling, disposing of, or leasing the non-inventory assets of the Company having an aggregate value in excess of $50,000; (ii) acquiring any real or personal property with a value in excess of $50,000 other than building materials and supplies obtained in the ordinary course of the Company's business; (iii) incurring debt in excess of $100,000; (iv) making any distributions other than ordinary quarterly distributions to the Tribe; (v) mortgaging, pledging, or otherwise encumbering any assets of the Company; (vi) amending the Articles of Organization or Operating Agreement; (vii) taking or authorizing any act on behalf of the Company that contravenes these Articles; (viii) taking or authorizing any such act which would make it impossible to carry on the ordinary business of the Company; or (ix) taking or authorizing any other action or making any other decision requiring the consent or approval of the Tribal Council as may be set forth in this Operating Agreement.

b. The Directors shall manage and control the business of the Company in accordance with generally accepted business standards and the provisions of Article III, and shall devote such time to the Company's business as shall be reasonably necessary.

c. The Directors shall not be liable, responsible, or accountable in damages or otherwise to the Company for any acts performed or omitted by them in good faith except for acts or omissions which constitute gross negligence or willful misconduct. The Directors shall be indemnified and held harmless by the Company, to the extent of the Company's assets, against obligations and liabilities arising or resulting from or incidental to the management of the Company's affairs, provided that no Director shall be entitled to indemnification hereunder for acts or omissions constituting gross negligence or willful misconduct. Any such indemnification shall only be from the assets of the Company.

5

7.2. <u>Restrictions on Powers of Directors</u>. No Director, attorney-in-fact, employee, or agent of the Company shall have any power or authority to bind the Company in any way, to pledge its credit, to make distributions, or to render it pecuniary liable for any purpose unless authorized to act with respect to such matter in accordance with this Article and Article III.

7.3. <u>Meetings</u>. No annual meeting of the Member(s) is required.   Special meetings of the Member(s), for any purpose or purposes, unless otherwise prescribed by the Act, may be called at any time by the Tribal Council.

7.4. <u>Informal Action</u>. The Directors may take any and all actions which they are required or permitted to take concerning the conduct of the business of the Company without a meeting if the action is evidenced by one or more written consents describing the action take and signed by all of the Directors.

7.5. <u>Administrative and Professional Services</u>. As an entity separate from the Tribe, the Company shall either contract with independent professionals for accounting, legal, and other services which the Company may require; or may contract with the Tribe to obtain such services from the Tribe's internal operating departments on such terms as shall be agreed between the Directors on behalf of the Company and Tribal Council on behalf of the Tribe.

**ARTICLE VIII**
**ACCOUNTING AND BANK ACCOUNTS**

8.1. <u>Books</u>. The Company shall maintain books and records which shall be kept at the principal office of the Company or such other place designated by the Legislature.   The Tribe as sole Member shall have access to and the right to inspect and copy such books and records at any time.

8.2. <u>Accounting and Reports</u>. Within sixty (60) days after the end of each fiscal year, the Directors shall deliver to the Tribe, (i) an audited balance sheet as of the end of such fiscal year and (ii) an audited GAAP.

8.3. <u>Bank Accounts</u>. The Company shall open and maintain bank accounts in which only funds of the Company shall be deposited.   The funds in such accounts shall be disbursed solely for the business of the Company.   Withdrawals from any Company bank account shall be made only upon the signature of such person or persons as the Directors may designate from time to time.

8.4. <u>Method of Accounting</u>. The books and records of the Company shall be maintained on the accrual method of accounting in accordance with GAAP.

**ARTICLE IX**
**DISSOLUTION AND WINDING UP**

9.1. <u>Dissolution</u>. The Company shall dissolve on the happening of any of the following events:

a. Written direction of the Tribal Council to dissolve the Company; or

b. By decree of judicial dissolution of the Tribe's Tribal Court pursuant to the Act.

9.2. <u>Procedure for Dissolution and Winding Up</u>. Upon the dissolution of the Company, a balance sheet shall be prepared by the Company's accountant and furnished to the Tribe within a reasonable time after dissolution. The Directors shall proceed with reasonable promptness to wind up the business of the Company. If the Directors are directed by the Tribal Council to sell Company assets, they shall not be required to do so promptly but shall have discretion to determine the time and manner in which the sale shall be made, giving due regard to general financial and economic conditions.

9.3. <u>Articles of Dissolution</u>. Upon completion of winding up, liquidation, and distribution of assets, the Directors shall file Articles of Dissolution and thereafter the Company shall cease to exist.

## ARTICLE X
## MISCELLANEOUS

10.1. <u>Notices</u>. All notices shall be in writing and deemed given when deposited in the United States Mail, first class postage paid, addressed to the party at his/her then recorded address reflected in the records of the Company.

10.2. <u>Entire Operating Document</u>. These Articles contain the entire statement of the terms and conditions upon which the Company shall be organized and operated and supersedes any prior acts or statements with respect thereto.

10.3. <u>Variations and Pronouns</u>. Each pronoun shall include any gender or number thereof as the identity of its antecedent may require.

10.4. <u>Successors in Interest</u>. Except as otherwise provided, all provisions of this Operating Agreement shall be binding upon, inure to the benefit of and be enforceable by and against the respective heirs, executors, administrators, personal representatives, successors, and assigns of any of the parties affected.

10.5. <u>Execution of Additional Documents</u>. The Directors are authorized to execute and deliver such instruments necessary to comply with any laws, rules, or regulations relating to the formation of the Company or the conduct of business by the Company in any jurisdiction outside of the Tribe.

10.6. <u>Jurisdiction</u>. The Tribal Court shall possess exclusive jurisdiction over all matters and controversies regarding the interpretation and implementation of this Operating Agreement which may arise.

10.7. <u>Counterparts</u>. This Operating Agreement may be executed in several counterparts by the Chairman or Vice-Chairman of the Tribe and each executed counterpart shall be considered an original.

10.8. <u>Captions</u>. The captions at the beginning of the several articles, sections, and subsections of these Articles are not part of the context, but are merely labels to assist in the locating and reading of those sections and subsections and shall be ignored in construing this Operating Agreement.

10.9. <u>Governing Law</u>. This Operating Agreement shall be governed exclusively by its terms and by the laws of the Otoe-Missouria Tribe of Indians, including specifically the Act.

10.10. <u>Severability</u>. If any provision of this Operating Agreement shall be invalid, illegal, or unenforceable, the remainder of this Operating Agreement shall be enforceable to the fullest extent permitted by law. In addition, any provision of this Operating Agreement, which is construed to cause the Company to be taxed as a corporation under the federal tax law shall be repealed, limited, or construed in a manner which will allow the Company to qualify as an entity which is not treated as separate from its owner, the Tribe, for federal tax purposes.

10.11. <u>Creditors</u>. None of the provisions of this Operating Agreement shall be for the benefit of or enforceable by any creditors of the Company.

**ARTICLE XI**
**AMENDMENTS**

11.1. <u>Amendment</u>. These Articles may be amended only by the written action of the Board or Tribal Council.

APPROVED BY: _____

                       Otoe-Missouria Tribe of Indians,
                       Member, by Chairman of the Tribal
                       Council