# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, by Attorney General KATHLEEN G. KANE, | : : : : | CIVIL ACTION<br><br>NO. 14-cv-07139-JCJ |
| *Plaintiff,* | : : | |
| v. | : : | |
| THINK FINANCE, INC., et al. | : : | |
| *Defendants.* | : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE THINK DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULES 17 AND 12 FOR LACK OF CAPACITY TO SUE AND FAILURE TO STATE A CLAIM UPON WHICH <u>RELIEF CAN BE GRANTED</u>

Ira Neil Richards (PA I.D. No. 50879)
Stephen A. Fogdall (PA I.D. No. 87444)
Arleigh P. Helfer III (PA I.D. No. 84427)
Shannon L.C. Ammon (PA I.D. No. 318939)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market St., Suite 3600
Philadelphia, PA 19103
(215) 751-2503
Email: irichards@schnader.com

James R. McGuire (*Pro hac vice*)
Angela E. Kleine (*Pro hac vice*)
Elizabeth Balassone (*Pro hac vice*)
Lauren Wroblewski (*Pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000
Email: jmcguire@mofo.com

Walter W. Cohen (PA I.D. 12097)
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
200 Locust Street, Suite 400
Harrisburg, PA 17101-1508
(717) 234-9730
Email: walter.cohen@obermayer.com

# TABLE OF CONTENTS

**PAGE**

BACKGROUND ................................................................................................. 2

    A. Procedural Background.......................................................................... 2

    B. Summary of the Statutory Regime for Regulation of Financial Activities........................ 3

        1. The Department of Banking................................................................ 3

        2. Section 733-506 .......................................................................... 4

        3. The Attorney General .................................................................... 5

    C. The Relevant Allegations of the First Amended Complaint and the Purported Usury Scheme ........................................................................................... 5

        1. The Think Defendants..................................................................... 6

        2. The Alleged Two-Part Scheme To Evade Pennsylvania Usury Law ........................... 7

            a. The Alleged "Rent-A-Bank" Scheme ................................................... 8

            b. The Alleged "Rent-A-Tribe" Scheme ................................................... 8

        3. The Claims Against the Think Defendants .................................................. 10

ARGUMENT ................................................................................................. 11

I. THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 17 AND RULE 12(B)(6) BECAUSE THE ATTORNEY GENERAL LACKS THE POWER TO BRING THIS CASE........................................................................ 11

    A. The Office of the Attorney General Lacks the Power To Initiate This Case on Its Own ............................................................................................... 13

        1. The Attorney General May Initiate Only Those Proceedings That the Law Says the Attorney General May Initiate ............................................................. 13

        2. The Department, Not the Attorney General, Has Sole Regulatory and Enforcement Authority for Conduct Incidental to the Financial Activities at Issue in the Amended Complaint ...................................................................... 14

        3. According to the Allegations of the First Amended Complaint, Section 733-506 Applies .................................................................................... 16

4.  The Conduct Alleged by the Attorney General and the Premises of the Attorney General's Claims All Relate to or Are Incidental to the Activities of Licensees, and Foreign Financial Institutions Within the Exclusive Jurisdiction of the Department.................................................................................................. 18

5.  Count VI of the First Amended Complaint Must Be Dismissed Pursuant to 71 P.S. § 733-506(B) ................................................................................... 22

B.  Counts I-V Must Be Dismissed With Prejudice Because the Department Cannot Assert Claims Under the COA, FCEUA, or the UTPCPL .............................................. 23

CONCLUSION.............................................................................................................. 29

PHDATA 5420820_3

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*American Guaranty Ins. Co. v. Asbestos Control, Inc.*,
    785 F. Supp. 65 (M.D. Pa. 1992) ........................................................................12

*Buck v. The Hampton Township Sch.*,
    452 F.3d 256 (3d Cir. 2006) ...............................................................................10

*Commonwealth v. Carsia*,
    517 A.2d 956 (Pa. 1986) ...............................................................................5, 13

*Commonwealth v. Ramos*,
    83 A.3d 86 (Pa. 2013) .........................................................................................26

*Commonwealth v. Rushing*,
    99 A.3d 416 (Pa. 2014) .......................................................................................16

*Frishman v. Dep't of State*,
    592 A.2d 1389 (Pa. Commw. Ct. 1991) ............................................................13

*Klebanow v. New York Produce Exch.*,
    344 F.2d 294 (2d Cir. 1965).................................................................................12

*Pa. Dep't of Banking v. NCAS of Delaware, LLC*,
    995 A.2d 422 (Pa. Commw. Ct. 2010) ............................................23, 24, 26, 27

*Pennsylvania Bankers Ass'n v. Commonwealth of Pennsylvania,*
  *Bureau of Consumer Protection,*
    427 A.2d 730 (Pa. Commw. Ct. 1981) ........................................................15, 25

*Pennsylvania Bankers Ass'n v. Sec'y of Banking*,
    392 A.2d 1319 (Pa. 1978) ...................................................................................14

*Pittsburgh v. Allegheny Valley Bank of Pittsburgh*,
    388 A.2d 1098 (Pa. Commw. Ct. 1978) ......................................................15, 21

*Pittsburgh v. Allegheny Valley Bank of Pittsburgh*,
    412 A.2d 1366 (Pa. 1980) .............................................................................14, 15

*Pysh v. Security Pacific Housing Serv.*,
    610 A.2d 973 (Pa. Super. Ct. 1992).....................................................................14

*Sweeney v. Tucker*,
    375 A.2d 698 (Pa. 1977).......................................................................................23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..........................................................................................10

*Toscano v. Nat'l Auto. Dealers Ass'n*,
    Civ. A. No. 14-763, 2015 U.S. Dist. LEXIS 111456 (E.D. Pa. Aug. 24, 2015).....................10

*Wagaman v. Attorney General*,
    872 A.2d 244 (Pa. Commw. Ct. 2005) ...............................................................14

*Warren v. Mandel*,
    Civ. A. No. 11-6050, 2012 U.S. Dist. LEXIS 85393 (E.D. Pa. June 20, 2012) .....................12

*Warren Gen. Hosp. v. Amgen Inc.*,
    643 F.3d 77 (3d Cir. 2011)...............................................................................12

## <u>Constitutional Provisions, Statutes, and Court Rules</u>

### FEDERAL

12 U.S.C. § 1843(k)(4) .......................................................................................22

12 U.S.C. § 5311(a)(6)........................................................................................22

Federal Rules of Civil Procedure
    Rule 17 ........................................................................................................12

### STATE

Constitution of Pennsylvania
    Article IV § 4.1 .............................................................................................13

1 Pa. C.S. § 1903................................................................................................14, 22

1 Pa. C.S. § 1921................................................................................................16, 22

1 Pa. C.S. § 1922................................................................................................19

1 Pa. C.S. § 1933................................................................................................25-26

1 Pa. C.S. § 1936................................................................................................25

7 P.S. § 6211 ....................................................................................................3, 4, 15

7 P.S. § 6212 ....................................................................................................3, 4, 15, 24

18 Pa. C.S. § 911................................................................................................2, 11, 24

41 P.S. § 506 ..............................................................................................3, 15, 24, 26

71 P.S. § 421 ..............................................................................................................3

71 P.S. § 423 ..............................................................................................................3

71 P.S. § 732-101 .......................................................................................................5

71 P.S. § 732-204 ..................................................................................................5, 14

71 P.S. § 733-2 ........................................................................................................17

71 P.S. § 733-202 .......................................................................................................3

71 P.S. § 733-506 ............................................................................................. *passim*

73 P.S. § 201-1 ...........................................................................................................2

73 P.S. § 201-4 .........................................................................................................24

73 P.S. § 201-9.2 ......................................................................................................24

73 P.S. § 2181 ............................................................................................................7

73 P.S. § 2270.1 ....................................................................................................2, 11

## **Other Authorities**

Letter from Glenn E. Moyer, Secretary of Banking and Securities, to Pennsylvania
    Banks (Nov. 14, 2012) ...............................................................1, 15, 20, 27

Oct. 17, 2012 Sen. Legis. J. 990 (comments of Senator Ferlo) ...............................1, 16

80 Fed. Register 9 (Jan. 14, 2015) ..........................................................................17

The First Amended Complaint ("FAC") must be dismissed with prejudice because the Attorney General lacks the power to bring this case.  When the Pennsylvania General Assembly enacted provisions implementing the federal Consumer Financial Protection Act of 2010, it confirmed that the Department of Banking is the exclusive regulator of financial activities, including the lending at issue here.  *See* 71 P.S. § 733-506 (2012) (effective December 2012).  According to the Department of Banking, Section 733-506 gives it "sole and exclusive jurisdiction" to decide whether to bring civil claims that "may affect" financial activities or regulation of financial activities in Pennsylvania.[1]  The Attorney General completely ignores Section 733-506 when she alleges—wrongly—that she can assert the Commonwealth's civil enforcement authority either under state law or under the federal Dodd-Frank Act against the Think Defendants in this case.  In fact, in opposing the enactment of Section 733-506 in 2012, the Attorney General's office argued that "[the] power of the office of the [Attorney General] to investigate and prosecute civil actions against financial institutions doing business within the Commonwealth" would be eliminated.  Oct. 17, 2012 Sen. Legis. J. at 990 (comments of Senator Ferlo).

The FAC does not allege that the Department of Banking has authorized the Attorney General to bring this case.  Further, even if the Attorney General obtained authorization now, she could not bring claims that the Department of Banking itself cannot bring: claims under Pennsylvania's Corrupt Organizations Act, Unfair Trade Practices and Consumer Protection Law, and Fair Credit Extension Uniformity Act.  By filing this case, the Attorney General is frustrating the General Assembly's manifest intent to place financial activities in general, and

---

[1] *See* Letter from Glenn E. Moyer, Secretary of Department of Banking and Securities, to Pennsylvania Banks (Nov. 14, 2012) (the "Secretary's Letter"), concerning the BLMP (available for viewing and downloading at http://www.dobs.pa.gov/Documents/Secretary%20Letters/Banks/11.14.12%20Secretary_s%20Letter%20Re_%20Banking%20Law%20Modernization%20Package.pdf (last visited Aug. 28, 2015)).

civil enforcement litigation about financial activities in particular, within the Department of Banking's exclusive authority.

## BACKGROUND

### A.    Procedural Background

The Attorney General filed this action on November 13, 2014, in the Court of Common Pleas of Philadelphia.  The complaint purported to allege violations of Pennsylvania's Corrupt Organizations Act ("COA"), 18 Pa. C.S. § 911, *et seq*., Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq*., and the Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.1, *et seq*.

The Attorney General's complaint challenged the Think Defendants'[2] provision of services to a federally regulated bank and three sovereign Native American Tribes that offered loans and cash advances over the Internet.  The Attorney General alleged that the Think Defendants' contractual arrangements with the bank and Tribes were intended "[t]o evade licensure, usury and consumer protection laws" that the Attorney General alleges regulate loans offered to Pennsylvania consumers by out-of-state financial institutions.  Compl. ¶ 2.

On December 17, 2014, the Think Defendants timely removed the action to this Court. The Attorney General moved to remand the case on March 11, 2015, contending that removal was improper because the complaint contained no federal claim on its face.  This Court denied the Attorney General's motion to remand, finding that the Attorney General's claims necessarily implicated a substantial federal question.  May 29, 2015 Order at n.1.

---

[2] Think Finance, Inc., TC Loan Service, LLC, and Financial U, LLC were named in the complaint, Tailwind Marketing, LLC, and TC Decision Sciences, LLC collectively are the "Think Defendants."  Of the Think Defendants, Think Finance, Inc., TC Loan Service, LLC, and Financial U, LLC were named in the complaint, and the FAC added Tailwind Marketing, LLC and TC Decision Sciences, LLC.

B.     **Summary of the Statutory Regime for Regulation of Financial Activities**

1.     **The Department of Banking**

The General Assembly created the Department of Banking (the "Department") to administer laws pertaining to banks and entities engaged in various financial activities.  *See, e.g.*, 71 P.S. § 421 ("The Department . . . shall, subject to any inconsistent provisions in this act contained, continue to exercise the powers and perform the duties by law vested in and imposed upon the said department . . . ."); 71 P.S. § 423 ("The Department . . . shall enforce and administer the laws of this Commonwealth in relation to all corporations and persons under its jurisdiction, and shall see that the greatest possible safety is afforded to depositors therein or therewith, and to other interested persons."); 71 P.S. § 733-202 (providing for duties of the Department and the power to promulgate rules and regulations to carry the Department of Banking and Securities Code into effect).

The General Assembly granted the Department the authority to administer and enforce the banking laws the Attorney General cites in the FAC, including the Loan Interest Protection Law ("LIPL") and Consumer Discount Company Act ("CDCA").  *See* 41 P.S. § 506(b) & (c) (LIPL); 7 P.S. §§ 6211 & 6212 (CDCA).  Under those statutes, the Department has express investigative and enforcement authority.  *See* 41 P.S. § 506(b)&(c); 7 P.S. §§ 6211 & 6212.

For instance, under the LIPL, the Department is authorized to examine any document or file of any person or make other investigations necessary to administer the law.  *See* 41 P.S. § 506(b).  The Department is authorized to issue subpoenas to require people to appear or produce information for examination or enforcement of the act.  *Id*.  The Department may question witnesses under oath and may apply to enumerated courts to hold those who fail to cooperate or obey a Department subpoena in contempt of court.  *Id*.  If the Department determines that a person has violated the LIPL, then it may suspend or revoke licenses it issued, prohibit or remove the person from working in any capacity in activities regulated by the Department, or order the person to cease and desist from violating the act and make restitution for actual damages to any aggrieved person.  *Id*. § 506(c).

Similarly, under the CDCA, the Secretary of Banking has the power and duty to investigate and examine the business and books of every licensee and every person engaged in business contemplated by the CDCA. *See* 7 P.S. § 6211. The Secretary of Banking further has the authority to revoke licenses upon notice for any violation of the act, rule or regulation, including failure to cooperate with examinations or to make the required annual reports to the Department. *See* 7 P.S. § 6212. The CDCA also authorizes and empowers the Secretary of Banking to issue rules and regulations governing the records to be maintained by licensees and disclosures to be given to consumers, as well as to protect the public and enforce the act. *See id*. The Secretary has the power to compel the attendance and testimony of witnesses and the production of documents and files necessary to investigations under the act on the threat of contempt of court for noncompliance. *See id.*

### 2.    Section 733-506

In October 2012, the General Assembly passed a Banking Law Modernization Package ("BLMP"), which included a new section of the Banking and Securities Code implementing the federal Dodd-Frank Act. *See* 71 P.S. § 733-506. The section applies to all persons and entities subject to jurisdiction of the Consumer Financial Protection Bureau. *See id*. § 733-506(A). The section specifies that only the Department can authorize a suit "with respect to," among others, licensees and foreign financial institutions, and under the provisions available under the Dodd-Frank Act. *See id*. § 733-506(B). Moreover, subsection 733-506(F) specifies that only the Department has the power to bring civil claims incidental to financial activities of, among other categories, licensees and foreign financial institutions. That section provides:

> Nothing in this section may prevent an agency of this Commonwealth . . . from engaging in a civil investigation . . . or commencing civil proceedings before a court of competent jurisdiction to determine compliance with or enforce a statute of this Commonwealth . . . ***not relating to or incidental to the banking or financial activities***, operations or condition of an institution, credit union, ***licensee***, national bank, Federal savings association or ***foreign financial institution*** . . . but ***prior to doing so, the agency or political subdivision shall give notice and***

4

> *consult with the [D]epartment*.  To the extent the [D]epartment
> determines that such actions may affect the banking or financial
> activities, operations or condition . . . of any institution, credit
> union, licensee, national bank, Federal savings association, foreign
> financial institution or a subsidiary of the foregoing; or interfere
> with the regulation of such entities by the [D]epartment, Federal
> regulatory agencies or regulatory agencies of other states, ***the
> [D]epartment shall have sole and exclusive jurisdiction*** to initiate
> or participate in administrative proceedings, or to request that the
> Attorney General initiate or participate in judicial proceedings, to
> enforce such laws or to determine that such proceedings are not in
> the public interest.

71 P.S. § 733-506(F) (emphasis added); *see also* 71 P.S. § 733-506(G) (restricting exercise of

Department powers by any other agency or political subdivision); 71 P.S. § 733-506(H) (section

does not restrict Attorney General from criminal enforcement).

### 3.     The Attorney General

While the Pennsylvania Constitution creates the Attorney General's office, the Attorney

General's authority in the civil sphere is dependent upon a specific grant of authority from the

General Assembly.  *See* Pa. Const. Art. IV § 4.1; *Commonwealth v. Carsia*, 517 A.2d 956, 958

(Pa. 1986).  The Commonwealth Attorneys Act, 71 P.S. §§ 732-101 to 732-506, defines the

Attorney General's powers and duties.  The Attorney General does not have separate,

independent regulatory authority beyond the scope of her statutory grant.  With regard to civil

litigation, the Attorney General essentially is the law firm that represents the Commonwealth and

its agencies upon request.  71 P.S. § 732-204(c) ("The Attorney General shall ***represent*** the

Commonwealth and all Commonwealth agencies and upon request . . . in any action brought by

or against the Commonwealth or its agencies . . . .") (emphasis added).

### C.     The Relevant Allegations of the First Amended Complaint and the Purported Usury Scheme

On its face, the FAC squarely is about Pennsylvania's regulation of financial activities

within the scope of the Department's authority.  The Attorney General summarized her claims in

the FAC's very first paragraph:

> Defendants illegally solicit, arrange, fund, purchase, service and/or collect **loans and cash advances made to Pennsylvania citizens** over the Internet. These loans and cash advances charge well in excess of **the usury ceiling established by Pennsylvania law**, which reflects the **Commonwealth's fundamental policy against predatory consumer lending practices**. Defendants also engage in various forms of unfair, deceptive and abusive conduct **related to that business activity**.

(FAC ¶ 1 (emphasis added); *see also id.* ¶ 2 ("To evade licensure, usury and consumer protection laws . . . the Think Finance Defendants are using affiliations with Native American tribes—as they did, previously, with a rogue bank . . . .").)

According to the FAC, LIPL Section 201 limits the interest rate on loans of less than $50,000 to six percent a year. (*See* FAC ¶ 25.) That cap, the Attorney General claims, "applies to all consumer lenders except those lenders who are licensed under the . . . CDCA." (*Id.* ¶ 26.)

The Attorney General alleges that the plaintiff is the Commonwealth of Pennsylvania, which "asserts and exercises its enforcement powers and authority" "through its Attorney General." (FAC ¶¶ 5, 8.) The Attorney General alleges that the Pennsylvania Constitution makes her "the chief law officer . . . " and that she is designated to enforce the COA, the UTPCPL, and the federal Dodd-Frank Act. (*See id.* ¶¶ 9-11.)

While the Attorney General alleges that the Department has received complaints about Defendants, *see* FAC ¶ 6, the Department is not a party to this case. In addition, the Attorney General has not alleged that the she provided notice to the Department or that the Department authorized this action. The FAC's allegations make no reference to 71 P.S. § 733-506. In contrast, the Attorney General alleges that the she provided notice of the federal Consumer Financial Protection Bureau in connection with the claim asserted under the Dodd-Frank Act. (*See* FAC ¶ 11.)

### 1. The Think Defendants

The FAC alleges that Think Finance, Inc. is a Delaware corporation headquartered in Texas and not registered with the Pennsylvania Department of State Corporation Bureau. (FAC

¶ 12.)  It further alleges that TC Loan Service, LLC is a Delaware limited liability company registered with the Department as a foreign limited liability company that did business in Pennsylvania as a "credit services" licensee from December 29, 2010, to February 1, 2012, using the website www.thinkcash.com.  (*Id*. ¶ 13.)  The Attorney General alleges that Financial U, LLC is a Delaware limited liability company with offices in Texas and not registered with the Pennsylvania Corporation Bureau.  (*Id*. ¶ 17.)

The Attorney General challenges the Department's licensing of the Think Defendants. (*See* FAC ¶ 1.)  The FAC alleges that TC Loan Service had a Pennsylvania license as a "credit services organization" pursuant to the Credit Services Act, 73 P.S. § 2181, *et seq*., from December 29, 2010, to February 1, 2012.  (*See id.* ¶ 13.)  The Attorney General, however, alleges that none of the Think Defendants "are licensed under the CDCA, and thus they are prohibited from making or collecting on any consumer loans to Pennsylvania citizens that charge interest at rates in excess of six percent."  (*Id*. ¶ 30; *see also id.* ¶ 25.)

## 2.    The Alleged Two-Part Scheme To Evade Pennsylvania Usury Law

The FAC alleges that the Think Defendants created and participated in a two-part scheme involving a federally-regulated bank and Native American Tribes in order to make loans at interest rates that exceed Pennsylvania's rate limit in the LIPL allegedly applicable to unlicensed lending.  The FAC alleges that the Think Defendants were unlicensed and therefore subject to a 6% statutory rate cap.[3]  (FAC ¶¶ 26, 30.)

---

[3] As the Think Defendants demonstrate in their accompanying motion to dismiss the First Amended Complaint pursuant to Rule 12(b)(6), the same BLMP that added 71 P.S. § 733-506 removed any rate caps with respect to the lending at issue here, so the entire premise of the First Amended Complaint is wrong.

### a.    The Alleged "Rent-A-Bank" Scheme

First, the Attorney General alleges that, because the Think Defendants were unable to offer short-term loans to Pennsylvania consumers directly, they partnered with First Bank of Delaware ("FBD"), a federally regulated out-of-state bank.  (*See* FAC ¶¶ 36-37.)

The Attorney General's claims depend on allegations of federal and state regulatory action with respect to FBD.  On the federal level, the FAC alleges that, in October 2008, the FDIC issued an administrative order to FBD to cease and desist lending programs "offered, marketed, administered, processed[,] serviced and/or collected by third parties."  (FAC ¶ 38.) On the state level, the Attorney General also alleges that the Department issued an official interpretation in July 2008 that, effective February 1, 2009, it would begin enforcing Pennsylvania's usury restrictions against payday lenders transacting business with Pennsylvania consumers over the Internet.  (*See id* ¶¶ 27-29.)  The Attorney General contends that, "[n]otwithstanding the actions of the FDIC and the . . . Department," the Think Defendants continued loan-related activity involving FBD "beyond February 1, 2009."  (*Id*. ¶ 39.)

### b.    The Alleged "Rent-A-Tribe" Scheme

The Attorney General alleges that the Think Defendants implemented the second step of their purported unlicensed and usurious scheme when FBD went out of business.  The FAC contends that the Think Defendants found Native American tribal partners that played a role similar to the role FBD played in the first part of the alleged usury scheme.  (*See* FAC ¶¶ 43-44.) The Think Defendants purportedly established business relationships with three Native American Tribes: the Chippewa Cree Tribe, the Otoe-Missouria Tribe of Indians, and the Tunica-Biloxi Tribe of Louisiana, each of which has a lending website allegedly operated by the Think Defendants.  (*See id*. ¶ 46.)  The Attorney General alleges that the loans are made by lenders affiliated with each of the Tribes (*see id*. ¶ 47), that the loans are then transferred to a non-tribal entity (*see id*.), and that the Think Defendants "who extract most of the profits as payment for

'services' provided to the [Tribal] lender, are able to hide behind a tribal façade, and to claim the vicarious benefit of whatever legal immunities the tribe enjoys." (*Id.* ¶ 43.)

The Attorney General alleges that the first of these alleged tribal relationships was the "Plain Green" partnership with the Chippewa Cree Tribe, beginning in March 2011 with the Tribe changing an existing tribal loan business into one supported by the Think Defendants. (*See* FAC ¶ 53.) The Think Defendants purportedly transferred existing ThinkCash loans and the ThinkCash customer database to a Plain Green entity. (*See id.* ¶ 55.) The Attorney General alleges that the terms of Tribal loan agreements can be found on the "Loan Cost and Terms" page on the Plain Green website, www.plaingreenloans.com. (*See id.* ¶ 58.) Those terms include a provision in the loan agreement that the "Loan Agreement . . . is subject solely to the exclusive laws and jurisdiction of the Chippewa Cree Tribe of the Rock Boy's Indian Reservation, Montana." (*Id.* ¶ 59.) Furthermore, the provision states that those executing the agreement "hereby acknowledge and consent to be bound to the terms of this Agreement, consent to the sole subject matter and personal jurisdiction of the Chippewa Cree Tribal Court, and further agree that no other state or federal law or regulation shall apply to this Agreement, its enforcement or interpretation." (*Id.*)

The Attorney General alleges that the Think Defendants approached the Chippewa Cree Tribe, "which was already engaged in a small-scale consumer lending venture of its own," with a proposal. (FAC ¶ 53.) An alleged term sheet from the proposal is attached to the FAC as Exhibit D. That document provides that the tribe will adopt a finance code and "provide for the licensing of an arm of the tribe to engage in consumer lending." (FAC, Ex. D at 1.) It also calls for the tribe to implement underwriting criteria "to approve loans that it decides to offer to consumers on a nationwide basis through the internet." (*Id.*) It further calls for the Tribe to "develop documentation for the lending process including an application, a loan agreement, an adverse action letter, and other related documents" complying with various federal legal requirements and regulations. (*Id.*) According to the Attorney General's allegations, the

Chippewa Cree had "two weeks to," among other things, "revise tribal laws to legitimize the defined lending program." (FAC ¶ 54(e).)

The Attorney General alleges that the Think Defendants have a similar relationship with the Otoe-Missouria Tribe, with the lender involved in their relationship being called "Great Plains Lending." (*See* FAC ¶ 60.) The Attorney General also alleges a relationship between the Think Defendants and the Tunica-Biloxi Tribe. (*See id.* ¶ 63.) According to the FAC, the websites for these Tribal lenders have terms and conditions identical to the terms of the Plain Green program, making Tribal law applicable to the loans. (*See id.* ¶¶ 61, 68.)

The Attorney General's allegations incorporate each of the tribal lenders' websites. (*See, e.g.*, FAC ¶¶ 56, 58, 60, 63, 64, 67, 68.) Each of the websites, on the home page, indicates that the loans are made by an arm of the Tribe. (*See* Exs. A (screenshot of www.plaingreenloans.com); B (screenshot of www.greatplainslending.com); & C (screenshot of www.mobiloans.com).)[4] In addition, the Great Plains Lending website notes that the lending is subject to the jurisdiction of the Otoe-Missouria regulatory authority. (*See* Ex. B.)

### 3. The Claims Against the Think Defendants

The FAC purports to allege violations of Pennsylvania's COA (Counts I-III), FCEUA (Count IV), UTPCPL (Count V), and the Dodd-Frank Wall Street Reform and Consumer Protection Act (Count VI). Ultimately, all of these claims depend upon the Attorney General's allegations that the interest charged on the loans made to Pennsylvania consumers was usurious and in violation of the LIPL. Indeed, the Attorney General variously describes the loans to Pennsylvanians as "illegal" and "usurious." *See, e.g.*, *id.* ¶ 2 (alleging that the loans at issue are

---

[4] A court deciding a motion to dismiss may consider documents and materials attached to, integral to, or referred to in a complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Buck v. The Hampton Township Sch.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that a court may review materials referred to in a complaint or integral to a claim); *Toscano v. Nat'l Auto. Dealers Ass'n*, Civ. A. No. 14-763, 2015 U.S. Dist. LEXIS 111456, at *6-*7 n.2 (E.D. Pa. Aug. 24, 2015) (same).

"illegal and abusive loans that flout Pennsylvania . . . law"); ¶ 3 ("illegal and abusive loans"); ¶ 19 ("illegal usurious loans"); ¶ 57 ("usurious loans"): ¶ 74 ("[u]surious loans").

For example, the Attorney General's first three claims for violations of the COA, 18 Pa. C.S. § 911, are premised on the alleged underlying "racketeering activity" of collecting interest at a rate that exceeds 25% per year. (FAC ¶¶ 92, 96, 105, 112.) Likewise, the Attorney General's fourth claim, for violation of the FCEUA, 73 P.S. § 2270.1, *et seq*., is predicated upon alleged collection of interest in excess of the limits of Pennsylvania's usury law, whether as debt collectors or creditors. (*See id*. ¶¶ 121-23.) Under the Attorney General's fifth claim, the Think Defendants are alleged to have violated the UTPCPL, 73 P.S. § 201-1, *et seq*., "because the credit offered is unlawful in Pennsylvania." (*Id.* ¶ 131.) Finally, under the new claim for violation of the Dodd-Frank Act, the Attorney General alleges that the Think Defendants extended credit in "violation of an explicit state law prohibition against any unlicensed lending to consumers in excess of six percent interest." (*Id*. ¶ 150d.)

## ARGUMENT

## I.    THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 17 AND RULE 12(B)(6) BECAUSE THE ATTORNEY GENERAL LACKS THE POWER TO BRING THIS CASE

Under Pennsylvania law, the Attorney General does not enjoy unbridled power to act as a second, independent regulator of financial activities. Rather, when it comes to financial activities such as consumer lending, the General Assembly has given the Department sole responsibility for determining whether to take enforcement actions through civil litigation. The Attorney General's FAC advances claims that usurp and impinge upon the exclusive authority of the Department. These claims are contrary to the General Assembly's intent, confirmed in 71 P.S. § 733-506. Even if the Department authorizes the Attorney General to proceed as its lawyer, the case cannot include claims under the COA, UTPCPL, or FCEUA since the Department cannot assert those claims.

11

Federal Rule of Civil Procedure 17, in conjunction with Federal Rule of Civil Procedure 12(b)(6), allows the Court to dismiss a complaint where the plaintiff lacks the ability to bring the case. In pertinent part, Rule 17 provides that "Capacity to sue or be sued is determined as follows: . . . for all other parties, by the law of the state where the court is located . . . ." Fed. R. Civ. P. 17(b)(3). Although Rule 9 provides that capacity to sue may be raised by a party by specific denial, courts entertain Rule 12 motions to dismiss based on a plaintiff's lack of capacity to sue. *See, e.g.*, *Klebanow v. New York Produce Exch.*, 344 F.2d 294, 296 n.1 (2d Cir. 1965) (Friendly, J.) (noting that, although the defense of lack of capacity is not expressly mentioned in Rule 12(b), it is properly raised by a Rule 12(b)(6) motion); *American Guaranty Ins. Co. v. Asbestos Control, Inc.*, 785 F. Supp. 65, 66 (M.D. Pa. 1992) (granting Rule 12(b) motion to dismiss for lack of capacity to sue).

A motion under Rule 12(b)(6) may be granted "if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011); *see also Warren v. Mandel*, Civ. A. No. 11-CV-6050, 2012 U.S. Dist. LEXIS 85393, at *7 (E.D. Pa. June 20, 2012) (Joyner, J.) (noting the complaint must be "read in the light most favorable to the plaintiff, taking all well-pleaded, material allegations in the complaint as true").

Here, taking the allegations of the complaint as true, the Attorney General has failed to state a claim upon which relief can be granted because Pennsylvania law makes it clear that the Attorney General cannot bring a case without the Department's say so. The Department is *not* a party to the case. The FAC alleges only that the Attorney General claims—wrongly—to have her own right to bring civil enforcement claims for matters within the Department's exclusive discretion. While the FAC alleges that the Attorney General gave notice to the federal CFPB, there are no allegations at all that the Attorney General is in compliance with the mandatory requirements of 71 P.S. § 733-506.

PHDATA 5420820_3

### A. The Office of the Attorney General Lacks the Power To Initiate This Case on Its Own

Under Pennsylvania law, the Attorney General does not have the freedom to bring whatever civil cases she wants to enforce the laws of the Commonwealth that are within the jurisdiction of the Department. To the contrary, the Attorney General's authority to bring lawsuits is strictly circumscribed, a matter of "legislative designation and enumeration." *Commonwealth v. Carsia*, 517 A.2d at 958.

#### 1. The Attorney General May Initiate Only Those Proceedings That the Law Says the Attorney General May Initiate

Under the Pennsylvania Constitution, the Attorney General's powers and duties are limited to those "as may be imposed by law." Pa. Const. Art. IV § 4.1. The Commonwealth Attorneys Act, which the General Assembly passed in 1980, implements the constitutional directive to define the Attorney General's powers and duties. In light of the Commonwealth Attorneys Act, the Supreme Court of Pennsylvania explained that the "powers of the state Attorney General are no longer an emanation from some bed of common law precepts, but are now strictly a matter of legislative designation and enumeration." *Carsia*, 517 A.2d at 958. The Commonwealth Attorney's Act is the "sole source of the Attorney General's powers . . . ." *Id*.

Section 201(a) of the Commonwealth Attorneys Act states that "The Office of Attorney General shall be an independent department . . . . The Attorney General shall exercise such powers and perform such duties as are hereinafter set forth." 71 P.S. § 732-201(a). The powers and duties set forth in the Act generally involve the responsibility for "criminal matters, defending civil litigation involving any agency, reviewing all proposed regulations, and administering the consumer affairs program." *Frishman v. Dep't of State*, 592 A.2d 1389, 1391 (Pa. Commw. Ct. 1991).

With regard to civil litigation, the Commonwealth Attorneys Act explains that the Attorney General essentially is the law firm that represents the Commonwealth and its agencies: "The Attorney General shall ***represent*** the Commonwealth and all Commonwealth agencies and

*upon request* . . . in any action brought by or against the Commonwealth or its agencies . . . ."
71 P.S. § 732-204(c) (emphasis added). However, the Attorney General's power and duty to
*represent* the Commonwealth and its agencies is *not* a blanket grant of authority to enforce all of
the Commonwealth's statutes and regulations. Under Pennsylvania's Statutory Construction
Act, words in a statute are given their ordinary and accepted meaning. *See* 1 Pa. C.S. § 1903(a).
Nothing in the Commonwealth Attorneys Act gives the Attorney General the power or authority
to bring civil enforcement actions with regard to every legal violation she perceives. To the
contrary, the Commonwealth Attorneys Act confirms that, absent an express statutory grant of
authority to the Attorney General, the Attorney General may serve only as the attorney for an
agency in civil litigation, but the underlying enforcement authority belongs to the agency, not the
Attorney General. *See* 71 P.S.§ 732-204(c); *see, e.g.*, *Wagaman v. Attorney General*, 872 A.2d
244, 247 (Pa. Commw. Ct. 2005) (observing that the interest in enforcing and defending a statute
belongs to the government official who implements the law and has powers or duties with regard
to its administration; the true party in interest in litigation concerning such a law is the
government official who implements the law, not the Attorney General).

> **2.    The Department, Not the Attorney General, Has Sole Regulatory and
> Enforcement Authority for Conduct Incidental to the Financial
> Activities at Issue in the First Amended Complaint**

Banking and lending are complicated matters that require specialized regulatory
oversight. *See Pennsylvania Bankers Ass'n v. Sec'y of Banking*, 392 A.2d 1319, 1323 (Pa. 1978)
(noting that courts should defer to the Department with regard to complex questions regarding
the banking industry because it is the administrative agency with experience in dealing with the
business of banking); *Pysh v. Security Pacific Housing Serv.*, 610 A.2d 973, 979 (Pa. Super. Ct.
1992) (observing that the Department is charged with administering the complex area of banking
and finance, an area where it has particular expertise). In Pennsylvania, that regulatory authority
and oversight responsibility is allocated by the General Assembly exclusively to the Department.
*See, e.g.*, *Pittsburgh v. Allegheny Valley Bank of Pittsburgh*, 412 A.2d 1366, 1369 (Pa. 1980)

(observing that the Legislature enacted the Banking Code and Department of Banking Code to occupy the state banking field exclusively and established the Department to supervise and regulate banking institutions in the Commonwealth).

The General Assembly has created a comprehensive statutory regime placing that regulatory authority squarely and exclusively within the Department, as demonstrated by the LIPL and the CDCA.  *See, e.g.*, 41 P.S. § 506(b) & (c) (LIPL); 7 P.S. §§ 6211 & 6212 (CDCA). Moreover, the legislative regime establishing the Department's exclusive regulatory authority, which extends both to traditional and nontraditional banking activities, leaves no room for "'impingement' in the uniform state-wide regulation of banking institutions."  *See Allegheny Valley Bank of Pittsburgh*, 412 A.2d at 1370 & n.10.  Although the Commonwealth Court found in 1981 that the Attorney General and Bureau of Consumer Protection may be able to promulgate regulations relating to debt collection despite the decision in *Pittsburgh v. Allegheny Valley Bank*, it expressed doubts whether such regulations could be administered or enforced by the Attorney General in the banking community.  *See Pennsylvania Bankers Ass'n v. Commonwealth of Pennsylvania, Bureau of Consumer Protection*, 427 A.2d 730, 732-33 (Pa. Commw. Ct. 1981).

The General Assembly definitively resolved the question the Commonwealth Court considered, enacting 71 P.S. § 733-506 as part of the BLMP on October 24, 2012.  In the BLMP, the General Assembly confirmed what Pennsylvania courts had already concluded:  the Department, and not the Attorney General, has sole civil enforcement authority when it comes to financial activities.  The Secretary of Banking explained that the BLMP "clarifies which state and local government entities may initiate civil judicial proceedings before courts and undertake administrative investigations . . . in a manner consistent with the powers granted to the Commonwealth by Dodd Frank, and how state laws and regulations will apply to all financial institutions doing business in Pennsylvania."  Secretary's Letter at 3.

Before the enactment of the BLMP, the Attorney General's office objected to the limiting provisions of Section 733-506, claiming that they were an "undue limit or restriction of . . . her

PHDATA 5420820_3

authority and [the] power of the office of the [Attorney General] to investigate and prosecute civil actions against financial institutions doing business within the Commonwealth." Oct. 17, 2012 Sen. Legis. J. at 990 (comments of Senator Ferlo). Even in light of the concerns expressed by the Attorney General, the General Assembly enacted the BLMP, including the restrictions on the Attorney General's enforcement powers. Thus, the BLMP evidences a clear intent on the part of the General Assembly to consolidate regulatory authority in the Department and to limit actions by other agencies, such as the Attorney General, that may impinge on the Department's regulatory expertise and purview. Giving effect to such legislative intent is the keystone of statutory construction under Pennsylvania law. *See* 1 Pa. C.S. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."); *Commonwealth v. Rushing*, 99 A.3d 416, 423 (Pa. 2014) (same).

### 3. According to the Allegations of the First Amended Complaint, Section 733-506 Applies

Taken as true for the purposes of this motion to dismiss, the allegations of the FAC demonstrate that Section 733-506 applies to the claims that the Attorney General wants to assert.

Section 733-506(A) provides that it applies to "matters relating to institutions . . . licensees . . . foreign financial institutions and other persons subject to the jurisdiction of the bureau doing business in this Commonwealth." 71 P.S. § 733-506(A). "Bureau" is a defined term meaning the federal Bureau of Consumer Financial Protection. 71 P.S. § 733-506(K). The FAC itself alleges that the Think Defendants are "covered persons" subject to the requirements of the Dodd-Frank Act, which makes them "persons" within the jurisdiction of the CFPB for purposes of Section 733-506(A). (FAC ¶¶ 11, 144, 145.)

Moreover, the allegations of the FAC place the Think Defendants under Section 733-506 as "licensees" or "persons" because the Attorney General claims that the Think Defendants have done business, and are doing business, in Pennsylvania with Pennsylvania consumers. (FAC ¶¶ 13, 32, 40.) The FAC's *allegations* taken as true make the Think Defendants "licensees" because the Attorney General alleges that the Think Defendants were once licensed or were

required to be licensed under one or more Pennsylvania laws.  (*Id*. ¶¶ 13, 30.)  In fact, the very first paragraph of the FAC alleges that the Think Defendants were, among other things, trying to evade Pennsylvania licensing requirements.  (*Id*. ¶ 1; *see also id*. ¶¶ 26, 27, 30 (alleging that Think Defendants are engaging in business that requires a license).)  In the Banking Code, a "licensee" is defined as a "corporation, person or any other type of business entity ***required to be licensed by***, registered with or partially exempt from being licensed by the Department of Banking and Securities under any law of this Commonwealth administered by the Department of Banking and Securities."  71 P.S. § 733-2 (emphasis added) (providing definitions applicable in the chapter, including in Section 733-506).

The allegations of the FAC also indisputably make this matter one relating to "foreign financial institutions" because the Tribal lenders with whom the Think Defendants contracted to provide services are "foreign financial institutions."  For example, the Attorney General relies on the terms of Exhibit D to the FAC.  (*See* FAC ¶54.)  According to Exhibit D, the Chippewa Cree of the Rocky Boy's Indian Reservation "will adopt a finance code . . . and provide for the ***licensing*** of an arm of the tribe to engage in consumer lending." (FAC Ex. D (emphasis added); *see also* FAC Ex. E ("Plain Green, LLC is a tribal lending entity wholly owned by the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation… ."); *id*., Ex. H ("Mobiloans, LLC is an entity owned and operated by the Tunica-Biloxi Tribe of Louisiana."); *id*., Ex. K ("Great Plains Lending, LLC is a tribal lending entity wholly owned by the Otoe-Missouria Tribe of Indians."); Ex. B (screenshot of Great Plains Lending website noting lending is subject to regulation by Otoe Missouria authority).)

A "foreign financial institution" is defined as "A person licensed, registered or regulated by a ***state*** other than the Commonwealth or a foreign country that provides financial services to or for the benefit of persons in this Commonwealth."  71 P.S. § 733-506(K) (emphasis added). A "state" is defined to include "any federally recognized Indian tribe . . . ."  *Id*.  Each of the Tribes identified in the FAC is federally recognized.  *See* 80 Fed. Register 9 at 1943-46 (Jan. 14, 2015).

The Attorney General alleges that the Think Defendants "established business relationships with at least three separate Native American tribes." (FAC ¶ 46.) The purported rent-a-tribe scheme involved loans "made in the name of a lender affiliated with one of these tribes." (*Id*. ¶ 47.) Furthermore, the Attorney General alleges that loans to Pennsylvania consumers by the Tribal lenders are made subject to loan agreements or credit agreements that expressly recite that the loans are being extended by federally-recognized tribes and subject to the exclusive laws and jurisdictions of those Tribes. (*See id*. ¶¶ 59, 61, 68.) These Tribal lenders are "foreign financial institutions." Therefore, this matter is one within the scope of Section 733-506's coverage.

      **4.      The Conduct Alleged by the Attorney General and the Premises of the Attorney General's Claims All Relate to or Are Incidental to the Activities of Licensees, and Foreign Financial Institutions Within the Exclusive Jurisdiction of the Department**

Because Section 733-506 applies, the Attorney General cannot unilaterally bring this case. The Attorney General's allegations are ***related to*** or ***incidental to*** the banking or financial activities or operations of covered licensees, persons, or foreign financial institutions. As a result, while the Attorney General can, in the words of the Commonwealth Attorneys Act, represent the Department at the Department's request pursuant to 71 P.S. § 733-506(F) and (G), the Attorney General cannot proceed as if she is the Department.

Section 733-506(F) provides that:

> Nothing in this section may prevent an agency of this Commonwealth . . . from engaging in a civil investigation . . . or commencing civil proceedings before a court of competent jurisdiction to determine compliance with or enforce a statute of this Commonwealth . . . ***not relating to or incidental to the banking or financial activities***, operations or condition of an institution, credit union, ***licensee***, national bank, Federal savings association or ***foreign financial institution*** . . . but ***prior to doing so, the agency or political subdivision shall give notice and consult with the [D]epartment***. To the extent the [D]epartment determines that such actions may affect the banking or financial activities, operations or condition . . . of any institution, credit

        

union, licensee, national bank, Federal savings association, foreign financial institution or a subsidiary of the foregoing; or interfere with the regulation of such entities by the [D]epartment, Federal regulatory agencies or regulatory agencies of other states, ***the [D]epartment shall have sole and exclusive jurisdiction*** to initiate or participate in administrative proceedings, or to request that the Attorney General initiate or participate in judicial proceedings, to enforce such laws or to determine that such proceedings are not in the public interest.

71 P. S. § 733-506(F) (emphasis added).  Further, under subsection G:

Powers and responsibilities granted to the [D]epartment [of Banking] by this section may not be exercised by any other agency of the Commonwealth, or political subdivision, except upon the request of the [D]epartment, or as expressly authorized by the [D]epartment on a case-by-case basis.

71 P.S. § 733-506(G).

Thus, when a civil case is brought in which the claims are "relating to or incidental to the banking or financial activities" of, among other categories, a "licensee" or "foreign financial institution," the claims fall within the exclusive jurisdiction of the Department.  The Attorney General cannot seriously contend that Section 733-506(F) preserves a limited ability for her, subject to Department approval, to bring cases unrelated to financial activities but does not otherwise limit her ability in cases related to financial activities, as that construction would be absurd.  *See* 1 Pa. C.S. § 1922(1) (noting that the General Assembly does not intend absurd results).  The subsection expressly creates a limited exception for civil proceedings only ***unrelated*** or ***not incidental*** to financial activities, and even then the Attorney General can only act after notice to, and with the consent of, the Department.  The Department has "sole and exclusive jurisdiction" over civil proceedings that may affect the financial activities of a licensee (the Think Defendants) or foreign financial institutions (the Native American Tribal lenders).  Subsection G, read in conjunction with the Commonwealth Attorneys Act, confirms that the Department can request the Attorney General to represent it, but that the Attorney General cannot act independently from the Department as a distinct regulator or civil enforcer.

This enforcement regime is explained in the Secretary's Letter, which explains that Section 506

> [c]larifies that state agencies, including the Attorney General . . .
> unless preempted by federal law, may initiate civil actions or
> administrative proceedings against financial institutions doing
> business in Pennsylvania with respect to matters which <u>do not
> affect</u> banking or financial activities, operations and conditions, but
> only after notice to and consultation with the Department.  In
> instances in which the Department determines such civil actions or
> administrative proceedings <u>may affect</u> the banking or financial
> activities, operations or condition . . . of any regulated institution,
> or interfere with the regulation of such entities by the Department
> or other financial regulators, the Department shall have sole and
> exclusive jurisdiction to initiate or participate in administrative
> proceedings, or to request that the Attorney General initiate or
> participate in judicial proceedings, to enforce such laws or to
> determine that such proceedings are not in the public interest . . . .

Secretary's Letter at 4 (emphasis in original).

The allegations of the FAC make it abundantly clear that the Attorney General is alleging claims that are exclusively the Department's business.  In the language of Section 733-506(F), the state law claims in the FAC are "relating to or incidental to the . . . financial activities [and] operations . . . of a . . . licensee . . . or foreign financial institution."  The Attorney General's allegations concern lending to Pennsylvania consumers.  (*See* FAC ¶ 1.)  The FAC contends that all of the loans at issue are "illegal and abusive loans that flout Pennsylvania and federal law," including the LIPL and the CDCA.  (*Id*. ¶¶ 2, 25, 26.)  The Attorney General repeatedly describes the loans as "illegal" and "usurious."  (*Id*. ¶¶ 3, 19, 40, 42, & 74.)

Other allegations make clear that the Attorney General is challenging the banking and financial activities of the Think Defendants and the Tribal lenders.  The FAC alleges that the Attorney General is exercising "enforcement powers and authority" under several state statutes, the alleged violation of which ultimately revolves around the assertion that the loans made to Pennsylvania borrowers are in excess of the 6% rate cap in the LIPL.  (FAC ¶ 5.)  The Attorney General claims that the Think Defendants facilitate lending by providing to the lenders the

"infrastructure to market, fund, underwrite and collect the loans, providing the following: customer leads, the technology platform, investors who fund the loans, and/or the payment-processing and collection mechanisms used to obtain payments from consumers." (*Id.* ¶ 47.)

In addition, the FAC alleges that the Think Defendants arranged for an investor to provide funding for the loans made by Plain Green, Great Plains Lending, and MobiLoans. (FAC ¶ 74.)  There are allegations that "payments . . . are taken directly from the consumers' bank accounts via electronic debits" by a bank and that the Think Defendants "or a third party selected by them, arranged the banking relationship or arranged a relationship with a payment processor that found the bank." (*Id.* ¶ 75.)  The Think Defendants also allegedly "participated in the sale or transfer of loan balances supposedly owed by Pennsylvania consumers to Plain Green, Great Plains Lending or MobiLoans to various debt buyers . . . ." (*Id.* ¶ 76.)

Further, the Attorney General alleges that the Think Defendants "aided, abetted, counseled, commanded, induced or procured the usurious and illegal lending" described in the FAC.  (FAC ¶ 96.)  The Think Defendants also purportedly designed the web technology that powers the Tribal lending operations, arranged for lending capital for the Tribal lenders, provided leads and marketing assistance, arranged for payment processing services, and collected unpaid loans or arranged for the sale of uncollected debts.  (*Id.* ¶ 105.)  The Attorney General also alleges that the Think Defendants facilitated and profited from "lending activity that they know is illegal in Pennsylvania." (*Id.* ¶ 112.)  The Think Defendants allegedly "engaged in collection activity regarding consumer debt supposedly owed by Pennsylvania consumers . . . ." (*Id.* ¶ 119.)

These allegations can leave no doubt that this lawsuit "relat[es] to" or is "incidental to" the "banking or financial activities, operation or condition" of the Think Defendants (licensees) and the  Tribal lenders (foreign financial  institutions) within the ambit of  71 P.S. § 733-506(F). The term "banking activities" is broad, extending well beyond mere deposit taking.  *See, e.g.*, *Pittsburgh v. Allegheny Valley Bank of Pittsburgh*, 388 A.2d at 1103 (observing that banking business includes a wide variety of activities).  "Financial activities," given the words' common

meaning, which one must consider when construing undefined terms in a statute, *see* 1 Pa. C.S. § 1903(a), are broader even than banking activities, comprising all activities relating to financial matters. *See, e.g.*, 12 U.S.C. § 5311(a)(6) (using definition of "financial activities" from the Bank Holding Act, 12 U.S.C. § 1843(k)(4)); *see also* 1 Pa. C.S. § 1921(c)(5) (permitting consideration of similar legislation in ascertaining legislative intent). Accordingly, 71 P.S. § 733-506 prevents the Attorney General from asserting, as she does in the FAC, that she has any ability to assert the Commonwealth's enforcement authority. That authority, by statute, exclusively belongs to the Department. Because the Attorney General has not alleged that she is bringing the state law claims in compliance with Sections 733-506(F) and (G), the FAC must be dismissed.[5]

> **5.    Count VI of the First Amended Complaint Must Be Dismissed Pursuant to 71 P.S. § 733-506(B)**

The Attorney General alleges that she can bring the claim in Count VI of the FAC under the Dodd-Frank Act because she gave notice to the CFPB. (*See* FAC ¶ 11.) But that is wrong as a matter of law. When it comes to Dodd-Frank Act claims "with respect to," among others, licensees, foreign financial institutions, or their subsidiaries, "the Attorney General may initiate proceedings ***only upon the request of, or with the approval of the [D]epartment***." 71 P.S. § 733-506(B) (emphasis added). There is no allegation to be found in the FAC that the Department

---

[5] Even if the Attorney General claims that the counts under the COA or UTPCPL are not related to or incidental to banking or financial activities of a covered entity (despite the fact that the claims obviously are all about banking or financial activities), Section 733-506(F) still requires that the Attorney General notify the Department of a contemplated civil enforcement action related to licensees like the Think Defendants or foreign financial institutions like the Tribal lenders so the Department to determine for itself whether the action will impinge on its regulatory prerogatives and whether to bring the claims. 71 P.S. § 733-506(F). The Attorney General does not state that she provided such notice to the Department prior to bringing this action.

requested or approved of the Attorney General's action.  Accordingly, Count VI must be dismissed.

**B.    Counts I-V Must Be Dismissed With Prejudice Because the Department Cannot Assert Claims Under the COA, FCEUA, or the UTPCPL**

The claims in Counts I-V of the FAC have to be dismissed with prejudice.  Even if the Attorney General obtained Department authorization for this case and wanted to file a further amended complaint, the only state law claims she could assert are claims that the Department itself can bring.  Since the Department cannot bring COA, FCEUA, or UTPCPL claims, those counts must be dismissed with prejudice.

As discussed above, the General Assembly has given to the Department sole and exclusive authority over claims that relate to the regulation and activities of licensees and foreign financial institutions, such as those advanced in the FAC.  The statutory scheme, including 71 P.S. § 733-506, evinces a carefully considered legislative intent to place administration and enforcement of laws affecting financial activities in the hands of the Department, not the Attorney General.

This legislative scheme, in tandem with the Commonwealth Attorneys Act, also described above, establishes that the Attorney General has strictly limited powers in civil litigation affecting banking activities, effectively limiting the Attorney General to act as the Department's legal representative to bring claims within the Department's exclusive jurisdiction and authority when requested to do so in such cases.  Consequently, the Attorney General cannot allege claims that are not available to the Department.  *See Sweeney v. Tucker*, 375 A.2d 698, 705 (Pa. 1977) ("Under the principle of separation of the powers . . . no branch should exercise the functions exclusively committed to another branch."); *accord Pa. Dep't of Banking v. NCAS of Delaware, LLC*, 995 A.2d 422, 437 (Pa. Commw. Ct. 2010) (quoting *Sweeney v. Tucker* and rejecting argument of an "inherent sovereign interest" to seek relief as "afoul of the separation of powers under the Pennsylvania Constitution and would vest the Department and the Attorney General with unconstrained authority").

In other words, the Office of the Attorney General, acting as the lawyer for the Department, cannot bring claims or seek relief that its client, the Department, cannot bring. In the FAC, the Attorney General seeks injunctive relief and awards of monetary damages as disgorgement pursuant to the COA, FCEUA, and UTPCPL. The Department is not authorized to bring claims under any of those statutes. 18 Pa. C.S. § 911(e) (COA); 73 P.S. § 2270.5 (FCEUA); 73 P.S. §§ 201-4, 201-9.2 (UTPCPL).

Moreover, the CDCA and the LIPL are within the Banking Department's exclusive jurisdiction. Both provide the Department with specific remedies that the Attorney General cannot expand. *See* 7 Pa. C.S. § 6212 (CDCA); 41 P.S. § 506(c) (LIPL).

For example, in an action brought by the Department against an alleged payday lender prior to the enactment of the BLMP, the Commonwealth Court determined that the Department could not obtain relief not expressly authorized under the CDCA or the LIPL. *See NCAS of Delaware, LLC*, 995 A.2d at 434, 435, 436, 439. There, the Department sought monetary damages under the CDCA and the LIPL, alleging that the defendants failed to obtain appropriate licenses and that they charged interest in excess of 6% per annum. The court determined that the CDCA did not provide for the recovery of monetary damages in civil enforcement proceedings. *See id.* at 433. Looking to the language of the statute, the court determined that the law provided only for criminal penalties, not monetary remedies in the form of damages.

With regard to the LIPL, the court determined that the statute as then applicable permitted ***individual actions*** against lenders to recover treble damages based on excessive interest charges. *Id.* It also looked to language in the LIPL that permitted the Department itself to order restitution for actual damages to any aggrieved person. The court concluded that such language gave the Department the ability to order restitution in administrative proceedings on consumer claims before it; however, in refusing to apply retroactively amendments to the remedial provisions, it determined that power did not permit the Department to seek monetary damages as a judicial remedy in a civil proceeding. *Id.* at 435; *see also id.* at 436 ("This Court will not conclude, without an express legislative intent by the General Assembly, that the

Department possesses the same legal rights as an individual borrower.").  Permitting such claims in an enforcement action could render a defendant subject to multiple liabilities because consumers would still be able to bring administrative claims irrespective of any damages award to the Department.  *Id*. at 436.  In essence, the Department's ability to order restitution was limited to and dependent upon actions brought by consumers before the Department.  *See id*. at n.15.

The Attorney General alleges she has the statutory ability to assert claims under the COA, FCEUA, and the UTPCPL for the financial activities at issue here.  However, the Attorney General's ability to bring claims under those statutes must be read in light of principles of statutory construction applicable when a later-enacted specific statute (*i.e*., 71 P.S. § 733-506) is in tension with an earlier-enacted general statute.  This is particularly so where Pennsylvania case law has, even before the General Assembly passed Section 733-506, questioned the Attorney General's ability to act where the Department has regulatory authority.  *See Pennsylvania Bankers Ass'n*, 427 A.2d at 732-33.  The applicable principles confirm that the Attorney General's ability to assert COA, FCEUA, and UTPCPL claims does not extend to claims relating to or incidental to the banking of financial activities of licensees or foreign financial institutions.

Statutory construction in Pennsylvania law is governed by the Statutory Construction Act.  The Statutory Construction Act provides that "Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail.  1 Pa. C.S. § 1936.  In addition,

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both.  If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

PHDATA 5420820_3

1 Pa. C.S. § 1933.

Here, Section 733-506 was enacted after the COA, FCEUA, UTPCPL, LIPL, CSA, and CDCA. With regard to the COA and UTPCPL, therefore, Section 733-506 represents a later-enacted statute that provides a specific exception to the general provisions of the earlier enacted laws when the activities of banking or financial institutions are involved. In other words, the codification in Section 733-506 of the specific grant of exclusive authority and jurisdiction to the Department with regard to civil claims stands as an exception to the general enforcement provisions or remedies provided for in the UTPCPL, FCEUA, and COA. Where Section 733-506 and these other statutes cannot be reconciled, Section 733-506 controls as the later-enacted specific statute. *See, e.g.*, *Commonwealth v. Ramos*, 83 A.3d 86, 90-94 (Pa. 2013).

Under Section 733-506, the Department possesses the "sole and exclusive jurisdiction" to enforce civil laws relating to or incidental to the banking and financial condition of licensees and foreign financial institutions. The only exception is for claims ***unrelated*** to banking and financial activities. Even then, the Department gets to decide whether the case can be brought. *See* 71 P.S. § 733-506(F). Accordingly, the later-enacted specific provision of Section 733-506 regarding actions affecting or involving banking activities trumps the general provisions of the UTPCPL, FCEUA, and COA. That is, where, as here the underlying conduct relates to or is incidental to banking and financial activities of licensees and foreign financial institutions, Section 733-506 divests the Attorney General of the ability to assert claims under the COA, FCEUA, and the UTPCPL.[6]

---

[6] Section 733-506 likewise restricts the Attorney General from bringing a civil action to enforce the LIPL. With regard to enforcement, the law specifically limits the Attorney General to seeking "injunctive relief and such other relief as may be appropriate to secure compliance with [the LIPL] or the regulations promulgated hereunder." 41 P.S. § 506; *see NCAS of Delaware, LLC*, 995 A.2d at 435. Section 733-506, passed after the LIPL and after the decision in *NCAS of Delaware*, means that the Attorney General can only bring a claim for injunctive relief under the LIPL acting as the Department of Banking's lawyer.

Any other construction of how Section 733-506 affects the claims that can be asserted in a civil enforcement action incidental to financial activities would be inconsistent with the General Assembly's intent. Section 733-506 evinces a legislative intent to avoid a multiplicity of regulators subjecting licensees and foreign financial institutions (among other categories) to uncertainty both as to standards and potential penalties.  As the Department explained,

> The overall goal of the [BLMP] was to update, simplify and modernize the banking laws of the Commonwealth and to reduce regulatory burden at the state level where possible, given the increased regulatory demands of the federal . . . [Dodd-Frank Act] . . . .  These goals are in line with the . . . Administration's priority of confirming that Pennsylvania is "open for business" by reducing regulatory burden where possible and appropriate.

Secretary's Letter at 1 (footnote omitted); *see also id.* at 3 ("[T]he addition of Section 506 . . . clarifies which state and local government entities may initiate civil judicial proceedings . . . and how state laws and regulations will apply to all financial institutions doing business in Pennsylvania.").

The very inconsistency that the General Assembly sought to avoid is apparent from the face of the Attorney General's FAC.  The Attorney General asserts that under the COA, a statute the Department cannot administer, she is entitled to a court order "invalidating any beneficial interest related to existing loans to Pennsylvania consumers."  (FAC ¶ 109; *see also id.* ¶¶ 101, 116.)  But in the LIPL, the law that the Department can enforce, there is no provision that allows for the voiding of the principal loan. *See NCAS of Delaware, LLC*, 995 A.2d at 440 (quoting *Mulcahy v. Loftus*, 439 Pa. 111, 112 (1970)).  Thus, where the General Assembly sought certainty and lesser regulatory burdens, a construction of Section 733-506 that would allow an

expansion of civil claims to include remedies that the Department cannot obtain, through causes

of action the Department cannot assert, would frustrate that intent.[7]

---

[7] The *NCAS of Delaware, LLC* case itself is not to the contrary. While in that case, the Attorney General asserted UTPCPL claims alongside the Department, the case was decided before the enactment of Section 733-506. The Commonwealth Court in that case had no occasion to consider the effect of Section 733-506.

## CONCLUSION

For the foregoing reasons, the Attorney General's First Amended Complaint should be dismissed with prejudice.

>    s/Ira Neil Richards
> Ira Neil Richards (PA I.D. No. 50879)
> Stephen A. Fogdall (PA I.D. No. 87444)
> Arleigh P. Helfer III (PA I.D. No. 84427)
> Shannon L.C. Ammon (PA I.D. No. 318939)
> SCHNADER HARRISON SEGAL & LEWIS LLP
> 1600 Market St., Suite 3600
> Philadelphia, PA 19103
> (215) 751-2503
> irichards@schnader.com
> sfogdall@schnader.com
> ahelfer@schnader.com
> sammon@schnader.com
>
> James R. McGuire (*Pro hac vice*)
> Angela E. Kleine (*Pro hac vice*)
> Elizabeth Balassone (*Pro hac vice*)
> Lauren Wroblewski (*Pro hac vice*)
> MORRISON & FOERSTER LLP
> 425 Market Street
> San Francisco, CA 94105-2482
> (415) 268-7000
> jmcguire@mofo.com
> akleine@mofo.com
>
> Walter W. Cohen (Pa. I.D. No. 12097)
> OBERMAYER REBMANN MAXWELL & HIPPEL LLP
> 200 Locust Street, Suite 400
> Harrisburg, PA 17101-1508
> (717) 234-9730
>
> *Attorneys for Defendants*
> THINK FINANCE, INC., TC LOAN SERVICE, LLC, TAILWIND MARKETING, LLC, TC DECISION SCIENCES, LLC, AND FINANCIAL U, LLC

PHDATA 5420820_3