# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA<br>by Attorney General JOSH SHAPIRO, | : | Civil Action |
| | : | |
| | : | No. 14-7139-JCJ |
| **Plaintiff** | : | |
| vs. | : | |
| | : | |
| THINK FINANCE, INC., TC LOAN SERVICE, LLC, | : | |
| TAILWIND MARKETING, LLC, TC DECISION | : | |
| SCIENCES, LLC, FINANCIAL U, LLC and | : | |
| KENNETH E. REES, | : | |
| | : | |
| VICTORY PARK CAPITAL ADVISORS, LLC, | : | |
| VICTORY PARK MANAGEMENT, LLC, | : | |
| GPL SERVICING, LTD., GPL SERVICING AGENT, | : | |
| LLC, GPL SERVICING TRUST, GPL SERVICING | : | |
| TRUST II, VPC/TF TRUST I, and VICTORY PARK | : | |
| CREDIT OPPORTUNITIES MASTER FUND, LTD., | : | |
| | : | |
| -and- | : | |
| | : | |
| NATIONAL CREDIT ADJUSTERS, LLC, | : | |
| | : | |
| **Defendants** | : | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO THINK FINANCE DEFENDANTS' MOTION TO TRANSFER VENUE TO NORTHERN DISTRICT OF TEXAS

### I.       INTRODUCTION

In an effort to find a forum they deem more favorable to their interests, the Think Finance Defendants have moved to transfer this action to the Northern District of Texas, where their Chapter 11 case is pending.[1] The motion comes more than three years into this complex civil enforcement action brought by the Attorney General of Pennsylvania to remedy violations of Pennsylvania law that harmed Pennsylvania citizens. Document discovery is nearly complete and depositions about to begin. Inexplicably characterizing the Texas bankruptcy court as the "home

---

[1] Defendants move pursuant to 28 U.S.C. § 1412.

court" of this controversy, Defendants' Memorandum of Law in Support of Motion to Transfer Venue (hereafter "Defts. Brief") at 15, they assert that transfer would serve the interests of justice and the convenience of all parties. Yet that same bankruptcy court has already ruled that this matter may proceed to disposition in *this* forum, because this is a police or regulatory action within the meaning of 11 U.S.C. § 362(b)(4) and therefore was not stayed by the bankruptcy filing.

No logic or equity supports transfer. The obvious "home court" of this matter is Pennsylvania, not Texas. It involves alleged violations of Pennsylvania law that victimized tens of thousands of Pennsylvania consumers. There is no reason to force the Attorney General to litigate in a distant forum to complete what he has vigorously pursued in this Court for years. Those consumers who have already been victimized by Defendants' violations of Pennsylvania law should not have their lives further disrupted by being forced to travel to Texas to testify at trial. Moreover, the Pennsylvania citizenry at large has a strong interest in the trial occurring in a forum convenient for them, where they can observe their interests being vindicated by the Attorney General.

Transfer would cause significant, unnecessary delay and expense to the Commonwealth. Transfer would also effectively thwart the will of Congress—as already determined by the Texas bankruptcy court—that this action should continue unaffected by the Think Finance bankruptcy until such time that the Commonwealth actually seeks to enforce a monetary judgment against the assets of the bankruptcy estates. This police-power enforcement action belongs in this Court. Defendants' motion should be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Commonwealth alleges that the various affiliates of Think Finance, Inc.[2]—along with co-defendants Kenneth Rees, National Credit Adjusters, LLC and the various Victory Park Capital entities—were engaged in an illegal, multi-year, "payday" lending scheme operating over the Internet, using first a bank and then three Native American tribes as a subterfuge to evade Pennsylvania's usury laws and victimize Pennsylvania consumers. *See* Second Amended Complaint ("SAC"). The Commonwealth seeks injunctive relief, disgorgement of illegal earnings, restitution for consumers, and civil penalties under the Pennsylvania <u>Corrupt Organizations Act</u> ("COA"), 18 Pa. C.S.A. §911, and the <u>Unfair Trade Practices and Consumer Protection Law</u> ("UTPCPL"), 73 P.S. § 201-1 et seq., as well as the <u>Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010</u> (hereafter "the Dodd Frank Act"), 12 U.S.C. § 5552(a), which delegated authority to state attorneys general to seek injunctive, restitutionary and other relief to enforce that law.

The Think Finance Defendants themselves removed the action from the Court of Common Pleas of Philadelphia County to this Court. (Doc. No. 1). Following the Court's denial of the Commonwealth's remand motion and the filing of an amended complaint, the various defendants filed numerous motions to dismiss, which this Court denied two years ago. *Commonwealth of Pennsylvania v. Think Fin., Inc.*, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016).

Thereafter, discovery commenced. Based on the information obtained from that discovery, the Commonwealth was permitted to add the Victory Park Defendants. Order of May 26, 2017.

---

[2] The Second Amended Complaint names as defendants Think Finance, Inc. (which, according the bankruptcy filings recently changed its name and structure to Think Finance, LLC), TC Loan Service, LLC, Tailwind Marketing, LLC, TC Decision Sciences, LLC and Financial U, LLC, each of which filed chapter 11 petitions on October 23, 2017.

3

(Doc. 159). On May 31, 2017, the Commonwealth filed the SAC, detailing Victory Park's participation in the scheme to evade Pennsylvania usury law. On August 25, 2017, the Victory Park Defendants filed a motion to dismiss, which has been fully briefed and is currently pending.

Notwithstanding the Victory Park motion to dismiss, discovery has proceeded pursuant to a Scheduling Order entered June 21, 2017. (Doc. 165). Pursuant to that Order, the Victory Park Defendants have produced approximately 574,553 pages of documents, adding to the nearly 750,000 pages already produced by the other defendants. *See* Declaration of Saverio P. Mirarchi, attached hereto "Mirarchi Decl." hereafter). Under the Scheduling Order, depositions are about to begin and will occur during the first four months of the new year, followed by expert witness practice during the spring and summer, concluding by July 31, 2017. Summary judgment motions are to be briefed between September 7, 2018 and October 12, 2018. Pretrial memoranda are due November 16, 2018. (Doc. 165).

On October 23, 2017, the Think Finance Defendants filed chapter 11 petitions in the Northern District of Texas. *See* Case No. 17-33964 (HDH). On October 25, 2017, they filed a Suggestion of Bankruptcy in this proceeding (Doc. No. 199), "suggesting" that this action was stayed by virtue of the automatic bankruptcy stay, 11 U.S.C. § 362(a). In response, the Commonwealth filed a motion in the bankruptcy court seeking confirmation that, pursuant to 11 U.S.C. § 362(b)(4), the stay did *not* apply to this exercise of the Attorney General's regulatory and police power over an illegal payday lending scheme targeting Pennsylvania consumers. On December 12, 2017, the Bankruptcy Court granted the Commonwealth's motion and ruled that the stay does not apply, up to and including the entry of a money judgment against the Think Finance

debtors.[3] *See* Plaintiff's Updated Response to Defendant's Suggestion of Bankruptcy and Notice of Order by Bankruptcy Court (Doc. 204).

Having lost their attempt in the Bankruptcy Court to stop this action, the Think Finance Defendants effectively also lost any chance of removing the case to the Bankruptcy Court. *See* 28 U.S.C. § 1452(a) (incorporating into the bankruptcy removal statute the same exclusion for governmental police or regulatory actions that applies to the automatic stay). Undaunted, Defendants then filed this Motion, requesting a discretionary transfer of venue pursuant to 28 U.S.C. § 1412.

In support of this request, the Think Finance Defendants argue, among other things, that there are private class actions alleging violations of the laws of other states, which actions, unlike this one, have been stayed and will be decided in the Bankruptcy Court; that the Victory Park Defendants, asserting alleged indemnification rights, had seized cash from Think Finance and this inter-defendant dispute will also be decided in the Bankruptcy Court; that the Bankruptcy Court has established claim bar dates and sent notices of the claims bar date to Pennsylvania consumers who will have the opportunity to file claims; and that, in their judgment, the interest of their creditors would be served by transferring this matter to the Bankruptcy Court for decision along with these other matters. Defts. Brief at 4-9. None of these arguments have any bearing on the considerations relevant to a request to transfer this already well-advanced police-power action by the Pennsylvania Attorney General. There is no merit to Defendants' Motion.

---

[3] Trying to put a positive spin on what was for the Think Finance Defendants a clear loss in the bankruptcy court, they characterize the court's ruling as mainly being an affirmation that the stay would apply to any effort by the Commonwealth to enforce a monetary judgment, something the Commonwealth did not contest. Defts. Brief at 3.

## III. ARGUMENT

### A. Legal Standard

Assuming *arguendo* that the Northern District of Texas would have jurisdiction over this action, this Court has the discretion under 28 U.S.C. § 1412 to transfer this action to that district "in the interest of justice or for the convenience of the parties." The appropriateness of transfer turns on the same issues that govern a change of venue under 28 U.S.C. § 1404(a). *Marino v. Kent Line Int'l*, No.02-cv-4488, 2002 WL 31618496, at *2 n. 1 (E.D. Pa. Nov. 20, 2002) (citing *In re Emerson Radio Corp.,* 52 F.3d 50, 55 (3d Cir.1995).

The Third Circuit has observed that, in undertaking this transfer analysis, "there is no definitive formula or list of ... factors to consider." *Jumara v. State Farm Ins. Co*., 55 F.3d 873, 879 (1995). Instead, courts must analyze "all relevant factors" to determine whether "the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* (internal quotation marks and citation omitted). *Jumara* listed a set of private and public interest factors that should be taken into account in this analysis. *Id*. at 879-80. The private interest factors to consider include:

> T]he plaintiff's forum preference; defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial conditions; the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the locations of the books and records.

Named public factors include,

> Enforceability of judgment; practical considerations that could make the trial easy, expeditious or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of trial judges with the state law for diversity cases. *Id*.

*Brenner v. Consolidated Rail Corp.,* No. 09–cv–1574, 2009 WL 2710241, * 1 (E.D. Pa. Aug. 26, 2009) (Joyner, J.).

The Third Circuit has described as "black letter law" the deference given to the plaintiff's choice of forum, which choice "should not be lightly disturbed." *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970). This presumption against altering the Plaintiff's choice of forum is particularly strong where the Plaintiff files the action in its home forum. *Brenner*, 2009 WL 2710241, * 2. In such a circumstance, the plaintiff's choice of a proper forum must remain the "paramount consideration." *Id*. A transfer should only occur "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Varrac*k 376 U.S. 612, 616 (1964) (internal quotations omitted). Transfer at this stage of the litigation, when the presiding court has an understanding of the relevant facts and law, is rarely an efficient course. *See, e.g.*, *Oral-B Laboratories, Inc. v. Mi-Lor Corp.*, 611 F.Supp. 460, 463 (S.D.N.Y. 1985) ("it seems unwise to transfer a case after initial substantive decisions have already been made").

B. **The *Jumara* Factors Do Not Support Overriding the Attorney General's Forum Choice and Transferring This Police-Power Enforcement Action, Pending for More than Three Years, from Its Home State to a Distant Forum**

Defendants argue as if controversies that might have any conceivable impact on a bankruptcy case must be transferred to the presiding bankruptcy court. That is not true. Bankruptcy jurisdiction under 28 U.S.C. § 1334(b) that extends to controversies "related to" a bankruptcy case is not "limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (adopting the Third Circuit's interpretation of 28 U.S.C. § 1334(b) in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (1984)).[4]

---

[4] In *Pacor*, the Third Circuit held that potential indemnification rights that non-debtor defendants might have against a debtor—according to Defendants, one of the reasons why the Northern District of Texas would have jurisdiction over this action if it were transferred, Defts. Brief at 12-14—was *not* sufficient to bring the controversy within the scope of "related to" bankruptcy

7

For example, 28 U.S.C. § 1334 contains a broad abstention provision, enabling district courts to abstain from exercising bankruptcy jurisdiction over controversies "related to" a bankruptcy case "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c). Similarly, the bankruptcy removal statute, in language that tracks the exclusion from the automatic stay in 11 U.S.C. § 362(b)(4), precludes removal of "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power," 28 U.S.C. § 1452(a), even if that action is "related to" a bankruptcy case. Since this is *not* the kind of action that *must* be heard in the district where the Think Finance bankruptcy is taking place, the only question, therefore, is whether, under the present circumstances, there are "interest of justice" or "convenience of the parties" considerations making a discretionary transfer by this Court appropriate.

The suggestion that a bankruptcy court is always the presumptively superior "home" forum in disputes involving the debtor is not true either. Bankruptcy courts routinely transfer adversary proceedings to other forums when, in applying the *Jumara* factors, those forums are more appropriate. *See, e.g., In re Buffets Holdings, Inc.,* 397 B.R. 725, 730 (Bankr. D. Del. 2008) (transferring dispute filed by debtor against its landlord to the Michigan district where the leased property is located); *Twyman v. Wedlo, Inc.*, 204 B.R. 1006 (Bankr. N.D. Ala. 1996) (bankruptcy

---

jurisdiction. As *Pacor* held, the Commonwealth's independent claims against the non-debtor Defendants are not by themselves "related to" the Think Finance bankruptcy case, but for purposes of this motion, the Commonwealth is assuming *arguendo* that this action does have a sufficient connection to the bankruptcy to satisfy 28 U.S.C. § 1334(b). The issue for this Court, however, is not whether the Northern District of Texas has concurrent jurisdiction, but whether, in the interests of justice or the convenience of the parties, this Court should transfer venue to that forum.

court deciding that state court, not bankruptcy court, is the more appropriate forum to decide state law controversy).[5]

The circumstances present here are an inversion of the ordinary context where parties seek a transfer "in the interests of justice or the convenience of the parties." Generally, contested venue transfers are "designed to prevent: (1) 'forum shopping' by plaintiffs who seek to avoid prior rulings or governing precedents in other jurisdictions ... (2) 'the waste of time, energy, and money,' and (3) 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *MP Vista, Inc. v. Motiva Enters. LLC,* C.A. No. 07–099–GMS, 2008 WL 5411104, at *2 (D.Del. Dec. 29, 2008) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964); *Yang v. Odom,* 409 F.Supp.2d 599, 605 (D.N.J.2006)). *See, e.g., Ross v. Institutional Longevity Assets LLC,* No. CV 12-102-LPS-CJB, 2013 WL 5299171, at *4 (D. Del. Sept. 20, 2013), *report and recommendation adopted*, No. CV 12-102-LPS-CJB, 2013 WL 5613998 (D. Del. Oct. 11, 2013) (agreeing with party seeking to transfer matter to forum that had already heard testimony and determined same issues that "[i]t would be a 'gross waste of judicial resources' for a court to start 'from scratch'"). Here, the Think Finance Defendants are attempting to use 28 U.S.C. § 1412 as a dilatory maneuver to thwart the Attorney General's police powers and shop for a different forum after this Court has already ruled on numerous motions and supervised discovery. Such a transfer would make no logical sense and would impose a wasteful burden on the Commonwealth and other parties, and, of course, would waste time.

---

[5] Defendants' reliance on transfer decisions that reference the district that is the "home court" of a bankruptcy, *e.g., Toth v. Bodyonics, Ltd*., No. 06-1617, 2007 WL 792172 (E.D. Pa. Mar. 15, 2007), is completely misplaced. Those references arise in the context of a removal action, where a debtor-defendant removes a state court suit to the local district court pursuant to 28 U.S.C. § 1452 and then seeks a transfer to the district that is the "home court" of the bankruptcy proceeding. Factors that may be appropriate to venue considerations in the context of a bankruptcy removal have no bearing on a local police-power action that is statutorily protected from removal.

Similarly, venue transfer decisions have, on occasion, cited convenience or other factors to override the strong presumption in favor of a plaintiff's forum choice when the plaintiff has chosen "a forum in which he does not reside and in which none of the conduct giving rise to his claims occurred." *Schoonmaker v. Highmark Blue Cross Blue Shield,* No. 09-CV-703, 2009 WL 3540785, at *1 (E.D. Pa. Oct. 30, 2009) (quoting *Lamusta v. Lawson Mardon Wheaton Inc.,* 2000 U.S. Dist. LEXIS 2708, at * 6 (E.D. Pa. Mar. 10, 2000), and *Gallant v. Trustees of Columbia Univ.,* 111 F.Supp.2d 638, 647 (E.D.Pa.2000)). *See also In re Centennial Coal, Inc.,* 282 B.R. 140, 146 (Bankr. D. Del. 2002) (transferring case in preliminary pleading stage to state where claim arose). There is no authority for doing the opposite, namely, forcing a plaintiff challenging violations of state law—here the state's chief law enforcement officer—to litigate in some other state.

The fact that the plaintiff here is an attorney general, seeking to enforce his own state's law in the federal district court in that state, makes this request for a change of venue particularly odd, not to mention its being requested at such an advanced stage of the proceedings, after numerous judicial rulings and in the middle of an extensive discovery process. By no conceivable measure of "the interest of justice" or "the convenience of the parties" could transfer to Texas make any practical or equitable sense.

Indeed, when considering the identity of the plaintiff here and the nature of this law suit, the so-called "private" and "public" factors listed in *Jumara*, 55 F.3d at 879, merge, and present an overwhelming case against transfer. Looking at "private" Factor 1, the Commonwealth's forum preference--the "paramount" *Jumara* consideration—is obviously a Pennsylvania state or federal court. This is a dispute about violations of Pennsylvania law, in an enforcement action brought by that state's attorney general, to remedy harms caused to Pennsylvania citizens. OAG commenced

the action in the court of common pleas, as Pennsylvania statute directed. *See* 18 Pa. C.S.A. § 911(c) (COA civil actions by OAG to be filed in courts of common pleas.). The Think Finance Defendants, preferring a federal forum, removed the action to this Court. Thus, this forum is as much Defendants' choice as Plaintiff's, so Factor 2—defendant's preference, as defined by Defendants' removal over three years ago, not by their new-found preference for a different federal district—also disfavors transfer. As to where the claim arose (Factor 3), that, too, points to Pennsylvania, where the Defendants targeted the challenged scheme and unlawfully extracted millions of dollars from the bank accounts of Pennsylvania consumers.

The convenience of the parties and of witnesses (Factors 4 and 5), on balance, also weighs against transfer. The parties in this action would encounter substantial expense and burdens if they had to restart this litigation in Texas.[6] The Commonwealth, for its part, would have to spend significant public resources to retain Texas counsel, who would then have to learn Pennsylvania law and master three years' worth of prior rulings and discovery. *See* Mirarchi Decl. And, if the trial is moved to Texas, the Commonwealth would also have to incur the additional expense of renting secure facilities and hotel rooms for an extended period in Dallas, along with the cost of transporting any consumer witnesses to Texas. *Id*. Such additional expense would unnecessarily burden Pennsylvania taxpayers. Regarding the employees past or present of Think Finance, they were already going to be deposed in Texas for their convenience, so a transfer would accomplish nothing in that regard. *Id*. As for the other parties, National Credit Adjusters is located in Kansas and Victory Park Capital in Chicago, so transfer would not produce more convenience for them either.

---

[6] The Defendants' focus on the convenience of the creditors and attorneys in the bankruptcy proceeding is misplaced. The proper focus under *Jumara* is on possible inconveniences to the parties in this litigation, not the bankruptcy.

As for the location of books and records (Factor 6), the forum makes little difference as they are electronically stored and already produced. As this Court has recognized, the location of documents is no longer a factor of great significance under 28 U.S.C. §1404(a), since those documents "could easily and inexpensively be transported to this district either electronically or physically." *Bennett v. Itochu Int'l, Inc.*, No. 09–cv–18192009-JCJ, 2009 WL 2569259, *4 (E.D. Pa. Aug. 17, 2009). Here, such concerns are even less relevant since most of these documents have already been produced in discovery.

The "public" *Jumara* factors counsel against transfer, as well. Indeed, it is hard to imagine a piece of litigation imbued with more local interest (as well as public policy) than this one. The ability of Pennsylvania victims and other citizens to observe the trial of this case here in Philadelphia, as opposed to Dallas, should be treated by this Court as a consideration as "paramount" as the preference of the Commonwealth plaintiff. Similarly reinforcing the appropriateness of this forum is the strong Pennsylvania public policy (*Jumara* public Factor 5) against allowing circumvention of its usury laws. *Pennsylvania Dep't of Banking v. NCAS of Delaware, LLC*, 948 A.2d 752 (Pa. 2008).

None of the other "public" factors weigh in favor of transfer. Enforceability of judgment is not a factor, given the Bankruptcy Court's decision that, up until such time that the Commonwealth seeks to enforce a judgment against the Think Finance bankruptcy estate, the bankruptcy should not impair this proceeding. Even after a judgment is entered, if the Commonwealth's enforcement efforts are focused on the other, non-debtor, Defendants, there would be no enforcement issues warranting a transfer.

Nor are there any practical considerations that could make the trial easy, expeditious or inexpensive (Factor 2) by transferring the case.[7] Indeed, as set forth in the Mirarchi Declaration, the opposite is true. The Commonwealth would have to hire Texas litigation counsel and would have to incur the travel expenses of getting Pennsylvania witnesses to Dallas, many of whom could get themselves to this Philadelphia courtroom. Nor are there court-congestion or familiarity-of-the-law considerations (Factors 3 and 6) that weigh in favor of transfer.

Defendants' main argument for the supposed judicial economy produced by moving this litigation to Texas is that the Bankruptcy Court will have to decide in the context of the Vermont, Virginia and Florida class actions,"whether the underlying loans issued by sovereign Native American Tribal lenders are subject to any state's law in the first instance." Defts. Brief at 17. However, Defendants fail to mention that, in rejecting Defendants' motions to dismiss two years ago, this Court already concluded that "it is not clear that the choice of law provisions in these loan contracts would hold up as they are against a fundamental policy of the Commonwealth of Pennsylvania." *Commonwealth of Pennsylvania v. Think Fin., Inc.,* 2016 WL 183289, at *15. Defendants do not explain why this Court should reach the opposite conclusion now, nor why the Bankruptcy Court would necessarily regard the state law issues within the regulatory environment of four different state jurisdictions to be the same.

---

[7] Even though Defendants have the burden of identifying witnesses who would be unavailable at trial here in Philadelphia, *Leatherman v. Cabot Oil & Gas Corp.,* No. 12-cv-3783, 2013 WL 1285491, at *3 (E.D. Pa. Mar. 29, 2013) (citing this Court's decision in *Brenner*), they have not identified any such witnesses.

C. **Using the Texas Bankruptcy Proceeding as the Reason to Transfer this Case Would Subvert Congressional Intent that Bankruptcy Filings Not Derail Governmental Civil Enforcement Actions to Enforce State Law**

In the end, the Defendants' arguments for transfer are mainly about the supposed efficiencies offered by the bankruptcy process. Yet these arguments ignore the special status accorded governmental "police and regulatory powers" within the bankruptcy system Congress constructed. The exception to the automatic stay in 11 U.S.C. § 362(b)(4) and in the bankruptcy removal statute, 28 U.S.C. § 1452(a), reflect the fundamental principle that "[t]he police power of the several States embodies the main bulwark of protection by which they carry out their responsibilities to the People; its abrogation is therefore a serious matter." *Penn Terra Ltd. v. Dep't of Envtl. Res., Com. of Pa.*, 733 F.2d 267, 273 (3d Cir. 1984).

While the goal of consolidating under a bankruptcy court all controversies potentially impacting on a debtor's reorganization is a "goal . . . normally central to the statutory scheme of the Bankruptcy Code," there are circumstances where "this policy is in inexorable conflict with other, no less salutary, governmental goals." *Id*. at 278. As the Third Circuit has made clear, in a proceeding such as this one, the "judicial economies" of bankruptcy must give way to protecting the law enforcement prerogatives of the states, in this case the Commonwealth of Pennsylvania:

> In enacting the exceptions to section 362, Congress recognized that in some circumstances, bankruptcy policy must yield to higher priorities. Indeed, if the policy of preservation of the estate is to be invariably paramount, then one could not have exceptions to the rule. Since Congress did provide for exceptions, however, we may assume that the goal of preserving the debtor's estate is not always the dominant goal.

*Id*. Thus, not only should the Commonwealth's preference for this forum take precedence under the general principles applicable to requests for a change of venue, that preference is protected by Congressional mandate. Plainly, Congress did not intend for the bankruptcy venue-transfer

provision in 28 U.S.C. § 1412 to be used to thwart the legitimate exercise of the Pennsylvania Attorney General's police powers.

## **CONCLUSION**

For all these reasons, Defendants Motion should be Denied.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

SARA MANZANO-DIAZ
Executive Deputy Attorney General
Public Protection Division

SARAH A. E. FRASCH
Chief Deputy Attorney General

*/s/ Saverio P. Mirarchi*
SAVERIO P. MIRARCHI
Senior Deputy Attorney General
Commonwealth of Pennsylvania

Office of Attorney General
Bureau of Consumer Protection
21 South 12th Street, 2nd Floor
Philadelphia, Pennsylvania 19107
Phone: (215) 560-2414
Email: smirarchi@attorneygeneral.gov

*/s/ Irv Ackelsberg*
IRV ACKELSBERG
John J. Grogan
Peter Leckman
LANGER GROGAN & DIVER, P.C.
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Phone: (215) 320-5660
Email: iackelsberg@langergrogan.com
*Special Counsel to the Commonwealth*

Dated: January 5, 2018