Gregory G. Hesse (Texas Bar No. 09549419)
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue
Suite 3700
Dallas, TX 75209
Telephone: (214) 979-3000

Tyler P. Brown (admitted *pro hac vice*)
Jason W. Harbour (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

In re:

**THINK FINANCE, LLC,** *et al.*,

Debtors.[1]

**Chapter 11**

**Case No. 17-33964-11 (HDH)**

**(Jointly Administered)**

## NOTICE OF FILING OF SUPPLEMENTAL <u>EXHIBIT B</u> TO MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION FOR AUTHORIZATION TO ENTER INTO TERM SHEET PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

**PLEASE TAKE NOTICE** that on June 6, 2019, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed the *Motion of the Debtors and Debtors-in-Possession for Authorization to Enter into Term Sheet Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019* [Doc. No. 1402] (the "Motion")[2] with the United States Bankruptcy Court for the Northern District of Texas.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Think Finance, LLC (6762), Think Finance SPV, LLC (4522), Financial U, LLC (1850), TC Loan Service, LLC (3103), Tailwind Marketing, LLC (1602), TC Administrative Services, LLC (4558), and TC Decision Sciences, LLC (8949).

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Term Sheet attached hereto as Exhibit 1 (the "Supplemental Exhibit B") supplements and replaces the Term Sheet attached as Exhibit B to the Motion (the "Original Exhibit B").

**PLEASE TAKE FURTHER NOTICE** that the only changes from the Original Exhibit B to the Supplemental Exhibit B are: (i) the Supplemental Exhibit B contains executed signature pages; and (ii) the Supplemental Exhibit B includes the following sentence, which has been added to the end of the section titled "Press Release" that begins on page 3 of the Term Sheet: "For the avoidance of doubt, the foregoing is not intended to authorize any Settling Party to issue a press release that is deliberately misleading or knowingly inconsistent with the Material Terms."

**PLEASE TAKE FURTHER NOTICE** that a copy of Supplemental Exhibit B may be obtained at no charge at *https://www.americanlegal.com/TF* or for a fee at *https://ecf.txnb.uscourts.gov.*

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

DATED: June 7, 2019

Respectfully submitted,

*/s/ Gregory G. Hesse*
Gregory G. Hesse (Texas Bar No. 09549419)
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue
Suite 3700
Dallas, TX 75209
Telephone:  (214) 979-3000
Email: ghesse@HuntonAK.com

-and-

Tyler P. Brown (admitted *pro hac vice*)
Jason W. Harbour (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Email: tpbrown@ HuntonAK.com
        jharbour@ HuntonAK.com

*Counsel to the Debtors and Debtors in Possession*

Case 2:14-cv-07139-JCJ Document 286-1 Filed 07/22/19 Page 4 of 84

**<u>Exhibit 1</u>**
**Supplemental Exhibit B**

*Execution Version*

---

**THINK FINANCE, LLC, ET AL.**

**GLOBAL SETTLEMENT AND RESTRUCTURING TERM SHEET**

**June 6, 2019**

---

This term sheet (together with the attachments hereto, the "Term Sheet")[1] sets forth the principal terms of a global settlement (the "Settlement") among (a) Think Finance, LLC, and its subsidiary debtors-in-possession (each a "Debtor," and collectively, the "Debtors") in the jointly administered cases styled *In re Think Finance, LLC, et al.*, Case No. 17-33964 (the "Chapter 11 Cases"), which are pending in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), (b) the Consenting Plaintiffs, (c) the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases, (d) the GPLS Secured Parties, and (e) certain other non-Debtor parties who are receiving releases in exchange for making contributions to the Settlement (collectively, (a)-(e) are the "Settling Parties" and (b)-(d) are the "Consenting Stakeholders"), through a chapter 11 plan (the "Plan"). It is not intended to be a solicitation of a plan for purposes of section 1125 of the Bankruptcy Code.

**THIS TERM SHEET DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY EXCHANGE OR PLAN OF REORGANIZATION, IT BEING UNDERSTOOD THAT SUCH A SOLICITATION, IF ANY, SHALL BE MADE ONLY IN COMPLIANCE WITH SECTION 4(A)(2) OF THE SECURITIES ACT OF 1933, SECTION 1145 OF THE BANKRUPTCY CODE, AND ALL OTHER APPLICABLE STATUTES, RULES, AND LAWS.**

**THIS TERM SHEET IS SUBJECT TO THE FILING OF A PLAN AND DISCLOSURE STATEMENT IN FORM AND SUBSTANCE MATERIALLY CONSISTENT WITH THIS TERM SHEET AND OTHERWISE REASONABLY ACCEPTABLE TO THE DEBTORS AND CONSENTING STAKEHOLDERS; PROVIDED, HOWEVER, THAT**

---

[1]    Capitalized terms used but not defined throughout this Term Sheet have the meanings given thereto in Annex C.

**THIS TERM SHEET IS ENFORCEABLE AGAINST THE CONSENTING STAKEHOLDERS AS SET FORTH HEREIN UNLESS THE PLAN ACTUALLY PROPOSED BY THE DEBTORS IS MATERIALLY DIFFERENT THAN THE TERMS CONTAINED HEREIN, OR, WITH RESPECT TO THE DEBTORS AND THE COMMITTEE, THEIR FIDUCIARY OBLIGATIONS REQUIRE OTHERWISE. THE SETTLING PARTIES EXPRESSLY AGREE THAT (1) THE ENFORCEABILITY OF THIS TERM SHEET AGAINST THE DEBTORS IS SUBJECT TO THE DEBTORS OBTAINING BANKRUPTCY COURT APPROVAL OF THEIR ENTRY INTO THIS TERM SHEET, AND (2) THIS TERM SHEET SHALL NOT BE BINDING AGAINST THE PUTATIVE NATIONWIDE CONSUMER BORROWER CLASS UNLESS AND UNTIL FULL AND FINAL APPROVAL OF THE SETTLEMENT PURSUANT TO FED. R. CIV. P. 23, PROVIDED THAT THIS TERM SHEET SHALL BE BINDING AGAINST THE CONSENTING PLAINTIFFS UPON EXECUTION OF THIS TERM SHEET.**

**THIS TERM SHEET HAS BEEN PRODUCED FOR DISCUSSION AND SETTLEMENT PURPOSES ONLY, AND IS SUBJECT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND OTHER APPLICABLE STATE AND FEDERAL STATUTES, RULES, AND LAWS.**

[*Remainder of Page Intentionally Left Blank*]

| Global Settlement and Restructuring Summary | |
|---|---|
| Overview | Recognizing the benefits of a consensual, expedient resolution of the Chapter 11 Cases and the Pending Litigation (as defined in Annex B attached hereto), the Settling Parties have agreed to fully and finally resolve the claims and disputes between and among the Settling Parties and to support a Plan which includes the terms contained herein.<br><br>As outlined below, the Settlement provides meaningful relief to the Debtors' stakeholders in exchange for the settlement of substantial, disputed claims against the Debtors and the Consenting Defendants, and presents the clearest path to an efficient, timely resolution of the Chapter 11 Cases.<br><br>The Settlement will also incorporate the resolution of claims and issues, related to the Debtors and their business, between certain non-Debtor parties pursuant to Fed. R. Civ. P. 23(e), each of which is disputed and expressly denied by such non-Debtor parties.<br><br>The Settlement ultimately will be effectuated through confirmation of the Plan, which must be consistent with this Term Sheet in all material respects unless the Debtors and all Consenting Stakeholders consent in writing to modify the terms contained in this Term Sheet.<br><br>This Term Sheet identifies the Reorganized Debtor Assets, which comprise the only property of the Debtors' estates that will be vested in the Reorganized Debtors on the Effective Date. The Plan shall provide for the payment of, or establishing reserves for, certain claims on or as soon as reasonably practicable after the Effective Date, and for all other assets and property of the Debtors' estates to be administered by the Litigation Trustee on and after the Effective Date in accordance with the Plan and the Litigation Trust Agreement; provided, however, that claims against the Released Parties shall be released as set forth in greater detail below.<br><br>The Settling Parties will negotiate, in good faith, any other documents reasonably required to consummate the Settlement. |
| Press Release | Excluding the Debtors and the GPLS Secured Parties with respect to any responsive press release, the Pennsylvania AG and the CFPB, no Settling Party shall issue or cause to be issued any press release regarding the settlement, the Debtors' chapter 11 plan, the mediation process, or other material document or material proceeding (collectively, the "Material Terms") unless |

| | |
|---|---|
| | (i) such press release is consistent in its entirety with the Material Terms and (ii) the language contained in such press release has been provided to the Debtors and the Consenting Defendants (including the GPLS Secured Parties) at least five (5) Business Days prior to the release or publication thereof. For the avoidance of doubt, the foregoing is not intended to authorize any Settling Party to issue a press release that is deliberately misleading or knowingly inconsistent with the Material Terms. |
| No Admission of Liability | Notwithstanding anything to the contrary herein, none of the Debtors or the Consenting Defendants (including the GPLS Secured Parties) admits to any wrongdoing, liability, fact, fault, assertion or illegality, each of which is expressly denied in its entirety by the Debtors and the Consenting Defendants (including the GPLS Secured Parties). The Settlement is entered into to resolve, settle and compromise disputed matters so as to avoid the cost, expense and effort associated with continuing the dispute. Nothing contained herein, the Plan, the Disclosure Statement or other related document shall be construed or used as an admission to any wrongdoing, liability, fact, fault, assertion or illegality by any of the Debtors or the Consenting Defendants (including the GPLS Secured Parties), each of which is expressly denied. |
| Settlement Timeline | The consummation of the Settlement is predicated upon the occurrence of the following events:<br><br>• the execution of this Term Sheet by the Consenting Stakeholders and the Debtors, provided that such execution by the Debtors shall not be binding upon the Debtors until the Bankruptcy Court approves the Debtors' entry into this Term Sheet;<br><br>• the Plan shall provide that, on the Effective Date, the GPLS Secured Parties shall cause all amounts in the GPLS Holdback Account, but no less than $7.5 million, to be transferred to the Escrow Account;<br><br>• the Plan shall provide for the first $2 million from the Escrow Account to be transferred to the Pennsylvania AG on the Effective Date;<br><br>• the Plan shall provide for all amounts remaining in the Escrow Account (after the $2 million transfer to the Pennsylvania AG set forth above) to be transferred to the Debtors' estates on the Effective Date, and all such funds not used to make payments or to fund reserves as |

4

required by this Term Sheet and the Plan shall be transferred to the Litigation Trust which shall receive all rights and interests in such funds from the Debtors and GPLS Secured Parties, for administration by the Litigation Trustee in accordance with the Plan and the Litigation Trust Agreement;

- Notwithstanding any rights to the contrary set forth in the cash collateral orders entered in the Chapter 11 Cases, the GPLS Secured Parties shall not seek any further reimbursement or repayment of fees and expenses of the GPLS Secured Parties or otherwise from the Escrow Account, the GPLS Holdback Account, or otherwise;

- Other than obtaining documents pursuant to (i) the 2004 Order entered concerning CBIZ and (ii) the 2004 Order entered concerning KPMG, the Committee shall continue any deadlines associated with any pending Bankruptcy Rule 2004 investigations of the Debtors and any other parties or entities. In addition, the Committee shall not seek authority to conduct any further or additional Bankruptcy Rule 2004 investigations unless and until this Term Sheet is terminated in accordance with its terms as it is the intention of the Settling Parties that the Committee will not conduct any other Bankruptcy Rule 2004 while the Settling Parties seek to confirm the Plan consistent with this Term Sheet. If, however, unforeseen events arise after the execution of this Term Sheet that do not result in the termination of this Term Sheet but cause the Committee to want to seek additional Bankruptcy Rule 2004 investigations, then the Committee shall only seek such additional Bankruptcy 2004 investigations with written consent from the Debtors, which consent shall not be unreasonably withheld; provided, however, for the avoidance of doubt, the Litigation Trustee shall succeed to the rights of the Committee in connection with such investigations on and after the Effective Date and the limitations stated herein on the Committee pursuing Bankruptcy Rule 2004 investigations shall not apply to the Litigation Trustee;

- within five days following execution of this Term Sheet by the Settling Parties:

  - each Consenting Plaintiff shall move to stay, or

otherwise confirm in writing to the Debtors and the applicable Consenting Defendant(s) its agreement not to proceed with, all actions currently pending against the Debtors, their estates, and all applicable Consenting Defendants, unless and until this Term Sheet is terminated in accordance with its terms;

- proposed Nationwide Class Counsel shall file a motion, which shall be in a form reasonably acceptable to and not objected to by the Debtors, Committee, and all Consenting Plaintiffs and Consenting Defendants (the "Approval Motion"), seeking, among other things, (a) to amend and consolidate various proofs of claim; (b) to invoke Bankruptcy Rule 7023 to the extent necessary; (c) certification of the Nationwide Consumer Borrower Settlement Class for settlement purposes only; (d) to appoint 21 Nationwide Class Representatives; (e) to appoint Nationwide Class Counsel as class counsel; (f) preliminary approval of the Settlement pursuant to Fed. R. Civ. P. 23(e); (g) authorization of the release of funds from the Escrow Account to advance and pay noticing and related expenses in connection with the Settlement and the certification of the Nationwide Consumer Borrower Settlement Class; (h) to approve, among other things, the Class Administrator[2] and the form and manner of notice to be served on members of the Nationwide Consumer Borrower Settlement Class; (i) to establish a deadline, at least 45 days after entry of the Preliminary Approval Order, for Nationwide Consumer Borrowers to return notice of their desire to opt out of the Nationwide Consumer Borrower Settlement Class or object to the Settlement (the "Opt-Out Deadline"); and (j) to authorize the Class Representatives to vote on behalf of the Nationwide Consumer Borrower Settlement Class to accept or reject the Plan;

- Kelly Guzzo, P.L.C., Consumer Litigation Associates, P.C. and Tycko & Zaveeri, P.L.C. shall file a Motion for Preliminary Approval pursuant to

---

[2] The Class Administrator shall be RSM, a nationally recognized class administrator acceptable to the Debtors, the Committee, the Consenting Plaintiffs, and the GPLS Secured Parties.

Fed. R. Civ. P. 23 seeking certification of the same Nationwide Consumer Borrower Settlement Class in the Eastern District of Virginia in connection with a settlement funded by Great Plains Lending, LLC, Plain Green, LLC, MobiLoans, LLC and Mark Curry and his companies. The Committee, and all Consenting Plaintiffs and Consenting Defendants shall not object to the motion for preliminary approval. If the Virginia Class Settlement is preliminarily approved, it shall be coordinated with the Nationwide Consumer Borrower Settlement Class to the extent practicable and necessary so that the Class members (and others receiving notice) and the Bankruptcy Court can fairly evaluate the combined effect of both settlements, including the proposed remedies, relief and releases, and so that the expense, complexities and delays associated with the settlements can be minimized, all to the extent consistent with Federal Rule of Civil Procedure 23, Bankruptcy Rule 7023, CAFA, other applicable law, and due process. Notwithstanding the foregoing or anything else herein, the approval of the Virginia Class Settlement is not a condition precedent to the confirmation of the Plan or to the Effective Date; and

- the Debtors shall file a motion seeking authorization to enter into this Term Sheet in a form acceptable to the Committee, the Consenting Plaintiffs, and the GPLS Secured Parties, which acceptance shall not be unreasonably withheld, which shall be attached to the motion (the "Term Sheet Authorization Motion").

- within 10 days after the filing of the Approval Motion and the Term Sheet Authorization Motion, the notice required by 28 U.S.C. § 1715 shall be provided by the Debtors and the Consenting Defendants or their designee, and such providing party shall rely upon the applicable usury limits for each of the Tier 2 states provided by proposed Nationwide Class Counsel in preparing such notice; and provided further that the Debtors shall consult with proposed Nationwide Class Counsel in connection with calculating the proposed distribution information for such notice;

- within 40 days following execution of this Term Sheet the Bankruptcy Court shall have entered (i) an order substantially granting the relief sought in the Approval

Motion (the "<u>Preliminary Approval Order</u>") and (ii) an order authorizing the Debtors to enter into this Term Sheet (the "<u>Term Sheet Authorization Order</u>");

- within 7 days following the execution of this Term Sheet, proposed Nationwide Class Counsel shall provide the proposed Class Administrator with the applicable usury rate for each of the Tier 2 states;

- within 10 days following execution of this Term Sheet, the Debtors shall provide the proposed Class Administrator global historical loan level data for Eligible Tribal Loans sufficient to enable an analysis of state-by-state distribution percentages and for use in all other distribution calculations contemplated by this Term Sheet or by CFPB in connection with any distributions from its Civil Penalty Fund;

- no later than 5 Business Days following entry of the Preliminary Approval Order and the Term Sheet Authorization Order, the Debtors shall file an amended Plan and Disclosure Statement reflecting the terms and conditions set forth in this Term Sheet and a motion seeking approval of the amended Disclosure Statement;

- as soon as reasonably practicable, and in no event later than 45 days following entry of the Preliminary Approval Order, the Class Administrator shall mail and/or email the approved Class Notice as directed by the Preliminary Approval Order (including a special notice for Pennsylvania Borrowers that explains their separate classification and treatment), provided, that (i) the Debtors will provide all information necessary for the Class Administrator to generate a class list and utilize appropriate address update and location products and services, which update and location process will be conducted in consultation with the Debtors, and Nationwide Class Counsel, provided that the Debtors and Nationwide Class Counsel will cooperate in obtaining any collateral orders necessary to use such address update and location products services; (ii) to facilitate creation of this class list and for the additional purpose of effectuating this settlement including enabling their answering of questions from potential members of the Nationwide Consumer Borrower Settlement Class the Debtors will provide on a confidential basis to Kelly Guzzo, P.L.C. and Consumer Litigation Associates, P.C.

(who will be the firms receiving calls from consumer borrowers), the name, last 4 digits of the social security number, state, and loan payment amount information for the consumer borrowers of the Eligible Tribal Loans, provided that Kelly Guzzo, P.L.C., and Consumer Litigation Associates, P.C. (a) shall not provide such information to any Entity other than such consumer borrower and/or the Class Administrator and shall not use such information for any other purpose and (b) agree to the entry by the Bankruptcy Court of a protective order that so limits the ability of Kelly Guzzo, P.L.C. and Consumer Litigation Associates, P.C. to provide such information to anyone else (together (a) and (b) are referred to the "PII Prohibited Use/Protective Order Provisions"); and (iii) to facilitate the Pennsylvania AG communicating with Pennsylvania Borrowers and/or serving as paying agent for allocations for Pennsylvania Borrowers, the Debtors, or at the request of the Pennsylvania AG either Kelly Guzzo, P.L.C., Consumer Litigation Associates, P.C., or the Class Administrator, will provide on a confidential basis to the Pennsylvania AG the name, last 4 digits of the social security number, and loan payment amount information for the Pennsylvania Borrowers, provided that the Pennsylvania AG (x) shall not provide such information to any Entity other than such Pennsylvania Borrower, the Class Administrator, and/or a service provider engaged by the Pennsylvania AG to assist the Pennsylvania AG in communicating with Pennsylvania Borrowers and/or serving as paying agent for allocations for Pennsylvania Borrowers, and shall not use such information for any other purpose and (y) agrees to the entry by the Bankruptcy Court of a protective order that so limits the ability of the Pennsylvania AG and any such service provider to provide such information to anyone else. After the Effective Date, the Reorganized Debtors shall, together with the Debtors, have the benefit of and right to enforce these provisions;

- no later than 10 Business Days after the Opt-Out Deadline has passed, the Bankruptcy Court shall hold a hearing to determine whether to (a) approve the Disclosure Statement, (b) authorize the Debtors to distribute the Plan Solicitation Materials, and (c) approve solicitation and voting procedures, including authorizing the class representatives to vote on the Plan on behalf of

the Nationwide Consumer Borrower Settlement Class;

- within 5 Business Days following entry of the Disclosure Statement Approval Order, the Debtors shall distribute the Plan Solicitation Materials;

- within 45 days following entry of the Disclosure Statement Approval Order, the Bankruptcy Court shall hold the Confirmation Hearing on the Plan contemporaneously with the Final Fairness Hearing, provided that the Final Fairness Approval Order shall contain the Class Action Injunction and Other Relief;

- within 5 Business Days following the Confirmation Hearing, the Bankruptcy Court shall have entered the Confirmation Order and the Bankruptcy Court shall have entered the Final Fairness Approval Order, provided, however, that this 5 Business Day period may be extended as necessary so that the Final Fairness Approval Order is not entered less than 90 days after the mailing of any notices required by 28 U.S.C. § 1715;

- within 30 days following entry of the Confirmation Order and the Final Fairness Approval Order, the Effective Date shall have occurred; and

- on the Effective Date, in addition to other actions described herein or in the Plan, each of the following shall occur (except as the timing of such action shall be governed as otherwise set forth in this Term Sheet or other future agreement or modified by Bankruptcy Court order):

  1. each Consenting Defendant (other than the GPLS Secured Parties) shall pay its Consenting Defendants' Cash Contribution to the Litigation Trust, in accordance with the terms of the settlement with such Consenting Defendant and/or the confirmed Plan, as applicable;

  2. the GPLS Secured Parties will cause all cash in the GPLS Holdback Account to be transferred to the Escrow Account. The GPLS Secured Parties represent, warrant, and covenant that, immediately prior to the transfer of funds to the Escrow Account on the Effective Date, the GPLS Holdback Account will have no less than $7.5 million in immediately available funds;

3. prior to any further transfers from the Escrow Account, $2 million shall be transferred to the Pennsylvania AG from the Escrow Account;

4. thereafter, all cash in the Escrow Account shall be transferred to the Debtors' estates, and then all such funds not used to make payments or to fund reserves as required by this Term Sheet or the Plan shall be transferred to the Litigation Trust which shall receive all rights and interests in such funds from the Debtors, for administration by the Litigation Trustee in accordance with the terms of the confirmed Plan and the Litigation Trust Agreement;

5. the reserve for Allowed Administrative Expenses, Priority Tax Claims and other Priority Claims shall be funded;

6. cash in the amount of the Professional Fee Amount shall be deposited into the Professional Fee Escrow by the Debtors;

7. the Reorganized Debtor Assets shall vest in the Reorganized Debtors, and the Reorganized Debtor Cash Contribution shall be paid to the Reorganized Debtors;

8. the reserve for the General Unsecured Claims Cash Pool shall be funded in the amount of $3 million, and it shall be held by the Litigation Trustee for distribution;

9. the reserve for the Substantial Contribution Fund shall be funded and disbursed;

10. the Litigation Trust shall be established in accordance with the Plan and the Litigation Trust Agreement, and all remaining cash and rights to payment in the Debtors' estates (after funding 5 through 9 above, and, other than as expressly stated herein) shall be transferred to the Litigation Trust; except for the funding of an expense reserve for the Litigation Trust in accordance with the terms of, and in the amount identified by, the Litigation Trust Agreement, the cash transferred to the Litigation Trust shall be reserved for the initial distribution to members of the Nationwide Consumer Borrower Settlement Class, and the

11

Plan shall provide that such initial distribution shall occur within 30 days following the Effective Date or as soon thereafter as reasonably practicable in the Litigation Trustee's discretion;[3]

11. the Litigation Trustee, the Litigation Trust Oversight Board, and the Advisory Committee shall be appointed;

12. all Causes of Action shall be transferred to the Litigation Trust to be prosecuted solely by the Litigation Trustee in accordance with the Plan and the Litigation Trust Agreement;

13. the releases and exculpation attached hereto as **Annex A** (the "Releases") shall become fully enforceable and effective, except for (i) the releases from the Pennsylvania AG, which shall become effective upon entry of the order(s) contemplated by this Term Sheet settling the Pennsylvania Litigation (the forms of which order(s) and agreement(s) shall be mutually acceptable by and among the parties thereto and set forth in a Plan Supplement), (ii) the releases from the CFPB, which shall become effective upon entry of the order(s) contemplated by this Term Sheet, including the consent order at Annex D attached hereto, settling the CFPB Litigation, and (iii) except for the effectiveness of the releases from the Pennsylvania AG and the CFPB as set forth in (i) and (ii) above, the releases to the GPLS Secured Parties shall become effective upon the occurrence of the Effective Date and the applicable transfer(s) from the GPLS Holdback Account as set forth in this Term Sheet;

14. the (a) Consenting Plaintiffs other than the Pennsylvania AG and the CFPB shall take all steps necessary to dismiss the applicable Pending Litigation with prejudice (and obtain an appropriate Rule 54(b) order if necessary) in accordance with the paragraphs below, solely as to the Debtors (where applicable) and the

---

[3] The Litigation Trust Agreement is being drafted by counsel for the Committee and certain Consenting Plaintiffs and will be circulated to the Debtors separately. For the avoidance of doubt, the Litigation Trust Agreement will need to be acceptable to the Debtors, which consent shall not be unreasonably withheld.

Consenting Defendants, (b) Pennsylvania AG shall seek and obtain all orders necessary to settle, with the entry of a Rule 54(b) separate final judgment, all claims in the Pennsylvania Litigation against the Debtors in accordance with the below Pennsylvania AG Settlement section, and (c) the CFPB shall seek and obtain all orders necessary to settle, with the entry of the consent order attached hereto at Annex D, all claims in the CFPB Litigation against the Debtors in accordance with the below CFPB Settlement section;

15. the Debtors and the GPLS Secured Parties shall take all steps necessary to dismiss the GPLS Litigation with prejudice;

16. the GPLS Secured Parties shall cause GPLS to assign the MobiLoans Note and related agreements to the Reorganized Debtors;

17. the GPLS Secured Parties shall release all interest in and rights to the Great Plains Reserve to Great Plains, which will be distributed in accordance with the terms of the settlement reached in Gibbs v. Great Plains, et al.;

18. the Reorganized Debtors shall reasonably cooperate, if needed, in efforts by the Settling Tribal Lenders to cause the Tribal Property to be transferred to the Litigation Trust in accordance with separate settlement agreements that may be reached with the Settling Tribal Lenders; provided, however, that since the Debtors are not currently aware of the extent of any cooperation required, nothing herein shall require the Reorganized Debtors to incur expenses to so cooperate without provision being made for reimbursement of reasonable and actual internal and external costs, for such cooperation to be paid to the Reorganized Debtors from the Litigation Trust;

19. the Restructuring Transactions shall be consummated; and

20. the Class Action Injunctive and Other Relief shall take effect.

13

| Specific Components of the Settlement | |
|---|---|
| Reorganized Debtor Assets | On the Effective Date, the following Reorganized Debtor Assets (and for the avoidance of doubt, no other property of the Debtors' estates) shall be transferred to and vest in the Reorganized Debtors:<br><br>• $5 million in cash (the "Reorganized Debtor Cash Distribution");<br><br>• that certain Subordinated Term Note, dated May 10, 2017, by MobiLoans for the benefit of GPLS (the "MobiLoans Note") with a face value of $6,795,000, and all directly related agreements, including that certain (a) Subordinated Loan Agreement, dated May 10, 2017, by and between MobiLoans and GPLS, (b) Security Agreement, dated May 10, 2017, by and between MobiLoans and GPLS, pursuant to which MobiLoans grants a subordinated security interest in substantially all of its assets, (c) Administrative Services Agreement, dated May 10, 2017, by and between GPLS and AHG Fund Investors, LLC, (d) Intercreditor Agreement, dated May 10, 2017, by and between GPLS and AHG Fund Investors, LLC, and (e) Subordination Agreement, dated May 10, 2017, by and between GPLS and the Senior Lender to such Subordination Agreement, and any principal payments received by or on behalf of GPLS on such MobiLoans Note between the execution of this Term Sheet and the Effective Date;<br><br>• that certain Promissory Note, dated as of June 18, 2015, as amended, issued by Haynes Investments, Inc. to Think Finance, Inc., with a face value of $5,269,000 and an approximate remaining balance of $2,500,000, and any principal payments received by or on behalf of the Debtors on such Promissory Note between the execution of this Term Sheet and the Effective Date;<br><br>• all intercompany receivables, the largest being (i) the Cortex service payments,[4] (ii) the Cortex note, and (iii) the TF Holdings debt;<br><br>• all Intellectual Property of the Debtors, FF&E, and |

---

[4] For the avoidance of doubt, Cortex service payments received by the Debtors prior to the Effective Date of the Plan would be treated like other general cash of the Debtors pursuant to the Plan, as contemplated by the first bullet point of the Conditions Precedent to the Effective Date section of this Term Sheet.

14

| | |
|---|---|
| | employees (including business and employee contracts, leases and related matters, etc.), including assumed executory contracts (including employee contracts and leases), *provided* that the Reorganized Debtors shall be solely responsible for payment of all cure amounts to be paid in connection with any assumed executory contracts and leases; and |
| | • all of the Debtors' rights under their insurance policies, including any directors' and officers' policies, and under applicable law against their insurance carriers concerning such insurance policies, *provided* that any proceeds of such policies received by the Debtors as an insured after December 31, 2018, shall be transferred to and vest in the Reorganized Debtors, and *provided* further, for the avoidance of doubt, that the Plan shall be insurance neutral concerning contractual rights, if any, of any other person or entity under such insurance policies. |
| | For the avoidance of doubt, any and all other assets and property of the Debtors' estates not included above or otherwise addressed in this Term Sheet shall be transferred to the Litigation Trust and administered by the Litigation Trustee for the benefit of creditors, in accordance with the terms of the Plan, including, but not limited to, the Causes of Action, refunds, deposits, remnant assets, the General Unsecured Claims Cash Pool, the Professional Fee Escrow and the Debtors' interests in GPLS. Books and records and class member data are dealt with elsewhere in this Term Sheet. |
| Nationwide Consumer Borrower Settlement Class | The Nationwide Consumer Borrower Settlement Class shall be made up of all Nationwide Consumer Borrowers, *excluding* those Nationwide Consumer Borrowers who effectively opt out of the Nationwide Consumer Borrower Settlement Class. Distributions to members of the Nationwide Consumer Borrower Settlement Class shall be governed by the Plan and the Litigation Trust Agreement. Nationwide Class Counsel shall coordinate with counsel to the Pennsylvania AG in connection with any notices provided and distributions made to Pennsylvania Borrowers, which notices and distributions from the Litigation Trust shall be subject to approval by the Bankruptcy Court. |
| | If more than 1% in number of the Nationwide Consumer Borrowers opt out of the Nationwide Consumer Borrower Settlement Class, the GPLS Secured Parties may in their sole discretion terminate the Term Sheet without penalty. The Preliminary Approval Order shall provide that no member of the |

Nationwide Consumer Borrower Settlement Class can opt out on behalf of anyone other than himself or herself and must sign on his or her own behalf.

The Plan and Litigation Trust Agreement shall include the following allocation of distribution for alleged damages among members of the Nationwide Consumer Borrower Settlement Class, which amount will be calculated by a formula that will use the allocation below to reasonably approximate the payment for each member of the Nationwide Consumer Borrower Settlement Class, based on the data and fields of information available to the Class Administrator and as further provided below:

o <u>Tier 1</u>: the following states: Arizona, Arkansas, Colorado, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Pennsylvania, Ohio, South Dakota, Vermont, Virginia, and Wisconsin. Tier 1 would receive <u>70%</u> of the Litigation Trust Proceeds (the "<u>Tier 1 Allocation</u>"),

☐  Ã  ☐  §

`Z☺氂☐

o <u>Tier 2</u>: the following states: Alabama, Alaska, California, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Washington, West Virginia, Washington D.C., and Wyoming. Tier 2 would receive <u>30%</u> of the Litigation Trust Proceeds (the "<u>Tier 2 Allocation</u>"), in addition to injunctive and other relief in the form of the Class Action Injunctive and Other Relief.

o <u>Tier 3</u>: states other than Tier 1 states and Tier 2 states. Tier 3 would receive only the injunctive and other relief in the form of the Class Action Injunctive and Other Relief and would include Nevada and Utah.

• <u>Allowance of Claim for Voting and Distribution</u>.  The Nationwide Consumer Borrower Settlement Class shall have an allowed unsecured claim in the amount of $1.13 billion solely for purposes of voting and distribution under the Plan. The Debtors dispute liability on the foregoing claim, and this allowance shall not be an agreement by the Debtors or Reorganized Debtors to the allowance of such claim for any other purpose.  Consistent with the provisions below in the General Unsecured Claims section, neither the Debtors,

Reorganized Debtors nor any Released Parties shall object to any Claims in these Chapter 11 Cases or have standing to be a party in the Claims objection process. The Plan shall separately classify one claim on behalf of all members of the Nationwide Consumer Borrower Settlement Class. No other claims of any members of the Nationwide Consumer Borrower Settlement Class shall be allowed except as otherwise set forth in this agreement for voting and distribution purposes only. The Pennsylvania AG proofs of claim and the CFPB proofs of claim shall be satisfied through the distributions on account of the single class claim of the Nationwide Consumer Borrower Settlement Class and the other relief provided in the Pennsylvania AG Settlement and the CFPB Settlement sections below.

- Solely for purposes of the pro rata allocation of distributions to members of the Nationwide Consumer Borrower Settlement Class, the Plan and the Litigation Trust Agreement shall provide that:

  - each member of the Nationwide Consumer Borrower Settlement Class in a Tier 1 state shall receive a pro-rata distribution of the Tier 1 Allocation calculated based on the total amount paid by such Class member on Eligible Tribal Loans (in interest, as to Great Plains or Plain Green installment loans, and charges, as to MobiLoans lines of credit) as reflected on the applicable Tribal Lender's books and records available to the Debtors, the GPLS Secured Parties (with respect to the GPLS Secured Parties, only to the extent any books or records are actually in the possession, custody or control of the GPLS Secured Parties) and/or the Settling Tribal Lenders. Additionally, the Pennsylvania Borrowers also may receive a portion of the other amounts paid to the Pennsylvania AG as part of the Settlement, or from any recoveries in the Pennsylvania Litigation identified in Annex B against Non-Consenting Defendants (the "Pennsylvania Borrower Additional Amounts"), less any allocations therefrom made by the Pennsylvania AG, at his sole discretion, to civil penalties or for reimbursement of expenses related to the Pennsylvania Litigation identified in Annex B.

  - each member of the Nationwide Consumer Borrower Settlement Class in a Tier 2 state shall receive a pro-rata distribution of the Tier 2 Allocation calculated based upon the total amount of interest, as to Great Plains or

Plain Green installment loans, and of charges, as to MobiLoans lines of credit, paid by such Class member on Eligible Tribal Loans, as reflected on the applicable Tribal Lender's books and records available to the Debtors, the GPLS Secured Parties (with respect to the GPLS Secured Parties, only to the extent any books or records are actually in the possession, custody or control of the GPLS Secured Parties) and/or the Settling Tribal Lenders, over the usury limit in such state applicable to unsecured installment loans issued by lenders subject to such state's laws in a similar dollar amount as the Eligible Tribal Loans;

- members of the Nationwide Consumer Borrower Settlement Class in a Tier 3 state shall not receive any monetary distribution; and

- notwithstanding the foregoing, distributions from the Litigation Trust to individual members of the Nationwide Consumer Borrower Settlement Class shall not exceed the amount each of those consumers paid in excess of principal on his or her loan.

- Definition of Nationwide Consumer Borrower Settlement Class and holders of Consumer Borrower Claims shall include Pennsylvania Borrowers for all purposes including the class notice and approval process, provided that the aggregate amount of all allocations for Pennsylvania Borrowers shall be paid to the Pennsylvania AG. The Pennsylvania AG may determine, in his sole discretion, all matters relating to the timing of distributions to Pennsylvania Borrowers.

- It is understood and acknowledged by the Settling Parties that the consumer borrowers are continuing their respective litigation against Non-Released/Non-Exculpated Parties (including but not limited to Kenneth Rees, Stephen Haynes, Haynes Investments, LLC., Sovereign Business Solutions, LLC, Mike Stinson, Linda Stinson (except to the extent released in her capacity as a former director or officer), The Stinson 2009 Grantor Retained Annuity Trust, 7HBF No. 2, LTD, Sequoia Capital Operations, LLC, Sequoia Capital Franchise Partners, LP, Sequoia Capital Growth Fund III, LP, Sequoia Entrepreneurs Annex Fund, LP, Sequoia Capital Growth III Principals Fund, LLC, Sequoia Capital Franchise Fund, LP, Sequoia Capital Growth Partners III, LP, Startup Capital Ventures, LP, Stephen J. Shaper (except to the extent

| | |
|---|---|
| | released in his capacity as a former director or officer), John Drew (except to the extent released in his capacity as a former director or officer), TCV, LP, TCV Member Fund, LP, Technology Crossover Ventures, TCV V L.P., and Technology Crossover Management V, LLC) without limitation and that any judgment, proceeds from such judgment, or settlement with such remaining defendants are the sole property of the respective consumer(s) for distribution pursuant to further orders of the court in those matters and/or the Litigation Trust.<br><br>• The Pennsylvania AG shall receive a separate distribution of $2 million from the Escrow Account in partial resolution of certain claims brought in the Pennsylvania Litigation against Released Non-Debtor Parties. |
| Nationwide Class Representatives and Class Counsel | Kelly Guzzo, P.L.C, Consumer Litigation Associates, P.C., Lowenstein Sandler, LLP, and Tycko & Zavareei, LLP shall serve as Nationwide Class Counsel for the Nationwide Consumer Borrower Settlement Class;<br><br>Stephanie Edwards, Patrick Inscho, Darlene Gibbs, Tamara Price, Sherry Blackburn, George Hengle, Regina Nolte, Lawrence Mwethuku, Lula Williams, India Banks, Jeri Brennan, JoAnn Griffiths, Alicia Patterson, Kimetra Brice, Jill Novorot, Earl Browne, Jessica Gingras, Angela Given, Vanessa Granger, Lilya McAtee, and Beverly Kristina Miller shall serve as the Nationwide Representatives of the Nationwide Consumer Borrower Settlement Class. The service award to the Nationwide Class Representatives, which will need to be approved in accordance with Rule 23, is solely to compensate the Nationwide Class Representatives for work done on behalf of the class, to make up for any financial or reputational risk undertaken in bringing the action, and, as applicable, to recognize their willingness to act as a private attorney general. Each Nationwide Class Representatives' damages as alleged in the Pending Litigation and proofs of claim will be compensated based upon the same payment formula as all class members and reflected in this Term Sheet.<br><br>The Nationwide Consumer Borrower Settlement Class shall be represented by the following firms:<br><br>• Kelly Guzzo, P.L.C.;<br><br>• Consumer Litigation Associates, P.C;<br><br>• Lowenstein Sandler, LLP; and |

| | |
|---|---|
| | • Tycko & Zavareei, LLP.<br><br>The following firms shall also serve as an advisory committee:<br><br>• Kellett & Bartholow, PLLC;<br><br>• Berman Tabacco; and<br><br>• Gravel & Shea PC. |
| Litigation Trust | As set forth above in paragraph 8 of the Settlement Timeline section, on the Effective Date, or as soon as reasonably practicable thereafter, the Litigation Trust shall be initially funded with cash from the Debtors' estates deposited into an account controlled by the Litigation Trustee pursuant to the Litigation Trust Agreement. Additionally, all net proceeds of Causes of Action and rights to payment to be conveyed to the Litigation Trust pursuant to this Term Sheet and the Plan shall be deposited into or transferred to the Litigation Trust for distribution to the members of the Nationwide Consumer Borrower Settlement Class pursuant to the Plan and Litigation Trust Agreement. The Debtors shall not prosecute, settle, sell, transfer, assign, waive or release any of the Causes of Action, all of which are preserved for and shall be transferred to the Litigation Trust, except those otherwise released, waived or discharged hereunder and in the Plan, provided, however, that the Debtors are not intending hereby to agree to derivative standing with respect to any Causes of Action against the GPLS Secured Parties that the Debtors have pursued in the Chapter 11 Cases and that currently are subject to a forbearance agreement and are intended to be resolved by this Term Sheet and the Plan.<br><br>To the extent not provided by the Debtors prior to the Effective Date, the Litigation Trustee shall provide on a confidential basis sufficient information to the Class Administrator, and any subsequently appointed class administrator, to make an initial distribution and any subsequent distributions in accordance with the Plan and Litigation Trust Agreement to the members of the Nationwide Consumer Borrower Settlement Class. After the Effective Date, Nationwide Class Counsel shall continue to fulfill and have the responsibilities ordinarily imposed by Fed. R. Civ. P. 23.<br><br>The Litigation Trust shall be administered in accordance with the Plan and Litigation Trust Agreement, and Nationwide Class Counsel shall consult with the Litigation Trustee regarding such administration, as appropriate. The Litigation Trustee may retain attorneys and professionals pursuant to the terms of the |

Litigation Trust Agreement to, among other things, prosecute the Causes of Action, and the reasonable fees and expenses of such attorneys and professionals shall be paid from funds in or generated by the Litigation Trust.

The Litigation Trustee shall be compensated in accordance with the Litigation Trust Agreement and the Plan.

In connection with their good-faith efforts to formulate, promote, and execute the Settlement, the Nationwide Class Counsel shall be compensated as counsel for the Nationwide Consumer Borrower Settlement Class pursuant to the terms of the Litigation Trust Agreement, which shall be included in the Plan Supplement, and the respective settlement agreements executed between any Consenting Defendant and the Nationwide Consumer Borrower Settlement Class. Further, members of the advisory committee may be compensated for their post-confirmation services in accordance with the terms and conditions of the Litigation Trust Agreement.

The Committee seeks derivative standing in order to preserve all Causes of Action for the benefit of creditors and the Estates that may expire if action is not taken in advance of the deadlines in 11 U.S.C. § 546(a). Accordingly, if the Plan is not confirmed by August 1, 2019, then the Debtors shall sign a Stipulation consenting to derivative standing for the Committee (without the Debtors being deemed to agree to the validity of any such claims) to prosecute and/or settle Causes of Action including, but not limited to, actions under 11 U.S.C. §§ 544, 545, 547, 548, 550 and/or 553 and their state law equivalents, to avoid having the deadlines in 11 U.S.C. § 546(a) expire; provided, however, that the Debtors are not intending hereby to agree to derivative standing with respect to any Causes of Action against the GPLS Secured Parties that the Debtors have pursued in the Chapter 11 Cases and that currently are subject to a forbearance agreement and are intended to be resolved by the Term Sheet and the Plan. The Committee shall file a Motion to Approve the Stipulation and the Debtors, the Consenting Defendants, and the Released Parties shall not object to such motion. After the Effective Date the Litigation Trustee will take over the prosecution of any Causes of Action filed by the Committee. The Committee may enter into Tolling Agreements to the extent it determines necessary.

In connection with their good-faith pre- and post-petition efforts to formulate, promote, and execute the Settlement on behalf of all Nationwide Consumer Borrowers, the Nationwide Class

| | |
|---|---|
| | Representatives and the named Plaintiffs in the Consumer Borrower Litigation shall receive service awards in the amount of $7,500 as representatives of the Nationwide Consumer Borrower Settlement Class pursuant to the terms of the Litigation Trust Agreement, which shall be included in the Plan Supplement. |
| | Nationwide Class Counsel, on behalf of the Nationwide Consumer Borrower Settlement Class, shall seek such orders as are necessary and appropriate to comply with Bankruptcy Rule 7023, Federal Rule of Civil Procedure 23, CAFA, other applicable law, and due process so that the Releases become effective and the Litigation Trust Agreement is implemented. |
| | For the avoidance of doubt, funding of the Litigation Trust shall not constitute or be deemed (i) any admission of wrongdoing or illegality or any alleged capacity of the Debtors as lenders on any of the Eligible Tribal Loans or (ii) a concession by Consumer Borrowers that the alleged wrongdoing or illegality did not occur. |
| Class Action Injunctive and Other Relief | As of the Effective Date, although the Debtors deny that they committed any wrongdoing and the Debtors deny that they own or were lenders on any of the Eligible Tribal Loans, as part of the agreement to resolve the disputes among the Settling Parties pursuant to this Term Sheet and the Plan, the Debtors agree to the following injunctive and other relief (collectively, the "Class Action Injunctive and Other Relief"): |
| | • while denying that they committed any wrongdoing and denying that they own or were lenders on any of the Eligible Tribal Loans, to the greatest extent permitted under applicable law, upon the agreement of the relevant Tribal Lenders or other owners of the loans, the Debtors shall consent to the unpaid principal, interest and fees of the Eligible Tribal Loans to members of the Nationwide Consumer Borrower Settlement Class being voided and adjusted to a zero balance. To the greatest extent permitted under applicable law, upon the agreement of the relevant Tribal Lenders or other owners of the loans, the Debtors consent to the notification of members of the Nationwide Consumer Borrower Settlement Class affected by the foregoing sentence that their Eligible Tribal Loans have been voided and adjusted to a zero balance (any costs of notification shall be funded from the Litigation Trust, and such notice may be made in the initial notice made to the Nationwide Consumer |

Borrower Settlement Class by a description as to the effect of any final approval);

- while denying that they committed any wrongdoing, denying that they own or were lenders on any of the Eligible Tribal Loans, and denying that they were a furnisher to any consumer reporting agencies for any Eligible Tribal Loans, as long as Nationwide Class Counsel has provided the Debtors with acceptable evidence that the Settling Tribal Lenders agree to the deletion of such tradelines, the Debtors shall not object to a motion filed by the Consenting Plaintiffs for the entry of an Order requiring the deletion of all tradelines for any Eligible Tribal Loan from all consumer reporting agencies, except for Eligible Tribal Loans associated with a Tribal Lender that has not agreed to this removal;

- to the extent of their current knowledge, and solely for the purpose of effectuating the Class Action Injunctive and Other Relief, the Debtors, or if the Debtors have not provided such information prior to the Effective Date then the Litigation Trustee, shall provide on a confidential basis to Kelly Guzzo, P.L.C. and Consumer Litigation Associates, P.C. a list of all Eligible Tribal Loans that have been sold or transferred to any third party, and the list will identify the loan numbers, the Tribal Lenders, the dates of sale, and the identity of such third parties, *provided* that any PII contained in such information shall be subject to the PII Prohibited Use/Protective Order Provisions;

- upon the vesting of the assets in the Reorganized Debtors and the Litigation Trust, the Debtors shall no longer conduct business, and upon the later of the Effective Date, the entry of the order(s) resolving the CFPB Litigation, and the completion of their duties and obligations under this Term Sheet and Bankruptcy Court orders, the Debtors shall be dissolved;

- the Reorganized Debtors (i) shall not use the PII provided by members of the Nationwide Consumer Borrower Settlement Class to the Tribal Lenders or to the Debtors (a) to market to such members or (b) to assess the value of marketing to such members; and (ii) except as expressly contemplated by this Term Sheet, shall not sell or transfer to any other Entity the PII provided by members of the Nationwide Consumer Borrower

| | |
|---|---|
| | Settlement Class to the Tribal Lenders or to the Debtors for such Entity to use the PII to market to such members; and |
| | • For the avoidance of doubt, (i) the Class Action Injunctive and Other Relief shall not constitute or be deemed any admission of wrongdoing or illegality or any alleged capacity of the Debtors as lenders on any of the Eligible Term Loans and (ii) nothing in this Term Sheet, including, without limitation, the releases granted by the Nationwide Consumer Borrower Settlement Class, shall be contingent upon the Tribal Lenders' agreement to all, or any portion of, the Class Action Injunctive and Other Relief, except that the Debtors' (a) consenting to Eligible Tribal Loans being voided and adjusted to a zero balance, and related notices or (b) consenting to the deletion of certain tradelines, shall be effective only upon the satisfaction of the express contingencies identified above concerning the Tribal Lenders' consent or agreement. |
| GPLS Secured Parties' Settlement Contribution | As part of the Settlement and as consideration for the Releases, the GPLS Secured Parties agree to, on and as of the Effective Date, (i) waive and release all liens, claims, or other rights to any funds, accounts or other assets of GPLS or the Debtors, including, without limitation, the remaining funds in the Escrow Account and the GPLS Holdback Account; (ii) cause the release of all funds in the GPLS Holdback Account to the Escrow Account; (iii) consent to the release of funds in the Escrow Account to the Pennsylvania AG and the Debtors' estates as set forth herein; (iv) cause GPLS to assign the MobiLoans Note and related agreements to the Reorganized Debtors; (vi) release all interest in and rights to the Great Plains Reserve to Great Plains, which will be distributed in accordance with the terms of the settlement reached in *Gibbs v. Great Plains, et al.*; and (vii) agree to waive any and all claims and the collection of any further amounts owed based on participation interests owned by GPLS in Eligible Tribal Loans. |
| | The GPLS Secured Parties' legal fees and costs in connection with the Chapter 11 Cases unpaid as of or incurred on or after May 1, 2019 shall be the sole obligation of the GPLS Secured Parties and shall not be paid from or charged against the Debtors, any property of the Debtors' estates, the Reorganized Debtors, the Escrow Account, or the Litigation Trust. For the avoidance of doubt, all payments made prior to May 1, 2019 by the GPLS |

| | |
|---|---|
| | Secured Parties to their legal and professional advisors pursuant to the Cash Collateral Order are allowed and shall not be subject to challenge or disgorgement.  The GPLS Secured Parties represent and warrant that no amounts have been paid to their legal and professional advisers pursuant to the Cash Collateral Order on or after May 1, 2019. |
| | For the avoidance of doubt, (i) the consideration provided by the GPLS Secured Parties for the Releases shall not constitute or be deemed an admission of any wrongdoing, liability, fact, fault, assertion or illegality or any alleged capacity of the GPLS Secured Parties as lenders on any of the Eligible Tribal Loans, each of which is expressly denied by the GPLS Secured Parties; and (ii) the GPLS Secured Parties shall not receive a Release until the occurrence of the applicable transfer(s) from the GPLS Holdback Account as set forth in this Term Sheet. |
| Consenting Defendants' Cash Contributions | On the Effective Date, each Consenting Defendant(other than the GPLS Secured Parties) shall pay its respective Consenting Defendants' Cash Contribution, if any, to the Litigation Trust consistent with the terms of the Plan and any separate settlement agreements with any Consenting Defendants and Nationwide Class Counsel pursuant to F.R.C.P. 23.  For the avoidance of doubt, the Consenting Defendants' Cash Contributions shall not constitute or be deemed (i) any admission of wrongdoing, liability, fact, or illegality or any alleged capacity of the Debtors or the Consenting Defendants as lenders on any of the Eligible Tribal Loans, each of which are expressly denied by the Debtors and the Consenting Defendants or (ii) a concession by the Consumer Borrowers that the alleged wrongdoing or illegality did not occur. |
| Pennsylvania AG Settlement | As soon as reasonably practicable after the execution of this Term Sheet, the Pennsylvania AG shall report to the district court presiding over the Pennsylvania Litigation that the Pennsylvania AG and the Debtors have reached a settlement that will be final upon, but which is also contingent upon, the confirmation of the Plan, which Plan shall contain terms consistent with this Term Sheet.  For the avoidance of doubt, if the Plan differs materially from this Term Sheet, then the Pennsylvania AG shall not be obligated to support such Plan. |
| | <u>Temporary Allowance of Claim for Voting</u>.  The Plan shall separately classify one claim on behalf of the Pennsylvania AG. Solely for purposes of voting on the Plan, and in accordance with Federal Rule of Bankruptcy Procedure 3018(a), the Pennsylvania AG shall be allowed, temporarily for voting purposes, one claim |

in the Pennsylvania Regulatory Claim Class, in the amount of $200 million, which shall be the only claim in such Plan class.

Allowance of Claim for Distribution. A single claim of the Pennsylvania AG shall be an allowed unsecured claim solely for distribution purposes under the Plan, provided that such allowed claim, and all proofs of claim filed by the Pennsylvania AG, shall be resolved and satisfied for all purposes pursuant to: (i) the treatment of the Pennsylvania Borrowers as members of the Nationwide Consumer Borrower Settlement Class as set forth above in the Nationwide Consumer Borrower Settlement Class section (Tier 1 treatment); (ii) the relief set forth in the Class Action Injunction and other Relief Section concerning Pennsylvania; (iii) the Pennsylvania Borrower Additional Amount; (iv) any additional funds the Pennsylvania AG is entitled to under the Unclaimed Distribution section herein; and (v) the treatment of Allowed Administrative Claims and other claims described below.

Additional Payments by Third Parties. The Pennsylvania AG shall receive $2.0 million from the Escrow Account.

Allowance of Administrative Claim. The Pennsylvania AG shall also receive the allowed substantial contribution claim of the Pennsylvania AG as described in the section entitled "Allowed Substantial Contribution Claim."

On or as soon as reasonably practicable after, the Effective Date, the Pennsylvania AG shall seek and obtain all orders necessary to settle, with the entry of a Rule 54(b) separate final judgment (if the litigation continues with other, non-settling parties), all claims in the Pennsylvania Litigation against the Debtors. The Debtors and the Pennsylvania AG agree that one of such orders shall include injunction language that is substantively the same as the injunction language that will appear in the Final Fairness Approval Order or as otherwise agreed by the Pennsylvania AG and the Debtors, provided that such injunction language shall only address conduct concerning Pennsylvania residents and shall not address conduct concerning residents of other states or commonwealths.

On or as soon as reasonably practicable after the Effective Date, the Pennsylvania AG shall enter into a stipulation of settlement in the Pennsylvania Litigation with the GPLS Secured Parties, which stipulation shall be set forth in the Plan Supplement and shall be mutually acceptable to the GPLS Secured Parties and the Pennsylvania AG.

| | |
|---|---|
| | For the avoidance of doubt, the Pennsylvania AG Settlement shall not constitute or be deemed (i) any admission of wrongdoing, liability, fact, fault, assertion or illegality or any alleged capacity of the Debtors or the GPLS Secured Parties as lenders on any of the Eligible Tribal Loans, each of which is expressly denied in its entirety by the Debtors and the GPLS Secured Parties, or (ii) a concession by the Pennsylvania AG that the alleged wrongdoing or illegality did not occur. |
| | It is understood and acknowledged by the Settling Parties that subject to the court in the Pennsylvania Litigation staying the Pennsylvania Litigation against the Debtors and the Consenting Defendants (including the GPLS Secured Parties), the Pennsylvania AG may continue the Pennsylvania Litigation against the remaining defendants (Kenneth Rees and National Credit Adjusters, LLC) without limitation and that any judgment, proceeds from such judgment, or settlement with such remaining defendants are the sole property of the Pennsylvania AG for distribution pursuant to further orders of the court in the Pennsylvania Litigation. |
| | The settlement set forth in this section is referred to as the "Pennsylvania AG Settlement." |
| CFPB Settlement | Temporary Allowance of Claim for Voting. The Plan shall separately classify one claim on behalf of the CFPB. Solely for purposes of voting on the Plan, and in accordance with Federal Rule of Bankruptcy Procedure 3018(a), the CFPB shall be allowed, for voting purposes, one claim in the CFPB Regulatory Claim Class, which shall be the only claim in such Plan class. |
| | Allowance of Claim for Distribution. A single claim of the CFPB shall be allowed solely for distribution purposes under the Plan, provided that such allowed claim, and all proofs of claim filed by the CFPB, shall be resolved and satisfied for all purposes pursuant to (i) the treatment of the members of the Nationwide Consumer Borrower Settlement Class set forth above in the Nationwide Consumer Borrower Settlement Class section; (ii) the allowance of the Administrative Expense Claim identified in the following sentence; and (iii) the relief set forth in the consent order that has been agreed upon between the Debtors and the CFPB to settle the CFPB Litigation, which consent order shall be materially consistent with the consent order attached hereto as Annex D. As part of the agreement to resolve the disputes among the Settling Parties pursuant to this Term Sheet and the Plan, within 5 days after the Effective Date, the Litigation Trustee, for the Debtors, shall pay a Civil Money |

Penalty of $1 on behalf of each of the Debtors into the CFPB's Civil Penalty Fund, in compliance with the CFPB's wiring instructions, and the Plan shall provide that such claim is an allowed Administrative Expense Claim in the aggregate amount of $7.00.

The Plan will provide that the Debtors and the Reorganized Debtors, as applicable, will consent to the entry of and comply with the terms of the consent order that has been agreed upon between the Debtors and the CFPB to settle the CFPB Litigation.

Within 60 days after the Effective Date, or at such other time as mutually agreed upon prior to the Effective Date by the Debtors and the CFPB, the CFPB shall submit a consent order, which shall be in the form attached hereto as Annex D, to the Montana court and shall seek and obtain all orders necessary to settle the CFPB Litigation in accordance with the Term Sheet and consent order.

For the avoidance of doubt, this Term Sheet and the Settlement are made in compromise of disputed claims. This Term Sheet and the Settlement do not constitute the withdrawal of the Debtors' denials and defenses in the CFPB Litigation or an admission by the Debtors of any facts or liability or wrongdoing, including, but not limited to, any liability or wrongdoing with respect to any allegations that were or could have been raised in the CFPB Litigation. This Term Sheet and the Settlement also do not constitute an admission by the CFPB that any claim is not well-founded, and nothing in this Term Sheet or the Settlement should be construed as, or deemed to constitute, approval, sanction, or authorization by the CFPB of any of the Debtors' actions or business practices. The Debtors neither admit nor deny any allegations in the complaint in the CFPB Litigation.

Upon the execution of this Term Sheet by the Settling Parties other than the CFPB, the CFPB line attorneys will send an email to counsel to the Debtors indicating that the line attorneys will recommend the approval of the terms reflected in the Term Sheet and the consent order, attached hereto as Annex D, to the Director and that they have no reason to believe it will not be accepted. The CFPB line attorneys will appear at the hearing on the Term Sheet Authorization Motion, in person or by telephone, and state on the record that the line attorneys will recommend approval of the Term Sheet and the consent order to the Director. Notwithstanding anything else stated herein, the CFPB will not

| | |
|---|---|
| | be bound by this Term Sheet because only the Director has the statutory authority to enter into settlements on the CFPB's behalf, provided that the CFPB line attorneys will recommend that the Director support a Plan materially consistent with this Term Sheet and the consent order for as long as those efforts are consistent with instructions from the Director. If (i) the CFPB line attorneys do not take the actions identified above in this paragraph, or (ii) the CFPB does not support the consent order and a Plan materially consistent with this Term Sheet, then the Debtors may terminate this Term Sheet.<br><br>The settlement set forth in this section is referred to as the "<u>CFPB Settlement</u>." |
| General Unsecured Claims | The Plan shall provide for a cash distribution pool in a fixed amount (the "<u>General Unsecured Claims Cash Pool</u>") for distributions to holders of allowed unsecured non-priority claims against the Debtors other than the claims of Nationwide Consumer Borrowers ("<u>General Unsecured Claims</u>"). On the Effective Date, the General Unsecured Claims Cash Pool shall be funded with cash in an amount equal to $3 million. In the unlikely event that the amount in the General Unsecured Claims Cash Pool exceeds the allowed amount of General Unsecured Claims, then such excess funds after pro-rata payment of all allowed General Unsecured Claims shall be transferred to the Litigation Trust.<br><br>The Committee (before the Effective Date) and the Litigation Trustee (after the Effective Date) shall have the sole authority and power to object to and/or settle General Unsecured Claims on behalf of the Debtors' estates. Neither the Debtors, Reorganized Debtors nor any Released Parties shall object to any Claims in these Chapter 11 Cases or have standing to be a party in the Claims objection.<br><br>As soon as reasonably practicable after the execution of this Term Sheet, the Committee with the assistance of the Consenting Plaintiffs shall object to the claims of Ken Rees, John Drew, TCV, LP and TCV Member Fund, LP and any other defendants, or potential defendants, in current or future litigation involving the claims of Consumer Borrowers seeking indemnification from the Debtors. The Debtors shall not oppose the objections to these claims. |

| | |
|---|---|
| Post-Confirmation Asset Administration | The initial Litigation Trustee shall be Judge Russ Nelms.<br><br>The Litigation Trust Oversight Board for the Litigation Trust (the "Litigation Trust Oversight Board") shall include representatives of each of the Consenting Plaintiffs other than the CFPB. The Litigation Trust Oversight Board shall have the right after the Effective Date to seek a replacement for the Litigation Trustee in accordance with the Litigation Trustee's retention agreement and the terms of the Plan and the Litigation Trust Agreement. The members of the Litigation Trust Oversight Board will not receive any additional compensation on account of serving in such capacity.<br><br>The Litigation Trustee shall have sole authority consistent with the terms of the Plan and the Litigation Trust Agreement to determine whether to pursue any Causes of Action.<br><br>Notwithstanding the forgoing, and for the avoidance of doubt, the Causes of Action transferred to the Litigation Trust shall not include claims or causes of action against any Released Party. |
| Debtors' Books and Records | The Reorganized Debtors shall receive possession of and the right to use and maintain the original of all of Debtors' books and records, whether hard copy or electronically stored information (the "Books and Records"). The Reorganized Debtors shall provide reasonable advance notice with reasonable specificity to the Litigation Trustee prior to destroying any Books and Records and provide the Litigation Trustee with the opportunity, at the Litigation Trust's expense, to review, and obtain, such Books and Records prior to such destruction. The Litigation Trustee shall have the unilateral right to destroy Books and Records received from the Debtors or Reorganized Debtors. For the avoidance of doubt, the Litigation Trustee and his professionals in their capacities as such shall have full reasonable access to all such Books and Records for the purpose of investigating and pursuing the Causes of Action, and the Litigation Trustee shall be deemed to share with the Reorganized Debtors in any attorney-client privilege, work product doctrine, or other privilege or immunity attaching to any such Books and Records necessary for investigating and pursuing the Causes of Action, or obtaining any right to payment, *provided, however,* that such sharing does not waive any such privilege or immunity.<br><br>On the Effective Date, or as soon as reasonably practicable thereafter, (i) the Litigation Trustee shall receive a copy of the Debtors' Books and Records held by any litigation vendor, at the |

expense of the Litigation Trust, in a form and manner whereby it is commercially and technologically reasonable to obtain such copy; and (ii) if it becomes necessary for the Reorganized Debtors to incur significant internal or external costs in connection with providing access to the Debtors' Books and Records to the Litigation Trustee, then the Reorganized Debtors and the Litigation Trustee shall enter into a reasonable shared services agreement governing the reimbursement of such costs. If the Reorganized Debtors and the Litigation Trustee do not reach an agreement on the terms of such shared services agreement, then either the Reorganized Debtors or the Litigation Trustee may seek an order from the Bankruptcy Court establishing reasonable terms for such shared services. If the Litigation Trustee reasonably determines that the expense of such access and use of such Books and Records is greater than the expense of fully duplicating them, then the Litigation Trustee may elect to obtain a copy at the expense of the Litigation Trust.

The term "Confidential Business Information" shall mean confidential PII, or any trade secrets or other confidential business information, in each case related to (a) shareholders except in connection with pursuing a Cause of Action, (b) financial information, statements, or records of the Debtors except in connection with pursuing a Cause of Action, (c) typical confidential employee information, (d) risk analysis products and methods (such as models, data and know how), (e) marketing services, strategies and methodologies, and (f) the technology platforms, systems, products and all other Intellectual Property, including without limitation software development and programs and related documentation, contained in the Books and Records.

The Litigation Trustee shall not be permitted to disclose to any third-parties any Confidential Business Information without the consent of the Reorganized Debtors, and the Reorganized Debtors and the Litigation Trustee shall not be permitted to waive any privilege with respect to the Books and Records without the consent of the Litigation Trustee or the Reorganized Debtors, as applicable, in each case except in accordance with the following procedure:

(i)    the Litigation Trustee or the Reorganized Debtors, as applicable (the "<u>Disclosing Party</u>") shall provide written notice to the Reorganized Debtors or the Litigation Trustee, as applicable (the "<u>Responding Party</u>") of the Disclosing Party's intent to waive privilege and/or disclose privileged information or Confidential Business Information, which notice

|  | shall, among other things, identify the information at issue and the proposed use of such information; |
|  | (ii) | the Responding Party shall have three (3) business days after such notice is received to notify the Disclosing Party that the Responding Party objects to such disclosure or waiver; |
|  | (iii) | if the Responding Party timely objects in writing, then the Responding Party and the Disclosing Party shall meet and confer about such information and proposed use during the two (2) business days that follow the Responding Party's notification of the Disclosing Party of the objection; |
|  | (iv) | if the parties do not reach an agreement, the Responding Party shall have until two (2) business days after the meet and confer concludes to file a pleading with the Bankruptcy Court seeking an order restricting such privilege waiver or disclosure (a "Motion to Restrict"); |
|  | (v) | until such Motion to Restrict, or if the time for filing the Motion to Restrict has not yet run, then the applicable written notice, is resolved by agreement of the Responding Party and the Disclosing Party or order of the Bankruptcy Court, the Disclosing Party shall not waive such privilege or disclose such information, unless disclosing such information is unanticipated and necessary pursuant to Court order or Court or statutory deadline, and in such instances the Disclosing Party shall file such information under seal; and |
|  | (vi) | in ruling on a Motion to Restrict, the Bankruptcy Court may consider and weigh governing law as to privilege, confidentiality, and/or trade secrets, as well as the possible or intended use of such information and the interests of the Disclosing Party and the Responding Party concerning such disclosure or waiver. For the avoidance of doubt, this provision means that neither the Reorganized Debtors nor the Litigation Trustee have the right to unilaterally disclose to third parties or preclude the disclosure to third parties of privileged information on the basis that the Reorganized Debtors and the Litigation Trustee share such privilege. |

As of and after the Effective Date, to the extent the Reorganized Debtors receive a subpoena requesting documents produced by the Debtors in the Pending Litigation or in the Bankruptcy Case,

| | |
|---|---|
| | the Reorganized Debtors shall agree that such previously produced documents shall be deemed produced under such subpoena as long as there is a protective order in place in the applicable litigation that provides equivalent protections to the Reorganized Debtors, including without limitation notice to the Reorganized Debtors, as those provided to the Debtors under the applicable protective order in the Pending Litigation or the Bankruptcy Case. |
| | Notwithstanding anything else in this Term Sheet or the Plan with respect to the Tribal Property, the Reorganized Debtors may retain the original of any data regarding any consumer borrowers owned by the Settling Tribal Lenders and maintained or otherwise held by the Debtors for or on behalf of the Settling Tribal Lenders, provided that the mutually acceptable shared services agreement with the Litigation Trustee shall address the Litigation Trustee's access to such data. |
| Substantial Contribution Fund | On the Effective Date, the Substantial Contribution Fund shall be funded with cash in an amount equal to $12,550,007.00, which shall be the only source of recovery for the following allowed claims for substantial contribution pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) (the "<u>Allowed Substantial Contribution Claims</u>"). For the avoidance of doubt, the Settling Parties and the Released Parties shall not object to or otherwise challenge the Allowed Substantial Contribution Claims. |
| | (1) <u>Pennsylvania AG</u> |
| | The Pennsylvania AG shall be allowed an administrative expense claim of $4,250,000 under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4). This is a negotiated, compromise amount that takes into consideration the representations asserted by the Pennsylvania AG that it has incurred the following: |
| | a.    Actual time expended by his outside, special counsel in the amount of $4,044,600; |
| | b.    In-house expenses attributed to his investigation of and litigation against the Debtors in the Pennsylvania Litigation in the amount of $594,617; |
| | c.    Other expenses, including payments to other professionals, in the amount of $423,413; and |
| | d.    Payments made to his bankruptcy counsel in the amount of $236,420.11. |
| | The Pennsylvania AG asserts that these expenses constitute reimbursable administrative expenses under 11 U.S.C. §§ |

| | 503(b)(3)(C), 502(b)(3)(D), and 503(b)(4), and the Debtors dispute that the Pennsylvania AG is entitled to any such expenses. As part of the global settlement embodied in this Term Sheet and the Plan, the Settling Parties consent to Pennsylvania AG having an allowed substantial contribution claim under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) in the amount of $4,250,000.<br><br>(2) CFPB<br><br>The CFPB shall be allowed an administrative expense claim of $7.00 under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4), which is the same $7.00 administrative expense claim discussed above in the CFPB Settlement section.<br><br>(3) Counsel for the Virginia/Florida/California Claimants<br><br>Counsel for the Virginia/Florida/California Claimants shall be allowed an administrative expense claim of $4,250,000 under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4). This is a negotiated, compromise amount negotiated among counsel to the Consenting Plaintiffs that they represent takes into consideration the actual time expended, and actual costs in excess of $250,000 incurred in this Action.<br><br>(4) Counsel for the Vermont/North Carolina/Nationwide Claimants<br><br>Counsel for the Vermont/North Carolina/Nationwide Claimants shall be allowed an administrative expense claim of $4,250,000 under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4). This is a negotiated, compromise amount negotiated among counsel to the Consenting Plaintiffs that they represent takes into consideration the actual time expended, and actual costs in excess of $250,000 incurred in this Action.<br><br>(5) Committee Chair / Marlin & Assoc.<br><br>Marlin & Assoc. shall be allowed an administrative expense claim of $50,000 under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4). This is a negotiated, compromise amount negotiated among Marlin & Assoc. and counsel to the Consenting Plaintiffs that they represent takes into consideration the actual time and expenses by outside counsel, in-house expenses, and outside expenses. |
| Professional Fees, UST Fees, and Professional Fee Escrow | Costs of notice to the Nationwide Consumer Borrower Settlement Class shall be advanced from the Escrow Account pursuant to the Preliminary Approval Order. |

34

| | On the Effective Date, an escrow account (the "Professional Fee Escrow") shall be funded with cash in an amount equal to the unpaid fees and expenses of the professionals employed by the Debtors or the Committee plus an estimate for any post-Effective Date fees and expenses, which fund shall be available for payment of allowed Professional Fee Claims. Any surplus funds remaining in the Professional Fee Escrow after payment of all allowed Professional Fee Claims shall be deposited into the Litigation Trust. |
|---|---|
| **Proposed Treatment of Claims and Interests Under the Plan** | |
| Administrative Expenses, Priority Tax Claims, and Other Priority Claims | Each holder of an Allowed Administrative Expense Claim, Priority Tax Claim, or Other Priority Claim shall be paid in full in cash on the Effective Date, or otherwise receive treatment consistent with the provisions of Bankruptcy Code section 1129(a), in each case, as determined by the Debtors in consultation with the Consenting Stakeholders. |
| Professional Fee Claims | Each holder of an Allowed Professional Fee Claim shall be paid in full in cash from the Professional Fee Escrow on the later of the Effective Date or the allowance of such claim on a final basis. |
| | Notwithstanding the foregoing, after May 1, 2019, the Debtors shall not pay (i) the Committee's professionals specifically retained pursuant to an order of the Bankruptcy Court more than a total of $1.4 million; or (ii) the Debtors' professionals specifically retained pursuant to an order of the Bankruptcy Court[5] more than a total of $1.4 million; provided, however, that such caps do not apply to fees and expenses incurred in connection with work performed on unexpected extraordinary matters unrelated to obtaining approval of this Term Sheet, confirmation of the Plan, or related ordinary matters concerning concluding these Chapter 11 Cases. Provided the Effective Date occurs, no Settling Party shall object to any fees or expenses paid, in accordance with the interim compensation procedures approved by the Bankruptcy Court, prior to May 1, 2019, to the professionals identified in (i) or (ii) above. |
| Substantial Contribution | Each holder of a Substantial Contribution Administrative |

---

[5] For the avoidance of doubt, such professionals do not include any professionals retained pursuant to the *Order (I) Approving Procedures for the Retention and Compensation of Ordinary Course Professionals, Including, but not Limited to, Expert Witnesses and (II) Authorizing Payment of a Prepetition Claim of a Certain Critical Ordinary Course Professional* (Docket No. 318).

| | |
|---|---|
| Administrative Expense Claims | Expense Claim will recover its agreed-upon share of the Substantial Contribution Fund, which shall be paid in cash on the Effective Date. The Debtors, the Committee, Consenting Plaintiffs, and Consenting Defendants agree not to object to a request for Substantial Contribution as provided for in this Term Sheet. |
| GPLS Secured Claims | The GPLS Secured Parties assert the GPLS Secured Claims, and the Debtors dispute the validity of the GPLS Secured Claims. |
| | For purposes of facilitating the Settlement, the GPLS Secured Claims shall be allowed for purposes of the Plan, including for purposes of voting on the Plan and receiving releases under the Plan. |
| | The GPLS Secured Parties shall waive and release any and all claims including, but not limited to claims for indemnification, legal fees and expenses, against the Debtors, their estates, the Committee, the remaining funds in the Escrow Account, the GPLS Holdback Account, and any other funds held by GPLS, and the Reorganized Debtors, and such waiver and release shall operate as full and final satisfaction, compromise, settlement, release, and discharge of all GPLS Secured Claims, including but not limited to any claims, liens or interests in the Escrow Account and funds or other assets held by GPLS, the Debtors, their estates, or the Reorganized Debtors. |
| | The GPLS Secured Claims shall be resolved pursuant to the GPLS Secured Parties Settlement set forth above. |
| | For the avoidance of doubt, settlement of the GPLS Secured Claims shall not constitute or be deemed an admission that the GPLS Secured Claims are valid or secured claims. |

| | |
|---|---|
| Consumer Borrower Claims | The Consumer Borrower Claims have been asserted against the Debtors, and the Debtors dispute the validity of the Consumer Borrower Claims. |
| | The Consumer Borrower Claims shall be resolved as otherwise provided in this Term Sheet and the Plan. |
| | For the avoidance of doubt, settlement of the Consumer Borrower Claims shall not constitute or be deemed (i) any admission of wrongdoing or illegality or any alleged capacity of the Debtors as lenders on any of the Eligible Tribal Loans or constitute or be deemed an admission that the Consumer Borrower Claims are valid claims or (ii) a concession by the Consumer Borrowers that the alleged wrongdoing or illegality did not occur. |
| Pennsylvania Claims | The Pennsylvania Claims shall be resolved by the Pennsylvania Settlement. |
| CFPB Claims | The CFPB Claims shall be resolved by the CFPB Settlement. |
| General Unsecured Claims | Each holder of an allowed General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such General Unsecured Claim, its pro rata share of the General Unsecured Claims Cash Pool. |
| Think Interests | All Think Interests shall be cancelled, disallowed, released, and extinguished as of the Effective Date or as of such later date to facilitate execution of the consent order that has been agreed upon between the Debtors and the CFPB, and will be of no further force or effect, and holders of Think Interests will not receive any distribution on account of such Think Interests; *provided*, *however*, that TF Holdings shall be the direct or indirect parent of the Reorganized Debtors. |
| Section 510(b) Claims | All Section 510(b) Claims, if any, shall be discharged, cancelled, released, and extinguished as the Effective Date, and shall be of no further force or effect, and holders of allowed Section 510(b) Claims will not receive any distribution on account of such allowed Section 510(b) Claims. |
| Intercompany Interests and | There shall be no distributions on account of any interests or claims of one Debtor in another Debtor and such claims shall be |

| Claims | cancelled. |
|---|---|
| Unclaimed Distributions | The Class Administrator shall attempt to distribute all available funds that are distributable to members of the Nationwide Consumer Borrower Settlement Class pursuant to the Plan and Litigation Trust Agreement to class members that can be located. Any funds remaining in the Litigation Trust as a result of distribution checks remaining uncashed by members of the Nationwide Consumer Borrower Settlement Class 120 days after issuance thereof ("Unclaimed Distributions") shall be distributed as follows: (a) the first $5 million of Unclaimed Distributions shall be paid to the Pennsylvania AG for further distribution to Pennsylvania members who cashed their initial distribution checks and (b) the remaining Unclaimed Distributions shall be paid pursuant to the Tier 1 Allocation and Tier 2 Allocation to all other members who cashed their initial distribution checks. At the discretion of the Litigation Trustee and the Litigation Trust Oversight Board, one additional distribution to members (including Pennsylvania members and other members) may be attempted if reasonably practicable to do so. Thereafter any Unclaimed Distributions remaining unclaimed 120 days after the foregoing final re-distribution of Unclaimed Distributions shall be paid 50% to the Pennsylvania AG for further distribution to members in Pennsylvania and 50% to the CFPB Civil Penalty Fund. The $5 million paid to the Pennsylvania AG in the first redistribution shall be credited against distributions otherwise to be made by the Litigation Trustee to Pennsylvania Borrowers through the Pennsylvania AG from proceeds of future settlements or judgments obtained against Non-Released/Non-Exculpated Parties. |
| Discharge | Upon the Effective Date the debts of the Debtors shall be discharged pursuant to Section 1141(d) and the Reorganized Debtors shall receive the benefit of such discharge.<br><br>The Nationwide Consumer Borrower Settlement Class shall have an allowed unsecured claim in the amount of $1.13 billion solely for purposes of voting and distribution under the Plan. The Debtors dispute liability on the foregoing claim, and this allowance shall not be an agreement by the Debtors or Reorganized Debtors to the allowance of such claim for any other purpose. Additionally, notwithstanding anything else herein, both the Plan and the Confirmation Order shall provide that nothing in the Term Sheet, the Settlement, the Plan, or the Confirmation Order shall constitute an admission or agreement by the Debtors concerning the solvency or insolvency of the |

| | Debtors. |
|---|---|
| **Material Terms of the Restructuring** | |
| Debtor Releases, Third-Party Releases, and Exculpation | The Plan will include the Releases in all material respects, and the Committee, Consenting Plaintiffs, and Consenting Defendants agree not to opt out of the Releases to the extent they have any ability to do so. The Releases shall be without prejudice to the prosecution of the Causes of Action transferred to the Litigation Trust or the Non-Estate Causes of Action that are not released, which shall be expressly stated in the Confirmation Order. |
| Conditions Precedent to the Effective Date | The occurrence of the Effective Date shall be subject to the following conditions precedent:<br><br>• during the time period beginning January 1, 2019, through the Effective Date, Cortex shall have paid the Debtors service fees in the aggregate amount substantially equal to the total service fees incurred for the time period beginning January 1, 2019, through the Effective Date;<br><br>• the approved Term Sheet shall remain in full force and effect;<br><br>• the Preliminary Approval Order, the Disclosure Statement Approval Order, Final Fairness Approval Order, and the Confirmation Order, each consistent in all material respects with this Term Sheet shall have been entered on a final basis and not be subject to any stay or any further appeal;<br><br>• the Nationwide Consumer Borrower Settlement Class shall have been fully and finally certified;<br><br>• the GPLS Holdback Account shall contain at least $7,500,000 (immediately prior to transferring all amounts therein to the Escrow Account);[6] and<br><br>• all payments and transfers of assets from the Debtors' estates, and all other payments, including but not limited to all transfers to the Litigation Trust, required under the Plan to be made before the Effective Date shall have been made in |

---

[6] It is understood that the Committee and Consenting Plaintiffs in their sole discretion may elect to move forward with the Effective Date if the GPLS Holdback is not fully funded, and no other Settling Party may assert that such lack of funding is a basis for the non-occurrence of the Effective Date.

| | |
|---|---|
| | accordance with the terms of the Plan. |
| Substantive Consolidation | For the purposes of the Settlement and confirming the Plan, the assets and liabilities of the Debtors and their estates shall be substantively consolidated. |
| Structure and Tax Considerations | The Restructuring Transactions shall be structured in a tax efficient and cost-effective manner as determined by the Debtors with the consent of the Consenting Stakeholders, which shall not be unreasonably withheld, and which shall have no effect on the Causes of Action, creditors, or Litigation Trust. |
| Effect of Plan Disapproval | If the Plan is not confirmed, whether by the Bankruptcy Court or as a result of any appeal, the provisions hereof shall be null and void, including that (i) no claimants shall be deemed to have allowed claims as a result of this Term Sheet or such Plan, (ii) none of the Releases contemplated by this Term Sheet or such Plan shall be effective, and (iii) the Settling Parties shall have all rights and defenses that they had prior to the entry into this Term Sheet. |
| Certain Defined Terms | The terms set forth in <u>Annex C</u> attached hereto shall be included in the Plan with the meanings given to such terms therein. |

*[Remainder of Page Intentionally Left Blank]*

**Representations and Agreement**

By signing below, each of the parties hereto (the "Agreement Parties") represents that it has the full power and authority to agree and consent to matters expressly contemplated by this Term Sheet and hereby agrees to this Term Sheet, including the following; provided, however, that the Debtors will not be authorized to enter into and agree to this Term Sheet until the Bankruptcy Court enters the Term Sheet Authorization Order:

(a)     During the Agreement Effective Period, each Agreement Party (severally and not jointly) agrees to:

(i)     use commercially reasonable efforts to support and take all steps necessary and desirable to consummate the Restructuring Transactions, confirm the Plan in accordance with this Term Sheet, and obtain certification by the Bankruptcy Court of the Nationwide Consumer Borrower Settlement Class;

(ii)     negotiate in good faith and use commercially reasonable efforts to execute and implement the Definitive Documents in accordance with, and on terms and conditions consistent with, this Term Sheet.

(b)     During the Agreement Effective Period, each Agreement Party (severally and not jointly) agrees that it shall not directly or indirectly:

(i)     object to or otherwise commence or join in any proceeding or litigation opposing any of the terms of this Term Sheet or the Restructuring Transactions, including confirmation of the Plan and certification of the Nationwide Consumer Borrower Settlement Class;

(ii)     either itself or through any representatives or agents (x) solicit, initiate, encourage (including by furnishing information), induce, negotiate, facilitate, or continue any Alternative Restructuring Proposal from or with any Person or (y) propose, file, support, consent to, seek formal or informal approval of, or vote in favor of any Alternative Restructuring Proposal (and shall immediately inform the Agreement Parties of any notification of an Alternative Restructuring Proposal); or

(iii)     consistent with the terms of this Term Sheet, directly or indirectly object to, delay, impede, or take any other action to interfere with the Debtors' ownership and possession of their assets, wherever located (including interfering with the automatic stay arising under section 362 of the Bankruptcy Code).

(c)     During the Agreement Effective Period, each Agreement Party that is entitled to vote to accept or reject the Plan pursuant to its terms agrees that so long as the Plan is consistent in all material respects with this Term Sheet, it shall, subject to receipt by such Agreement Party of the Plan Solicitation Materials:

(i)     timely vote, and not change, withdraw, amend or revoke its vote, with respect to each of its Debtor Claims/Interests to accept the Plan; and

(ii)    support, and will not directly or indirectly object to, delay, impede, or take any other action to interfere with any motion or other pleading or document filed by an Agreement Party in the Bankruptcy Court that is required to implement this Term Sheet or the Plan, and does not seek other relief.

(d)    Notwithstanding anything contained in this Term Sheet, and notwithstanding any delivery of a consent or vote to accept the Plan by any Agreement Party, or any acceptance of the Plan by any class of creditors, nothing in this Agreement shall:

(i)    require any of the Debtors, the Committee, or their respective managers, members, or any similar governing body, as applicable, after consulting with counsel, to take any action or to refrain from taking any action with respect to the Restructuring Transactions to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law, and any such action or inaction pursuant to such exercise of fiduciary duties shall not be deemed to constitute a breach of this Term Sheet;

(ii)    be construed to prohibit any Agreement Party from contesting whether any matter, fact, or thing is a breach of, or is inconsistent with, this Term Sheet;

(iii)    be construed to prohibit any Agreement Party from appearing as a party in interest in any matter to be adjudicated in these Chapter 11 Cases, so long as such appearance and the positions advocated in connection therewith are not materially inconsistent with this Term Sheet and are not for the purpose of delaying, interfering with, impeding, or taking any other action to delay, interfere with or impede, directly or indirectly, the consummation of the Restructuring Transactions;

(iv)    require any Agreement Party to waive or forego the benefit of any applicable legal professional privilege; or

(v)    prevent any Agreement Party from taking any action that is required by applicable law.

(e)    It is understood and agreed by the Agreement Parties that money damages would be an insufficient remedy for any breach of this Term Sheet by any Agreement Party, and each non-breaching Agreement Party shall be entitled to specific performance and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages) as a remedy of any such breach, including an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Agreement Party to comply promptly with any of its obligations hereunder.

IN WITNESS WHEREOF, the Agreement Parties hereto have executed this Term Sheet effective as of June 6, 2019.

**Agreement Party Signature Pages to
the Term Sheet and Addresses for Notice**

**GPLS Secured Parties**

_____

Name:  Scott Zemnick
Title:  Authorized Signatory



Victory Park Management, LLC
c/o Victory Park Capital Advisors, LLC
150 North Riverside Plaza, Suite 5200
Chicago, Illinois, 60606
Attention: Scott Zemnick
E-mail address:  szemnick@victoryparkcapital.com

and

Squire Patton Boggs (US) LLP
2000 McKinney Avenue, Suite 1700
Dallas, Texas 75201
Attention:  S. Cass Weiland and Travis A. McRoberts
E-mail address:  cass.weiland@squirepb.com; travis.mcroberts@squirepb.com

and

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Attention:  Ryan Blaine Bennett and Justin R. Bernbrock
E-mail address: ryan.bennett@kirkland.com; justin.bernbrock@kirkland.com

**Commonwealth of Pennsylvania**

*[signature: Judith W. Ross]*

Name: Judith W. Ross
Title: Attorney of Record

*[handwritten note: subject to final approval of Attorney General of Commonwealth of Pennsylvania]*

Ross & Smith, PC
700 N. Pearl Street, Suite 1610
Dallas, Texas, 75201
Attention: Judith W. Ross and Rachael L. Smiley
E-mail address: judith.ross@judithwross.com; rachael.smiley@judithwross.com

and

Commonwealth of Pennsylvania Office of Attorney General
Bureau of Consumer Protection
21 South 12th Street, 2nd Floor
Philadelphia, Pennsylvania 19107
Attention: Saverio P. Mirarchi
E-mail address: smirarchi@attorneygeneral.gov

and

Langer Grogan & Diver, P.C.
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Attention: Irv Ackelsberg and John J. Grogan
E-mail address: iackelsberg@langergrogan.com

**Virginia, Florida, and California Consumer Borrowers**

Name: Kristi C. Kelly
Title: Attorney

> Kellett & Bartholow PLLC
> 11300 N. Central Expy, Ste 301
> Dallas, Texas 75243
> Attention: Theodore O. Bartholow, III and Karen L. Kellett
> E-mail address:
>
> and
>
> Kelly Guzzo, PLC
> 3925 Chain Bridge Road, Suite 202
> Fairfax, VA 22030
> Attention: Kristi C. Kelly, Andrew J. Guzzo and Casey S. Nash
> E-mail address: kkelly@kellyguzzo.com; aguzzo@kellyguzzo.com;
> casey@kellyguzzo.com
>
> and
>
> Consumer Litigation Associates, P.C.
> 763 J. Clyde Morris Blvd., Ste. 1-A
> Newport News, VA 23601
> Attention: Leonard A. Bennett and Elizabeth W. Hanes
> E-mail address: lenbennett@clalegal.com; elizabeth@clalegal.com
>
> and
>
> Tycko & Zavareei LLP
> 1828 L Street, N.W., Suite 1000
> Washington, DC 20036
> Attention: Anna C. Haac
> E-mail address: ahaac@tzlegal.com

**Vermont, North Carolina, and Nationwide Consumer Borrowers**

Name: _Michael S. Etkin_

Title: _Lowenstein Sandler_

> Loewinsohn Flegle Deary Simon LLP
> 12377 Merit Drive, Suite 900
> Dallas, Texas 75251
> Attention: Daniel P. Winikka
> E-mail address: danw@lfdslaw.com
>
> and
>
> Lowenstein Sandler LLP
> One Lowenstein Drive
> Roseland, New Jersey 97068
> Attention: Michael S. Etkin, Andrew Behlmann, and Nicole Fulfee
> E-mail address: metkin@lowenstein.com; abehlmann@lowenstein.com;
> nfulfree@lowenstein.com
>
> and
>
> Gravel & Shea PC
> 76 St. Paul St., 7th Floor
> Burlington, Vermont 05402
> Attention: Matthew B. Byrne
> E-mail address: mbyrne@gravelshea.com
>
> and
>
> Berman Tabacco
> One Liberty Square
> Boston, Massachusetts 02109
> Attention: Kathleen M. Donovan-Maher and Steven J. Buttacavoli
> E-mail address: kdonovanmaher@bermantabacco.com;
> sbuttacavoli@bermantabacco.com

Vermont, North Carolina, and Nationwide Consumer Borrowers

Name: *Kathleen M. Donovan-Maher*
Title: *Berman Tabacco*

> Loewinsohn Flegle Deary Simon LLP
> 12377 Merit Drive, Suite 900
> Dallas, Texas 75251
> Attention: Daniel P. Winikka
> E-mail address: danw@lfdslaw.com

and

> Lowenstein Sandler LLP
> One Lowenstein Drive
> Roseland, New Jersey 97068
> Attention: Michael S. Etkin, Andrew Behlmann, and Nicole Fulfee
> E-mail address: metkin@lowenstein.com; abehlmann@lowenstein.com;
> nfulfree@lowenstein.com

and

> Gravel & Shea PC
> 76 St. Paul St., 7th Floor
> Burlington, Vermont 05402
> Attention: Matthew B. Byrne
> E-mail address: mbyrne@gravelshea.com

and

> Berman Tabacco
> One Liberty Square
> Boston, Massachusetts 02109
> Attention: Kathleen M. Donovan-Maher and Steven J. Buttacavoli
> E-mail address: kdonovanmaher@bermantabacco.com;
> sbuttacavoli@bermantabacco.com

**Vermont, North Carolina, and Nationwide Consumer Borrowers**

Name: Matt Byrne

Title:

Loewinsohn Flegle Deary Simon LLP
12377 Merit Drive, Suite 900
Dallas, Texas 75251
Attention: Daniel P. Winikka
E-mail address: danw@lfdslaw.com

and

Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 97068
Attention: Michael S. Etkin, Andrew Behlmann, and Nicole Fulfee
E-mail address: metkin@lowenstein.com; abehlmann@lowenstein.com; nfulfree@lowenstein.com

and

Gravel & Shea PC
76 St. Paul St., 7th Floor
Burlington, Vermont 05402
Attention: Matthew B. Byrne
E-mail address: mbyrne@gravelshea.com

and

Berman Tabacco
One Liberty Square
Boston, Massachusetts 02109
Attention: Kathleen M. Donovan-Maher and Steven J. Buttacavoli
E-mail address: kdonovanmaher@bermantabacco.com; sbuttacavoli@bermantabacco.com

**The Address for Notice to the Consumer Financial Protection Bureau is as follows:**

Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Attention:  and Benjamin Vaughn, Patrick Gushue and Rebeccah Watson
E-mail address: Benjamin.Vaughn@cfpb.gov; Patrick.gushue@cfpb.gov; Rebeccah.watson@cfpb.gov

**Official Committee of Unsecured Creditors**

Name:
Kenneth B. Marlin
Title: Chairman of the Committee

Cole Schotz P.C.
300 East Lombard Street, Ste. 1450
Baltimore, MD 21202
Attention: Gary H. Leibowitz
E-mail address: gleibowitz@coleschotz.com

and

Cole Schotz P.C.
1700 City Center Tower II
301 Commerce Street
Fort Worth, TX 76102
Attention: Michael D. Warner
E-mail address: nwarner@coleschotz.com

**Debtors**

_____
Name: Thomas D. Graber
Title: Security and General Counsel

        Think Finance, LLC
        7701 Las Colinas Ridge
        Suite 650
        Irving, TX 75063
        Attention:  Thomas D. Graber
        E-mail address: TGraber@cortexplatform.com

        and

        Hunton Andrews Kurth LLP
        Riverfront Plaza, East Tower
        951 East Byrd Street
        Richmond, Virginia 23219
        Attention:  Tyler P. Brown and Jason W. Harbour
        E-mail address: tpbrown@HuntonAK.com; jharbour@HuntonAK.com

        and

        Hunton Andrews Kurth LLP
        1445 Ross Avenue
        Suite 3700
        Dallas, Texas 75209
        Attention:  Gregory G. Hesse
        E-mail address: ghesse@HuntonAK.com

## Annex A

### Releases and Exculpation

"**Exculpated Parties**" means, collectively, (a) the Released Parties; (b) the Committee and its members; (c) American Legal Claims Services, LLC; (d) for the avoidance of doubt, each GPLS Secured Party; and (e) the following professionals: (1) Alvarez & Marsal North America, LLC; (2) Hunton Andrews Kurth LLP; (3) Goodwin Procter LLP; (4) Eversheds Sutherland (US) LLP; (5) Browning Kaleczyz Berry & Hoven P.C.; (6) Schnader Harrison Segal & Lewis LLP; (7) Teneo Capital LLC; (8) Cole Schotz P.C.; (9) Kelly Guzzo, P.L.C.,; (10) Consumer Litigation Associates, P.C.; (11) Tycko & Zavareei, LLP; (12) Kellett & Bartholow, PLLC; (13) Lowenstein Sandler LLP; (14) Gravel & Shea PC; (15) Berman Tabacco; (16) Loewinsohn Flegle Deary Simon LLP; (17) Langer Grogan & Diver, P.C.; (18) Ross & Smith, PC; (19) FTI Consulting, Inc.; (20) Kirkland & Ellis LLP; (21) Squire Patton Boggs (US) LLP; (22) Katten Muchin Rosenman LLP; (23) Ballard Spahr LLP; (24) Primmer Piper Eggleston & Cramer PC; (25) Bush Ross, P.A.; (26) McGuireWoods LLP; (27) Thomson Reuters Corp.; (28) Lighthouse eDiscovery, Inc.; (29) Goldberg Kohn Ltd.; (30) Kaplan Leaman & Wolfe Court Reporters; (31) Gerson Lehrman Group, Inc. (32) Legalpeople LLC; (33) Smith Moore Leatherwood LLP; (34) Fox Rothschild LLP; (35) TransPerfect; (36) RANE Corp.; (37) Potter Anderson Corroon LLP; (38) Jackson Walker LLP; and (39) Huseby, Inc.

"**Non-Released Parties**" means Elevate Credit, Inc., Kenneth Rees, Stephen Haynes, Haynes Investments, LLC., Sovereign Business Solutions, LLC, Mike Stinson, Linda Stinson (except to the extent released in her capacity as a former director or officer), The Stinson 2009 Grantor Retained Annuity Trust, 7HBF No. 2, LTD, Sequoia Capital Operations, LLC, Sequoia Capital Franchise Partners, LP, Sequoia Capital Growth Fund III, LP, Sequoia Entrepreneurs Annex Fund, LP, Sequoia Capital Growth III Principals Fund, LLC, Sequoia Capital Franchise Fund, LP, Sequoia Capital Growth Partners III, LP, Startup Capital Ventures, LP, Stephen J. Shaper (except to the extent released in his capacity as a former director or officer), John Drew (except to the extent released in his capacity as a former director or officer), TCV, LP, TCV Member Fund, LP, Technology Crossover Ventures, TCV V L.P., Technology Crossover Management V, LLC, Alan H. Ginsberg, and any other Entity that is not defined herein as a Released Party. The Plan and Confirmation Order shall expressly provide as follows:

> **Notwithstanding anything to the contrary in the Plan, the Confirmation Order, or any other Plan Document, no Non-Released Party shall be a Released Party at any time or for any reason.**

"**Non-Released/Non-Exculpated Parties**" means the Non-Released Parties that are not Exculpated Parties. The Plan and Confirmation Order shall expressly provide as follows:

> **Notwithstanding anything to the contrary in the Plan, the Confirmation Order, or any other Plan Document, no Causes of Action or Non-Estate Causes of Action held by any Entity against any Non-Released/Non-Exculpated Party shall be released, waived, enjoined, or otherwise adversely**

impacted by any release, injunction, exculpation, or other provision of the Plan, the Confirmation Order, or any other Plan Document. For the avoidance of doubt, all of the Debtors' Causes of Action against the Non-Released/Non-Exculpated Parties constitute Causes of Action.

"**Related Non-Debtor Parties**" means, collectively, with respect to an entity (as defined in section 101(15) of the Bankruptcy Code and understood and intended to include a federally recognized Indian Tribe), other than a Released Debtor Party, such entity's current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, successors, assigns, parents, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, investment managers, fund advisers, employees, advisory board members, financial advisors, accountants, investment bankers, and consultants.

"**Released Debtor Parties**" means, collectively: (a) each Debtor and Debtor-in-Possession; (b) current directors and officers of the Debtors as of or after the Petition Date, provided that if any director or officer is added after December 1, 2018, and before the Effective Date, such director or officer shall not be a Released Debtor Party until either (1) 21 days after the Committee has been notified of such addition if the Committee does not object by such 21st day or (2) the Bankruptcy Court enters an order on an objection by the Committee that provides that the person should be a Released Debtor Party; (c) the Reorganized Debtors; (d) TF Holdings, Inc.; (e) Cortex Holdings, LLC; (f) Jora Credit Holdings, LLC; (g) TF Investment Services, LLC; (h) each of the subsidiaries of any of the entities identified in (c) – (g); and (i) former directors and officers of the Debtors, in their capacities as such, other than Ken Rees, provided, however, that (i) any such former director or officer of the Debtors shall not be released for purposes of imposing any liability on any shareholder / member solely in their capacity as a shareholder / member or former shareholder / member; and (ii) the releases for the Released Debtor Parties shall not release the Estates' claims and Causes of Action against TF Holdings, Inc. concerning tax refunds and/or NOLs, or against any non-Debtor transferee of such tax refunds to the extent of such transfer.

"**Released Non-Debtor Parties**" means, collectively, and in each case in its capacity as such: (a) each GPLS Secured Party; (b) Great Plains Lending, LLC; (c) Plain Green Lending, LLC; (d) MobiLoans, LLC; (e) Curry, Sentinel Resources, LLC, Red Stone Inc. (as successor-in-interest to MacFarlane Group), and SOL Partners, each solely in connection with his or each Entity's involvement with Great Plains Lending, LLC, and loans issued in the name of Great Plains Lending, LLC; (f) each other Consenting Defendant; (g) each Consenting Stakeholder and counsel for each Consenting Plaintiff; and (h) each Related Non-Debtor Party of each Entity in clauses (a) through (g) of this definition; provided, however, that no specifically identified Non-Released Party shall constitute a Released Non-Debtor Party.

"**Released Parties**" means, collectively, the Released Debtor Parties and the Released Non-Debtor Parties. The release of any Released Party shall not impact in any way the imputation of such Released Party's conduct to any other entity that is not a Released Party.

"**Releasing Parties**" means, collectively, and in each case in its capacity as such: (a) each GPLS Secured Party; (b) each Consenting Defendant; (c) each Consenting Stakeholder; and (d) all holders of Claims; provided, however, that members of the Nationwide Consumer Borrower Settlement Class are not Releasing Parties.

**Releases by the Debtors**. Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors and their Estates from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' businesses, business practices or operations, the Debtors' capital structure, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, this Term Sheet, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with this Term Sheet, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, nothing herein shall be deemed to release any of the Causes of Action being transferred to the Litigation Trust or any of the obligations or assets included in the Reorganized Debtor Assets.

**Releases by Members of the Nationwide Consumer Borrower Settlement Class**. As of the Effective Date, each member of the Nationwide Consumer Borrower Settlement Class is deemed to have released and discharged each Released Party from any and all Claims and Non-Estate Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (a) the Claims, alleged facts and Non-Estate Causes of Action asserted or that could have been asserted against any of the Released Parties in any Non-Estate Cause of Action prior to the Effective Date, including the Pending Litigation, and (b) any current or newly asserted Claim or Non-Estate Cause of Action against the Released Parties arising from or related to the Debtors' business activities or operations prior to the Effective Date or the Released Parties' actual or alleged, direct or indirect, involvement in consumer lending directly or indirectly involving the

Debtors prior to the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations in connection with the Class Action Injunctive and Other Relief or any rights or obligations in connection with the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**Releases by Releasing Parties**.  As of the Effective Date, each Releasing Party is deemed to have released and discharged each Released Party from any and all Claims and Non-Estate Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' business activities or operations prior to the Effective Date, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Term Sheet, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Term Sheet, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including without limitation, (a) the Claims, alleged facts and Non-Estate Causes of Action asserted or that could have been asserted against any of the Released Parties in the Pending Litigation or any other Non-Estate Cause of Action prior to the Effective Date, and (b) any current or newly asserted claim or Non-Estate Cause of Action against the Released Parties arising from or related to the Debtors' business activities or operations prior to the Effective Date or the Released Parties' actual or alleged, direct or indirect, involvement in consumer lending directly or indirectly involving the Debtors prior to the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations in connection with the Class Action Injunctive and Other Relief or any rights or obligations in connection with the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.  Notwithstanding anything to the contrary in the foregoing or stated anywhere else herein, the CFPB does not release any Claims or Non-Estate Causes of Action against Cortex or Jora except for Claims and Non-Estate Causes of Action arising from or in connection with the Debtors' activities alleged in the amended complaint in the CFPB Litigation in which Cortex also participated.  Notwithstanding anything to the contrary in the foregoing or stated anywhere else herein, the CFPB does not release any Claims or Non-Estate Causes of Action against Katten Muchin Rosenmann LLP.

**Exculpation.**  Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Claim, Cause of

Action or Non-Estate Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of related prepetition transactions, the Term Sheet, the Settlement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**Annex B**
**Pending Litigation**

As used in the foregoing Term Sheet, "Pending Litigation" means all of the following cases:

Consumer Borrower Litigation:
- *Gingras et al. v. Rosette et al.*, Case No. 5:15-cv-00101-gwc (D. Vt.)
- *Gingras et al. v. Victory Park Capital Advisors, LLC et al.*, Case No. 5:17-cv-00233-GWC (D. Vt.)
- *Banks v. Rees, et al.*, Case No. 8:17-cv-02201-SDM-AAS (M.D. Fla.) and Adv. Proc. No. 18-03064 (HDH) (Bankr. N.D. Tex.)
- *Gibbs, et al. v. Rees, et al.*, Case No. 3:17-cv-00386-MHL (E.D. Va.) and Adv. Proc. No. 18-03069 (HDH) (Bankr. N.D. Tex.)
- *Brice et al v. Rees et al*, Case No. 3:18-cv-01200-MEJ (N.D. Cal.) and Adv. Proc. No. 18-03313 (HDH) (Bankr. N.D. Tex.)
- *Gibbs et al. v. Haynes Investments, LLC et al.*, Case No. 3:18-cv-00048-MHL (E.D. Va.) and Adv. Proc. No. 18-03072 (HDH) (Bankr. N.D. Tex.)
- *Granger, et al. v. Great Plains Lending, LLC, et al.*, Case No. 18-cv-00112-WO-JLW (M.D.N.C.)
- *Gibbs et al. v. Think Finance et al.*, Adv. Proc. No. 17-03117 (HDH) (Bankr. N.D. Tex.)
- *Browne et al. v. Think Finance et al.*, Adv. Proc. No. 17-03120 (HDH) (Bankr. N.D. Tex.)
- *Banks et al. v. Think Finance et al.*, Adv. Proc. No. 17-03121 (HDH) (Bankr. N.D. Tex.)
- *Brice et al. v. Think Finance et al.*, Adv. Proc. No. 18-03025 (HDH) (Bankr. N.D. Tex.)
- *Griffiths et al. v. Think Finance et al.*, Adv. Proc. No. 18-03026 (HDH) (Bankr. N.D. Tex.)
- *Price et al. v. Think Finance et al.*, Adv. Proc. No. 18-03319 (HDH) (Bankr. N.D. Tex.)

CFPB Litigation:

- *Consumer Financial Protection Bureau v. Think Finance, LLC et al*, Case No. 4:17-cv-00127-BMM (D. Mont.)

Pennsylvania Litigation:

- *Commonwealth of Pennsylvania v. Think Finance, Inc. et al.*, Case No. 2:14-cv-07139-JCJ (E.D. Pa.)

## Annex C
## Other Defined Terms

"Administrative Expense Claim" means a Claim against a Debtor for the costs and expenses of administration of the Chapter 11 Cases arising on or prior to the Effective Date pursuant to sections 328, 330, or 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, other than Substantial Contribution Claims.

"Agreement Effective Date" means the date on which the Debtors and each of the Consenting Stakeholders identified on the signature pages attached to the Term Sheet have executed and delivered counterpart signatures of this Term Sheet to counsel to the Debtors.

"Agreement Effective Period" means the period from the Agreement Effective Date to the Termination Date applicable to a Debtor or Consenting Stakeholder.

"Alternative Restructuring Proposal" means an inquiry, proposal, offer, bid, term sheet, or discussion with respect to a new money investment, restructuring, reorganization, merger, amalgamation, acquisition, consolidation, dissolution, debt investment, equity investment, liquidation, tender offer, recapitalization, plan of reorganization, share exchange, business combination, sale, or similar transaction involving any Debtor or the debt, equity, or other interests in any Debtor that is an alternative to one or more of the Restructuring Transactions identified in this Term Sheet.

"Business Day" means any day other than a Saturday, Sunday or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

"Cause of Action" means any action, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, Equity Interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever that are property of the Debtors' estates under 11 U.S.C. § 541, whether known or unknown, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, asserted or unasserted, assertable directly or derivatively, in contract or in tort, in law or in equity, arising under the statutes or administration regulations of any jurisdiction, or pursuant to any other theory of law. Such causes of action shall include, by example only and without limitation, (i) avoidance actions, (ii) actions under 11 U.S.C. §§ 544, 545, 547, 548, 550 and/or 553 and any state law equivalents, (iii) commercial tort claims, (iv) any right of setoff, counterclaim or recoupment, and (v) the right to object to Claims or Equity Interests (subject to the provisions of the Plan). These include, among others, (a) actions against entities which spun off from the Debtors between 2012 and the Petition Date totaling, the Committee asserts, in excess of $245.0 million, and (b) actions against all current and former shareholders and/or members of the Debtors totaling, the Committee asserts, in excess of $59.0 million. Notwithstanding anything else in the Term Sheet, the Plan or the Confirmation Order, Cause(s) of Action transferred to the Litigation Trust shall not include any Claims or Causes of Action against Released Parties or any of the obligations or assets included in the Reorganized Debtor Assets.

"CFPB" means the Consumer Financial Protection Bureau.

"Claim" means an actual or alleged (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured and calculated together with all applicable accrued interest, fees and commission due, owing or incurred from time to time or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  For the avoidance of doubt, this Term Sheet's definition of "Claim" is no less broad than the definition of "claim" as defined in section 101(5) of the Bankruptcy Code.

"Class Notice" means the form of notice to be disseminated pursuant to the Preliminary Approval Order to Nationwide Consumer Borrowers, which, among other things, will permit Nationwide Consumer Borrowers to opt out of or object to the Nationwide Consumer Borrower Settlement Class and/or the Settlement.

"Committee" means the Official Unsecured Creditors' Committee appointed in the Chapter 11 Cases pursuant to *Amended Appointment of the Official Unsecured Creditors' Committee* [Docket No. 148].

"Confirmation Order" means an order of the Bankruptcy Court confirming the Plan.

"Consenting Defendants" means, collectively, the GPLS Secured Parties and any other defendants or potential defendants in the Pending Litigation who reach or have reached a settlement agreement acceptable to the Consenting Stakeholders and have agreed to be parties to this Term Sheet.

"Consenting Defendants' Cash Contribution" means the funds, if any, to be transferred to the Litigation Trust by any Consenting Defendants on the Effective Date in an aggregate amount to be agreed upon by the Consenting Plaintiffs and the Consenting Defendants in accordance with each such Consenting Defendant's agreed-upon payment allocation of the Consenting Defendants' Cash Contribution.

"Consenting Plaintiffs" means the plaintiffs in the Pending Litigation.

"Consumer Borrower Claims" means any Claim of any of the Nationwide Consumer Borrowers who are members of, and do not opt out from, the Nationwide Consumer Borrower Settlement Class, against any Debtor or any Consenting Defendant, including any claims arising under, derived from, based on, or related to any Consumer Borrower Litigation.

"Cortex" means Cortex Holdings, LLC.

"Debtor Claims/Interests" means, collectively, all Claims against, and Equity Interests in, the Debtors.

"Definitive Documents" mean the documents governing the Restructuring Transaction, which include (a) this Term Sheet; (b) the Plan (and all exhibits thereto); (b) the Confirmation Order and pleadings in support of entry of the Confirmation Order; (c) the Disclosure Statement and pleadings in support of approval of the Disclosure Statement; (d) the Plan Solicitation Materials; (e) any order of the Bankruptcy Court approving the Disclosure Statement and the other Plan Solicitation Materials; and (f) the Plan Supplement.

"Disclosure Statement" means a disclosure statement, including any exhibits, appendices, related documents, ballots, and procedures related to the solicitation of votes to accept or reject the Plan, in each case, as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, and that is prepared and distributed in accordance with, among other things, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Rule 3018 of the Federal Rules of Bankruptcy Procedure, and other applicable law.

"Effective Date" means the date on which the terms and conditions required for the effective date of the Plan have occurred.

"Eligible Tribal Loans" means loans issued by Plain Green prior to June 1, 2016, Great Plains prior to May 6, 2017, or MobiLoans prior to May 6, 2017, in each case in which GPLS purchased a participation interest, provided, further, that each draw on loans issued by MobiLoans shall be treated as a separate Eligible Tribal Loan. In addition, this shall also mean loans to Pennsylvania Borrowers who obtained a consumer loan between February 1, 2009, and December 31, 2010, from First Bank of Delaware with respect to which loan certain of the Debtors provided services.

"Entity" means any "entity" as such term is defined in section 101(15) of the Bankruptcy Code, and for the avoidance of doubt is understood and intended by the parties to include a federally recognized Indian Tribe.

"Equity Interests" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement).

"Escrow Account" means that certain escrow account at Metropolitan Commercial Bank in the name of David Baker, Managing Partner, CTP, at Aurora Management Partners established

3

pursuant to the terms of the Agreed Order [APN 17-3016, Doc No. 22] entered by the Bankruptcy Court on October 31, 2017.

"FF&E" means all furniture, fixtures, equipment and interests therein, including without limitation, inventory, materials, supplies, writings, machinery, computers and accessories, servers, hardware, disk drives, office equipment, communications equipment, leased or owned vehicles, and other tangible personal property utilized in the Debtors' businesses. FF&E shall not include GPL and PGL Property. Books and records are addressed separately in the Term Sheet.

"Final Fairness Approval Order" means that Order granting final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e) and/or Fed. R. Bankr. P. 7023(e).

"Final Fairness Hearing" means the hearing to consider granting final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e) and/or Fed. R. Bankr. P. 7023(e).

"GPLS" means GPL Servicing, Ltd.

"GPLS Holdback Account" means, collectively, the three GPLS accounts at Citi Bank, N.A. that hold the "GPLS Holdback," as that term is defined in the *Order Granting Preliminary Injunction* [A.P. Doc. No. 73] (the "Preliminary Injunction Order").

"GPLS Insurance Carriers" means Endurance American Specialty Insurance Company (Policy Number FIP100101226400), XL Specialty Insurance Company (Policy Number ELU147084-16) Zurich (Policy Number EOC 0160733-00), and Arch Insurance Company (Policy Number AAX 9300313-00).

"GPLS Litigation" means that certain adversary proceeding *Think Finance et al. v. Victory Park Capital Advisors, LLC et al.*, Adv. Proc. No. 17-03106 (HDH) (Bankr. N.D. Tex.).

"GPLS Secured Claims" means any Claims against a Debtor of any of the GPLS Secured Parties, including any Claims arising under, derived from, based on, or related to any asserted right to payment under the GSA, or the proofs of claim filed by GPL Servicing, Ltd., GPL Servicing Agent, LLC, Victory Park Capital Advisors, LLC, or Victory Park Management, LLC.

"GPLS Secured Parties" means, collectively, (a) GPL Servicing, Ltd., (b) GPL Servicing Agent, LLC, (c) Victory Park Capital Advisors, LLC, (d) Victory Park Management, LLC, (e) the GPLS Insurance Carriers (solely with respect to the Releases), and (f) for each of the foregoing (a)–(e), their respective current, former, and future Related Non-Debtor Parties, including, without limitation, for avoidance of doubt, Scott Zemnick, Tom Welch, and Jeffrey Schneider. The use of the term "Secured" in the term "GPLS Secured Parties" is not an admission by any party to this Term Sheet that the "GPLS Secured Parties" in fact hold a secured claim.

"Great Plains" means Great Plains Lending, LLC.

4

"Great Plains Reserve Amount" means the amount alleged to be due from Great Plains to GPLS as the "Reserve Amount," as such term is defined in that certain Participation Agreement, dated as of December 1, 2015, between Great Plains and GPLS.

"GSA" means that certain Fourth Amended and Restated Guaranty and Security Agreement, dated as of April 2, 2013 (as amended from time to time).

"Intellectual Property" means without limitation all of the following: (i) all patents; (ii) all know-how, work product, trade secrets, inventions (whether patentable or otherwise), data, information, processes, techniques, procedures, compositions, devices, methods, formulas, protocols and information, whether patentable or not; (iii) all software, source code, object code, system diagrams and architecture, flow charts, algorithms and all other information technology; (iv) all works of authorship, copyrightable works, copyrights and applications, registrations and renewals; (v) all logos, trademarks, service marks, domain names, and all applications and registrations relating thereto; (vi) all other proprietary rights; (vii) all regulatory exclusivities, patent extensions, supplemental protection certificates or the like; and (viii) all copies and tangible embodiments of each and all of the foregoing utilized in the Debtors' businesses. Notwithstanding the above, Intellectual Property shall not include the GPL and PGL Property.

"Jora" means Jora Credit Holdings, LLC.

"Litigation Trust" means the trust established pursuant to the Plan to, among other things, hold assets, prosecute Causes of Action, object to Claims and make distributions pursuant to the Plan.

"Litigation Trustee" means the trustee (and any successor trustee) of the Litigation Trust.

"MobiLoans" means MobiLoans, LLC.

"MobiLoans Note" means that certain Subordinated Term Note, dated May 10, 2017, by MobiLoans in favor of GPLS.

"Nationwide Consumer Borrower" means any Person, including their successors and assigns and Persons holding or exercising any relevant legal rights of such Person, who received an Eligible Tribal Loan. The term shall be synonymous with member, when referring to members of the Nationwide Consumer Borrower Settlement Class. For purposes of this Term Sheet, each Nationwide Consumer Borrower shall be treated as a single member of the Nationwide Consumer Borrower Settlement Class but, for each Borrower who has not opted out, each Eligible Tribal Loan he or she received will be considered separately when making any distribution or providing any other benefit.

"Non-Estate Causes of Action" means any action, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, Equity Interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever that are not property of the Debtors' estates under 11 U.S.C. § 541, whether known, unknown, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable

directly or derivatively, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

"Other Priority Claim" means any unsecured claim entitled to priority in repayment pursuant to section 507 of the Bankruptcy Code that is not a Priority Tax Claim or Administrative Expense Claim.

"Pennsylvania" means the Commonwealth of Pennsylvania, which is the holder of the Pennsylvania Claims, or its designees.

"Pennsylvania AG" means the Attorney General of the Commonwealth of Pennsylvania.

"Pennsylvania Borrowers" means members of the Nationwide Consumer Borrower Settlement Class who resided in the Commonwealth of Pennsylvania at the time they obtained any Eligible Tribal Loans

"PII" means personal identifiable information provided by consumer borrowers prior to the Effective Date to Tribal Lenders or to the Debtors.

"Plain Green" means Plain Green, LLC.

"Plan Solicitation Materials" means all solicitation materials in respect of the Plan.

"Plan Supplement" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan.

"Priority Tax Claim" means any Claim against a Debtor that is entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Claim for penalties.

"Reorganized Debtors" means one or more newly formed entities wholly owned by TF Holdings that are to receive on the Effective Date the property and rights identified in this Term Sheet, including the Reorganized Debtors' Cash Distribution.

"Reorganized Debtor Assets" means the assets identified in this Term Sheet that will vest in the Reorganized Debtors on the Effective Date.

"Restructuring Transactions" means the transactions on the terms specified in this Term Sheet, the Plan, and the other Definitive Documents.

"Section 510(b) Claim" means any claim against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code.

6

"Settling Tribal Lenders" shall mean the Tribal Lenders who have entered into separate settlement agreements with one or more Consenting Plaintiffs.

"Subject Consumers" means those consumers who resided in one of the Subject States at the time of the formation of an installment loan agreement or a line of credit agreement.

"Subject States" means Arizona, Arkansas, Colorado, Connecticut, Illinois, Indiana, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Pennsylvania, Ohio, and South Dakota.

"Substantial Contribution Fund" means cash in an amount needed to fund payment of Allowed Substantial Contribution Claims.

"Termination Date" means the date on which termination of this Term Sheet occurs as to a Debtor or a Consenting Stakeholder.

"Think Finance" means Think Finance, LLC.

"Think Interest" means any Equity Interest in Think Finance.

"TF Holdings" means TF Holdings, Inc.

"Tribal Lender" means Plain Green, Great Plains, or MobiLoans.

"Tribal Property" means the ownership interests and/or rights that belong to the Settling Tribal Lenders that would be transferred to the Liquidation Trust pursuant to separate settlement agreements with the Settling Tribal Lenders, including without limitation any outstanding consumer borrower notes and any data regarding any Nationwide Consumer Borrower owned by a Settling Tribal Lender and maintained or otherwise held by the Debtors for or on behalf of the Settling Tribal Lenders..

**Annex D**
**CFPB Consent Order**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>   *Plaintiff*,<br><br>   v.<br><br>Think Finance, LLC, formerly known as Think Finance, Inc., Think Finance SPV, LLC, Financial U, LLC, TC Loan Service, LLC, Tailwind Marketing, LLC, TC Administrative Services, LLC, and TC Decision Sciences, LLC,<br><br>   *Defendants*. | Case No. 4:17-cv-00127-BMM<br><br>Hon. Brian M. Morris |

## STIPULATED FINAL CONSENT ORDER

Plaintiff Consumer Financial Protection Bureau (Bureau) commenced this civil action against Think Finance, LLC on November 15, 2017 to obtain injunctive relief, damages and other monetary relief, and civil money penalties.

The First Amended Complaint (Complaint), filed on March 28, 2018, alleges violations of Sections 1031(a) and § 1036(a)(1) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a)(1)(B). The Complaint also names as defendants several wholly-owned subsidiaries of Think Finance, LLC, namely, Think Finance SPV, LLC, Financial U, LLC, TC Loan Service, LLC, Tailwind Marketing, LLC, TC Administrative Services, LLC, and

TC Decision Sciences, LLC. (collectively, the Think Entities). Dkt. No. 38. The

Think Entities filed their answer on August 31, 2018, and in substance, denied the

Bureau's Complaint and raised various affirmative defenses. Dkt. No. 81. Plaintiff

and the Think Entities consent to the Court entering this Order.

**THEREFORE, it is ORDERED:**

## FINDINGS

1.      This Court has jurisdiction over the parties and the subject matter of

this action.

2.      From 2011 through at least 2018, consumers in the Subject States

obtained credit extended in the name of Great Plains Lending, LLC, MobiLoans,

LLC, or Plain Green, LLC.  For those loans where repayments exceeded the

principal amount borrowed, consumers collectively paid at least $325,000,000 over

the principal amounts borrowed.  This figure does not account for loans in the

Subject States where the total payments were less than the principal amount

borrowed.

3.      Plaintiff and the Think Entities agree to entry of this Order, without

adjudication of any issue of fact or any adjudication of any remaining issues of

law, to settle and resolve all matters in this dispute arising from the conduct alleged

in the Complaint to the date this Order is entered.

4.      The Think Entities neither admit nor deny any allegations in the Complaint, except as specifically stated in this Order. The Think Entities admit only the facts necessary to establish the Court's jurisdiction over the Think Entities and the subject matter of this Order.

5.      The Think Entities waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order. The Think Entities also waive any claims the Think Entities may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the Bureau's prosecution of the Bureau Litigation. Each party will bear its own costs and expenses, including without limitation attorneys' fees, in connection with the Bureau Litigation.

6.      Entry of this Order is in the public interest.

## DEFINITIONS

7.      "Effective Date" means the date on which the Order is entered by the Court.

8.      "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or her delegate.

9.      "Plan" means the Chapter 11 plan of the Think Entities.

10.     "Person" means any individual or entity, including any government, political subdivision, government agency or instrumentality, or Native American Tribe.

11.     "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against the Think Entities based on substantially the same allegations as described in the Complaint.

12.     "Reorganized Debtors" means one or more newly formed entities wholly owned by TF Holdings, Inc. that are, by operation of the Plan, to receive the property and rights identified in the Plan.

13.     "Subject States" means Arizona, Arkansas, Colorado, Connecticut, Illinois, Indiana, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, and South Dakota.

14.     The "Think Entities" means Think Finance, LLC, Think Finance SPV, LLC, Financial U, LLC, TC Loan Service, LLC, Tailwind Marketing, LLC, TC Administrative Services, LLC, and TC Decision Sciences, LLC.

## ORDER
## I.
## CONDUCT RELIEF

**IT IS ORDERED that**:

15.     The Think Entities and the Reorganized Debtors (each an "Enjoined Party") are permanently restrained and enjoined from:

    a.  providing services to a Subject Lender that constitute

        extending credit to, servicing credit extended to, or collecting

on credit extended to, a consumer who has identified his or her residential address at the time of the advancement of funds as being in a Subject State; or

b. providing services directly to a Subject Lender, or to another Person for use of a Subject Lender, in connection with a Subject Lender's activities in extending credit to, servicing credit extended to, or collecting on credit extended to a consumer who has identified his or her residential address at the time of the advancement of funds as being in a Subject State, where the Enjoined Party knows or is reckless in not knowing that the entity is a Subject Lender.

c. For purposes of this Paragraph 15, a Subject Lender shall mean any entity or individual that makes a loan to a consumer who has identified his or her residential address at the time of the advancement of funds as being in a Subject State where such loan is either at an interest rate in excess of the Subject State's usury limit for that loan or the entity or individual lends without a license from the Subject State for that loan. For purposes of this paragraph 15c., the usury limit and licensing requirements referenced shall be those of the

consumer's state of residence which the consumer has

identified at the time of the advancement of funds.

16.     The conduct prohibitions in Paragraph 15 do not apply:

   a.  if the credit in question: (i) is originated or issued by a

       federally or state chartered depository institution or other

       entity and if the application of state or other law with respect

       to the loan is preempted under the Federal laws of the United

       States of America; or

   b.  to support services of a type provided to businesses generally

       or a similar ministerial service.

## MONETARY PROVISIONS
## II.
### Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED that:**

17.     Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), pursuant to

the agreement of the parties as part of the Plan and by reason of the violations of

law alleged in the Complaint and alleged to continue to the entry of this Order, and

taking into account the factors in 12 U.S.C. 5565(c)(3), the Think Entities must pay

a civil money penalty of $7 ($1 for each Defendant), jointly and severally, in favor

of the Bureau.  The Think Entities shall pay this penalty in accordance with their

obligations in Paragraphs [XX] of the Plan.

18.     The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by § 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

19.     The Think Entities must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, the Think Entities may not:

    a.      claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

    b.      seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

20.     To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, the Think Entities may not argue that the Think Entities are entitled to, nor may the Think Entities benefit by, any offset or reduction of any compensatory monetary remedies in the Related Consumer Action because of the civil money penalty paid in this action.

## III.
## COMPLIANCE PROVISIONS
## IV.
## Reporting Requirements

**IT IS FURTHER ORDERED that:**

21.     After the Effective Date, the Think Entities and the Reorganized Debtors must notify the Bureau of:

      a.     any future development that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other corporate reformation; or

      b.     the filing of any future bankruptcy or insolvency proceeding by or against the Think Entities and the Reorganized Debtors; or a change in name or address for the Think Entities and the Reorganized Debtors.

22.     The Think Entities and the Reorganized Debtors must provide the notice required in Paragraph 21 as soon as practicable after learning about the development or at least 30 days before the development is finalized, whichever is sooner.

23.     Within 7 days of the Effective Date, the Think Entities and Reorganized Debtors must:

      a.     designate at least one telephone number and email, physical, and postal address as a point of contact, which the Bureau

may use to communicate with the Think Entities and the Reorganized
Debtors;

       b.     identify all businesses for which the Think Entities and
the Reorganized Debtors are the majority owner, or that the Think
Entities and the Reorganized Debtors directly or indirectly control, by
providing all of the businesses' names, telephone numbers, and
physical, postal, email, and Internet addresses; and

       c.     describe the activities of each such business, including
the products and services offered, and the means of advertising,
marketing, and sales.

24.    The Think Entities and the Reorganized Debtors must report to the
Bureau any change in the information required to be submitted under Paragraph 23
as soon as practicable or at least 30 days before the change, whichever is sooner.

## V.

## Notices

**IT IS FURTHER ORDERED that:**

25.    Unless otherwise directed in writing by the Bureau, all notices,
submissions, requests, communications, or other documents related to the Order
must be in writing with the subject line, "CFPB v. Think Finance, LLC, et al." and
directed as follows:

*If to the Bureau:*

By overnight courier (not the U.S. Postal Service), as follows:

Assistant Director for Enforcement
Bureau of Consumer Financial Protection
ATTENTION: Office of Enforcement
1700 G Street, N.W.
Washington D.C. 20552

And contemporaneously by email to Enforcement_Compliance@cfpb.gov.

*If to the Think Entities:*

Chief Executive Officer

Think Finance, LLC

7701 Las Colinas Ridge, Suite 650, Irving, TX 75063

With a copy to the General Counsel at the same address

*If to the Reorganized Debtors:*

Chief Executive Officer

TF Holdings, Inc.

7701 Las Colinas Ridge, Suite 650, Irving, TX 75063

With a copy to the General Counsel at the same address

# VI.

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED that:**

26.     Within 7 days of the Effective Date, the Think Entities and the Reorganized Debtors must submit to the Enforcement Director an acknowledgement of receipt of this Order, sworn under penalty of perjury.

27.     Within 30 days of the Effective Date, the Think Entities and the Reorganized Debtors must deliver a copy of this Order to any employees or any Outside Counsel who will have responsibilities under this Order.

28.     The Think Entities and the Reorganized Debtors must deliver a copy of this Order to any future executive officers, shareholders, partners, employees, and any other new agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

29.     The Think Entities and the Reorganized Debtors must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq*., within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

# VII.

## Cooperation with the Bureau

**IT IS FURTHER ORDERED that:**

30.     The Think Entities must cooperate fully with the Bureau in this matter

and in any investigation related to or associated with the conduct alleged in the

Complaint. The Think Entities must provide truthful and complete information,

evidence, and testimony. The Think Entities must cause their officers, employees,

representatives, or agents to appear for interviews, discovery, hearings, trials, and

any other proceedings that the Bureau may reasonably request upon 5 days written

notice, or other reasonable notice, at such places and times as the Bureau may

reasonably designate, without the service of compulsory process.

31.     The Think Entities and the Reorganized Debtors must cooperate fully

to help the Bureau determine the identity and location of each consumer borrower,

and the amount each consumer borrowed and repaid on credit that was extended in

the name of Great Plains Lending, LLC, MobiLoans, LLC, or Plain Green, LLC.

The Think Entities and the Reorganized Debtors must provide such information in

its or its agents' possession or control within 14 days of receiving a written request

from the Bureau.

# VIII.

## Compliance Monitoring

**IT IS FURTHER ORDERED that:**

32.     Within 14 days of receipt of a written request from the Bureau, the Think Entities and the Reorganized Debtors must submit requested non-privileged information related to the requirements of this Order, which must be made under penalty of perjury; provide sworn testimony related to the requirements of this Order and Think Entities and the Reorganized Debtors' compliance with those requirements; or produce non-privileged documents related to the requirements of this Order and the Think Entities and the Reorganized Debtors' compliance with those requirements.

33.     The Think Entities and the Reorganized Debtors must permit Bureau representatives to interview about the requirements of this Order and the Think Entities and the Reorganized Debtors' compliance with those requirements any employee or other person affiliated with the Think Entities and the Reorganized Debtors who has agreed to such an interview. Nothing in this Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

# IX.

## Recordkeeping

34.     The Think Entities and the Reorganized Debtors must create or, if already created, must retain for at least 5 years from the Effective Date all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.

35.     The Think Entities and the Reorganized Debtors must retain the documents described in Paragraph 34 for at least 5 years.

36.     Defendants must make documents identified in Paragraph 34 available to the Bureau upon the Bureau's request.

# X.

## Retention of Jurisdiction

**IT IS FURTHER ORDERED that:**

37.    The Court will retain jurisdiction of this matter for purposes of construction, modification (including any request by any Party to modify the conduct prohibitions), and enforcement of this Order.


**SO ORDERED AND ADJUDGED.**


_____          _____

The Honorable Brian M. Morris                DATE
United States District Judge