# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA by Attorney General JOSH SHAPIRO, Plaintiff, <br><br> v. <br><br> THINK FINANCE, INC., TC LOAN SERVICE, LLC, TAILWIND MARKETING, LLC, TC DECISION SCIENCES, LLC, FINANCIAL U, LLC, KENNETH E. REES, VICTORY PARK CAPITAL ADVISORS, LLC, VICTORY MANAGEMENT, LLC, GPL SERVICING, LTD., GPL SERVICING AGENT, LLC, GPL SERVICING TRUST, GPL SERVICING TRUST II, VPC/TF TRUST I, VICTORY PARK CREDIT OPPORTUNITIES MASTER FUND, LTD., and NATIONAL CREDIT ADJUSTERS, LLC, Defendants. | CIVIL ACTION <br><br> NO. 14-7139 |

## MEMORANDUM

**JOYNER, J.**                                            **NOVEMBER 18, 2019**

### I. INTRODUCTION

Before this Court are Plaintiff's Motion for Partial Summary Judgment and the summary judgment motions of Defendants Kenneth Rees ("Rees") and National Credit Adjusters, LLC ("NCA"). For the reasons set forth in this Memorandum, we deny all Motions for Summary Judgment as to all applicable Counts.

1

## II. **FACTUAL AND PROCEDURAL HISTORY**[1]

### Factual Background

This action addresses high-interest rate, short-term loans made to Pennsylvania residents over the Internet. The Plaintiff, the Office of the Attorney General ("OAG"), alleges that Defendant Rees – the CEO, chairman, and president of Defendant Think Finance, Inc. ("Think Finance")[2] – and Defendant NCA violated laws prohibiting usurious and otherwise illegal lending practices.

Plaintiff alleges that the Defendants orchestrated a scheme to offer and collect on loans to Pennsylvania consumers at illegally high interest rates. Specifically, Plaintiff alleges that Defendants coordinated with Native American tribes, who are generally not subject to state limits on interest rates, to serve as the front of the lending scheme, while Defendants operated the loan mechanism. These loans allegedly violated Pennsylvania's Loan Interest and Protection Law 41 P.S. § 201(a), which limits to six-percent interest rates on unsecured loans under $50,000 offered by unlicensed lenders. § 201(a). The loans at issue have an average interest rate of 250-390%. See Rees' Response to Plaintiff's Sealed Statement of Undisputed

---

[1] Unless otherwise noted, all facts are taken from Plaintiff's Second Amended Complaint ("SAC").
[2] Think Finance is no longer a party to this action. Doc. No. 286.

2

Facts in Support of Plaintiff's Motion for Partial Summary Judgment ¶13.

In Plaintiff's Second Amended Complaint ("SAC"), Plaintiff alleges that Defendant Rees violated Pennsylvania's Corrupt Organizations Act ("COA") 18 Pa. C.S.A. §§ 911(b)(1), (3), and (4); the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") 73 P.S. s§§ 201-1 et seq.; the Fair Credit Extension Uniformity Act ("FCEUA") 73 P.S. §§ 2270.1 et seq.; various provisions of the federal Dodd-Frank Act; and related laws. Additionally, Plaintiff alleges that Defendant NCA violated the COA § 911(b)(4); the FCEUA §§ 2270.1 et seq.; and related laws.[3]

As to Defendant Rees and regarding the tribal period only, Plaintiff moves for summary judgment on Count Two (COA § 911(b)(3)); Count Three (COA § 911(b)(4)); and Count Five (UTPCPL § 201-1 et. seq.) of the SAC. Doc. No. 225. As to Defendant NCA, Plaintiff moves for summary judgment on Count Three and Count Four. Doc. No. 225. Defendant Rees moves for summary judgment in his favor on all Counts. Doc. No. 257. Defendant NCA moves for summary judgment in its favor on Counts Three and Four. Doc. No. 256.

---

[3] Plaintiff originally sought claims against other parties, but claims against those parties are no longer ongoing. Descriptions of the facts and claims involving former Defendants are available in our previous opinions. See Pennsylvania by Shapiro v. Think Fin., Inc. (Think Fin. II), 2018 WL 637656, at *1-3 (E.D. Pa. Jan. 31, 2018); Pennsylvania by Kane v. Think Fin., Inc. (Think Fin. I), 2016 WL 183289, at *1-3 (E.D. Pa. Jan. 14, 2016). See also Docs. No. 35, 41, 43, 76, 143, 193, and 286.

For the reasons described below, we deny all summary judgment motions.

### III. **ANALYSIS**

#### Legal Standard

To obtain summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Disputes about "material" facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "genuine" dispute exists if the non-movant establishes evidence "such that a reasonable jury could return a verdict" in their favor. Id.

"Where the defendant is the moving party, the burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements of her case." Brown v. Aria Health, 2019 U.S. Dist. LEXIS 66266, at *9-10 (E.D. Pa. Apr. 17, 2019) (quoting Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d Cir. 2013)) (internal quotations omitted). Once the movant meets its initial burden, the nonmoving party must then "go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)) (internal citations omitted) (emphasis omitted).

"The court must review the record 'taken as a whole.'" Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000) (quoting Matsushita, 475 U.S. at 587)). At summary judgment, we must view the evidence and draw all inferences "in the light most favorable to the party opposing the motion." Matsushita, 475 U.S. at 587 (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). See also Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258 F.3d 132, 140 (3d Cir. 2001).

Still, the non-movant must show more than "[t]he mere existence of a scintilla of evidence in support of . . . [the non-movants] position" to defeat a motion for summary judgment. Anderson, 477 U.S. at 252. To survive summary judgment, the specific facts set forth by the non-movant must require resolution "only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. The non-movant "may not rest upon the mere allegations or denials of the . . . pleading; its response . . . must set forth specific facts showing that there is a genuine issue for trial." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (internal quotation marks omitted).

### Count One – COA 18 Pa. C.S.A. § 911(b)(1) Against Defendant Rees

Section 911(b)(1) of the COA provides that it is illegal "for any person who has received any income derived, directly or

5

indirectly, from a pattern of racketeering activity in which such person participated as a principal, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise . . . ." § 911(b)(1). As we explained in Think Fin. II, 2018 WL 637656, a defendant must be a "principal" in order to be liable under Section 911(b)(1). Id. at *8.

Pennsylvania's COA, Section 911, is analogous to the federal Racketeering Influenced and Corrupt Organizations ("RICO") Act 18 U.S.C. §§ 1961-1968. Courts interpreting the Pennsylvania COA often apply RICO precedent. Think Fin. II, 2018 WL 637656, at *8; Commonwealth v. Donahue, 630 A.2d 1238, 1245 (Pa. Super Ct. 1993). RICO precedent is helpful but not controlling for applying claims under Pennsylvania's COA. Commonwealth v. Dennis, 618 A.2d 972, 607 (Pa. Super. Ct. 1992).

RICO's analogous section, Section 1962(a), prohibits persons from receiving income from a pattern of racketeering activity and, then, investing that income in a qualifying enterprise. § 1962(a); Williams v. Enwereji, 2019 WL 588700, at *7 (E.D. Pa. Feb. 12, 2019) (stating that Section 1962(a) "makes it unlawful for a person to receive income from a pattern of racketeering activity and then invest that income in any [qualifying] enterprise . . . ."). As we explained in our

6

previous opinion, because Rees is a principal, the investment element is satisfied if he directed the entities to invest the income. Think Fin. I, 2016 WL 183289, at *17 ("As a principal, he need not personally have invested the income into other enterprises; it is sufficient that he is alleged to have directed the entities . . . that are alleged to have invested the income . . . ."). Additionally, when the OAG brings a claim, the "actual injury" element need not be met. Id. at *17.

We agree with Plaintiff that the record is not developed enough to decide, on summary judgment, the full extent of Defendant Rees' investment activities and whether he directed other entities to invest income from a pattern of racketeering activity into an enterprise. Therefore, we deny Defendant Rees' Motion for Summary Judgment on Count One.

<h3 style="text-align:center">Count Two – COA 18 Pa. C.S.A. § 911(b)(3)<br>Against Defendant Rees</h3>

Section 911(b)(3) of the COA states that "[i]t shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." In determining liability under Section 911(b)(3), Pennsylvania state courts appear to look both to the individual defendant's association with the enterprise and the individual defendant's racketeering actions. See Commonwealth.

v. Dellisanti, 583 Pa. 106, 108, 113 (2005). For instance, in Dellisanti, 583 Pa. 106, the court upheld the conviction of a storeowner under Section 911(b)(3) due to both the defendant storeowner's pattern of selling illegal drugs herself and her association with the enterprise as owner of the store. Id. at 108, 113. Similarly, according to Third Circuit precedent addressing the analogous RICO statute, the test is "whether the defendant participated in the 'operation or management' of an enterprise's affairs, and if so, whether he did so 'through a pattern of racketeering activity.'" In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 372 (3d Cir. 2010). The Third Circuit further explained that this test requires "a plaintiff to show that the defendant participated in the conduct of the enterprise's affairs . . . through — that is, 'by means of, by consequence of, by reason of, by the agency of, or by the instrumentality of,' . . . a pattern of racketeering activity." Id. (internal citations omitted).

Here, the record reflects that there are many genuine issues of material facts surrounding Rees' level of involvement in the scheme and whether Rees himself was personally involved in the racketeering acts. Thus, at this stage, we deny Plaintiff's Motion for Partial Summary Judgment and Defendant Rees' Motion for Summary Judgment on Count Two.

## Count Three – COA 18 Pa. C.S.A. § 911(b)(4)
### Against Defendants Rees and NCA

Under Section 911(b)(4) of the COA, "it shall be unlawful for any person to conspire to violate any of the provisions of paragraphs (1), (2) or (3) of this subsection." § 911(b)(4). RICO's analogous section, Section 1962(d), provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section. 18 U.S.C. § 1962.

Courts in this jurisdiction have interpreted RICO's analogous Section 1962(d) to require: "(1) agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate § 1962(a), (b), or (c)." Odesser v. Cont'l Bank, 676 F. Supp. 1305, 1312 (E.D. Pa. 1987). See also United States v. Adams, 759 F.2d 1099 (3d Cir.) cert. denied 474 U.S. 971 (1985); Think Fin. II, 2018 WL 637656, at *9 (citing Khan v. Vayn, 2014 WL 550552, at *4 (E.D. Pa. Feb. 11, 2014)). However, each defendant in the conspiracy does not have to actually commit the predicate acts or even agree to personally commit the predicate acts. Adams, 759 F.2d at 1116 ("We now decide that to be convicted of a RICO conspiracy, a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts . . . . [and] the

statutory language itself does not require the personal commission of predicate offenses."); Odesser, 676 F. Supp. at 1312. Instead, the defendant must merely "agree only to the commission of the predicate acts." Adams, 759 F.2d at 1116; Odesser, 676 F. Supp. at 1312.

Here, there is a genuine dispute of material fact with regard to whether the Defendants agreed to commit the predicate acts as required by Section 1962(d) and whether the Defendants had knowledge that these predicate acts formed a pattern of racketeering activity. Thus, we deny all summary judgment motions on Count Three as to both Defendants.

### Count Four - FCEUA 73 P.S. § 2270.1 et seq. Against Defendants Rees and NCA

In the SAC, Plaintiff alleges that Defendants Rees and NCA violated the FCEUA 73 P.S. §§ 2270.1 et seq. and the federal Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §§ 1692 et seq. by collecting usurious interest under the loan scheme as a "debt collector" or, in the alternative, as a "creditor." However, in Plaintiff's Memorandum of Law in Support of Their Motion for Partial Summary Judgment, Plaintiff argues that NCA is a creditor – not a debt collector – under the FCEUA. Doc. No. 259-2, at 73. Rees moves for summary judgment in his favor. NCA moves for summary judgment in its favor. As to Defendant NCA, Plaintiff moves for summary judgment in its favor.

Under the FCEUA, a debt collector is "[a] person not a creditor conducting business within this Commonwealth, acting on behalf of a creditor, engaging or aiding directly or indirectly in collecting a debt owed or alleged to be owed a creditor or assignee of a creditor." § 2270.3(1). Under the FCEUA, any debt collector that violates the federal FDCPA § 1692 et seq. commits "an unfair or deceptive act or practice" under the FCEUA. § 2270.4(a). Under the FDCPA, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt . . . . the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1).

In contrast, a creditor is "[a] person, including agents, servants or employees conducting business under the name of a creditor and within this Commonwealth, to whom a debt is owed or alleged to be owed." § 2270.3. The FCEUA prohibits creditors from taking "unfair or unconscionable means to collect or attempt to collect any debt . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 2270.4(b)(6)(i).

Rees argues that he cannot be a debt collector by virtue of his status as a corporate officer. However, we previously held

11

that an employee can indeed be held liable as a "debt collector" under the FCEUA when the employee has "some degree of control over the affairs of the debt collecting agencies . . . ." Think Fin. I, 2016 WL 183289, at *20 ("We find that so long as the employee is alleged to have some degree of control over the affairs of the debt collecting agencies, they can be found liable under this statute."). See also Piper v. Portnoff Law Assocs., 274 F. Supp. 2d 681, 689-90 (E.D. Pa. 2003), aff'd sub nom. Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227 (3d Cir. 2005) (denying defendants' motion for partial summary judgment because the individual defendants "signed debt collection letters, or authorized others to sign the letters for them, and were involved in PLA's day to day operations [and] . . . . individuals who exercise control over the affairs of a business may be held liable under the FDCPA for the business' actions."). As a matter of law, Rees could, under the right facts, be liable under the FCEUA by virtue of his degree of control over former Defendant Think Finance. However, there is a material dispute of fact about the level of involvement and control that Rees had over Think Finance. Accordingly, we deny Defendant Rees' summary judgment motion on Count Four. Plaintiff has not moved for summary judgment on Count Four as to Defendant Rees.

NCA admits in its Statement of Undisputed Facts that NCA is a "debt collector" as defined under FDCPA § 1692 et seq. See

NCA's Statement of Undisputed Material Facts ¶3. However, in this jurisdiction, the FCEUA's definition of "debt collector" is narrower than the FDCPA's definition, so NCA's admission is not dispositive. Glover v. F.D.I.C., 698 F.3d 139, 152 (3d Cir. 2012); Ramos v. LVNV Funding, LLC, 379 F. Supp. 3d 437, 445 (E.D. Pa. 2019).

Given the evidentiary record before us, there are disputes of material facts that preclude determining NCA's liability on Count Four on summary judgment. Specifically, it is not clear whether NCA was or is compensating any other parties for the debt it collects, which could preclude NCA from being either a debt collector or creditor. Thus, we also deny both Plaintiff's and NCA's summary judgment motions on Count Four.

### Count Five - UTPCPL 73 P.S. § 201-1 et seq. Against Defendant Rees

Plaintiff's SAC alleges that Rees violated: (1) the UTPCPL 73 P.S. § 201-3 by engaging in acts defined under § 201-2(4)(i), (ii), (iii), (v), (ix), and (xxi); 2) if Rees is a debt collector, 15 U.S.C. § 1692e(2)(A) and 73 P.S. § 2270.4(a); and, if Rees is a creditor, 73 P.S. § 2270.4(b)(5)(ii).

Under Section 201-3 of the UTPCPL, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by [Sections 201-2(4)(i)-(xxi)] . . . are . . . unlawful." 73 P.S. § 201-3.

13

Section 201-2(4) of the UTPCPL defines the specific unfair acts Plaintiff alleges that Defendant Rees engaged in:

- § 201-2(4)(i): "Passing off goods or services as those of another;"

- § 201-2(4)(ii): "Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;"

- § 201-2(4)(iii): "Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;"

- § 201-2(4)(v): "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;"

- § 201-2(4)(ix): "Advertising goods or services with intent not to sell them as advertised;" and

- § 201-2(4)(xxi): "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

Pennsylvania precedent requires a showing of facts that the corporate officer personally engaged in the violations. <u>Moy v. Schreiber Deed Sec. Co.</u>, 370 Pa. Super. 97, 101-02 (1988) ("The . . . rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable . . . ; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable . . . , nor for the acts of other agents, officers or employees of the corporation in committing it,

14

unless he specifically directed the particular act to be done or participated, or cooperated therein . . . Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts."). Additionally, the court stated that "[i]f there is positive proof that the appellee in the case . . . has personally engaged in conduct which constitutes an unfair and deceptive trade practice, it is possible that he may properly be held liable for his actions under the Unfair Trade Practices and Consumer Protection Law." Moy, 370 Pa. Super. at 103. The court in Moy found that the plaintiff-appellant sufficiently pled that the defendant-appellee – the company's president – established the company policy in question. Id. at 102-03.

Here, however, this Court finds numerous genuine issues of material facts to exist, such as Defendant Rees' level of involvement in creating the usury scheme and whether Rees personally engaged in the violations, that preclude resolving Count Five on summary judgment. Accordingly, we deny Plaintiff's Motion for Partial Summary Judgment and Defendant Rees' Motion for Summary Judgment on Count Five.

### Count Six – Dodd-Frank Act 12 U.S.C. § 5536(a)(1)(B) Against Defendant Rees

This Court previously dismissed several claims in Count Six. Think Fin. I, 2016 WL 183289, at *25-26. Defendant Rees

15

seeks summary judgment on the remaining claims in Count Six. Plaintiff does not seek summary judgment on this Count.

*Allegations*

In the SAC, Plaintiff alleges that Rees is a "covered person" under 12 U.S.C. § 5481(6) and that, as a "covered person," Rees has violated Section 5536(a)(1)(B) by engaging in "unfair, deceptive or abusive acts [sic] or practice," as defined in 12 U.S.C. § 5531(d)(2)(A). SAC ¶¶176, 182. In the SAC, Plaintiff alleges that Rees committed unfair or "deceptive" acts or practices because the acts alleged in Count Five are also illegal under Section 5536(a)(1)(B). SAC ¶181. Rees argues for summary judgment on this claim for "the same reasons the UTPCPL claims fail." Doc. No. 274. Additionally, in the SAC, Plaintiff alleges that Rees has violated Section 5536(a)(1)(B) by committing "abusive" acts or practices, as defined under Section 5531(d)(2)(A), by "taking unreasonable advantage of . . . a lack of understanding on the part of Pennsylvania consumers regarding the material risks, costs, or conditions of the [loans] . . . , and . . . the inability of such consumers to protect their interests in selecting or using such financial products . . . ." SAC ¶182.[4] Specifically, as to the alleged

---

[4] The "inability of such consumers to protect their interests in selecting or using such financial products," SAC ¶182, language from the SAC appears to come from an alternative definition of "abusive" practices in 12 U.S.C. § 5531(d)(2)(B). Defendant Rees does not appear to reference this statute in

"abusive" acts or practices, Plaintiff alleges that Defendant Rees took unreasonable advantage of consumers: (1) "[b]y taking advantage of consumer lack of understanding regarding the . . . legality of the credit; [2] [b]y extending credit in violation of an explicit state law prohibition against any unlicensed lending to consumers in excess of six percent interest; [3] [b]y inducing consumers already burdened by high-rate loan debt to repay that debt by taking out a new high-rate loan; and [4] [b]y luring consumers into a cycle of debt by incentivizing repeat borrowing, through a number of devices, including but not limited to a 'rewards' program . . . ." SAC ¶182, 182(c)-(f). On the "abusive" practices allegation as defined under Section 5531(d)(2), Rees argues that there is no admissible evidence against him. Plaintiff argues that, at the summary judgment stage, the Court does not need to fully consider the "abusive" practices allegation because Plaintiff is also pursuing a claim under the "deceptive" allegation.

*Analysis*

A "covered person" is "(A) any person that engages in offering or providing a consumer financial product or service; and (B) any affiliate of a person described in subparagraph (A) if such affiliate acts as a service provider to such person." §

---

Rees' Motion to Dismiss; thus, we will not address this aspect on summary judgment.

5481(6). Section 5536(a)(1)(B) provides that "[i]t shall be unlawful for . . . any covered person or service provider . . . to engage in any unfair, deceptive, or abusive act or practice . . . ." § 5536(a)(1)(B).

Both Plaintiff and Rees contend that the analysis addressing "deceptive" acts under the UTPCPL in Count Five mirrors the claim about "deceptive" practices under the CFPA in Count Six. See SAC 181; Doc. No. 265; Doc. No. 274. Therefore, just as we deny summary judgment on Count Five due to disputes of material fact, we deny Rees' Motion for Summary Judgment as to the "deceptive" practices claim of Count Six.

Section 5531(d)(2)(A) specifies that an action that "(2) takes unreasonable advantage of . . . a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service," § 5531(d)(2)(A), is a type of "abusive" act or practice. § 5531(d)(2)(A). Falsely holding out these loans as legal would constitute an "abusive" act by taking unreasonable advantage of the consumers' lack of understanding. See Think Fin. I, 2016 WL 183289, at *26. In assessing whether the loans were legal, we find material issues of facts as to whether Rees improperly held these loans out to be legal. Thus, there is enough evidence that is not contended as inadmissible to show that there are material disputes of fact

as to whether Rees' acts and his involvement in the loan scheme qualify as "abusive" practices by a "covered person."

Thus, for the above reasons, we deny Defendant Rees' Motion for Summary Judgment on Count Six.

### IV.  CONCLUSION

For the above reasons, we DENY Plaintiff's Motion for Partial Summary Judgment on Counts Two, Three, and Five; Defendant Rees' Motion for Summary Judgment on all Counts; and Defendant NCA's Motion for Summary Judgment on Counts Three and Four. An appropriate Order follows.