UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PA, by<br>Attorney General JOSH SHAPIRO | : | CIVIL ACTION |
| | : | |
| *Plaintiff* | : | NO.  14-cv-07139-JCJ |
| | : | |
| v. | : | |
| | : | |
| THINK FINANCE, INC., et al. | : | |
| | : | |
| *Defendants* | : | |

# SETTLEMENT AGREEMENT BETWEEN COMMONWEALTH OF PENNSYLVANIA AND THE GPLS DEFENDANTS

AND NOW COMES the Plaintiff Commonwealth of Pennsylvania, by Attorney General Josh Shapiro, through the Bureau of Consumer Protection (the "Commonwealth" or "Plaintiff"), that filed a Second Amended Complaint in the United States District Court for the Eastern District of Pennsylvania (the "Court") on or about April 7, 2017 (the "Second Amended Complaint"), as captioned above, and the GPLS Defendants (as defined below).  The Commonwealth and the GPLS Defendants hereby agree to consensually resolve this matter pursuant to this Settlement Agreement.

## Overview

1. On or about April 7, 2017, the Commonwealth filed the Second Amended Complaint against, among others, (a) Think Finance, Inc. and certain of its subsidiaries ("Think Finance"), and (b) Victory Park Capital Advisors, LLC, Victory Park Management, LLC, GPL Servicing, LTD., GPL Servicing Agent, LLC, GPL Servicing Trust, GPL Servicing

1

Trust II, VPC/TF Trust I and Victory Park Credit Opportunities Master Fund, Ltd. (the "GPLS Defendants").

2. The allegations of the Second Amended Complaint are incorporated herein by reference for the sole purpose of background and not as any finding or adjudication of any facts or law. The GPLS Defendants dispute and deny the allegations in their entirety.

3. On October 23, 2017, Think Finance filed chapter 11 petitions in the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"). *See* Case No. 17-33964 (HDH) (the "Chapter 11 Cases").

4. On December 5, 2019, the Bankruptcy Court entered that certain Findings of Fact and Conclusions of Law and Order Confirming the Second Modified First Amended Chapter 11 Plan of Reorganization of Think Finance, LLC and Its Subsidiary Debtors and Debtors in Possession [Doc. No. 1671 in the Chapter 11 Cases] (the "Confirmation Order"). The "Plan" (as defined in the Confirmation Order) shall be referred to herein as the "Chapter 11 Plan".

5. The Chapter 11 Plan sets forth the terms and conditions of a global settlement by and among Think Finance and its major creditor constituencies, including, among others, the Official Committee of Unsecured Creditors, various nationwide consumer plaintiffs, the Commonwealth, and the GPLS Defendants.

6. Pursuant to the Chapter 11 Plan, this Settlement Agreement is made by and between the Commonwealth and the GPLS Defendants (collectively, the "Parties").

7. Pursuant to the Chapter 11 Plan, the release and discharge of the GPLS Defendants by the Commonwealth as set forth in the Chapter 11 Plan shall become fully enforceable and effective upon entry of the order approving this Settlement Agreement (the

"Effective Date"), which order shall be substantially in the form attached hereto as <u>Exhibit A</u> (the "Order").

8. This Settlement Agreement is intended for the purposes of resolving all claims, actions and allegations raised by the Commonwealth in the above-captioned action against the GPLS Defendants, as set forth in the Second Amended Complaint.

9. This Settlement Agreement is not intended to function as, and shall not be construed or used as, an admission of any wrongdoing, liability, fact, fault, assertion, allegation or illegality by any of the GPLS Defendants, each of which is expressly denied by each of the GPLS Defendants. This Settlement Agreement is entered into to resolve, settle and compromise disputed matters so as to avoid the cost, expense and effort associated with continuing the dispute.

10. The GPLS Defendants agree by the signing of this Settlement Agreement to recognize and be bound by the terms set forth herein.

11. For good and valuable consideration, including, without limitation, the releases set forth in the Chapter 11 Plan, the GPLS Defendants enter into this Settlement Agreement and agree for themselves, their successors, assigns, agents, employees, and managed funds, accounts and investment vehicles to the entry of the Order.

12. The Parties have executed this Settlement Agreement with the intent that upon approval of the Court, the provisions of this Settlement Agreement shall constitute the provisions of the Order.

## SETTLEMENT TERMS

**NOW THEREFORE**, for good and valuable consideration, including, without limitation, the releases set forth in the Chapter 11 Plan, the GPLS Defendants agree for

themselves, their successors, assigns, agents, employees, and managed funds, accounts and investment vehicles as follows:

13.     The GPLS Defendants agree that, after the Effective Date, they will not provide capital to a third-party if the permitted use or purpose of such capital is for (a) the making or offering of a consumer credit product to Pennsylvania consumers, or (b) the brokering, marketing, purchase of a participation interest in, collection or servicing of a consumer credit product made or offered to Pennsylvania consumers (such third-party, a "Provider to PA Consumers"), <u>unless</u>, in each case, the GPLS Defendants believe at the time of the commitment, based upon their legal due diligence review, including a regulatory review of the applicable consumer credit product or service offered or provided to Pennsylvania consumers, and representations made by the Provider to PA Consumers to the GPLS Defendants, that such consumer credit product or service complies with, to the extent applicable, the usury and licensing laws of the Commonwealth of Pennsylvania, which prohibit any interest charge, no matter how denominated, in excess of a 6% interest rate, on any unsecured consumer loan for any amount less than $50,000, *see* 41 P.S. § 201, unless that loan is made by a licensee under and in conformity with the Consumer Discount Company Act, 7 P.S. §§ 6201-6219.  *See Pennsylvania Dept. of Banking v. NCAS of Delaware, LLC*, 948 A.2d 752 (Pa 2008). Notwithstanding the foregoing, this Section 13 shall not apply if the usury and/or licensing laws of the Commonwealth of Pennsylvania are preempted by the federal laws of the United States of America or if the "valid-when-made doctrine" applies.  The GPLS Defendants and the Commonwealth reserve their respective rights, arguments and defenses with respect to federal preemption, the "valid-when-made doctrine" and any potential challenges to the allocation of

economic interests in connection with the applicable consumer credit product or service offered or provided to Pennsylvania consumers.

14. The GPLS Defendants agree that the transaction document between a GPLS Defendant and a Provider to PA Consumers governing the capital described in Section 13 above, which is executed after the Effective Date, will include (a) a restriction, covenant, representation or warranty by such Provider to PA Consumers that the consumer credit product or service offered or provided to Pennsylvania consumers comply with, to the extent applicable, the usury and licensing laws of the Commonwealth of Pennsylvania, and (b) an obligation by such Provider to PA Consumers to cooperate with and assist the GPLS Defendant in connection with any request by the GPLS Defendant to perform a regulatory review and due diligence with respect to such compliance.  The GPLS Defendant will perform such regulatory review and due diligence at least once per full calendar year during the term of the transaction.  If such regulatory review and due diligence finds that the consumer credit product or service offered or provided to Pennsylvania consumers does not comply with, to the extent applicable, the usury and/or licensing laws of the Commonwealth of Pennsylvania, subject to the exceptions set forth in Section 13 above, such GPLS Defendant will not thereafter provide any additional capital to such Provider to PA Consumers to fund such non-compliant activity.

15. Nothing herein shall preclude the GPLS Defendants from doing business in the Commonwealth of Pennsylvania pursuant to any subsequently enacted, promulgated, modified or interpreted federal or state statute having binding authority in Pennsylvania, including modifications to, or interpretations of, existing statutes.  In the event that any statute, rule or regulation pertaining to the subject matter of this Settlement Agreement is subsequently enacted, promulgated, modified, or interpreted by a federal court having binding authority in

Pennsylvania or a Pennsylvania state court, or any federal or Pennsylvania government, or any federal or Pennsylvania agency, or a court of competent jurisdiction whose decisions are binding in Pennsylvania holds that such statute, rule or regulation is in conflict with any provision of this Settlement Agreement, the GPLS Defendants' compliance with such statute, rule or regulation and such action shall not constitute a violation of this Settlement Agreement.

16. Upon the entry of the Order, the release and discharge of the GPLS Defendants by the Commonwealth, pursuant to and as set forth in the Chapter 11 Plan, shall become fully enforceable and effective.

17. Nothing in this Settlement Agreement shall prevent or restrict the use of this Settlement Agreement by the Commonwealth in any action against the GPLS Defendants for contempt or failure to comply with any of the provisions of this Settlement Agreement, or in the event that the GPLS Defendants are in default of any of the terms and conditions of this Settlement Agreement. A default on the part of the GPLS Defendants shall include any default or breach by the GPLS Defendants of any of the terms or requirements of this Settlement Agreement. Nothing in this Settlement Agreement shall be construed to (a) exonerate any contempt or failure to comply with any of the provisions of this Settlement Agreement after the Effective Date, (b) compromise or limit the authority of the Commonwealth to initiate a proceeding for any contempt or other sanctions for failure to comply with this Settlement Agreement, or (c) compromise the authority of the United States District Court for the Eastern District of Pennsylvania or any other court of competent jurisdiction to punish as contempt any violation of this Settlement Agreement.

18. Subject to the specific terms and conditions stated in this Settlement Agreement, breach of any of the terms of this Settlement Agreement shall be sufficient cause for the

Commonwealth, by its Attorney General, to obtain any relief the Court shall deem appropriate, including but not limited to additional attorney's fees and costs.

19. Any failure of the Commonwealth to exercise any of its rights under this Settlement Agreement shall not constitute a waiver of its rights hereunder.

20. This Court shall maintain jurisdiction over the subject matter of this Settlement Agreement and over the GPLS Defendants for the purpose of enforcing its terms; <u>provided</u> that the Bankruptcy Court shall maintain exclusive jurisdiction over the subject matter of the Chapter 11 Plan, including, without limitation, the releases set forth therein and the enforcement thereof.

21. The GPLS Defendants understand and acknowledge that if they have made any false statement or representation in this Settlement Agreement, that such statement is made pursuant to and under penalty of 18 Pa.C.S. § 4904 relating to unsworn falsifications to authorities.

22. This Settlement Agreement and the Chapter 11 Plan together set forth all of the promises, covenants, agreements, conditions and understandings between the Parties, and supersede all prior and contemporaneous agreements, understandings, inducements or conditions, express or implied. There are no representations, arrangements, or understandings, oral or written, between the Parties relating to the subject matter of this Settlement Agreement that are not fully expressed herein, the Chapter 11 Plan or attached hereto. Each party specifically warrants that this Settlement Agreement is executed without reliance upon any statement or representation by any other party hereto, except as expressly stated herein.

23. This Settlement Agreement may be executed in any number of counterparts and by different signatories on separate counterparts, each of which shall constitute an original

counterpart hereof and all of which together shall constitute one and the same document. One or more counterparts of this Settlement Agreement may be delivered by facsimile or electronic transmission with the intent that it or they shall constitute an original counterpart hereof.

24. Scott R. Zemnick hereby states that he is authorized to enter into and execute this Settlement Agreement on behalf of each of the GPLS Defendants.

25. Nothing in this Settlement Agreement shall be construed to limit the authority of the Commonwealth to protect the interests of the Commonwealth or the people of the Commonwealth of Pennsylvania.

26. The GPLS Defendants shall not, directly or indirectly, form a separate entity or corporation for the purpose of engaging in acts prohibited by this Settlement Agreement or for the purpose of circumventing this Settlement Agreement.

27. This Settlement Agreement does not constitute approval by the Commonwealth of Pennsylvania, Office of Attorney General, of any of the GPLS Defendants' products, marketing, business practices or website content, acts and/or practices, and the GPLS Defendants shall make no such representations to the contrary.

**NOW, THEREFORE**, the Commonwealth and the GPLS Defendants enter into the above set-forth Settlement Agreement and STIPULATE to its submission to the Court for entry as a Consent Decree.

**WHEREFORE,** and intending to be legally bound, the Parties have hereto set their hands and seals.

[Signatures on following pages]

**FOR THE PLAINTIFF:**

COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL

JOSH SHAPIRO
*Attorney General*

MICHELLE A. HENRY
*First Deputy Attorney General*

JAMES A. DONAHUE III
*Executive Deputy Attorney General*
Public Protection Division

SARAH A. E. FRASCH
*Chief Deputy Attorney General*
Bureau of Consumer Protection

JOHN M. ABEL
*Senior Deputy Attorney General*

Date: **12-19-19**   By: _____
SAVERIO P. MIRARCHI
*Senior Deputy Attorney General*

Commonwealth of Pennsylvania
Office of Attorney General
Bureau of Consumer Protection
1600 Arch Street, Suite 300
Philadelphia, Pennsylvania 19103
Phone: (215) 560-2414
Fax: (215) 560-2494
Email: smirarchi@attorneygeneral.gov

**FOR THE GPLS DEFENDANTS:**

Date: 12/19/2019   By: _____
Scott R. Zemnick
*Authorized Signatory*

9

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PA, by<br>Attorney General JOSH SHAPIRO,<br><br>*Plaintiff*,<br><br>v.<br><br>THINK FINANCE, INC., et al.<br><br>*Defendants*. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br>NO. 14-cv-07139-JCJ |

## ORDER

**AND NOW**, this _____ day of _____, 2019, the attached Settlement Agreement agreed to by the Plaintiff Commonwealth of Pennsylvania and the "GPLS Defendants," including Victory Park Capital Advisors, Inc.; Victory Park Management, LLC; GPL Servicing, Ltd.; GPL Servicing Agent, LLC; GPL Servicing Trust; GPL Servicing Trust II; VPC/TF Trust I; and Victory Park Credit Opportunities Master Fund, Ltd., is hereby entered as the **ORDER** and **DECREE** of this Court.

BY THE COURT:

_____
J. CURTIS JOYNER, J.